IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | |
| | § | |
| IRREVOCABLE LIVING TRUST | § | Case No. 4:21-cv-1501 |
| | § | |
| U/T/A JULY 28, 2017 | § | |

### PLAINTIFFS JAMES FLITSCH AND CAROLYN CLARK'S COMBINED MOTION FOR REMAND AND MEMORANDUM OF LAW IN SUPPORT (JOINED BY KEVIN CLARK)

COMES NOW Plaintiffs James Flitsch ("Flitsch") and Carolyn Clark ("Carolyn"), joined by Kevin Clark, filing their Combined Motion for Remand and Memorandum of Law in Support 28 U.S.C. § 1447(c), in response to the Notice of Removal (DOC 1), and would show as follows:

### A.  PROCEDURAL HISTORY

1.     This is the <u>second notice removal</u> ("2nd Removal") filed by the removing Defendants, Kristin Wilkinson Guardino and Leonard Guardino (the "Removing Defendants") in this case.  The Removing Defendants, who are *pro se*, initially filed a notice of removal[1] in this case on October 20, 2020 ("1st Removal"), claiming diversity jurisdiction and interpleader jurisdiction.  The first removal was improper and meritless, and Judge Ellison remanded the case to state court on February 23, 2021.  (Ex. E – Remand Order).

2.     On May 5, 2021, less than three months later, the Removing Defendants filed

---

[1] The 1st Removal, in cause number 4:20-cv-03583, is attached as Exhibit A, without its exhibits.  It was document number 1.  Plaintiffs Motion for Remand (attached as Exhibit B-without exhibits), the Removing Defendants' response (attached as Exhibit C- without exhibits) and Plaintiffs' reply in support of remand (attached as Exhibit D- without exhibits) were documents 3, 5 and 6, respectively, in cause number 4:20-cv-03583.  Judge Ellison's remand order (attached as Exhibit E) was document 28 in cause number 4:20-cv-03583. Plaintiffs request judicial notice of the four filings and the order.

this 2nd Removal.  According to the Civil Cover Sheet in this cause number (Ex. F)[2], the second removal is based on a federal RICO counterclaim that was first filed by Defendants on May 5, 2021.

### B.  THE CASE MUST BE REMANDED

3.      No basis exists for the exercise of federal jurisdiction by way of the 2nd Removal.  The prior remand by Judge Ellison (Ex. E) precludes re-litigation of diversity and interpleader as a basis for removal.

4.      One reason Judge Ellison remanded the case was that the Removing Defendants did not obtain the consent of the other defendant who has answered, Kevin Clark.[3]  That fact has not changed in the 2nd Removal – and the Removing Defendants concede that they lack Kevin Clark's consent.  Although the Removing Defendants now claim for the first time in this 2nd Removal that Kevin Clark is a nominal defendant, such a claim is foreclosed by the prior remand of the 1st Removal.  Even if it were not, for some reason, then the claim that Kevin Clark is a nominal defendant is neither supported by facts or case law in the notice of removal. It a bare assertion and it fails to support the 2nd Removal.

5.      The Removing Defendants presented only one new ground for removal jurisdiction in the 2nd Removal: alleged federal jurisdiction over the Removing Defendant's

---

[2] Exhibit F includes the 2nd Removal (DOC 1) with its cover sheet, no exhibits, and interlineations that show new material added to the 2nd Removal compared to the 1st Removal.  The interlineations include "*Prior para." References to paragraphs in the 1st Removal, and, underlines added to denote new material in the 2nd Removal.  Please note the underlines already in the 2nd Removal were not disturbed.

[3] Since Judge Ellison remanded without specifying specific grounds, Judge Ellison approved every basis for remand asserted by Plaintiffs.  In part, this is because if the prior remand were capable of appeal, "it is an elementary proposition, and the supporting cases too numerous to cite, that [an appeals court] may affirm the district court's judgment on any grounds supported by the record." *United States v. Dunigan*, 555 F.3d 501, 508 n.12 (5th Cir.) (citation omitted; emphasis added); *accord Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009).  Also, in part, this is due to the preclusive effect attributed to Judge Ellison's remand order.

own RICO claims against counsel for Flitsch and Carolyn Clark which were added on the same day this case was removed under the 2nd Removal.   For the RICO claims, the Removing Defendants claims removal jurisdiction under 28 U.S.C. § 1331 and 1337 through § 1441(c).

6.      However, it is black letter law that a defendant may not remove a case to federal court on the removing defendant's own counterclaim.   Yet, the Removing Defendants have done exactly that.

7.      Therefore, the case must be remanded to state court as it presents no basis for removal under any of the statutes claimed by the Removing Defendants.

## C. DUPLICATION AND OVERLAP IN THE 1ST AND 2ND REMOVAL

8.      Care should be taken to identify the potentially new or cognizable claims under the 2nd Removal.   Since the first removal resulted in remand[4], the Removing Defendants must present a different set of facts establishing a new ground for removal in this 2nd Removal.[5]

9.      A simple comparison of the text of the 1st Removal and the 2nd Removal reveals that the super-majority of pages of the second notice of removal are devoted to a literal repeat of the facts at issue in the 1st Removal – which is improper.   The Removing Defendants may have updated or re-worded descriptions but the actual substance is almost unchanged.

10.      The Removing Defendants repeating facts and allegations from the 1st Removal results in the Removing Defendants arguing for removal on the same grounds as denied by Judge Ellison as well as burdening this Court with flatly irrelevant tirades.[6]   For example, while

---

[4] Judge Ellison's 2/23/2021 order for remand was not appealable and was not appealed.

[5] "The Fifth Circuit has clarified that a defendant may 'seek subsequent removals after remand' so long as the second removal is not sought 'on the same ground.' *Id.* (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492 (5th Cir.1996)). 'Removal 'on the same ground' does not prohibit removal based on the same theory of federal jurisdiction (i.e., federal question or diversity jurisdiction), but it forecloses removal absent 'a different set of facts establishing a new ground for removal.' *Kindred Hosps., 2018 U.S. Dist. LEXIS 150725, 2018 WL 4215118, at *3* (citing *S.W.S. Erectors, 72 F.3d at 492-94*)." *Everett Fin., Inc. v. Kocher*, 2019 WL 4597574, 2019 U.S. Dist. LEXIS 161477 *4-5 (N.D.Tx. 2019).

the introductory paragraph of the 2nd Removal adds cites for federal claim jurisdiction, the introductory paragraph also recites the same statutes as the introductory paragraph 1st Removal. (*Compare* Ex. A to 2nd Removal).  These statutes were based on diversity and interpleader – which grounds were denied.  Paragraphs 11-17, 21, 25-26, 35 of the 2nd Removal raises issues that only mattered to whether the 1st Removal was timely.[7]  The amount in controversy, addressed in ¶¶28-30, do not matter as removal based on diversity was denied[8] by Judge Ellison, and, the Removing Defendants only give lip service to the new (and foreclosed) claim that Kevin Cark was a nominal defendant.  Similarly, the Removing Defendants re-claim interpleader under 28 U.S.C. § 1335 as a basis for removal jurisdiction (¶42) even though this basis for removal jurisdiction was rejected by Judge Ellison in the 1st Removal.  (Ex. A (1st Removal, ¶38); Ex. E (order).

11.     The following charts were used by Plaintiffs in their reply (Ex. C at 2) in support of remand as to the 1st Removal to summarize the removal grounds and why they failed:

---

[6] For example, the Removing Defendants wax on about alleged violations of duties, the Trust and court orders in ¶¶18-24 of the 2nd Removal.  None of these allegations concern legal issues present in this 2nd Removal allegedly based on federal claims.  Interestingly, the Removing Defendants lost on these claims in the state court.  The 457th approved a distribution of the sale proceeds to Carolyn Clark (Ex. I).  This ratified the prior sale of the house, if such a need existed.  But more importantly, Ex. I reveals the baseless nature of the Removing Defendants' complaints in ¶¶18-24.  Similarly, in ¶¶30-32 the Removing Defendants complain about conduct related to the Trust and who was trustee, but they lost those claims in August 2020 in summary judgment.  (Ex. H).

[7] The 1st Removal occurred more than one year after the case was originally filed.  The Removing Defendants claimed that the 1st Removal was timely because Plaintiff Carolyn Clark, a Texas when she joined the suit, had later moved to Tennessee but hidden that fact from the Removing Defendants.  Judge Ellison's order rejects this claim – yet the Removing Defendants repeat the claims here.

[8] The same facts for removal were presented for diversity based jurisdiction in the 1st Removal and the 2nd Removal -to wit - that nether Carolyn Clark or Flitsch were Texas citizens.  Obtaining consent from Kevin Clark was merely a procedural matter that the Removing Defendants failed to accomplish.  Thus, a ground for removal would not be that Kevin Clark consented – as his consent is not a basis for removal

| Removal Under | Subject | Problem |
|---|---|---|
| § 1332 | Diversity | Local defendant; no consents; more than 1 year |
| § 1335 | Interpleader | No consents; no state or federal interpleader action is present; no competing claims for fund; no deposit in the registry |
| § 1367 | Supplemental | No other jurisdiction to which this attaches |
| § 1441(b) | Diversity | Really removal under 1441(a); local defendant; no consents; more than 1 year |
| § 1446(b)(3) | Procedure | Not a basis for removal, but a 30-day deadline from amended pleadings |

If one of the above "problems" applies to an argument the Removing Defendants are now making, then the corresponding basis for removal is unavailable in this 2nd Removal.

12.   At a minimum, the Removing Defendants bear a burden to identify some legal ground for why they can simply re-litigate matters decided by Judge Ellison. But they do not.

13.   Because the Removing Defendants obscured the new grounds in the 2nd Removal by seeking to re-litigate the 1st Removal, Plaintiffs were forced to undertake a time consuming and exhaustive comparison of the two notices of removal.

14.   As a result, Exhibit F contains a comparison of the 1st Removal and the Second Removal to aid in review and comparison of the same. *See* footnote 2 on page 1.

15.   Since the first removal resulted in remand, the Removing Defendants have to have a different set of facts establishing a new ground for removal in this second removal.[9]

16.   The Guardinos only made two substantive changes from the first removal that allegedly justify the second removal being: (i) a claim that Defendant Kevin Clark is a nominal

---

[9] "The Fifth Circuit has clarified that a defendant may 'seek subsequent removals after remand' so long as the second removal is not sought 'on the same ground.' *Id.* (quoting *S.W.S. Erectors, Inc. v. Infax, Inc*., 72 F.3d 489, 492 (5th Cir.1996)). 'Removal 'on the same ground' does not prohibit removal based on the same theory of federal jurisdiction (i.e., federal question or diversity jurisdiction), but it forecloses removal absent 'a different set of facts establishing a new ground for removal.' *Kindred Hosps., 2018 U.S. Dist. LEXIS 150725, 2018 WL 4215118, at *3* (citing *S.W.S. Erectors, 72 F.3d at 492-94*)." *Everett Fin., Inc. v. Kocher*, 2019 WL 4597574, 2019 U.S. Dist. LEXIS 161477 *4-5 (N.D.Tx. 2019).

defendant (2nd Removal at ¶¶10, 44, 46) for diversity and interpleader purposes, and, (ii) a counterclaim filed by the Removing Defendants under RICO in state court which they say provides federal claim jurisdiction.  The arguments about Kevin Clark as a nominal defendant fail because (i) there is no evidence that Kevin Clark is a nominal defendant, (ii) in any event this argument should have been brought in the 1st Removal.  Further, it has long been black letter law that removal is improper when based on a federal question presented only in a counterclaim.

17.     The second removal, therefore, is frivolous, baseless and brought for the purpose of delay.  The case must be remanded.  The jurisdictional see-saw created by the removing Defendants must end.

18.     Plaintiffs are avoiding additional grounds that, if successful, might give rise to an appeal to the Fifth Circuit on the part of the removing Defendants.  Thus, Plaintiffs do not seek fees and costs, and, do not seek a decision based on waiver by conduct in the state court below.

## C.  FACTUAL BACKGROUND

19.     Plaintiff Carolyn Clark is an elderly widow.  (Ex. G- 3rd Amd. Petition, ¶6). Plaintiff James Flitsch is her adult grandson.  Plaintiffs brought this litigation to clean up the numerous errors in The Carolyn S. Clark Irrevocable Living Trust dated on or about July 28, 2017 (the "Trust").  (Ex. G, ¶¶49-55).  Defendant Wilkinson drafted the Trust and had Carolyn Clark sign it less than two weeks before Wilkinson's disbarment from the practice of law (Ex. G, ¶¶8-13, and, to clear up a dispute over who the trustees of the Trust.  (Ex. G, ¶¶17-42, 43-48).

20.     This litigation has already disposed of the Removing Defendants' claims to be trustees of the Trust.  (Ex. H).  On August 21, 2020, the 457th District Court entered a partial summary judgment determining that neither Wilkinson nor Guardino were trustees of the Trust.

As a result of the partial summary judgment, Wilkinson and Guardino are total strangers to the trust. They have no interest in it – but they do owe it money. The Court also settled issues related to the sale of property and distributions to Carolyn Clark, adversely to the Removing Defendants. (Ex. I). As a result, the Removing Defendants are forum shopping.

## D. LEGAL STANDARDS

21.     Removal is governed by 28 U.S.C. § 1441.

22.     28 USC § 1441(a) provides for removal as follows:

 Generally. Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

23.     28 USC § 1441 specifically refers to removal based on federal claims, and provides:

**(c) Joinder of Federal law claims and State law claims.**

(**1**) If a civil action includes—

(**A**) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title [28 USCS § 1331]), and

(**B**) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(**2**) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

24.     Since Section 1441 provides that a "civil action" may be removed by the defendant, the "civil action" is a plaintiff's state court petition, section 1441 applies the "well pleaded complaint" rule to determine whether the plaintiff has brought a claim under federal law. *Rez Capital, LLC v. Redline Burgers, Inc.*, No. 2:20-CV-0291, 2021 U.S. Dist. LEXIS

16160, at *8 (S.D. Tex. 2021) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).

25.     "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Moreover, removal jurisdiction "raises significant federalism concerns" and the courts "must therefore strictly construe removal jurisdiction." *Id.* Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000). Indeed, "[c]ontested issues of material fact, and any ambiguity or uncertainty in the controlling state law, are resolved in the plaintiff's favor." *Cantor v. Wachovia Mortg., FSB,* 641 F.Supp.2d 602, 606 (N.D. Tex. 2009) (citing *Cavallini v. State Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir. 1995)).

26.     A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a) [28 USCS § 1446(a)]. 28 U.S.C.§1447(c).

27.     If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C.§1447(c).

### *Federal Question*

28.     A defense based on a federal statute is not sufficient for removal. *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986) (citations omitted).

29.     Counterclaims are also insufficient to confer removal jurisdiction. This rule regarding removals based on a defendant's counterclaims was summarized by Judge Rosenthal:

> As a general rule, a counterclaim raising a federal question does not create federal removal jurisdiction. *See* 16 JAMES W. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 107.14[3][a][vi], p. 107-86.19 (3d ed. 2007) ("In general, a defendant may not allege a federal question counterclaim and seek removal on that basis."). Recognizing the difference between original and removal jurisdiction in cases in which both state and federal courts would

have original jurisdiction, courts have held that a counterclaim may confer federal jurisdiction on a district court when the case is removed to that court, no motion to remand is filed within 30 days after the removal, a counterclaim has been asserted, and the counterclaim could have been brought as an original action in federal court. *See Mackay v. Uinta Dev. Co.,* 229 U.S. 173, 176, 33 S. Ct. 638, 57 L. Ed. 1138 (1913); *Fax Telecommunicaciones Inc. v. AT&T,* 138 F.3d 479, 487-88 (2d Cir. 1998); *Prop. Clerk v. Smith,* No. 00CIV.2133(AKH), 2000 U.S. Dist. LEXIS 16740, 2000 WL 1725017, at *2 (S.D.N.Y. Nov. 17, 2000); *Green Tree,* 72 F. Supp. 2d at 1284.

*FIA Card Servs., N.A. v. Gachiengu*, 2008 U.S. Dist. LEXIS 8281, at *16 (S.D. Tex. 2008).

30.      Thus, so long as a motion for remand is filed within 30 days of the removal, remand is mandatory when jurisdiction is based upon a defendant's counterclaim.  It does not matter whether the Removing Defendants claim removal under 28 U.S.C. § 1331, 1337 or 18 U.S.C. § 1962, *removal* based on the Removing Defendants' own counterclaim is not permitted by 28 U.S.C. 1441.

## E.  ARGUMENT – JUDGE ELLISON'S REMAND ORDER PRECLUDES THE 2ND REMOVAL CLAIMS FOR DIVERSITY AND INTERPLEADER.

31.      The same grounds and facts for removal were presented for diversity based jurisdiction in the 1st Removal and the 2nd Removal -to wit - that nether Carolyn Clark or Flitsch were Texas citizens and also that the case was in the nature of interpleader under 28 U.S.C. § 1335(a)(1).  Thus, the 2nd Removal is precluded on the basis of diversity on the same operative set of facts.

32.      A good summary of the rules for subsequent removals was recently given by Judge Brown in the Eastern District

"While subsequent removals are permitted, such removals must be based on newly acquired evidence that reveals a new factual basis for removal. Here, the notice of removal in the instant action is very similar to the notice of removal filed in case number 2:19-CV-13710. Notably, the primary difference between the first and second removal is that Plaintiff's future medical expenses actually decreased. While Defendants satisfy the *S.W.S. Erectors* standard of seeking removal based on a new pleading or event, this new pleading or event must "*reveal a new and different ground for removal*." Providing updated medical expenses which result in a lower amount in controversy does not reveal a new

or difference ground for removal. If the amount in controversy was not satisfied in the first removal proceedings, it is difficult to see how a lesser amount in controversy would suffice at the second removal proceedings. Based on the foregoing, Defendants are merely requesting that the Court reconsider its prior remand Order. Accordingly, the Court finds that Defendants have not demonstrated a new factual basis for removal."

*Brown v. Protective Ins. Co.*, No. 20-638, 2020 U.S. Dist. LEXIS 80415, at *18-19 (E.D. La. 2020) (emphasis in original).

33.     The basis for alleged diversity jurisdiction is that Carolyn Clark and Flitsch are not citizens of Texas but the Removing Defendants and Kevin Clark are citizens of Texas.  This is the same as the 1st Removal.  (Ex. A at ¶38, and, Ex. F at ¶42).

34.     The basis for interpleader jurisdiction (in addition to diversity) is that this is a trust and an injunction allegedly turned the trust *res* over to the court.  (Ex. F – at ¶42).  This is the same basis as the 1st Removal. (Ex. A at ¶38).

35.     Since the 1st Removal was denied, (Ex. E), these facts are unavailable during this 2nd Removal.  Even if the Removing Defendants respond to this motion to try and piece together some allegedly new facts from the 2nd Notice, the 2nd Notice so obscured any grounds not addressed in this Motion for Remand that they should not be considered.

## F.   <u>ARGUMENT – ALTERNATIVELY, LACK OF CONSENT BY KEVIN CLARK PRECLUDES REMOVAL BASED ON DIVERSITY AND INTERPLEADER</u>

36.     Although the argument in paragraphs Section E, above, are sufficient to justify remand, Plaintiffs cover an alternative ground related to the lack of Kevin Clark's consent to removal as requiring remand as to diversity and interpleader removal as well.

37.     The Removing Defendants have not procured Kevin Clark's consent to removal.  Kevin Clark appeared before removal.  Procedurally, removal based on diversity requires consent from the other defendants who have appeared. "There must be unanimity of co-defendants on removal. Thus, if one co-defendant files a notice of removal, all co-defendants must timely remove or consent to removal, or the case must be remanded." *Hydro-*

*Action, Inc. v. James*, 233 F. Supp. 2d 836 (E.D. Tex. 2002).

38.     Consent must be documented. "Prior to the expiration of the removal period each served defendant must file some written indication with the court indicating their consent to removal (i.e. joining the notice of removal or filing a written consent statement)." *Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, n.9, n.11 (5th Cir. 1988).

39.     Therefore, unless Kevin Clark's consent was obtained or is excused, remand is required for diversity and interpleader based removal claims.

40.     The Removing Defendants now, for the first time, refer to Kevin Clark as a nominal defendant and claim his consent is not required.  (2nd Removal, ¶¶10, 44, 46).

41.     Obtaining consent from Kevin Clark was merely a procedural matter under 28 U.S.C. § 1446(b)(2) that the Removing Defendants failed to accomplish – consent is not a ground for removal under 28 U.S.C. § 1441.  *See e.g. Phillips v. First Tower Loan, Inc.*, 2012 U.S. Dist. LEXIS 165560, at *7 (S.D. Miss. 2012) ("In this case, removal was based on the Court's original jurisdiction under 28 U.S.C. § 1332. The two basic requirements of § 1332 applicable to this action are: 1) that the parties be citizens of different states; and 2) that the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000. Plaintiff's Motion for Remand challenges the first requirement for diversity jurisdiction and asserts a procedural defect in removal under 28 U.S.C. § 1446(a).") (citation to record omitted).

42.     Kevin Clark's consent would not produce or destroy diversity or render the case in the nature of interpleader or not.  Kevin Clark's cannot be a ground for removal because his consent to jurisdiction would not be sufficient to *create* or *confer* federal jurisdiction.  *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999) ("…a party may neither consent to nor waive federal subject matter jurisdiction.")

43.     In any event, the Removing Defendants do not identity the test for determining

whether Kevin Clark is a nominal Defendant, have not identified how Kevin Clark meets the test to be considered a nominal defendant, and have attached no evidence that allegedly shows Kevin Clark is a nominal defendant. The only statement in the 2nd Removal (¶46) is that Kevin Clark's counsel does not want to litigate in federal court – and this does not render Kevin Clark a nominal defendant.  Thus, the Removing Defendants are unable to meet the burden to prove that Kevin Clark's consent should be ignored.

44.     This is fatal to any removal based on diversity, whether under interpleader or not, because the Removing Defendants bear the burden of establishing federal jurisdiction. *Goodman v. Nationwide Agribusiness Ins. Co.*, 2019 U.S. Dist. LEXIS 193842, at *3 (M.D. La. 2019) (In addressing nominal defendant claims, the court observed that "[t]he removing party has the burden of proving federal diversity jurisdiction.") (emphasis added) (citing *Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 638 (5th Cir. 2003).

45.     The Removing Defendants cannot merely side-step their "heavy burden" to prove Kevin Clark is a nominal defendant.  *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir.2007) (citing *McDonal v. Abbott Laboratories*, 408 F.3d 177, 183 (5th Cir. 2005); *Estate of Brown v. N.Y. Life Ins. Co.*, No. 17-1486, 2018 U.S. Dist. LEXIS 58291, at *7 (W.D. La. 2018).

46.     While the Removing Defendants do allege that the claims against them are meritless, this is not sufficient to establish that Kevin Clark is a nominal defendant.  Courts considering whether there was a viable claim against the allegedly nominal defendant reject attacks like those made by the Removing Defendants:

> "However, when there is no reasonable basis for the plaintiff to recover against *both* an in-state defendant and a diverse defendant 'there is no improper joinder; there is only a lawsuit lacking merit. In such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper.' *Smallwood* 385 F.3d at 574. Thus, a finding that is equally dispositive as to all defendants precludes a finding of improper joinder, and, accordingly, requires remand of the entire suit to state court. *Id.* at 571. Thus, the argument that because plaintiffs here are unable to recover against both the

in-state and the diverse non-consenting defendants, that therefore remand is improper, is unavailing.

*Shamieh v. Am. Interstate Ins. Co.*, 2006 U.S. Dist. LEXIS 101211, at *25-26 (W.D. La. 2006).

47.     Thus, the allege lack of merit in Plaintiffs' claims is insufficient to support the claim that Kevin Clark is a nominal defendant.

48.     Failure of Kevin Clark to join in removal is a procedural defect and it is too late for that to be cured.  Remand is required. *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 557, 2015 (S.D. Tex. 2015).

## G.  ARGUMENT – SUPPLEMENTAL JURISDICTION CLAIMS FAIL

49.     Supplemental jurisdiction under 28 U.S.C. § 1367 also fails.  Supplemental jurisdiction and removal are addressed in 28 U.S.C. § 1441(c), which provides as follows:

(c)  JOINDER OF FEDERAL LAW CLAIMS AND STATE LAW CLAIMS.—
   (1) If a civil action includes—
      (A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and
      (B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

50.     Under the express terms of Section 1441, removal with supplemental jurisdiction requires an otherwise removable federal question claim for the supplemental jurisdiction to attach to.   The Fifth Circuit has held that "[o]nce § 1441 is satisfied, pursuant to § 1367, the court may *then* assert supplemental jurisdiction over any remaining state-law claims that do not independently satisfy original jurisdiction, if the state-law claims are part of the same case or controversy as the 'anchor claim.'" *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 259 (5th Cir. 2014).

51.     Since Section 1367 requires a removable claim over which the Court can exercise jurisdiction as a prerequisite to exercising supplemental jurisdiction, and the Removing Defendant present no such claims, removal under section 28 U.S.C. § 1367 is not

permitted.

## H. *ARGUMENT- THE DEFECTS CANNOT BE CURED*

52.     Defendants filed their 2nd Removal on May 5, 2021, and the certificate of service avers that all parties were noticed on that date. Thus, Defendants 30 day window for amendments has closed.

53.     Plaintiffs have filed their motion for remand within the 30-day time limit after the filing of the notice of removal as required under 28 USCS § 1447(c).

## I.  PRAYER

WHEREFORE, Defendants have not established subject matter jurisdiction, Plaintiffs James Flitsch and Carolyn Clark requests that this Court remand the action to the Texas state court and grant such other relief as the Court deems just.

Respectfully Submitted

STILWELL, EARL & APOSTOLAKIS, L.L.P.

By:    /s/Steven C. Earl
      Steven C. Earl
      State Bar No. 24002028
      Fed. No. 21893
1400 Woodloch Forest, Suite 590
The Woodlands, Texas 77380
Telephone:     281/419-6200
Telecopier:     281/419-0250
steven@woodlandstxlawfirm.com
Attorney for Plaintiffs James Flitsch and
Carolyn Clark

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on the following via the Court's ECF system on this 4th day of June, 2021, or if such party is not in the ECF system, then by email:

*Represented Parties*

Geoffrey C. Sansom
Geoffrey C. Sansom, P.C.
2905 Sackett St.
Houston, TX 77098

gsansom@dmlawfirm.com
Counsel for the Interim Trustees, Nikki Davis and Courtney Lyssy

Eugene P. Tausk (who joins in this motion)
The Tausk Law Firm
1221 Studewood St., #102
Houston, TX 77008
gene@tausklawfirm.com
Counsel for Defendant Kevin J. Clark

Jeanne L. Couture
Magnan Couture, PLLC
245 West 18th Street
Houston, Texas 77008
(713) 678-0499
jeannie@magnancouturelaw.com
Attorney for Kevin J. Clark

*Pro Se Parties*

Kristin Guardino, Pro Se
P.O. Box 3601
Conroe, TX 77304
Tel: (713) 561-5616
Fax: (713) 561-5634
kristinguardino@use.startmail.com

Leonard Guardino, Pro Se
P.O. Box 3601
Conroe, TX 77304
Tel: (713) 561-5616
Fax: (713) 561-5634
kristinguardino@use.startmail.com

/s/ Steven C. Earl
Steven C. Earl
Attorney for Plaintiffs

EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
**FILED**

**OCT 20 2020**

David J. Bradley, Clerk of Court

## NOTICE OF REMOVAL

Case No. **20-3583**

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | |
| IRREVOCABLE LIVING TRUST | § | |
| U/T/A JULY 28, 2017; No. 19-06-07875 | § | NOTICE OF REMOVAL OF ACTION |
| IN THE DISTRICT COURT | § | (28 U.S.C. §§1332, 1335, 1367, 1441(b), |
| 457TH JUDICIAL DISTRICT, | § | 1446 (b)(3)) |
| MONTGOMERY COUNTY, TEXAS | § | |

TO:   THE HON. CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS:

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§1332, 1335, 1367, 1441(b)

and 1446 (b)(3), Defendants, Kristin Wilkinson Guardino and Leonard Guardino,

(collectively, "Guardino"), hereby remove to this Court the civil action filed in the 457th

Judicial District Court of Montgomery County, Texas, as described below, and

respectfully show the Court as follows:

1.   *Factual Background Related to Jurisdiction.* On June 6, 2019, Plaintiff, James

Flitsch, ("Flitsch" or "Plaintiff"), filed a civil action entitled, Cause No. 19-06-07875; *In Re*

*The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the County Court at

Law No. 2, Probate, of Montgomery County, Texas, naming as defendants Kristin

Guardino, Leonard Guardino, and Kevin Clark. All three defendants are residents of

the State of Texas.

2.   James Flitsch is the grandson of the Settlor/Trustor, Carolyn S. Clark, and

EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

### NOTICE OF REMOVAL

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | Case No. _____ |
| IRREVOCABLE LIVING TRUST | § | |
| U/T/A JULY 28, 2017; No. 19-06-07875 | § | NOTICE OF REMOVAL OF ACTION |
| IN THE DISTRICT COURT | § | (28 U.S.C. §§1332, 1335, 1367, 1441(b), |
| 457TH JUDICIAL DISTRICT, | § | 1446 (b)(3)) |
| MONTGOMERY COUNTY, TEXAS | § | |

TO:   THE HON. CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§1332, 1335, 1367, 1441(b) and 1446 (b)(3), Defendants, Kristin Wilkinson Guardino and Leonard Guardino, (collectively, "Guardino"), hereby remove to this Court the civil action filed in the 457th Judicial District Court of Montgomery County, Texas, as described below, and respectfully show the Court as follows:

1.   *Factual Background Related to Jurisdiction.*  On June 6, 2019, Plaintiff, James Flitsch, ("Flitsch" or "Plaintiff"), filed a civil action entitled, Cause No. 19-06-07875; *In Re The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the County Court at Law No. 2, Probate, of Montgomery County, Texas, naming as defendants Kristin Guardino, Leonard Guardino, and Kevin Clark. All three defendants are residents of the State of Texas.

2.   James Flitsch is the grandson of the Settlor/Trustor, Carolyn S. Clark, and

is employed as a tow truck driver and mechanic and is a resident of the State of Iowa. He was the initial secondary co-trustee named in the Carolyn S. Clark Irrevocable Living Trust signed on July 28, 2017.

3.      James Flitsch served Defendant Kevin Clark on or about June 18, 2019. Kevin Clark is a computer analyst and project manager in various technical aspects of complicated computer programming and is the eldest adult child of Carolyn S. Clark. He was named the initial primary co-trustee of the Carolyn S. Clark Irrevocable Living Trust signed on July 28, 2017.

4.      Defendant Kevin Clark filed an answer on June 20, 2019.

5.      Defendant served Kristin Guardino, who replaced Kevin Clark at his request as a co-trustee in February 2019.  She was served with the petition and an amended *ex parte* temporary restraining order that reduced the plaintiff's bond from $250,000.00 to $1,000.00 and citation on June 20, 2019.  She filed an answer on July 15, 2019.

6.      Defendant Leonard Guardino was appointed by Kristin Guardino to replace James Flitsch as co-trustee.  He has not been served but appeared and answered on July 15, 2019.

7.      The Probate Court held hearings on its *ex parte* temporary restraining

-2-

order on July 19, 2019, and July 22, 2019, and entered a mutual injunction against  and

ordered the parties to an agreed mediation scheduled for July 26, 2019.  The mediation

failed and the injunction remains in effect.  A copy of the *ex parte* orders, setting out the

bond amounts, are attached as Exhibit A and Exhibit B, respectively, and incorporated

herein.  A copy of the current mutual agreed injunction is attached and identified as

Exhibit B2, and incorporated.

8.     Plaintiff Carolyn S. Clark joined the suit as a plaintiff on July 30, 2019,

while she was a resident of the State of Texas.

9.     Defendant Kristin Guardino is, and at the time the state court action was

filed was, a citizen of Texas.  Defendant Leonard Guardino is, and at the time the state

court action was filed was, a citizen of Texas. Defendant Kevin Clark is, and at the time

the state court action was filed was, a citizen of Texas.

10.     Plaintiffs have acted in bad faith in order to prevent a defendant from

removing this action based upon diversity of citizenship.

11.     Defendants Kristin and Leonard Guardino were unaware until September

28, 2020, that Plaintiff Carolyn S. Clark moved from Texas and became a citizen of the

State of Tennessee sometime in December 2019.

12.     On September 28, 2020, Defendants Kristin and Leonard Guardino were

served with "James Flitsch's And Carolyn S. Clark's Motion For Disbursement From

Trust" wherein Defendants first became aware of the facts involving Carolyn S. Clark's change of residency.

13.     On September 28, 2020, James Flitsch, in violation of the injunction prohibiting him from taking any action as a co-trustee, moved the state district court to disburse funds from the Trust based upon a sale of Trust property that had already occurred, without notice to the state court, also in violation of the injunction.  In his motion, Flitsch alleged that "Carolyn, in July 2020, moved to Tennessee . . .."  *See* Exhibit C, James Flitch's And Carolyn Clark's Motion For Disbursement From Trust, at p.2, ¶ 7), attached and incorporated herein.

14.     Based upon these facts, Defendants Kristin and Leonard Guardino investigated the sale of the Trust property and found that the interim co-trustees, who were appointed in the mutual injunction order, attached hereto as Exhibits B1 and B2, and incorporated, sold a piece of real estate belonging to the Trust and that had been used as the primary residence of Carolyn S. Clark.  The property was owned by the Carolyn S. Clark Irrevocable Living Trust, (the "Trust").  The interim trustees never sought permission to sell Trust property, specifically residential real estate that was a major asset of the Trust. This is a violation of the order appointing the interim temporary co-trustees and due to the violation, the diversity that existed when Carolyn S. Clark moved to Tennessee was hidden from Defendants.

15.     The Order Granting Mutual Temporary Injunction states specifically with reference to the interim trustees the following:

> **"IT IS HEREBY, FURTHER, ORDERED, ADJUDGED, AND DECREED** Nikki Davis and Courtney Lyssy, 6200 Savoy Dr., Suite 132, Houston, TX 77036, to be the interim Co-Trustees of the Carolyn S. Clark Irrevocable Living Trust. The Court will approve reasonable compensation of the interim co-trustees by application made by them and to be paid from the Trust."
>
> **"IT IS HEREBY, FURTHER, ORDERED, ADJUDGED, AND DECREED** that The interim Co-Trustees may hire the law firm of Berlinger, Davis and Lyssy to provide advice to the interim Co-Trustees. *The interim Co-Trustees may expend funds from the Carolyn S. Clark Irrevocable Living Trust without court approval only for expenses that dependent administrators may pay without court approval.[Emphasis added]."*

*See* Exhibits B1 and B2, at pages 2-3, incorporated herein.  The Texas Estates Code does not grant permission to an administrator under a dependent administration to sell real property unless done so after first obtaining a court order.  The statute reads as follows:

> "Sec. 356.001.  COURT ORDER AUTHORIZING SALE.  (a)  Except as provided by this chapter, estate property may not be sold without a court order authorizing the sale."

TEX. ESTATES CODE §356.001.  In this case, the interim co-trustees, Nikki Davis and Courtney Lyssy and their attorneys Berlinger, Davis and Lyssy did not seek or obtain a court order to sell the real property belonging to the Trust, but sold it without notice in the case, including the state district court, as evidenced by the Warranty Deed With Vendor's Lien they executed on August 21, 2020, attached and identified as Exhibit D. Defendants found the deed among the real property records after seeing the closing

-5-

statement attached to motion for disbursement of funds as an exhibit, served upon

Defendants on September 28, 2020, setting out expenses incurred by the temporary co-

trustees in the sale of the property, without first filing a motion with the state court and

obtaining the state court's permission, in violation of the court's injunction.

16.     Upon reviewing James Flitsch's motion for disbursement of funds, served

upon them on September 28, 2020, Defendants Kristin and Leonard Guardino were, for

the first time ever, alerted to the fact that Carolyn S. Clark had moved to Tennessee, as

stated in the plaintiff's motion.  Upon further investigation of these new factual

allegations by the plaintiffs, Defendants learned that Carolyn S. Clark had actually

moved to Tennessee in or about December 30, 2019 -- not July 2020.  *See* Exhibits E and

F, attached and incorporated.  Exhibit E is a copy of the online official public record of

the Shelby County Tennessee County Register of Deeds.  Exhibit F is a copy of the

online official public record maintained in the office of the Shelby County Tennessee

Assessor of Property, (see pages 1 and 6), which reflects the purchase of Carolyn S.

Clark's new home on December 26, 2019.  The recording date of the deed was December

30, 2019, as shown in Exhibit E.  Exhibit E is a copy of the online official public record of

the Shelby County, Tennessee, Register of Property Deeds and discloses Carolyn S.

Clark as the owner of the property located at 3062 Cross Country Dr., Germantown, TN

38138; that Carolyn S. Clark is responsible for the payment of property taxes on the

property located at  3062 Cross Country Dr., Germantown, NT  38138 , and that Carolyn

S. Clark's mailing address is the same as the property address: 3062 Cross Country Dr.,

Germantown, TN  38138, as of December 26, 2019.

17.     The interim trustees also expended funds in the listing and sale of the real

property belonging to the Trust without first seeking a court order allowing them to do

so, patently in violation of the order appointing them, as evidenced in the Closing

Statement attached as "Exhibit D" to Flitsch's Motion for Disbursement, attached here as

Exhibit C, incorporated herein.  This constitutes a breach of trust warranting the

immediate removal of the interim temporary co-trustees Nikki Davis and Courtney

Lyssy and their attorneys Berlinger, Davis and Lyssy.

18.     Additionally, the state district court's Order Granting Mutual Temporary

Injunction enjoined James Flitsch and Defendants in another pertinent aspect of this

situation: the order states as follows:

"in effect until final trial on the merits, or until further order of the Court,

restraining and enjoining James Flitsch, Kristin Wilkinson Guardino and

Leonard Guardino and all of their agents, members, representatives, and any

other person acting on their behalf or under their control from taking any actions

as a co-trustee(s) of the Trust except for the filing of pleadings and conducting

discovery in this suit. [Emphasis added].

19.    The plaintiffs, the interim temporary co-trustees, and the plaintiffs' attorney Steven Earl all violated the Order of the state district court, (actually signed by the probate court before the case was ever transferred to state district court), in one or more ways, as described above.  Their actions constitute fraud on the Court.  Had they complied with the state court's injunction order, James Flitsch would not be seeking affirmative relief -- see Exhibit C, at page 1, introductory paragraph and at ¶ 3, *inter alia* -- based upon the sale of Trust property, because he was prohibited from that action. He also stated in his motion for disbursement that Carolyn S. Clark moved to Tennessee in July 2020.  That statement, alone, in a motion moving for court action is grossly misleading in its omission of the facts surrounding the violations of the court's injunction; it is misleading to the parties; and to the court.

20.    The plaintiff's motion for disbursement attaches a copy of the Trust Agreement that expressly prohibits Carolyn S. Clark from managing the Trust Agreement, which is probably why the motion was brought by James Flitsch -- but there is no explanation in the motion for why the motion is not made by the court-appointed interim co-trustees, assumably because they had also violated the injunction with respect to the sale of the property.  The language in the Trust instrument is set out at page 29-30 as follows:

(E) *Further Limitations On Powers*. Except as explicitly provided otherwise
in this Agreement, no powers of the Co-Trustees enumerated in this

Agreement, or now or hereafter conferred upon trustees generally, shall be construed to enable Carolyn S. Clark to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of any Trust for less than an adequate consideration in money or money's worth, or to enable Carolyn S . Clark to borrow all or any part of the principal or income of any Trust, directly or indirectly, without adequate interest or security. No person, other than the Co-Trustees, shall have or exercise the power to vote or direct the voting of any stock or other securities of any Trust or to control the investment of any Trust either by directing investments or by vetoing proposed investments, or to reacquire or exchange any property of any Trust by substituting other property of an equivalent value. In each instance in which a Co-Trustee's exercise of, or decision not to exercise, discretion may be prohibited pursuant to this Section, the determination of the remaining Co-Trustees or Co-Trustee shall be final and binding upon the beneficiaries of such trust.

*See* Exhibit A attached to Exhibit C (the motion for disbursement), page 29-30, ¶ E.  The motion and the actions described in the motion for disbursement violate Paragraph E, above, and other provisions of the Trust, as well as the state court's temporary injunction.

21.     James Flitsch's motion seeks disbursement of funds based upon a withdrawal right given to Carolyn S. Clark under certain circumstances.  Under the terms of the Trust, Carolyn S. Clark would not have a withdrawal right for the funds she requested in the motion because the right to withdraw is limited in time and must be made by the end of the year in which the gift to the Trust is made.

22.     Carolyn S. Clark transferred the real property that was sold into the trust on July 28, 2017, and her right to withdraw that property expired in December 31, 2017.

By selling the property, she merely converted it from one form to another.  There is no evidence that Carolyn S. Clark made an addition to the Trust in 2020.  Therefore, the motion for disbursement based upon a withdrawal right, as alleged, violates the Trust Agreement, as well as the injunction.  The motion for disbursement requests the disbursement under the terms of the "withdrawal right" set out in the Trust Agreement.  *See* Exhibit C, (at Exhibit A attached to Exhibit C), the motion for disbursement, page 2, ¶ 6.  The exercise of the withdrawal right under the Trust Agreement states, in part, the following:

> "(4) Exercise of Withdrawal Right. <u>Each Withdrawal Right shall be exercisable only by </u>a written instrument ( executed by or on behalf of the beneficiary possessing the Withdrawal Right) delivered to one or both of the Co-Trustees of the Donee Trust <u>any time from the date a Withdrawable Addition is made to the Donee Trust until December 31 of the calendar year in which a Withdrawable Addition is made to the Donee Trust</u>."

*See* Exhibit A attached to the motion for disbursement, attached here as Exhibit C, at page 5, ¶ 4.  The relief requested by James Flitsch lacks merit, shows his willingness to violate the injunction and the Trust Agreement, along with his attorney, and misleads the parties and the Court significantly, especially in light of the fact that the case was

-10-

just recently transferred to the 457th State District Court, who did not have the benefit of hearing the injunction evidence.

23.     Had any of the parties Plaintiff complied with the Injunction, Defendants would have known that diversity was complete within one year of the date of filing the original petition.  But the Plaintiffs and the court-appointed interim co-trustees moved about in secret and violated the injunction in order to complete their dealings.  The first indication to Defendants Kristin Guardino and Leonard Guardino that diversity was complete was the "James Flitsch's and Carolyn Clark's Motion For Disbursement From Trust" filed September 28, 2020.  Kristin Guardino discussed the surprising revelations with counsel for Kevin Clark after receiving the Flitsch's motion and it was not revealed to her whether she or her client Kevin Clark were aware of these facts.

24.     This notice of removal is timely filed within thirty days of service of the James Flitsch's And Carolyn Clark's Motion For Disbursement From Trust, served September 28, 2020.

25.     The amount in controversy exceeds $75,000

26.     *Background Factual Case.*  Plaintiffs allege that Defendant Kristin Guardino was not properly appointed by the primary initial co-trustee Kevin Clark as his replacement co-trustee, and as a consequence, she was not authorized by the trust instrument to hold property of the subject trust transferred to her by Kevin Clark or to

-11-

take other actions to protect the Trust property, pay expenses, or appoint Leonard

Guardino as a replacement co-trustee for James Flitsch, the secondary co-trustee to

Kevin Clark.

27.     The value in the Carolyn S. Clark Irrevocable Living Trust at the time of

Kristin Guardino's appointment was approximately eleven million dollars, held in

accounts at Wells Fargo.  James Flitsch was replaced because, during the initial months

of Kristin's work as a co-trustee, she discovered that James Flitsch, the original

secondary co-trustee of the Carolyn S. Clark Irrevocable Living Trust, neglected

property in the trust and failed to account for approximately $7 million dollars that was

missing in the financial accounts, and then lied to Kristin and a banker in the exercise of

some of his duties as a trustee.  James Flitsch also told Kristin that he had not performed

any work during his approximately two years as a co-trustee; had no knowledge of his

duties as a trustee; that Kevin Clark had performed the work of the co-trustees and had

discussed with James the appointment of Kristin as Kevin's replacement on several

occasions in the same manner as they had handled managing Trust matters from the

time both of them, (Kevin and James), accepted their appointment as co-trustees in July

2017.  Prior to removing and replacing James, Kristin discussed her actions with James

himself; with Kevin Clark and Diane Clark, the two adult children and beneficiaries

under the Trust who live in Texas; attempted to contact the other adult child of Carolyn

Clark, without success; and sought legal counsel.  Based upon that counsel Kristin

Guardino asked James Flitsch to resign.  Kristin also met with Carolyn S. Clark over the

telephone and the two scheduled an in-person meeting for the following Sunday.

During that telephone conversation, Carolyn S. Clark neither made any objection to

Kristin regarding her appointment as co-trustee, nor stated she did not know about

Kristin's appointment as a co-trustee, nor did she make any complaint about the

management of the Trust or ever tell Kristin that she had not read the Trust instrument

before she signed it; nor did Carolyn S. Clark ever complain or state that anyone made

her, forced her, or demanded or coerced her in any way to sign the Trust instrument.

     28.     Carolyn S. Clark, ("CSC"), did not show up to the scheduled meeting.

CSC boarded a plane to go on a vacation she had scheduled to begin the very day that

she had scheduled the appointment with Kristin.  Kristin met over the telephone with

James Flitsch concerning the missed meeting and whereabouts of CSC, because of

concern for Carolyn because this kind of behavior had never been exhibited by Carolyn

in Kristin's presence in the past.  Initially, Flitsch told Kristin that he had no knowledge

of CSC's whereabouts and stated he had not talked to her at all in a long time.  Kristin

pressed Flitsch and finally Flitsch told Kristin he had been in frequent communication

with CSC, his grandmother, concerning his personal matters and regarding Kristin's

request that he resign.  Kristin then communicated with CSC's adult children Kevin

Clark and Diane Clark, who had been the primary caretakers of CSC, concerning the removal of James Flitsch and they agreed that Kristin proceed with Flitsch's removal. They also agreed upon Kristin's selection of the replacement co-trustee.

29.     Kristin then formally removed James Flitsch and appointed Len Guardino as the replacement for James Flitsch.  Kristin was served with the original petition and an amended temporary restraining order in June 2019 alleging that Kristin did not have authority as a co-trustee to accept trust property held by Kevin Clark, who had appointed Kristin as his replacement co-trustee; to move one of the accounts at Wells Fargo to another financial institution; to remove James Flitsch or to appoint Leonard Guardino to replace James Flitsch as co-trustee.  Among the pleadings, and at the hearing on the temporary injunction, Carolyn S. Clark testified that Kristin literally forced her to sign the trust agreement.  Not only has Kristin produced evidence controverting Carolyn Clark's testimony but her entire family was present in addition to other witnesses and no one has substantiated this highly defamatory testimony; either Carolyn Clark engaged in perjury and/or her counsel Steven Earl suborned perjury at the hearing on the temporary injunction or Carolyn S. Clark does not have the capacity to determine what is real from what is imagined or made up.  This second explanation is likely based upon explanations Kristin Guardino received from Carolyn S. Clark's adult children regarding her behavior in their interpersonal relations with her in the

-14-

recent past.  In spite of this, the plaintiffs' counsel, Steven Earl, continues to repeat the

defamatory allegations although they have been disproved with admissible evidence.

30.     *Procedural position of the case*.  On June 20, 2019, Defendant Kristin

Guardino was initially served with the Citation and Petition, with an amended

temporary restraining order attached, in the above-referenced state court action.  Only

recently have all of the interested parties, (Trust beneficiaries), been identified and

service requested by the Plaintiff.  Defendant Len Guardino was never served but

entered an appearance with Kristin Guardino on July 15, 2019.  Kevin J. Clark was

served with Citation, temporary restraining order, and Petition on June 18, 2019, and

answered on June 20, 2019.  Diane Clark, (one of Carolyn S. Clark's two adult

daughters), was served with the temporary restraining order on June 18, 2019.  Copies

of all relevant process and pleadings in this state court action are attached hereto as

Exhibits 1-zz.

31.     The hearing on the temporary restraining order occurred on July 19, 2019,

and July 22, 2019.  A mutual temporary injunction was entered against Plaintiff James

Flitsch and Kristin and Leonard Guardino on July 29, 2019.  James Flitsch then joined

Carolyn S. Clark, (his grandmother and funding party to his litigation), a resident of

Texas, as a plaintiff on July 30, 2019, defeating diversity in the case.  The plaintiffs filed a

motion for traditional summary judgment against Kristin and Len Guardino based

upon the plaintiff's second amended petition.  The state court signed an order granting

the motion without resolving all claims, all parties, or all issues and is not final.  A trial

court order that does not dispose of all parties, all claims, or all issues is not final.

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).  Kristin and Len Guardino

seek a rehearing of that motion and the state court's order.

32.     The plaintiffs' live pleading is the third amended petition, filed September

16, 2020, omitting any reference to Carolyn S. Clark's change of residence to Tennessee

that was plead in their motion for disbursement of funds, filed on September 28, 2020.

The third amended petition adds interested parties, including Lisa R. Seigel, who one of

two of Carolyn S. Clark's adult daughters, and who resides in Tennessee.

33.     On December 23, 2019, Nicole B. Davis and Courtney M. Lyssy as Co-

Trustees of the Carolyn Clark Irrevocable Living Trust U/T/A July 28, 2017, filed an

intervention and petition for declaratory judgment.

34.     The current state court signed a docket control order on September 10,

2020.  (This case was transferred from the probate court, where it was initially filed, to

the 284th Judicial District Court and was then transferred again to another district court,

the 457th District Court, where it is pending).

35.     On September 28, 2020, the plaintiffs filed a motion for disbursement from

the Trust.  This motion violates the temporary restraining order. In a transaction related

-16-

to the plaintiff's motion for disbursement, the temporary interim trustees have also violated the authority given to them in the order appointing them.  Kristin and Len Guardino seek the removal of Nicole B. Davis and Courtney M. Lyssy as co-trustees and the removal of their firm as counsel for any co-trustees and seek the appointment of replacement interim trustees and/or a receiver.

36.     A list of the pleadings in this case is attached as Exhibit G.

37.     No further proceedings have been had in the state court action.

38.     Accordingly, this Court has original jurisdiction over the state court action under 28 U.S.C. §1332 (diversity) because it is a civil action that arises between citizens of different states in which the amount in controversy exceeds $75,000.00 and under 28 U.S.C. §1335 (interpleader) because there are two or more adverse claimants, of diverse citizenship as defined by 28 U.S.C. §1332(a), who claim to be entitled to money or property or benefits arising by virtue of a trust agreement instrument and the plaintiff has given bond payable to the clerk of the court in such amount and with such surety as the court deemed proper.  *See* Exhibits B1 and B2, attached and incorporated. Jurisdiction over the remaining claims is proper under 28 U.S.C. §1367(a).  This notice of removal is timely under 28 U.S.C. §1446(b)(3) because it is filed within thirty days from which it was first ascertained that the case is one which has become removable.

39.     All Defendants named in the state court action have been served.

Defendants Kristin Guardino and Leonard Guardino join in the removal.  Counsel for

Defendant Kevin Clark has not responded to the defendants inquiry regarding their

position on the removal, however, they have not objected.

40.    No previous application has been made for the relief requested herein.

41.    Promptly after filing this notice of removal, written notice will be given to

all parties and a copy of this notice of removal will be filed with the District Clerk of

Montgomery County, Texas in compliance with 28 U.S.C. 1446(d).

42.    The following items are attached as Exhibits:

• Exhibit A - Ex Parte Temporary Restraining Order, signed June 7, 2019;

• Exhibit B - Ex Parte Amended Temporary Restraining Order, signed June
  10, 2019;

• Exhibit B1 - Order Granting Mutual Temporary Injunction, signed July 29,
  2019;

• Exhibit B2 - First Amended Order Granting Mutual Temporary Injunction,
  signed October 8, 2019;

• Exhibit B3 - Second Amended Order Granting Mutual Temporary
  Injunction, signed November 1, 2019;

• Exhibit C - James Flitch's And Carolyn Clark's Motion For Disbursement
  From Trust, filed September 28, 2020;

-18-

- Exhibit D - Warranty Deed With Vendor's Lien, executed on August 21, 2020;

- Exhibit E - Shelby County Tennessee County Register of Deeds evidencing the property owner as Carolyn S. Clark and the property and mailing address as 3062 Cross Country Dr., Germantown, NT  38138 as of December 30, 2019;

- Exhibit F - Office of the Shelby County Tennessee Assessor of Property, reflecting the purchase of Carolyn S. Clark's new home on December 26, 2019, and the recording date of the deed as December 30, 2019;

- Exhibit G - Index of pleadings on file in the state court case being filed with this Notice in addition to the Exhibits referenced herein;

- Exhibit H - Disclosure Statement listing of all counsel of record, including addresses, telephone numbers, and parties represented.

THEREFORE, Plaintiff prays that the Court take jurisdiction over the claims and causes of action filed in Cause No. 19-06-07875; *In Re The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the County Court at Law No. 2, Probate, of Montgomery County, Texas; grant the relief requested herein, including removing this action to this Court; rehearing the plaintiff's motion for partial summary judgment and entry of an order denying the motion upon rehearing; removal of Nicole B. Davis and

Courtney M. Lyssy as interim co-trustees and removal of their firm as counsel for any

co-trustees and appoint replacement interim co-trustees and/or a receiver; remove

permanently James Flitsch as a co-trustee; and on final hearing grant Judgment in favor

of Defendants Kristin Guardino and Leonard Guardino, including costs, legal fees, and

expenses; and for further relief, both in law and equity.

Respectfully submitted,

Kristin Guardino and Leonard Guardino
By;   /S/ Kristin Guardino
Kristin Guardino, JD, Pro Se
By:   /S/ Leonard Guardino
Leonard Guardino, Pro Se
P.O. Box 3601
Conroe, Texas  77304
(713) 561-5616
(713) 561-5634 (Facsimile)

PRO SE FOR DEFENDANTS

<u>CERTIFICATE OF SERVICE</u>

I certify that in accord with Rule 5, FED.R.CIV.P., a true and correct copy of the

foregoing document has been served by electronic mail transmission to the following:

Steven C. Earl by serving him via e-mail at: Steven@woodlandslawfirm.com; by serving

Jeanne L. Couture via her e-mail at:  jeannie@magnancouturelaw.com; by serving

attorneys Nicole B. Davis and  Courtney M. Lyssy via their e-mail at:

nikki@berlingerdavis.com; and via United States Mail, postage prepaid to all additional

-20-

interested parties, including the following persons on the 20th day of October, 2020:

Diane M. Clark, 2113 North Thompson Street, Conroe TX  77301;

Jillian Renee Deutmeyer, 209 East Butler Street, Manchester IA  52057;

Lisa Siegle, 7678 Cross Village, Germantown, TN  38138;

Samantha Maye Simone's De Arias, Urb Ciudad Jardin 1 Prima 1A  Pachocha Ilo Moquegua Peru 18601; and

Chandra Lea Sims, C/O Timothy Jacob Sims  1707 East 29th Street, De Moines, IA 53017.

By; __/S/ Kristin Guardino_____
Kristin Guardino, Pro Se
October 20, 2020

**EXHIBIT B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | |
| | § | |
| IRREVOCABLE LIVING TRUST | § | Case No. 4:20-cv-03583 |
| | § | |
| U/T/A JULY 28, 2017 | § | |

## PLAINTIFFS JAMES FLITSCH AND CAROLYN CLARK'S COMBINED MOTION FOR REMAND AND MEMORANDUM OF LAW IN SUPPORT

COMES NOW Plaintiffs James Flitsch ("Flitsch") and Carolyn Clark ("Carolyn"), filing their Combined Motion for Remand and Memorandum of Law in Support 28 U.S.C. § 1447(c), and would show as follows:

### A.  MOTION FOR REMAND

1.  Defendants Kristin Wilkinson Guardino and Leonard Guardino removed this case by filing their notice of removal ("Notice" – Doc 1) on October 20, 2020, claiming diversity jurisdiction.  The removal is improper and meritless.  Plaintiffs pray the entire case be remanded.

2.  The removing Defendants admit in the Notice that they are citizens of Texas, and this alone defeats removal jurisdiction.

3.  The plaintiff Carolyn, who Defendants allege moved to Tennessee in December 2019, was also a resident and citizen of Texas when she joined as a plaintiff on July 30, 2019, in the original suit in Montgomery County Court at Law 2.[1]  Thus, at the times referenced by

---

[1] The removing Defendants assume Carolyn was a party at all relevant times – and if this were true then complete diversity would fail as stated in this motion.  As an interesting note, however, the removing Defendants did not disclose the something important about the order of events.  Since Wilkinson and Guardino were served or appeared by June 21, 2019, they only faced a diverse plaintiff from Iowa (Flitsch) until July 30, 2019 when Carolyn joined as a plaintiff.  Yet, they did not remove within 30 days. Thus, properly understood, the removing Defendants missed the 30 day window they (incorrectly) claim they were cheated out of using *if one ever existed because plaintiffs were diverse.*

the removing Defendants in their Notice, complete diversity was lacking.[2]   This alone defeats removal jurisdiction.

4.      The removing Defendants admit in the Notice that they do not have the consent of the other Defendant, Kevin Clark ("Kevin").  It is too late to amend to add those consents – which would not be forthcoming anyway.  This alone defeats removal jurisdiction.

5.      More than one year passed from the filing of the suit to the Notice.  Although the removing Defendants claim Carolyn hid her move to Tennessee in bad faith, a change in Carolyn's citizenship would not produce diversity jurisdiction given the points in paragraphs 2-4, above.[3]  This alone defeats removal jurisdiction.

6.      Plaintiffs respectfully request that this cause be remanded to state court under 28 U.S.C. § 1447(c) because there is no diversity jurisdiction to be had, all defendants have not consented to removal, and Defendants cannot amend or cure their notice. The removing Defendants Notice is procedurally defective, and untimely.

7.      Plaintiffs are avoiding additional grounds that, if successful, might give rise to an appeal to the Fifth Circuit on the part of the removing Defendants.  Thus, Plaintiffs do not seek fees and costs, and, do not seek a decision based on waiver by conduct in the state court below.

## B.  FACTUAL BACKGROUND

8.      Carolyn is an elderly widow who was duped into executing an irrevocable trust[4] by Wilkinson, after Wilkinson lost her jury trial on disbarment from the practice of law but had not yet suffered the entry of the order of disbarment.  The lawyer, Wilkinson, negligently

---

[2] The removing Defendants have not classified the court appointed interim co-trustees their place in the diversity equation.  The co-trustees, Nikki Davis and Courtney Lyssy, are Texas attorneys whose firm is here.

[3] As can be seen from Carolyn's declaration, attached hereto as Exhibit F, shows she did not change domicile in December 2019, but on or after July 2020.

[4] The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017.

drafted the trust, which alienated a substantial amount of the widow's property. Worse yet, Wilkinson then tried to become the trustee of that same trust against Carolyn's wishes.[5] (Ex. L- 3rd Am. Pet. at 3-6). Two years of efforts by Carolyn to free herself from the disbarred lawyer's entanglements now land in this Federal Court by way of a meritless notice of removal.

9.  James Flitsch, an Iowa citizen, filed suit on June 9, 2019, as a trustee seeking declarations to separate Wilkinson and Guardino from the trust and its assets, and to recover trust assets taken by Wilkinson. (Ex. A – Orig. Pet.)

10.  Carolyn, a Texas citizen, joined as a plaintiff on July 30, 2019. (compare Ex. A p. 1 – Orig Pet.to Ex. B at p. 1--2nd Amd. Pet.). More than 30 days before that - the initial suit was served on Wilkinson on June 20, 2019, and both Wilkinson and Guardino made an appearance on June 21, 2019 through an agreed order (Ex. G –service; Ex. H --appearance). Thus, from June 20, 2019 to July 29, 2019 the suit featured only James Flitch (Iowa) as a plaintiff. In July 2020, more than a year after suit was filed and served on Wilkinson and after Guardino made his appearance, the removing Defendants filed the Notice.

11.  The removing Defendants were also citizens of Texas when they entered suit, just as they were at the time of the Notice. (Notice at ¶9). If they were not, they cannot amend now to add that claim.

12.  The other named defendant Kevin Clark is a Texas citizen.[6] (Notice at ¶1). An additional defendant is Diane Clark, also a Texan. (Ex. F- Carolyn's Declaration).

13.  Suit initially landed in County Court at Law 2 in Montgomery County Texas. The case was transferred to the 410th District Court in Montgomery County, and then to the new 457th District Court before it was removed. (Ex. I- transfer orders).

---

[5] After Wilkinson lost a jury trial on disbarment, knowing she was about to be disbarred, she nevertheless proceeded to induce the widow to execute the trust in the two weeks before the final order of disbarment was signed. (Ex. J- order).

[6] Kevin is also a beneficiary of Carolyn's trust, and a necessary party.

14. On August 21, 2020, the 457th District Court entered a partial summary judgment determining that neither Wilkinson nor Guardino were trustees of Carolyn's Trust, that Wilkinson could not remove any trustee of Carolyn's trust, and that Wilkinson did not have the power to change trustee compensation in Carolyn's trust. (Ex. D- MSJ order).

15. As a result of the summary judgment, Wilkinson and Guardino are total strangers to the trust. The only interest Wilkinson and Guardino do have in the trust is as debtors; they owe the trust at least $87,000.00 which was wrongfully taken when they were masquerading as trustees.

16. Trial in the state court was set during January 2021. Even with a remand, that trial date is likely to be moved. (Ex. K- DCO).

## C. LEGAL STANDARDS

17. Removal is governed by 28 U.S.C. § 1441(a), which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed[.]"

18. Federal courts have original jurisdiction over any civil action "where the matter in controversy exceeds ... $75,000 ... and is between citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2).

19. "The burden of establishing federal jurisdiction is placed upon the party seeking removal." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988). Moreover, removal jurisdiction "raises significant federalism concerns" and the courts "must therefore strictly construe removal jurisdiction." *Id.* Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000). Indeed, "[c]ontested issues of material fact, and any ambiguity or uncertainty in the controlling state law, are resolved in the plaintiff's favor." *Cantor v. Wachovia Mortg., FSB,* 641 F.Supp.2d 602, 606 (N.D. Tex. 2009) (citing *Cavallini v. State*

*Farm Mut. Auto Ins. Co.,* 44 F.3d 256, 259 (5th Cir. 1995)).

20.     A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a) [28 USCS § 1446(a)]. 28 U.S.C.§1447(c).

21.     If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 28 U.S.C.§1447(c).

*Diversity*

22.     "Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." *Lincoln Property Co. v. Roche,* 546 U.S. 81, 84 (2005). Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Caterpillar Inc. v. Lewis*, 519 U.S. 68 (1996); *Vaillancourt v. PNC Bank Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014). In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Uglunts v. Americare Servs., Inc.*, 2013 U.S. Dist. Lexis 102410 (N.D. Tex. 2013). Removal is appropriate only if none of the parties properly joined and served as defendants is a citizen of the state in which the action was brought. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007)

*All Defendants Must Consent to Removal in Writing*

23.     To remove an action based solely upon 28 U.S.C. § 1441(a), "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). "There must be unanimity of co-defendants on removal. Thus, if one co-defendant files a notice of removal, all co-defendants must timely remove or consent to removal, or the case must be remanded." *Hydro-Action, Inc. v. James*, 233 F. Supp. 2d 836

(E.D. Tex. 2002). Such consent must be by an affirmative action. "Prior to the expiration of the removal period each served defendant must file some written indication with the court indicating their consent to removal (i.e. joining the notice of removal or filing a written consent statement)." *Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Getty Oil Corp., a Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.9, 1262 n.11 (5th Cir. 1988). The consent to removal must be timely and made in writing by the defendant itself sought to be bound by the consent. *Id.*

### One Year Time Limit for Removal

24.     Cases based on diversity jurisdiction may not be removed more than one year after the commencement of the action unless the district court finds that the plaintiff acted in bad faith to prevent removal. 28 U.S.C. 1446(c).

### Time Limit to Amend or Cure Defects

25.     A defendant may freely amend a notice of removal within the 30-day period set out in 28 U.S.C.S. § 1446(b). The only avenue available for amendment after the thirty days has run is 28 U.S.C. § 1653. *Marshall v. Skydive America South*, 903 F. Supp. 1067, 1069 (E.D. Tex. 1995). However, 28 U.S.C. § 1653, by its terms, may only be utilized to cure defective allegations of jurisdiction in the original petition. An imperfect or defective allegation of jurisdiction is distinguished from a procedural defect, which is not subject to amendment after 30 days. The procedural requirements of removal (such as joining all defendants to the removal) are not subject to cure by 28 U.S.C.S. § 1653 outside the 30-day time limit set out in 28 U.S.C.S. § 1446(b). *Wormley v. Southern Pac. Transp. Co.*, 863 F. Supp. 385, (E.D. Tex. 1994).

26.     Failure to join in removal is a procedural defect that cannot be cured by untimely notice of consent. Therefore, the removal is fatally defective, and remand is required. *Honey Holdings I, Ltd. v. Alfred L. Wolff, Inc.*, 81 F. Supp. 3d 557, 2015 (S.D. Tex. 2015).

**D. ARGUMENT -** *REMAND IS NECESSARY BECAUSE THE DEFENDANTS FAIL BOTH JURISDICTIONAL AND PROCEDURAL REQUIREMENTS FOR REMOVAL.*

*Remand is necessary because the removing Defendants are Texas citizens. Other defendants are also Texas citizens.*

27.     The removing Defendants admit in the Notice that they are Texas citizens.

28.     Thus, they cannot remove a case based on diversity jurisdiction. 28 U.S.C. § 1441(b); *Lincoln Property Co.,* 546 U.S. 84.

29.     But it is not just the removing Defendants who thwart removal jurisdiction. Kevin Clark is also a defendant and is a citizen of Texas. (Notice ¶1).

30.     The presence of the Texas citizens as defendants unequivocally defeats the ability of the Defendants to remove the case. "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 USCS § 1441(b)(2).

*Carolyn's relocation to Tennessee does not create diversity*

31.     The removing Defendants concede that Carolyn was a Texas citizen when she joined the suit but claim that Carolyn's moving to Tennessee created diversity jurisdiction. (Notice ¶¶8, 9). Aside from the factual flaws pointed out in footnote 1, *supra,* the legal argument has been soundly rejected in several iterations. *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986) ("The question concerns the other plaintiff, Contemporary, Inc. If on June 16 or June 17 it was a citizen of Wisconsin rather than Illinois, complete diversity of citizenship was lacking and the district court had no jurisdiction.") (Posner, J); *see also Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996) ("If diversity is established at the commencement and removal of the suit, it will not be destroyed by subsequent changes in the citizenship of the extant parties."); *cf* ("To our knowledge, the Court has never approved a

deviation from the rule articulated by Chief Justice Marshall in 1829 that '[w]here there is no change of party, a jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit.'" *Grupo Dataflux v. Atlas Global Broup, L.P.*, 541 U.S. 567, 574 (2004) (citing *Conolly v. Taylor*, 2 Pet 556, 565, 7 L.Ed. 518 (1829).

32.     Remand is necessary because the removal fails to meet the jurisdiction and diversity requirements pursuant to 28 USCS §§ 1447(c), 1332(a), and 1441(b)(2).

### *Remand is Necessary Because Defendant Kevin Clark Failed to Consent.*

33.     The Notice asserts that Wilkinson and Guardino join in the removal and then states, "Counsel for Defendant Kevin Clark has not responded to the defendants' inquiry regarding their position on the removal, however, they have not objected." (Notice ¶39.)

34.     Defendants Wilkinson and Guardino admit that Kevin Clark has not consented to or joined in the removal, which must be in writing and made by the defendant intending to be bound by the consent. Removal is therefore barred, and remand is necessary for failure to meet the requirements of 28 U.S.C. § 1441(a).

### *Remand Is Necessary Because the Notice was Filed More Than 1 Year After Suit was Initially Filed.*

35.     The removing Defendants filed the Notice more than one year after the commencement of the action in contravention of 28 U.S.C. 1446(c).

36.     While the removing Defendants claim Carolyn hid her move in bad faith, this a straw man argument.  In no event did Carolyn's move to Tennessee create diversity (whether in December 2019 or July 2020[7]), and for the reasons given herein, *supra*, nor would her relocation even if Carolyn were a Tennessee citizen for the same reasons given.  Thus, the Notice would fail to comply with the requirements of 28 U.S.C. 1446(c) and remand is necessary.

---

[7] See Ex. F- Carolyn's Declaration.

*Defendants Cannot Amend or Cure Their Fatal Defects*

37.     Defendants filed their Notice on October 20, 2020 and the certificate of service avers that all parties were noticed on that date. Defendants claim they were put on notice about Carolyn's move to Tennessee by way of the September 28, 2020.   (Notice ¶16).   Thus, Defendants 30 day window for amendments closed October 28, 2020.

38.     Plaintiffs have filed their motion for remand within the 30-day time limit after the filing of the notice of removal as required under 28 USCS § 1447(c).

39.     Accordingly, the failure to obtain the required consent from all Defendants is fatal to the Notice and remand is necessary.  Defendants cannot amend their Notice as they are outside both the 30-day and one-year limitations imposed by 28 USCS § 1446. Defendants have no diversity grounds upon which to amend and the procedural deficiency is fatal. On these facts, remand is necessary.

## E.  CONCLUSION

WHEREFORE, Defendants have not established subject matter jurisdiction, Plaintiffs James Flitsch and Carolyn Clark requests that this Court remand the action to the Texas state court and grant such other relief as the Court deems just.

Respectfully Submitted

STILWELL, EARL & APOSTOLAKIS, L.L.P.

By: ___/s/Steven C. Earl_____
     Steven C. Earl
     State Bar No. 24002028
     Fed. No. 21893
1400 Woodloch Forest, Suite 590
The Woodlands, Texas 77380
Telephone:     281/419-6200
Telecopier:     281/419-0250
steven@woodlandstxlawfirm.com
Attorney for Plaintiffs James Flitsch and
Carolyn Clark

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on the following via the Court's ECF system on this 30th day of October, 2020, or if such party is not in the ECF system, then by email:

Kristin Wilkinson Guardino, Pro Se
Leonard Guardino, Pro Se
PO Box 701188
Houston, Texas 77270-1188
Phone: (713) 561-5616
Fax: (713) 561-5629
kristinwilkinson@use.startmail.com
kristinguardino@use.startmail.com

Nikki Davis
Courtney Lyssy
Davis & Lyssy, PLLC
6200 Savoy, Suite 132
Houston, Texas 77036
nikki@davislyssy.com
courtney@davislyssy.com
Interim trustees

Jeanne L. Couture
Magnan Couture, PLLC
245 West 18th Street
Houston, Texas 77008
(713) 678-0499
jeannie@magnancouturelaw.com
Attorney for Kevin J. Clark

*/s/ Steven C. Earl*
Steven C. Earl
Attorney for Plaintiffs

EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

NOV 20 2020

David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | |
| IRREVOCABLE LIVING TRUST | § | Case No. 20-3583 |
| U/T/A JULY 28, 2017 | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' JAMES FLITSCH AND CAROLYN CLARK MOTION FOR REMAND

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Kristin Wilkinson and Leonard Guardino, Defendants, responding to the plaintiffs' motion for remand and shows the honorable Court as follows:

1.     Defendants, Kristin Wilkinson Guardino and Leonard Guardino, (collectively, "Guardino"), removed this case pursuant to 28 U.S.C. §§1332, 1335, 1367, 1441(b) and 1446 (b)(3).

2.     The plaintiffs filed a motion to remand alleging removal was impropert under the requirements of 28 U.S.C. §1332, diversity of jurisdiction. The plaintiffs' motion also alleged that removal was improper because all defendants must agree in writing to the removal but did not.

3.     The plaintiffs' motion lacks merit here. Only removal actions based solely on 28 U.S.C. §1332 must have no "local" defendants. Likewise, the plaintiff's motion lacks merit with respect to defendants' consent because 28 U.S.C. §1446(b)(2)(A) allows

removal in cases where all defendants who have been properly joined and served have also joined in or consented to the removal action **if** the civil action is removed solely under 28 U.S.C. §1441a.  These requirements do not pertain to removals under 28 U.S.C. §1335.

      4.     This case was not removed solely on the basis of diversity, was not removed solely under 28 U.S.C. §1332, and was not removed solely under 28 U.S.C. §1441.  This case was also removed under 28 U.S.C. §1335 on the basis of actions in the nature of interpleader filed by Carolyn S. Clark and by the interim trustees, (Nicole B. Davis and Courtney M. Lyssy), who posted the bond required by the state county court at law.  These actions present multiple claims against a single, identifiable fund, appropriate for removal. *Wausau Ins. Companies v. Gifford*, 954 F.2d 1098 (5th Cir. 1992).

      5.     Federal jurisdiction under 28 U.S.C. §1335 is appropriate under the circumstances of this case because the requisite diversity exists.  "'The requisite diversity exists if at least two of the adverse claimants are citizens of different states, without regard to the citizenship of other claimants or the stakeholder.' New York Life Ins. Co. v. Connecticut Dev. Auth., 700 F.2d 91, 95 n. 5 (2nd Cir.1983).'" *Sun Life Assur. Co. of Canada*, 431 F.Supp.2d 220 (R.I. 2006).

      6.     The plaintiffs here are from Iowa (James Flitsch) and Tennessee (Carolyn S. Clark).  The plaintiffs recently added as defendants via new citations issued to

-2-

previously designated interested parties: one to Lisa R. Seigel of Tennessee and the

other to Diane M. Clark of Texas. Other parties are Interested Parties Samantha Maye

Simone's De Arias who resides in Peru, Jillian Renee Deutmeyer of Manchester, Iowa,

Chandra Lea Sims of Des Moines, Iowa, and Defendant Kevin Clark who resides in

Texas. The Guardino defendants reside in Texas. The plaintiffs are two claimants

adverse to the Guardino defendants and the adverse claimants are citizens of different

states: Iowa and Tennessee. All of the parties are interested, to varying degrees, in the

property transferred to the Carolyn S. Clark Irrevocable Living Trust. That the entire

trust was not interplead into the registry of the Court is not decisive. *Austin v. Texas-*

*Ohio Gas Co.*, 218 F.2d 739, 744 (5th Cir. 1955). Here, in addition to the parties before the

Court, there are current beneficiaries under the Trust as well as those who will benefit

in the future and over which the state district court does not have jurisdiction.

7.     This case involves an action wherein James Flitsch's grandmother Carolyn

S. Clark, the settlor of the subject Trust, intervened in this case after James Flitsch and

his agents were enjoined from acting as a trustee or holding James Flitsch out as a

trustee. James Flitsch was also required to post a bond in order to secure the injunction,

which by their cooperative agreement included the Guardino defendants. Ms. Clark

intervened as a plaintiff in the case via James Flitsch's lawyer/agent after the injunction

was signed and interim trustees were appointed by the county court at law in

-3-

Montgomery County, Texas. The interim trustees then filed their own intervention.

8.      The plaintiffs' motion to remand did not address or object to removal based upon the Guardino Defendants' allegations of subject matter jurisdiction under 28 U.S.C. §1335. 28 U.S.C. §1335 confers on the district court:

> "original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, . . . having in his or its custody or possession money or property of the value of $500 or more, . . . or being under any obligation written or unwritten to the amount of $500 or more, if: (1) two or more adverse claimants, of diverse citizenship as defined in subsection (a) or (d) of section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy."

28 U.S.C. §1335(a). "When the federal court has original subject-matter jurisdiction over a claim, that jurisdiction is 'not discretionary with the district court' and 'can neither be conferred nor destroyed by the parties' waiver or agreement. *Adair v. Lease Partners, Inc.*, 587 F.3d 238, 241 (5th Cir. 2009). The plaintiffs' reference to a procedural issue regarding timeliness of the Guardino Defendants' removal is erroneous because it alleges that Carolyn S. Clark's hiding her move to Tennessee has no impact on the

-4-

timing of the Guardino Defendants' removal. This is incorrect.

9.      The plaintiffs hid Carolyn C. Clark's move to Tennessee until they filed a motion for a disbursement from the Trust on September 28, 2020. That move to Tennessee created the very diversity of citizenship of two or more adverse claimants required by 28 U.S.C. §1335(a). Had the Guardino Defendants known earlier of the move, they would have filed the removal action and it would have been timely. Under these circumstance retaining jurisdiction would be appropriate and justify the denial of the motion to remand. Only an "inappropriate" justification for retaining jurisdiction over this case would satisfy the burden to overcome mandatory jurisdiction in the district court here. *Buchner v. F.D.I.C.*, 981 F.2d 816, 820-821 (5th Cir. 1993). The Guardino Defendants did not delay in removal. They removed the case as soon as they discovered the jurisdictional facts that had been hidden from them -- by the plaintiffs and by the interim trustees until after the deadline for removal had passed. Additionally, the interim trustees did not seek court approval to sell trust property and did not itemize fees and file their fee statement with the court -- both actions that would have in all likelihood exposed the work they performed in selling the trust property prior to the deadline for removal. The plaintiffs and the interim trustees acted in bad faith in hiding jurisdictional facts from the Guardino defendants.

THEREFORE, for the reasons set forth above, the Court should deny the

-5-

plaintiffs' motion to remand and the Guardino Defendants pray that the Court take

jurisdiction over the claims and causes of action filed in Cause No. 19-06-07875; *In Re*

*The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the County Court at

Law No. 2, Probate, of Montgomery County, Texas and then subsequently transferred

to the 457th Judicial District Court in Montgomery County, Texas; grant the relief

requested in the Guardino Defendants pleadings, including removing this action to this

Court; rehearing the plaintiff's motion for partial summary judgment and entry of an

order denying the motion for partial summary judgment upon rehearing; removal of

Nicole B. Davis and Courtney M. Lyssy as interim co-trustees and removal of their firm

as counsel for any co-trustees and appoint replacement interim co-trustees and/or a

receiver; remove permanently James Flitsch as a co-trustee; and on final hearing grant

Judgment in favor of Defendants Kristin Guardino and Leonard Guardino, including

costs, legal fees, and expenses; and for further relief, both in law and equity.

Respectfully submitted,

Kristin Guardino and Leonard Guardino
By; _/S/ Kristin Guardino_____
Kristin Guardino, JD, Pro Se
By: _/S/ Leonard Guardino_____
Leonard Guardino, Pro Se
P.O. Box 3601
Conroe, Texas 77304
(713) 561-5616
(713) 561-5634 (Facsimile)

PRO SE FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I certify that in accord with Rule 5, FED.R.CIV.P., a true and correct copy of the foregoing document has been served by electronic mail transmission to the following: Steven C. Earl by serving him via e-mail at: Steven@woodlandslawfirm.com; by serving Jeanne L. Couture via her e-mail at: jeannie@magnancouturelaw.com; by serving attorneys Nicole B. Davis and Courtney M. Lyssy via their new e-mails at: nikki@davislyssy.com and courtney@davislyssy.com; and via United States Mail, postage prepaid to all additional interested parties, including the following persons on the 20th day of November, 2020:

Diane M. Clark, 2113 North Thompson Street, Conroe TX 77301;

Jillian Renee Deutmeyer, 209 East Butler Street, Manchester IA 52057;

Lisa Siegle, 7678 Cross Village, Germantown, TN 38138;

Samantha Maye Simone's De Arias, Urb Ciudad Jardin 1 Prima 1A Pachocha Ilo Moquegua Peru 18601; and

Chandra Lea Sims, C/O Timothy Jacob Sims 1707 East 29th Street, De Moines, IA 53017.

By; /S/ Kristin Guardino
Kristin Guardino, Pro Se
November 20, 2020

**EXHIBIT D**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | |
| | § | |
| IRREVOCABLE LIVING TRUST | § | Case No. 4:20-cv-03583 |
| | § | |
| U/T/A JULY 28, 2017 | § | |

**PLAINTIFFS' JAMES FLITSCH'S AND CAROLYN CLARK'S COMBINED
REPLY TO DEFENDANTS' RESPONSE TO PLAINTIFFS'
MOTION FOR REMAND**

COMES NOW Plaintiffs James Flitsch ("Flitsch") and Carolyn Clark ("Carolyn"), filing a Reply to the Defendant's Response to Plaintiff's Motion for Remand and would show as follows:

**I. Summary**

1. The Removing Defendants admit they cannot remove under § 1332 alone. Their Response mainly focuses[1] on alleged "interpleader" jurisdiction under § 1335, claiming that it allows them to bypass the consent and forum defendant restrictions in § 1441 and § 1446. While they may be able to side-step the forum defendants rule if interpleader jurisdiction applies, the consent rule still applies[2] and requires remand.

2. There is no interpleader action brought by anyone in this case and the Removing Defendants also concede that they lack consent – which is required. Also, no federal question or other question would exist for supplemental jurisdiction to attach to. Remand is required.

3. A chart showing the removal statutes and why removal is improper is below:

---

[1] Plaintiffs agree that the amount in controversy is not a hurdle to federal jurisdiction.

[2] Plaintiffs raised the "consent rule" bar to removal in this case as part of their Motion for Remand. Thus, contrary to the Removing Defendants' assertion, Plaintiffs did show the correct ground for remand under § 1441(a) which includes § 1335 claims. There is no removal under § 1441(b) alone - § 1441(a) provides for removal of actions to federal court over which the district courts would have original jurisdiction.

---

| Removal Under | Subject | Problem |
|---|---|---|
| § 1332 | Diversity | Local defendant; no consents; more than 1 year |
| § 1335 | Interpleader | No consents; no state or federal interpleader action is present; no competing claims for fund; no deposit in the registry |
| § 1367 | Supplemental | No other jurisdiction to which this attaches |
| § 1441(b) | Diversity | Really removal under 1441(a); local defendant; no consents; more than 1 year |
| § 1446(b)(3) | Procedure | Not a basis for removal, but a 30-day deadline from amended pleadings |

## II.  THE CONSENT RULE APPLIES TO REMOVED INTERPLEADER CLAIMS UNDER § 1335.

4.  Section 1335 interpleader claims are removed under § 1441(a), as § 1335 does not grant removal jurisdiction – only original jurisdiction.  Section 1441(b) provides instructions for removals under § 1441(a) but § 1441(a) provides the removal authority.  Since § 1441(a) is the mechanism for removal, the consent rule in § 1446(b)(2)(A) applies:

> "Section 1441(a) . . . authorizes removal of any civil action brought in a state court to the federal court if the federal court would have original jurisdiction over that dispute.  The term 'solely' in Section 1446(b)(2) is intended to distinguish cases that are removed on the basis of § 1441(a) from those that are removed under another removal statute. Thus, in cases removed on the basis of diversity or federal question jurisdiction, all defendants must consent to removal unless a statute other than § 1441 authorizes the removal without one defendant's consent."

*Skyglass, Inc. v. P'ship, LLC*, 2019 U.S. Dist. LEXIS 137111, at *4-5 (N.D. Tex. 2019); *accord Penson Fin. Servs., Inc. v. Golden Summit Inv'rs Grp., Ltd.*, 2012 U.S. Dist. LEXIS 93733, 2012 WL 2680667, at *5 (N.D. Tex. 2012) (both decided after 2011 amendments).

5.  Since consent from the other Defendants had not been obtained or shown, remand is required even under claims that § 1335 applies.

## III.  THIS NOT AN INTERPLEADER ACTION UNDER § 1335.

6.  Plaintiff never pled an interpleader action.   Initially, both Texas Rule of Civil Procedure 43 and the federal rule 28 U.S.C. §1335 require an interpleader to file a petition to interplead into a case – Plaintiffs never invoked either of those rules.  The interim trustees have

not either. Plaintiffs are not bringing an interpleader action. Neither are the interim trustees.

7. **There are no competing claims or double liability.** Further, interpleader provides disinterested stakeholders a method by which they are able to proceed when they are subjected to conflicting claims. *Taliaferro v. Tex. Commerce Bank*, 660 S.W.2d 151, 153 (Tex. App.— Fort Worth 1983, no writ.). An interpleader suit is authorized when such a stakeholder is "exposed to double or multiple liability." Tex. R. Civ. P. 43; *Taliaferro*, 660 S.W.2d at 153.

8. **Neither Plaintiff is disinterested.** Flitsch is the trustee and both Flitsch and Carolyn are beneficiaries of the Trust.

9. **Nature of the Suit.** This suit started off as an action to determine who was a proper trustee of Carolyn's Trust. In August 2020, the state district court resolved that issue and held Defendants were not trustees. Now the case is about (i) Defendants paying their "trustee compensation" back to the Trust, and, (ii) Carolyn's request that the trust terms be judicially modified. Neither type of claim sounds in interpleader. Unlike an interpleader action, Plaintiffs; pleadings do not seek a decision on who the beneficiaries of the Trust are or if the trust assets all belong to a creditor. Unlike an interpleader action, Flitsch does not face double liability as to the Trust and neither does Carolyn. Carolyn is asking that the terms of the Trust change.

10. The case cited by the Removing Defendants, *Wausau Ins. Companies v. Gifford*, 954 F.2d 1098 (5th Cir. 1992) in inapposite. Several different insurers tried to bring an interpleader action for multiple policies covering a period of 4 years and multiple plaintiffs. The court held that no § 1335 interpleader claim existed in the case. *Id.* at 1101.

11. **No unconditional tender.** Under § 1335 and Texas law, a plaintiff must unconditionally tender the funds into the registry of the court. 28 U.S.C. § 1335(a)(2); *accord Young v. Gumfory*, 322 S.W.3d 731, 743 (Tex. App.—Dallas 2010, no pet.). Here, Flitsch did not "tender" (figuratively or otherwise) all Trust assets to the Court. The interim co-trustees

are private attorneys who have authority under the Trust (a private agreement) and also can ask the Court for permission to take certain actions. By comparison, a receiver is a court creation that manages property and reports to the appointing court.

12. Contrary to the Removing Defendants assertions, the interim co-trustees never posted a bond. Moreover, the Removing Defendants offered no proof that bonds were posted. Thus, the case cited by the Removing Defendants, *Austin v. Texas-Ohio Gas Co.*, 218 F.2d 739, 744 (5th Cir. 1955) is inapposite as it did not deal with posting bonds. The *Austin* cases is distinguishable otherwise because there a portion of the actual stocks at issue were in the registry and no trust property is on deposit here.

13. All doubts are resolved in Plaintiffs' favor. All doubts as to which claims are pled, the nature of the suit, whether bonds were posted, and whether a tender was made are resolved in Plaintiffs' favor. The burden of proving that federal jurisdiction exists falls on the removing party. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995). The defendants have "the burden to establish the existence of federal jurisdiction over the controversy." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998). The removal statute is strictly construed and "any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).

## VI. SECTION 1446(B)(3) IS NOT A BASIS FOR REMOVAL. IT IS JUST A TIME LIMIT.

14. Section 1446(b)(3) does not confer removal jurisdiction; instead it limits removal jurisdiction by imposing a 30-day deadline. Thus, it is no aid to the Removing Defendants.

## V. SUPPLEMENTAL JURISDICTION UNDER § 1367 FAILS.

15. None of sections 1332, 1335, 1441(b) or 1446(b)(3) provide jurisdiction over this case. "The question under section 1367(a) is whether the supplemental claims are so related to the original claims . . . that they 'derive from a common nucleus of operative fact.'"

*Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010). Since federal supplemental jurisdiction must attach to or relate to a claim over which the court has jurisdiction, no supplemental jurisdiction arises.

## VI.  THE REMOVING DEFENDANTS ADMIT PROBLEMS WITH § 1332 BECAUSE OF § 1441(b)(2).  THUS § 1332 JURISDICTION FAILS AS ALL OTHER CLAIMS FOR JURISDICTION HAVE FAILED.

16. The Removing Defendants admit they are local defendants and also lack consent for removal.  Thus, under § 1441(b)(2), the Removing Defendants have to discover jurisdiction under some other statute, or they also lose § 1332 removal jurisdiction.  However, the Removing Defendants cannot find jurisdiction under any of the other statutes they claim, thus they cannot remove under § 1332.

## VII. CONCLUSION

WHEREFORE, Defendants failed to establish subject matter jurisdiction and Plaintiffs have shown that removal jurisdiction is not proper, Plaintiffs James Flitsch and Carolyn Clark request that this Court remand the action to the Texas state court and grant such other relief as the Court deems just.

Respectfully Submitted

STILWELL, EARL & APOSTOLAKIS, L.L.P.

By:  ___/s/Steven C. Earl_____
      Steven C. Earl
      State Bar No. 24002028
      Fed. No. 21893
1400 Woodloch Forest, Suite 590
The Woodlands, Texas 77380
Telephone:    281/419-6200
Telecopier:    281/419-0250
steven@woodlandstxlawfirm.com
Attorney for Plaintiffs James Flitsch and
Carolyn Clark

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been served on the following via the Court's ECF system on this 27th day of November, 2020, or if such party is not in the ECF system, then by email or certified mail:

Kristin Wilkinson Guardino, Pro Se
Leonard Guardino, Pro Se
PO Box 701188
Houston, Texas 77270-1188
Phone: (713) 561-5616
Fax: (713) 561-5629
kristinwilkinson@use.startmail.com
kristinguardino@use.startmail.com

Nikki Davis
Courtney Lyssy
Davis & Lyssy, PLLC
6200 Savoy, Suite 132
Houston, Texas 77036
nikki@davislyssy.com
courtney@davislyssy.com
Interim trustees

Jeanne L. Couture
Magnan Couture, PLLC
245 West 18th Street
Houston, Texas 77008
(713) 678-0499
jeannie@magnancouturelaw.com
Attorney for Kevin J. Clark

/s/ Steven C. Earl
Steven C. Earl, Attorney for Plaintiffs

EXHIBIT E

United States District Court
Southern District of Texas
**ENTERED**
February 24, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **JAMES FLITSCH**, *et al*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:20-CV-3583** |
| | § | |
| **KRISTIN WILKINSON GUARDINO**, *et* | § | |
| *al*, | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

On February 10, 2021, the Court held a hearing in this matter and granted Plaintiffs'

motion to remand. Accordingly, the case is hereby **REMANDED** to the 457th Judicial

District Court of Montgomery, Texas, effective February 10, 2021.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on February 23, 2021.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

Received and E-Filed for Record
5/5/2021 7:36 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Jeff Fiore

## I. (a) PLAINTIFFS

James Flitsch and Carolyn S. Clark

### DEFENDANTS

Kristin Guardino, Leonard Guardino, and Kevin Clark

**(b)** County of Residence of First Listed Plaintiff   Delaware County, Iowa
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery Co, Tx.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Steven C. Earl, 1400 Woodloch Forest Dr., Suite 590, The Woodlands, TX  77380, (281) 419-6200

Attorneys *(If Known)*

Pro Se, P.O. Box 3601, Conroe, TX  77305; (713) 561-5616

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [x] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

United States Courts
Southern District of Texas
FILED
MAY 05 2021
Nathan Ochsner, Clerk of Court

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [x] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. 1964

Brief description of cause:
Violations of 18 U.S.C. 1962 (c), (b) and (d)

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
Actual damages +

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*:   JUDGE   Keith P. Ellison, U.S. District Judge   DOCKET NUMBER   4:20-CV-3583

DATE   May 5, 2021

SIGNATURE OF ATTORNEY OF RECORD   *Kristin Guardino*

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

MINUTE 5/6/2021



United States Courts
Southern District of Texas
FILED

MAY 05 2021

Nathan Ochsner, Clerk of Court

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| *IN RE* THE CAROLYN S. CLARK | § | Case No. 21-1501 |
| IRREVOCABLE LIVING TRUST | § | |
| U/T/A JULY 28, 2017; No. 19-06-07875 | § | NOTICE OF REMOVAL OF ACTION |
| IN THE DISTRICT COURT | § | (28 U.S.C. §§1331, 1332, 1335, 1337(a), |
| 457TH JUDICIAL DISTRICT, | § | 1367, 1441(a, b), 1446 (b)(3)) (18 U.S.C. |
| MONTGOMERY COUNTY, TEXAS | § | § 1964 (c). JURY TRIAL DEMANDED |

## NOTICE OF REMOVAL

TO:   THE HON. CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS:

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§1331, 1332, 1335, 1337(a),

1367, 1441(a, b), and 1446 (b)(3) and 18 U.S.C. § 1964 (c), the Defendants, Kristin

Wilkinson Guardino and Leonard Guardino, (the original defendants in this case with

the exception of a nominal defendant Kevin Clark), (collectively, "Guardino"), hereby

remove to this Court the civil action filed in the 457th Judicial District Court of

Montgomery County, Texas, as described below, and respectfully show the Court as

follows:

1.   *Factual Background Related to Jurisdiction.* On June 6, 2019, Plaintiff, James

**\*Prior para. 1**

Flitsch, ("Flitsch" or "Plaintiff"), filed a civil action entitled, Cause No. 19-06-07875; *In Re*

*The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the County Court at

Law No. 2, Probate, of Montgomery County, Texas, naming as defendants Kristin

Guardino, Leonard Guardino, and Kevin Clark. All three defendants are residents of

the State of Texas.

*Prior para. 2

2.    Plaintiff James Flitsch is the grandson of the Settlor/Trustor, Carolyn S. Clark, and is employed as a tow truck driver and mechanic and is a resident of the State of Iowa.  He was the initial secondary co-trustee named in the Carolyn S. Clark Irrevocable Living Trust signed on July 28, 2017, (the "Trust").   Carolyn S. Clark is the Settlor of the Trust.

*Prior para. 3

3.    James Flitsch is the nephew of Kevin Clark.  James Flitsch served Kevin Clark on or about June 18, 2019.  Kevin Clark is a nominal defendant.

*Prior para. 3

4.    Kevin Clark is a computer analyst and project manager in various technical aspects of complicated computer programming projects and is the eldest adult child of Carolyn S. Clark.  He was named the initial primary co-trustee of the Carolyn S. Clark Irrevocable Living Trust signed on July 28, 2017.

*Prior para. 4

5.    Defendant Kevin Clark filed an answer on June 20, 2019.

*Prior para. 5

6.    Defendant Kristin Wilkinson Guardino replaced Kevin Clark at his request as the successor primary co-trustee in February 2019.  Plaintiff James Flitsch served Kristin Guardino on June 20, 2019, with the petition and an amended *ex parte* temporary restraining order that amended an initial TRO by reducing the plaintiff's bond from $250,000.00 to $1,000.00.  None of the defendants were notified of the hearing on the amended TRO.  Kristin filed an answer on July 15, 2019.

-2-

**\*Prior para. 6**   7.   Defendant Leonard Guardino was appointed by Kristin Guardino to replace James Flitsch as co-trustee.  He has not been served but appeared and answered on July 15, 2019.

**\*Prior para. 7**   8.   The Probate Court held injunction hearings on its *ex parte* temporary restraining orders on July 19, 2019, and July 22, 2019, and entered an agreed mutual injunction against all defendants and ordered the parties to an agreed mediation scheduled for July 26, 2019.  Defendants agreed to the injunction based solely on the agreement by the plaintiff to mediate the entire case.  The mediation failed <u>when the mediator informed Defendants that the plaintiff had not appeared for the purpose of mediating the case</u>.  Although the agreement no longer exists among the parities, the injunction remains in effect.  A copy of the *ex parte* orders, setting out the bond amounts, are attached as Exhibit A and Exhibit B, respectively, and incorporated herein.  A copy of the current mutual agreed injunction is attached and identified as Exhibit B2, and incorporated.

**\*Prior para. 8**   9.   Plaintiff Carolyn S. Clark joined the suit as a plaintiff on July 30, 2019, while she was a resident of the State of Texas.  <u>She moved to Tennessee without notifying Defendants herein.</u>

**\*Prior para. 9**   10.   Defendant Kristin Guardino is, and at the time the state court action was filed was, a citizen of Texas.  Defendant Leonard Guardino is, and at the time the state

-3-

court action was filed was, a citizen of Texas and the spouse of Kristin Guardino.

Defendant Kevin Clark is a nominal defendant, and at the time the State court action

was filed, a citizen of Texas.

*Prior para. 10    11.    Plaintiffs have acted in bad faith in order to prevent a defendant from

removing this action based upon diversity of citizenship.

*Prior para. 11    12.    Defendants Kristin and Leonard Guardino were unaware until September

28, 2020, that Plaintiff Carolyn S. Clark moved from Texas and became a citizen of the

State of Tennessee sometime in December 2019.

*Prior para. 12    13.    On September 28, 2020, Defendants Kristin and Leonard Guardino were

served with "James Flitsch's And Carolyn S. Clark's Motion For Disbursement From

Trust" wherein Defendants first became aware of the facts involving Carolyn S. Clark's

change of residency.

*Prior para. 13    14.    On September 28, 2020, James Flitsch, in violation of the injunction

prohibiting him from taking any action as a co-trustee, moved the State district court to

disburse funds from the Trust based upon a sale of Trust property that had already

occurred, without notice to the State court, also in violation of the injunction.  In his

motion, Flitsch alleged that "Carolyn, in July 2020, moved to Tennessee . . .."  *See* Exhibit

C, James Flitch's And Carolyn Clark's Motion For Disbursement From Trust, at p.2, ¶ 7),

attached and incorporated herein.

-4-

**\*Prior para. 14**   15.   Based upon these facts, Defendants Kristin and Leonard Guardino investigated the sale of the Trust property and found that the interim co-trustees, who were appointed in the mutual injunction order, attached hereto as Exhibits B1 and B2, and incorporated, sold a piece of real estate belonging to the Trust and that had been used as the primary residence of Carolyn S. Clark.  The property was owned by the Carolyn S. Clark Irrevocable Living Trust, (the "Trust").  The interim trustees never sought permission to sell Trust property, specifically residential real estate that was a major asset of the Trust. This is a violation of the order appointing the interim temporary co-trustees and due to the violation, the diversity that existed when Carolyn S. Clark moved to Tennessee was hidden from Defendants.

**\*Prior para. 15**   16.   The Order Granting Mutual Temporary Injunction states specifically with reference to the interim trustees the following:

> **"IT IS HEREBY, FURTHER, ORDERED, ADJUDGED, AND DECREED** Nikki Davis and Courtney Lyssy, 6200 Savoy Dr., Suite 132, Houston, TX 77036, to be the interim Co-Trustees of the Carolyn S. Clark Irrevocable Living Trust. The Court will approve reasonable compensation of the interim co-trustees by application made by them and to be paid from the Trust."
> **"IT IS HEREBY, FURTHER, ORDERED, ADJUDGED, AND DECREED** that The interim Co-Trustees may hire the law firm of Berlinger, Davis and Lyssy to provide advice to the interim Co-Trustees. _The interim Co-Trustees may expend funds from the Carolyn S. Clark Irrevocable Living Trust without court approval only for expenses that dependent administrators may pay without court approval.[Emphasis added]._"

_See_ Exhibits B1 and B2, at pages 2-3, incorporated herein.  The Texas Estates Code does

not grant permission to an administrator under a dependent administration to sell real

property unless done so after first obtaining a court order.  The statute reads as follows:

**\*Prior para. 15**          "Sec. 356.001.  COURT ORDER AUTHORIZING SALE.  (a)  Except
as provided by this chapter, estate property may not be sold without a
court order authorizing the sale."

TEX. ESTATES CODE §356.001.  In this case, the interim co-trustees, Nicole B. Davis and

Courtney Lyssy and their attorneys Berlinger, Davis and Lyssy did not seek or obtain a

court order to sell the real property belonging to the Trust, but sold it without notice in

the case, including the State district court, as evidenced by the Warranty Deed With

Vendor's Lien they executed on August 21, 2020, attached and identified as Exhibit D.

Defendants found the deed among the real property records after seeing the closing

statement attached to the motion for disbursement of funds as an exhibit, served upon

Defendants on September 28, 2020, setting out expenses incurred by the temporary co-

trustees in the sale of the property, without first filing a motion with the State court and

allowing objections by the parties or beneficiaries of the Trust and without obtaining the

State court's permission, in violation of the court's injunction.

**\*Prior para. 16**      17.      Upon reviewing James Flitsch's motion for disbursement of funds, served

upon them on September 28, 2020, Defendants Kristin and Leonard Guardino were, for

the first time ever, alerted to the fact that Carolyn S. Clark had moved to Tennessee, as

stated in the plaintiff's motion.  Upon further investigation of these new factual

-6-

allegations by the plaintiffs, Defendants learned that Carolyn S. Clark had actually

moved to Tennessee in or about December 30, 2019 -- not July 2020.  *See* Exhibits E and

F, attached and incorporated.  Exhibit E is a copy of the online official public record of

the Shelby County Tennessee County Register of Deeds.  Exhibit F is a copy of the

online official public record maintained in the office of the Shelby County Tennessee

Assessor of Property, (see pages 1 and 6), which reflects the purchase of Carolyn S.

Clark's new home on December 26, 2019.  The recording date of the deed was December

30, 2019, as shown in Exhibit E.  Exhibit E is a copy of the online official public record of

**\*Prior para. 16** the Shelby County, Tennessee, Register of Property Deeds and discloses Carolyn S.

Clark as the owner of the property located at 3062 Cross Country Dr., Germantown, TN

38138; that Carolyn S. Clark is responsible for the payment of property taxes on the

property located at  3062 Cross Country Dr., Germantown, NT  38138 , and that Carolyn

S. Clark's mailing address is the same as the property address: 3062 Cross Country Dr.,

Germantown, TN  38138, as of December 26, 2019.

**\*Prior para. 17**   18.   The interim trustees also expended funds in the listing and sale of the real

property belonging to the Trust without first seeking a court order allowing them to do

so, patently in violation of the order appointing them, as evidenced in the Closing

Statement attached as "Exhibit D" to Flitsch's Motion for Disbursement, attached here as

Exhibit C, incorporated herein.  This constitutes a breach of trust warranting the

-7-

MINUTE 5/6/2021

immediate removal of the interim temporary co-trustees Nikki Davis and Courtney Lyssy and their attorneys Berlinger, Davis and Lyssy.

19.     The interim co-trustees Nicole B. Davis and Courtney Lyssy have since created a new firm: Davis & Lyssy, PLLC, and notified the parties of this change on September 17, 2020, from which they now conduct the matters relating to the Trust.

**\*Prior para. 18**     20.     Additionally, the state district court's Order Granting Mutual Temporary Injunction enjoined James Flitsch and Defendants in another pertinent aspect of this situation: the order states as follows:

"in effect until final trial on the merits, or until further order of the Court, restraining and enjoining James Flitsch, Kristin Wilkinson Guardino and Leonard Guardino *and all of their agents, members, representatives, and any other person acting on their behalf or under their control from taking any actions as a co-trustee(s) of the Trust except for the filing of pleadings and conducting discovery in this suit. [Emphasis added]*.

This aspect of the order has been violated by James Flitsch and his counsel, which became clear to Defendants on April 16, 2021.

**\*Prior para. 19**     21.     The plaintiffs, the interim temporary co-trustees, and the plaintiffs' attorney Steven Earl all violated the Order of the State district court, (actually signed by the probate court before the case was ever transferred to state district court), in one or

-8-

more ways, as described above.  Their actions constitute fraud on the Court.  Had they

complied with the State court's injunction order, James Flitsch would not be seeking

**\*Prior para. 19** affirmative relief -- see Exhibit C, at page 1, introductory paragraph and at ¶ 3, *inter alia*

-- based upon the sale of Trust property, because he was prohibited from that action.

He also stated in his motion for disbursement that Carolyn S. Clark moved to Tennessee

in July 2020.  That statement, alone, in a motion moving for court action is grossly

misleading in its omission of the facts surrounding the violations of the court's

injunction; it is misleading to the parties; and to the State court.  The motion was heard

in State court on April 16, 2021.

**\*Prior para. 20**      22.      The plaintiff's motion for disbursement attaches a copy of the Trust

Agreement that expressly prohibits Carolyn S. Clark from managing the Trust

Agreement, which is probably why the motion was brought by James Flitsch -- but

there is no explanation in the motion for why the motion is not made by the court-

appointed interim co-trustees.  Presumably the interim co-trustees were following the

direction of Steven Earl and his law firm because their conduct violated the injunction

with respect to the sale of the property and they did not want to foster that knowledge

or draw attention to the situation themselves, but this is inherently undiscoverable as

fraud.  The language in the Trust instrument is set out at page 29-30 as follows:

> (E) *Further Limitations On Powers*. Except as explicitly provided otherwise
> in this Agreement, no powers of the Co-Trustees enumerated in this

-9-

MINUTE 5/6/2021

**\*Prior para. 20**

Agreement, or now or hereafter conferred upon trustees generally, shall be construed to enable Carolyn S. Clark to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of any Trust for less than an adequate consideration in money or money's worth, or to enable Carolyn S . Clark to borrow all or any part of the principal or income of any Trust, directly or indirectly, without adequate interest or security. <u>No person, other than the Co-Trustees, shall have or exercise the power to</u> vote or direct the voting of any stock or other securities of any Trust <u>or to control the investment of any Trust either by directing investments or by vetoing proposed investments, or to reacquire or exchange any property of any Trust by substituting other property of an equivalent value.</u> In each instance in which a Co-Trustee's exercise of, or decision not to exercise, discretion may be prohibited pursuant to this Section, the determination of the remaining Co-Trustees or Co-Trustee shall be final and binding upon the beneficiaries of such trust.

*See* Exhibit A attached to Exhibit C (the motion for disbursement), page 29-30, ¶ E.  The motion and the actions described in the motion for disbursement violate the Trust, at Paragraph E, above, and other provisions of the Trust, as well as the State court's temporary injunction.

**\*Prior para. 21**

23.    James Flitsch's motion <u>also violates the Trust in that it</u> seeks disbursement of <u>hundreds of thousands of dollars</u> based upon a withdrawal right given to Carolyn S. Clark under certain circumstances.  Under the terms of the Trust, Carolyn S. Clark would not have a withdrawal right for the funds she requested in the motion because the right to withdraw is limited in time and must be made by the end of the year in which the gift to the Trust is made.  <u>Those prerequisites do not exist.  Additionally, the Trust does not allow for action to be taken by a sole trustee.  Both co-trustees must take</u>

-10-

action, therefore, James Flitsh had no authority to request any action by the Court on his

own:

**new**

> "1.4 Co-Trustees. As Initial Co-Trustees, Kevin J. Clark shall be the initial
> Primary Co-Trustee and James C. Flitsch shall be the initial Secondary Co-
> Trustee of any Trust created in this Agreement. References to the co-
> trustees shall mean "Co-Trustees," whether the initial co-trustees or later-
> appointed trustees, and any typographical error referring to the co-
> trustees as "co-trustee" shall be disregarded if the singularly spelled word
> "trustee" in context should mean "co-trustees." There shall at all times be
> two individuals serving as co-trustees making together all decisions
> necessary to carry out the purpose and management of the Trust. . . ."

*See* Exhibit A attached to the motion for disbursement, attached here as Exhibit C, at

page 2 of the Trust, Section 1.4.

**\*Prior para. 22**    24.    Carolyn S. Clark transferred the real property that was sold into the trust

on July 28, 2017, and her right to withdraw that property expired in December 31, 2017.

By selling the property, she merely converted it from one form to another.  There is no

evidence that Carolyn S. Clark made an addition to the Trust in 2020.  Therefore, the

motion for disbursement based upon a withdrawal right, as alleged, violates the Trust

Agreement, as well as the injunction.  The motion for disbursement requests the

disbursement under the terms of the "withdrawal right" set out in the Trust Agreement.

*See* Exhibit C, (at Exhibit A attached to Exhibit C), the motion for disbursement, page 2,

¶ 6.  The exercise of the withdrawal right under the Trust Agreement states, in part, the

following:

-11-

"(4) Exercise of Withdrawal Right. <u>Each Withdrawal Right shall be</u>

<u>exercisable only by </u>a written instrument ( executed by or on behalf of the

beneficiary possessing the Withdrawal Right) delivered to one or both of

**\*Prior para 22.**   the Co-Trustees of the Donee Trust <u>any time from the date a</u>

<u>Withdrawable Addition is made to the Donee Trust until December 31 of</u>

<u>the calendar year in which a Withdrawable Addition is made to the Donee</u>

<u>Trust</u>."

*See* Exhibit A attached to the motion for disbursement, attached here as Exhibit C, at

page 5, ¶ 4.  The relief requested by James Flitsch lacks merit, shows his willingness to

violate the injunction and the Trust Agreement, along with his attorney, and misleads

the parties and the Court significantly, especially in light of the fact that the case had at

the time just recently been transferred to the 457th State District Court, who did not

have the benefit of hearing the injunction evidence.

**\*Prior para. 23**   25.   Had any of the parties Plaintiff complied with the Injunction, Defendants

would have known that diversity was complete within one year of the date of filing the

original petition.  But the Plaintiffs and the court-appointed interim co-trustees moved

about in secret and violated the injunction in order to complete their dealings.  The first

indication to Defendants Kristin Guardino and Leonard Guardino that diversity was

complete was the "James Flitsch's and Carolyn Clark's Motion For Disbursement From

-12-

Trust" filed September 28, 2020.  Kristin Guardino discussed the surprising revelations

with counsel for Kevin Clark after receiving the Flitsch's motion and it was not revealed

to her whether she or her client Kevin Clark were aware of these facts.

26.     The case was removed within thirty days of service of the James Flitsch's

And Carolyn Clark's Motion For Disbursement From Trust, served September 28, 2020.

Based upon a lack of diversity the case was remanded  on February 23, 2021.  The

plaintiffs' counsel noticed the hearing on the motion to disburse the assets of the Trust

for March 9, 2021.  The State Court was not notified by the plaintiffs' counsel of the

remand order until April 16, 2021, the day of the hearing on the motion for the

disbursement.  That notice is a requisite of jurisdiction in the State court.  The

undersigned believes the State court advised the plaintiffs' counsel of the requirement

to file the notice after the undersigned contacted the State court's clerk regarding the

improper setting.  Although the hearing was set prior to the time the notice was filed

and before it had regained jurisdiction, the State court proceeded with the hearing,

denied the Guardino's procedural and substantive objections, and granted the relief

requested in spite of the violations of the terms of the Trust and injunction by the

plaintiff's counsel, the interim co-trustees, and the plaintiffs.

27.     On March 24, 2021, the Guardinos filed a second supplemental answer

adding new claims regarding the defamatory statements the plaintiffs made in their

-13-

**new**

third amended petition.  *See* Exhibits 2 and 3, attached and incorporated.  On April 15, 2021, the plaintiffs filed a motion to dismiss that action where they engage in a lengthy cover-up of their conduct IN THIS CASE by making false representations to the State Court and against the Guardinos; making it basically impossible to defend themselves and receive a fair trial or even try the actual facts of the case at bar; violating the civil rights of the Guardinos to a fair trial and equal protection of the law.  These actions by the plaintiffs, their attorneys, and the interim co-trustees have evolved into violations of RICO.  The Guardinos have filed a RICO action in State court and request the removal of the entire action to Federal District Court.

**\*Prior para. 25**    28.    The amount in controversy exceeds $75,000

**\*Prior para. 26**    29.    *Background Factual Case.*  Plaintiffs allege that Defendant Kristin Guardino was not properly appointed by the primary initial co-trustee Kevin Clark as his replacement co-trustee, and as a consequence, she was not authorized by the trust instrument to hold property of the subject trust transferred to her by Kevin Clark or to take other actions to protect the Trust property, pay expenses, or appoint Leonard Guardino as a replacement co-trustee for James Flitsch, the secondary co-trustee to Kevin Clark.

**\*Prior para. 27**    30.    The value in the Carolyn S. Clark Irrevocable Living Trust at the time of Kristin Guardino's appointment was approximately eleven million dollars, held in

-14-

MINUTE 5/6/2021

accounts at Wells Fargo.  James Flitsch was replaced because, during the initial months

of Kristin's work as a co-trustee, she discovered that James Flitsch, the original

secondary co-trustee of the Carolyn S. Clark Irrevocable Living Trust, neglected

property in the trust and failed to account for approximately $7 million dollars that was

missing in the financial accounts, and then lied to Kristin and a banker in the exercise of

**\*Prior para. 27** some of his duties as a trustee.  James Flitsch also told Kristin that he had not performed

any work during his approximately two years as a co-trustee; had no knowledge of his

duties as a trustee; that Kevin Clark had performed the work of the co-trustees and had

discussed with James the appointment of Kristin as Kevin's replacement on several

occasions in the same manner as they had handled managing Trust matters from the

time both of them, (Kevin and James), accepted their appointment as co-trustees in July

2017.  Prior to removing and replacing James, Kristin discussed her actions with James

himself; with Kevin Clark and Diane Clark, the two adult children and beneficiaries

under the Trust who live in Texas; attempted to contact the other adult child of Carolyn

Clark, without success; and sought legal counsel.  Based upon that counsel Kristin

Guardino asked James Flitsch to resign.  Kristin also met with Carolyn S. Clark over the

telephone and the two scheduled an in-person meeting for the following Sunday.

During that telephone conversation, Carolyn S. Clark neither made any objection to

Kristin regarding her appointment as co-trustee, nor stated she did not know about

-15-

Kristin's appointment as a co-trustee, nor did she make any complaint about the management of the Trust or ever tell Kristin that she had not read the Trust instrument before she signed it; nor did Carolyn S. Clark ever complain or state that anyone made her, forced her, or demanded or coerced her in any way to sign the Trust instrument.

*Prior para. 28*    31.     Carolyn S. Clark, ("CSC"), did not show up to the scheduled meeting. CSC boarded a plane to go on a vacation she had scheduled to begin the very day that she had scheduled the appointment with Kristin.  Kristin met over the telephone with James Flitsch concerning the missed meeting and whereabouts of CSC, because of concern for Carolyn because this kind of behavior had never been exhibited by Carolyn in Kristin's presence in the past.  Initially, Flitsch told Kristin that he had no knowledge of CSC's whereabouts and stated he had not talked to her at all in a long time.  Kristin pressed Flitsch and finally Flitsch told Kristin he had been in frequent communication with CSC, his grandmother, concerning his personal matters and regarding Kristin's request that he resign.  Kristin then communicated with CSC's adult children Kevin Clark and Diane Clark, who had been the primary caretakers of CSC, concerning the removal of James Flitsch and they agreed that Kristin proceed with Flitsch's removal. They also agreed upon Kristin's selection of the replacement co-trustee.

*Prior para. 29*    32.     Kristin then formally removed James Flitsch and appointed Len Guardino as the replacement for James Flitsch.  Kristin was served with the original petition and

-16-

an amended temporary restraining order in June 2019 alleging that Kristin did not have

authority as a co-trustee to accept trust property held by Kevin Clark, who had

**\*Prior para. 29** appointed Kristin as his replacement co-trustee; to move one of the accounts at Wells

Fargo to another financial institution; to remove James Flitsch or to appoint Leonard

Guardino to replace James Flitsch as co-trustee.  Among the pleadings, and at the

hearing on the temporary injunction, Carolyn S. Clark testified that Kristin literally

forced her to sign the trust agreement.  Not only has Kristin produced evidence

controverting Carolyn Clark's testimony but her entire family was present in addition to

other witnesses and no one has substantiated this highly defamatory testimony; either

Carolyn Clark engaged in perjury and/or her counsel Steven Earl suborned perjury at

the hearing on the temporary injunction or Carolyn S. Clark does not have the capacity

to determine what is real from what is imagined or made up.  This second explanation

is likely based upon explanations Kristin Guardino received from Carolyn S. Clark's

adult children regarding her behavior in their interpersonal relations with her in the

recent past.  *See* Exhibit 1, attached electronic mail from Kevin Clark to Kristin

Wilkinson Guardino dated March 28, 2019, explaining some of the behavior.  *See* Exhibit

1, attached and incorporated.   In spite of this, and the evidence presented by the

Guardinos, the plaintiffs' counsel, Steven Earl, leading a group of persons and legal

entities made up of himself, his law firm and lawyers at his law firm, the plaintiffs, and

-17-

the interim co-trustees all perpetuate and engage in described racketeering activities as alleged in the Guardinos' third supplemental answer, to affect commerce and injure the Guardinos in order to gain access to permanent economic benefits well into the future, using irrelevant and defamatory statements to cover up their racketeering activities.

**\*Prior para. 30**   33.   *Procedural position of the case.*  On June 20, 2019, Defendant Kristin Guardino was initially served with the Citation and Petition, with an amended temporary restraining order attached, in the above-referenced state court action.  Only recently have all of the interested parties, (Trust beneficiaries), been identified and service requested by the Plaintiff.  Defendant Len Guardino was never served but entered an appearance with Kristin Guardino on July 15, 2019.  Kevin J. Clark was served with Citation, temporary restraining order, and Petition on June 18, 2019, and answered on June 20, 2019.  Diane Clark, (one of Carolyn S. Clark's two adult daughters), was served with the temporary restraining order on June 18, 2019.  Copies of all relevant process and pleadings in this state court action are attached hereto as Exhibits 1-7 and Exhibits 1, B, C, D, E, F, G, and H.

**\*Prior para. 31**   34.   The hearing on the temporary restraining order occurred on July 19, 2019, and July 22, 2019.  An agreed mutual temporary injunction was entered against Plaintiff James Flitsch and Kristin and Leonard Guardino on July 29, 2019.  James Flitsch then joined  Carolyn S. Clark, (his grandmother and funding party to his litigation), a

-18-

**\*Prior para. 31**  resident of Texas, as a plaintiff on July 30, 2019, defeating diversity in the case.  The plaintiffs filed a motion for traditional summary judgment against Kristin and Len Guardino based upon the plaintiff's second amended petition.  The state court signed an order granting the motion without resolving all claims, all parties, or all issues and is not final.  A trial court order that does not dispose of all parties, all claims, or all issues is not final.  *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001).  Kristin and Len Guardino seek a rehearing of that motion and the State court's order because there is no indication their response or evidence was made a part of the State court's review, without hearing, and the order was signed shortly after the case was transferred.

**\*Prior para. 32**  35.  The plaintiffs' live pleading is the third amended petition, filed September 16, 2020, omitting any reference to Carolyn S. Clark's change of residence to Tennessee that was plead in their motion for disbursement of funds, filed on September 28, 2020.  The third amended petition adds interested parties, including Lisa R. Seigel, who one of two of Carolyn S. Clark's adult daughters, and who resides in Tennessee.

**\*Prior para. 33**  36.  On December 23, 2019, Nicole B. Davis and Courtney M. Lyssy as Co-Trustees of the Carolyn Clark Irrevocable Living Trust U/T/A July 28, 2017, filed an intervention and petition for declaratory judgment.

**\*Prior para. 34**  37.  The current state court signed a docket control order on September 10, 2020.  (This case was transferred from the probate court, where it was initially filed, to

-19-

the 284th Judicial District Court and was then transferred again to another district court, the 457th District Court, where it is pending).

**\*Prior para. 35**   38.   On September 28, 2020, the plaintiffs filed a motion for disbursement from the Trust.  This motion violates the temporary restraining order. In a transaction related to the plaintiff's motion for disbursement, the temporary interim trustees have also violated the authority given to them in the order appointing them.  Kristin and Len Guardino seek the removal of Nicole B. Davis and Courtney M. Lyssy as co-trustees and the removal of their firm as counsel for any co-trustees and seek the appointment of replacement interim trustees and/or a receiver.

39.   The Guardinos have filed a second and third supplement to their answer and the plaintiffs have moved to dismiss the second supplement.  *See* Exhibits 4, 5, 6, and 7, attached and incorporated.

**\*Prior para. 36**   40.   A list of the pleadings in this case is attached as Exhibit G.

**\*Prior para. 37**   41.   No further proceedings have been had in the state court action.

**\*Prior para. 38**   42.   Accordingly, this Court has original jurisdiction over the State court action under 28 U.S.C. §1331 and 18 U.S.C. §1964 (c ) because it is a civil RICO action in which the amount in controversy exceeds $75,000.00 and under 28 U.S.C. §1335 (interpleader) because there are two or more adverse claimants, of diverse citizenship as defined by 28 U.S.C. §1332(a), who claim to be entitled to money or property or benefits arising by

-20-

virtue of a trust agreement instrument and the plaintiff has given bond payable to the

clerk of the court in such amount and with such surety as the court deemed proper. *See*

Exhibits B1 and B2, attached and incorporated.

43.    The original defendants in the litigation include Kristin Guardino,

Leonard Guardino, and Kevin Clark.

44.    Defendant Kevin Clark is a nominal party defendant.

45.    Jurisdiction is also proper under 28 U.S.C. § 1337, § 1441 (a, b).

**\*Prior para. 38**    Jurisdiction over the remaining claims is proper under 28 U.S.C. §1367(a).  This notice of

removal is timely under 28 U.S.C. §1446(b)(3) because it is filed within thirty days from

which it was first ascertained that the case is one which has become removable.

**\*Prior para. 39**    46.    All Defendants named in the state court action have been served.

Defendants Kristin Guardino and Leonard Guardino join in the removal.  Counsel for

Defendant Kevin Clark does not want to litigate in federal court; her client, Kevin Clark

is a nominal party and his consent is not required.  Counsel for the original plaintiffs

object to removal but their consent is not required.

47.    One previous application has been made for removal under diversity

without the RICO claims made herein.  That matter was remanded on February 23,

2021.

**\*Prior para. 41**    48.    Promptly after filing this notice of removal, written notice will be given to

-21-

all parties and a copy of this notice of removal will be filed with the District Clerk of

Montgomery County, Texas in compliance with 28 U.S.C. 1446(d).

**\*Revised exhibits from prior para. 42**

49.   The following items are attached as Exhibits:

• Exhibit 1 - electronic mail from Kevin Clark to Kristin Wilkinson Guardino

dated March 28, 2019;

• Exhibit 2 - October 13, 2020, email from Steven C. Earl;

• Exhibit 3 - Third Amended Original Petition Seeking Constructive Trust

And Declaratory Judgment And Request For Temporary Restraining Order and

Temporary Injunction And Petition For Judicial Modification, Reformation or

Termination of Trust;

• Exhibit 4 - Defendants' Kristin Wilkinson Guardino and Leonard

Guardino Second Supplement to Their Original Answer, Affirmative Defenses,

Counterclaims and Request for Injunctive Relief;

• Exhibit 5 - Plaintiffs' Lawyers Motion to Dismiss the Newly Pled

Counterclaims With Prejudice Under the Texas Citizens' Participation Act;

• Exhibit 6 - Plaintiffs' Motion to Dismiss the Newly Pled Counterclaims

With Prejudice Under the Texas Citizens' Participation Act;

• Exhibit 7 - Defendants' Kristin Wilkinson Guardino and Leonard

Guardino Third Supplement to Their Original Answer, Affirmative Defenses,

-22-

MINUTE 5/6/2021

Counterclaims and Request for Injunctive Relief;

- Exhibit A - Ex Parte Temporary Restraining Order, signed June 7, 2019;

- Exhibit B - Ex Parte Amended Temporary Restraining Order, signed June 10, 2019;

- Exhibit B1 - Order Granting Mutual Temporary Injunction, signed July 29, 2019;

- Exhibit B2 - First Amended Order Granting Mutual Temporary Injunction, signed October 8, 2019;

- Exhibit B3 - Second Amended Order Granting Mutual Temporary Injunction, signed November 1, 2019;

- Exhibit C - James Flitch's And Carolyn Clark's Motion For Disbursement From Trust, filed September 28, 2020;

- Exhibit D - Warranty Deed With Vendor's Lien, executed on August 21, 2020;

- Exhibit E - Shelby County Tennessee County Register of Deeds evidencing the property owner as Carolyn S. Clark and the property and mailing address as 3062 Cross Country Dr., Germantown, NT  38138 as of December 30, 2019;

- Exhibit F - Office of the Shelby County Tennessee Assessor of Property,

-23-

MINUTE 5/6/2021

reflecting the purchase of Carolyn S. Clark's new home on December 26, 2019, and the recording date of the deed as December 30, 2019;

- Exhibit G - Index of pleadings on file in the state court case being filed with this Notice in addition to the Exhibits referenced herein;

- Exhibit H - Disclosure Statement listing of all counsel of record, including addresses, telephone numbers, and parties represented.

THEREFORE, Plaintiff prays that the Court take jurisdiction over the claims and

**\*Revised prayer omits some material**

causes of action filed in Cause No. 19-06-07875; *In Re The Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017*; in the 457th Judicial District Court of Montgomery County, Texas; grant the Guardinos the relief as requested, including but not limited to removing this action to this Court; and on final hearing grant Judgment in favor of Defendants Kristin Guardino and Leonard Guardino, including actual damages, costs, legal fees, and expenses; and for further relief as plead, both in law and equity.

Respectfully submitted,

Kristin Guardino and Leonard Guardino
By;  /S/ Kristin Guardino
Kristin Guardino, JD, Pro Se
By:  /S/ Leonard Guardino
Leonard Guardino, Pro Se
P.O. Box 3601
Conroe, Texas  77305
kristinguardino@use.startmail.com
(713) 561-5616
(713) 561-5634 (Facsimile)

-24-

MINUTE 5/6/2021

PRO SE FOR ORIGINAL
DEFENDANTS/COUNTER-
PLAINTIFFS/THIRD-PARTY
PLAINTIFFS NAMED HEREIN

## CERTIFICATE UNDER RULE 11 AND CERTIFICATE OF SERVICE

I certify that this pleading is filed in good faith in accord with Rule 11,

FED.R.CIV.P.   I certify that  in accord with Rule 5, FED.R.CIV.P., a true and correct copy

of the foregoing document has been served by electronic mail transmission to the

following: Steven C. Earl by serving him via e-mail at: Steven@woodlandslawfirm.com;

by serving Jeanne L. Couture via her e-mail at:  jeannie@magnancouturelaw.com; by

serving attorneys Nicole B. Davis and  Courtney M. Lyssy via their e-mails at:

courtney@davislyssy.com and nikki@davislyssy.com; and via United States Mail,

postage prepaid to all additional interested parties, including the following persons on

the 5th day of May, 2021: Diane M. Clark, 2113 North Thompson Street, Conroe TX

77301;  Jillian Renee Deutmeyer, 209 East Butler Street, Manchester IA  52057;  Lisa

Siegle, 7678 Cross Village, Germantown, TN  38138;  Samantha Maye Simone's De

Arias, Urb Ciudad Jardin 1 Prima 1A Pachocha Ilo Moquegua Peru 18601; and

Chandra Lea Sims, C/O Timothy Jacob Sims  1707 East 29th Street, De Moines, IA

53017.

By;   /S/ Kristin Guardino
Kristin Guardino, Pro Se, May 5, 2021

Received and E-Filed for Record
9/28/2020 4:43 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Jeff Fiore

**EXHIBIT G**

## CAUSE NO. 19-06-07875

| | | |
|---|---|---|
| IN RE THE CAROLYN S. CLARK | § | IN THE DISTRICT COURT OF |
| | § | |
| IRREVOCABLE LIVING TRUST | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| U/T/A JULY 28, 2017 | § | 457th JUDICIAL DISTRICT |

## THIRD AMENDED ORIGINAL PETITION SEEKING CONSTRUCTIVE TRUST AND DECLARATORY JUDGMENT AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION
## AND
## PETITION FOR JUDICIAL MODIFICATION, REFORMATION OR TERMINATION OF TRUST

COME NOW JAMES FLITSCH, Co-Trustee of The Carolyn S. Clark Irrevocable Living Trust dated on or about July 28, 2017 ("Flitsch"), and CAROLYN S. CLARK ("Carolyn") (Flitsch and Carolyn shall hereinafter be collectively referred to as "Plaintiffs"), filing this Third Amended Original Petition Seeking injunctive relief, declaratory relief, constructive trust, tort remedies, appointment of a Successor Trustee, and in the alternative, removal of purported Co-Trustees, together with Plaintiffs' Petition for Judicial Modification, Reformation or Termination of Trust and would show as follows:

### I. PRELIMINARY/PARTY INFORMATION.

1. **Discovery Control Plan.** This suit is governed under the Level Two Discovery Control Plan.

2. **Plaintiffs.** The Plaintiffs are: (1) Flitsch, the named initial Secondary Co-Trustee and a beneficiary of the Trust, and (2) Carolyn, the Settlor and a named beneficiary of the Trust.

3. **Defendants and Beneficiaries.** The Defendants and Beneficiaries are as follows:

   a. Kristin D. Wilkinson Guardino ("Wilkinson") unlawfully claimed to be a Co-Trustee of the Trust. Her residence or usual place of abode is 4 Jadecrest Ct., Conroe, Texas 77304. This Defendant has appeared in this matter and currently appears *pro se*. She may be served by service under Tex.R.Civ.P. Rules 21 and 21a.

b.      Leonard Guardino, who is Wilkinson's spouse ("Guardino"), unlawfully claimed to be a Co-Trustee of the Trust.  His residence or usual place of abode is 4 Jadecrest Ct., Conroe, Texas 77304.  This Defendant has appeared in this matter and currently appears *pro se*.  He may be served by service under Tex.R.Civ.P. Rules 21 and 21a.

c.      Kevin J. Clark was appointed and named as initial Primary Co-Trustee in the Trust instrument, but he resigned by his written resignation effective March 1, 2019.  His home or usual place of abode is 321 South Rivershire Drive, Conroe, Texas 77304.  This Defendant has appeared in this matter and is represented by counsel; he may be served by service under Tex.R.Civ.P. 21 and 21a upon his counsel: Jeanne L. Couture, c/o Magnan Couture, PLLC, 245 West 18th Street, Houston, Texas 77008.

d.      <u>Beneficiaries Entitled to Citation</u>:

i.  Diane M. Clark, a beneficiary of the Trust is entitled to notice of this suit.  Citation may be served upon her at her home or usual place of abode, being 2113 North Thompson St., Conroe, Texas 77301, or wherever she may be found.

ii.  Lisa R. Seigel a beneficiary of the Trust is entitled to notice of this suit.  Citation may be served upon her at her home or usual place of abode, being 7678 Cross Village Dr., Germantown, Tennessee 38138, or wherever she may be found.

iii.  James Flitsch is a beneficiary of the Trust.  He is appearing in this suit.

iv.  Carolyn S. Clark is a beneficiary of the Trust. She is appearing in this suit.

## II. VERIFIED DENIAL

4.  Pursuant to Rule 93 of the Texas Rules of Civil Procedure, Chapter 37 of the Texas Civil Practice and Remedies Code and Texas Trust (Prop.) Code § 111.004 and § 115.011, Plaintiff Flitsch, the initial Secondary Co-Trustee and Plaintiff Carolyn, Grantor, both who are interested party beneficiaries, together maintain that Wilkinson and Guardino are strangers to the Trust.  Plaintiffs deny that Wilkinson

and/or Guardino is entitled to recover in the capacity in which he or she sued since neither Wilkinson nor Guardino is a trustee of the Trust, and neither has capacity to bring claims in this suit in any capacity. *Clark vs. Wisdom* 403 S. W. 2d 877, 883 (Tex. App.-Corpus Christi 1966, writ ref'd n.r.e.) (holding that the mere calling of one a trustee or for one to call himself trustee does not necessarily indicate that he is in fact or in law a trustee.  Whether one acting under authority granted him by an instrument of conveyance is a trustee *vel non* depends on the construction of the instrument).

### III. <u>JURISDICTION & VENUE.</u>

5.  This Court has jurisdiction to hear suits to determine any question arising in the administration of the trust, including questions of construction of written trusts, and to reform *inter vivos* trusts when no associated or related probate is on file.  A substantial portion of the events relating to this action occurred in Montgomery County, Texas and attorney's fees and costs were accrued in Montgomery County, Texas. The Trust owns real property situated in Montgomery County, Texas.  Plaintiff Carolyn and one or more of the Defendants resided in Montgomery County on June 6, 2019, the date on which this cause of action was filed.

### IV. <u>FACTUAL BACKGROUND</u>

#### A. Trust Creation

6.  Carolyn S. Clark, an elderly widow, was the Settlor of a Living Trust executed in the state of Missouri. She moved to Texas and sought legal advice in January 2017 to confirm that her Missouri Trust was effective in the state of Texas.

7.  Her son, Kevin J. Clark, referred Carolyn to Wilkinson, who was then licensed to practice law in the state of Texas.  Wilkinson misrepresented herself as an attorney possessing specialized knowledge and experience in the drafting and implementation of trusts.

8. Carolyn met with Wilkinson who convinced Carolyn that she was required to draft and execute a new

Trust instrument in Texas.  Carolyn retained Wilkinson to draft and prepare a simple revocable *inter-vivos* trust for educational purposes which she intended to fund with a portion of her assets.  Wilkinson provided legal advice as an attorney to Carolyn and Carolyn relied upon Wilkinson's advice.[1]

9.   During the Trust drafting process, Wilkinson misrepresented, concealed and failed to disclose to Carolyn material facts concerning Wilkinson's history, including: her judicial removal as a trustee by court order in 2015,[2]  three prior suspensions from the practice of law in the state of Texas,[3] and criminal charges for First Degree Felony offense of Misapplication of Fiduciary Property of the Elderly >$200,000.00 under Texas Penal Code § 32.45 for misappropriating money from her elderly aunt, Vera Calhoun[4], filed on or about June 28, 2006 by the Harris County District Attorney.  Wilkinson knew

---

[1] A lot of problems exist with the drafting of the Trust and it was not constructed in accordance with the applicable standard of care for a lawyer drafting such a trust.  Use of an irrevocable grantor trust divesting Carolyn of all power to supervise the Trust or Trustees is not the norm unless it provides clear federal estate tax relief or planning.  Here, the document appears to be a grantor trust with retained interests which would be brought back into Carolyn's taxable estate by 26 U.S.C. § 2036.  Carolyn owns less than $5.49M in assets, which was the 2017 floor for federal estate taxes.  Selecting assets to place in a "lifetime bypass trust" would be key to achieving those goals, but the assets contributed to this Trust appear to be the wrong type of assets to achieve such a result.  Wilkinson drafted an irrevocable trust instrument and intentionally deprived Carolyn of her power to revoke and modify the trust because Carolyn retained no powers to exercise.  In such a case as this, Wilkinson both gets to commit malpractice in drafting an unsuitable trust and then exploit Carolyn's inability to revoke it.

[2] In Cause No. 437,439; *In the Guardianship of Joy Beth Guinn, an Incapacitated Person*; In the Probate Court Number One (1) of Harris County, Texas, on March 25, 2015 the Court entered its Order Removing Trustee and Appointing Successor Interim Trustee attached as Exhibit 1 wherein Wilkinson was involuntarily removed as Trustee for failing to post bond as ordered by the court.  Wilkinson's law license was on active suspension from the State Bar of Texas on that date.

[3] Wilkinson was actively suspended from the practice of law on three separate occasions: (1st) Six (6) months suspension from August 1, 2009 to February 28, 2010; District 4E Grievance Committee Evidentiary Panel 4E09, Cause No. H0090520881 (Exhibit 2) arising from the Harris County, Texas felony criminal charges in Cause No. 1074730 referenced in footnote 4 next);       (2nd) Forty-eight (48) months suspension from May 1, 2011 to May 1, 2015 with a probated suspension from May 1, 2013 to May 1, 2015 (Exhibit 3) for charging an unconscionable fee to Adrienne U. West and for not refunding retainer fees); District 4 Grievance Committee Evidentiary Panel 4E, Cause No. H0080827321 [WEST]; and (3rd) Twenty-four (24) months suspension from July 26, 2013 through July 25, 2015; Board of Disciplinary Appeals, Cause No. 52540, found that Wilkinson violated the terms of probation, revoked her probated sentence and suspended her from the practice of law in the State of Texas (Exhibit 4) for not paying attorney's fees and expenses as ordered paid to the State Bar of Texas and failing to pay restitution to Adrienne U. West as ordered).

[4] Cause No.: 1074730, *The State of Texas vs. Kristin Diane Wilkinson*; In the 174th Judicial District Court, Harris County Texas.  That case was opened as a First Degree felony, but in the court's final disposition, the court authorized the state to prosecute the case as a misdemeanor under Texas Penal Code § 12.44(b) and deferred further proceedings without entering a

---

that she had a duty to disclose these material facts to Carolyn who is an elderly widow and did not have an equal opportunity to discover these facts. Wilkinson was deliberately silent when she had a duty to speak and she intended to induce Carolyn to hire her services and ultimately sign the irrevocable Trust. Carolyn relied on Wilkinson's misrepresentations and nondisclosures, causing her to suffer injuries as a result of action without knowledge of the misrepresented and undisclosed facts.

10. Wilkinson also misrepresented to Carolyn the nature, severity and consequences of the State Bar of Texas Disciplinary Commission's action to disbar Wilkinson filed as Cause No.: 16-09-10238; *Commission for Lawyer Discipline vs. Kristin D. Wilkinson*, In the 284th Judicial District Court, Montgomery County, Texas by downplaying the proceedings.

11. Wilkinson lost her disbarment trial on July 20, 2017, when the jury impaneled in that case signed its Verdict Certificate incorporated as part of the Court's Charge to the Jury affirmatively finding that Wilkinson "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation" and "commit[ed] a criminal act that reflects directly on her honesty, trustworthiness or fitness as a lawyer in other respects." A true and correct copy is attached as Exhibit 6.

12. While she knew that very shortly, upon entry of the verdict, she would be legally disbarred from practicing law and prohibited from rendering legal advice, Wilkinson intentionally ignored the jury's verdict to pressure and rush Carolyn to sign the irrevocable *inter-vivos* trust titled, *THE CAROLYN S. CLARK IRREVOCABLE LIVING TRUST* (referenced throughout as "Trust") on Saturday, July 28, 2017, eight (8) days following the jury's verdict. A true and correct copy of the Trust is attached hereto as Exhibit 7. Carolyn was not afforded the opportunity to review the documents prior to the signing, and at

---

finding of guilt. Wilkinson was placed on community supervision with deferred adjudication; she successfully completed the community supervision. Although that case was ultimately dismissed, Wilkinson served community supervision and the felony criminal charge remains in the record Exhibit 5.

---

the signing event verbally expressed her misgivings with pleas to Wilkinson to not sign the Trust instrument that day.  Wilkinson placed a pen in Carolyn's hand and directed her to sign the Trust, while whispering in Carolyn's ear directives to sign the document because it could be changed within thirty (30) days.  Carolyn was not fully aware of the terms and effects of the Trust document that she signed. Wilkinson later directed Carolyn to transfer all of her assets out of her personal control over into the irrevocable Trust.

13.   Then 17 days later, The Honorable Tim Womack signed and entered the Court's Judgment of Disbarment in Cause No. 16-09-10238; *Commission for Lawyer Discipline vs. Kristin D. Wilkinson*, In the 284th Judicial District Court, Montgomery County, Texas on August 14, 2017 disbarring Wilkinson from the practice of law in the state of Texas.  A true and correct copy is attached as Exhibit 8.

14.  Wilkinson exploited the time gap between the verdict and judgment to coerce Carolyn into signing the irrevocable Trust.

**B. TRUST PROVISIONS**

15. The Trust provides the following essential terms:

| Section | | |
|---|---|---|
| Grantor | Carolyn S. Clark | § 1.1 |
| Initial Co-Trustee | Kevin J. Clark (primary) | § 1.4 |
| Initial Co-Trustee | James C. Flitsch (secondary) | § 1.4 |
| Beneficiaries During Carolyn's Life | Carolyn S. Clark (for all her lifetime needs) | § 1.2, 1.3 |
| | -80% of the Corpus on demand | § 2.2(C)(2) |
| | Her descendants (for education) | § 1.2, 1.3 |
| | -Capped at 20% | § 2.2(C)(1) |
| | Diane M. Clark – use of a residence | § 2.2(C)(3) |
| | (but no funds set aside to pay for the | |
| | Maintenance, insurance, taxes or upkeep) | |
| Beneficiaries After Carolyn Dies | Diane M. Clark – a residence | § 2.2(D)(1) |
| | Kevin J. Clark - a residence | § 2.2(D)(2) |

| | Carolyn's descendants (education) | § 2.2(D)(3) |

| Distribution rules | Distributions may be unequal | § 2.2(C)(4) |
| | Spendthrift provisions | § 2.3 |

| Crummey Powers | Given to Beneficiaries | § 2.1(B) |

| Trustee Actions | Two Co-Trustees required | § 1.4 |
| | Appoint successor (jointly if 2 trustees) | § 1.4 |
| | Appoint successor (by 1 if only 1 remains) | § 1.4 |
| | No Co-Trustee may act alone | § 1.4 |
| | Each Co-Trustee has equal power | § 3.1 |
| | May resign on notice filed with the County Clerk | § 6.3 |

16. The most important provisions in the Trust related to this dispute are Sections 1.4 and 6.3, which are as follows:

> 1.4 **Co-Trustees.** As Initial Co-Trustees, Kevin J. Clark shall be the initial Primary Co-Trustee and James C. Flitsch shall be the initial Secondary Co-Trustee of any Trust created in this Agreement. References to the co-trustees shall mean "Co-Trustees," whether the initial co-trustees or later-appointed trustees, and any typographical error referring to the co-trustees as "co-trustee" shall be disregarded if the singularly spelled word "trustee" in context should mean "co-trustees." There shall at all times be two individuals serving as co-trustees making together all decisions necessary to carry out the purpose and management of the Trust. The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee. If Kevin J. Clark ceases or fails to serve before the appointment of his replacement, then James C. Flitsch shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee. If James C. Flitsch ceases or fails to serve, then Kevin J. Clark shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee. Both Kevin J. Clark and James C. Flitsch shall appoint Co-Trustees to replace themselves at such time when either one or both of them is in contemplation of ceasing to serve or is in danger of becoming unable to serve.
> * * * *
> 6.3 **Resignation of Co-Trustee.** Any Co-Trustee may resign by filing a written instrument duly acknowledged of record in the Deed

Records of Grantor's County, which filing shall immediately deprive any such resigning Co-Trustee of all powers as Co-Trustee hereunder, except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets; provided, nevertheless, that at least thirty (30) days prior to such filing, the resigning Co-Trustee shall give written notice thereof to those persons who could in the discretion of the Co-Trustee receive income from the Trust estate and are at such time *sui juris.* No purchaser from, or other person dealing with, any Co-Trustee is obligated to examine such Deed Records' and any such person acting in good faith shall be protected in all transactions with the Co-Trustee whether or not any such resignation has taken place.

## C. WILKINSON FABRICATES TRUSTEE APPOINTMENT – MARCH 2019

17.  Wilkinson and Kevin J. Clark exchanged an E-mail communication on February 26, 2019 referencing a verbal discussion that Wilkinson allegedly had with Flitsch concerning Kevin J. Clark resigning as co-trustee ("February 26 E-mail").  A true and correct copy is attached as Exhibit 9.

18.  Kevin J. Clark signed "Kevin's Resignation" on February 28, 2019 memorializing his resignation as Co-Trustee effective March 1, 2018.[5]  A true and correct copy of Kevin's Resignation is attached as Exhibit 10.   Kevin's Resignation purports that Kevin, on his own action without the agreement of his Co-Trustee as required by Trust provisions, appoints Kristin Wilkinson, J.D. as successor Co-Trustee to serve in Kevin J. Clark's place.   Beginning on or about March 1, 2019, Wilkinson began holding herself out as a Co-Trustee of the Trust.

19.  Kevin J. Clark failed to provide 30 days advance written notice to Flitsch or Carolyn that he intended to resign as initial Primary Co-Trustee, nor did he tender a copy of Kevin's Resignation to Flitsch or Carolyn as required by express Trust provisions.   Neither Wilkinson nor Kevin J. Clark discussed Wilkinson serving as Co-Trustee with Flitsch or Carolyn at this time.

20.   Wilkinson then fabricated co-trustee "appointment" in her "Acceptance of Appointment as Co-

---

[5] Filed in the Montgomery County Real Property Records as DOC #2019016016

Trustee" dated March 4, 2019 where she purported to appoint herself as Trustee (a document conveniently not filed of public record).  A true and correct copy is attached as <u>Exhibit 11</u>.

### D. WILKINSON AND GUARDINO INTERFERE WITH TRUST ACCOUNTS AND ASSETS

21.  Wilkinson embarked upon her hostile takeover quest to gain title control over Trust assets in a letter writing campaign unleashed upon Wells Fargo Financial Advisors ("Wells Fargo").  She fired off correspondence dated March 5, 2019 where she held herself out as Co-Trustee, claimed title to Trust assets, and omitted any reference to Flitsch. ("March 5 Correspondence").  A true and correct copy is attached as <u>Exhibit12.</u>  Attachments to the March 5 Correspondence include Kevin's Resignation and an Associated Person Information form filled out in Wilkinson's handwriting depicting her signature dated March 5, 2019.  Wilkinson held herself out as an attorney on the March 5 Correspondence fax transmission banner which reads "Wilkinson Law Firm" in violation of Texas Penal Code § 38.122 and 38.123.

22.  Wilkinson continued to pressure Wells Fargo to acknowledge her as Co-Trustee in correspondence dated March 6, 2019 where she claimed to be appointed as Co-Trustee, omitted any reference to Flitsch, and complained that bank staff is not responding to her communications. ("March 6 Correspondence").  A true and correct copy is attached as <u>Exhibit 13</u>.

23.  On March 7, 2019 Wilkinson intensified pressure on Wells Fargo and sent e-mail and facsimile transmissions attaching Trustee Certification of Investment Powers forms ("Forms") for Trust accounts xxxx-x44 and xxxx-x768.[6]  Flitsch's signature does not appear on either Form.  A true and correct copy

---

[6] The Forms list Wilkinson and Flitsch as Co-Trustees and depict Wilkinson's handwriting and signature.  Language on the Forms includes entry into a blank for item 10. where [Wells Fargo] is "authorized to accept instructions from one <u>1</u> of the individuals listed on the account for any transaction" which, if recognized, would grant to Wilkinson independent title to Trust accounts in direct conflict with express Trust provisions.  Form line 19. reads, "We hereby certify that the undersigned are all of the trustee(s) of the trust."  Wilkinson signed the Forms attesting to this statement.

of the March 7 Correspondence with attachments (redacted to eliminate personal information) is attached as Exhibit 14.

24.  Also on March 7, 2019, Wilkinson dispatched to Flitsch an E-mail ("March 7 E-mail") where she dresses Flitsch down for not understanding trusts, asserts that she possesses trustee capacity, asks for Flitsch's signature on the Forms, and pressures Flitsch to comply with her demands.  The March 7 E-mail includes copies of Forms referenced in Exhibit 15, together with other correspondence Wilkinson dispatched to Wells Fargo when she failed to gain title of the accounts.[7]  A true and correct copy of the March 7 E-mail with attachments (redacted to eliminate personal information) is attached as Exhibit 16.

25.  On March 12, 2019, James R. Moore, an attorney licensed and practicing in Missouri, delivered to Wells Fargo a letter, a true and correct copy is attached as Exhibit 17, where he reported that he represented Carolyn.  On behalf of Carolyn, Moore advised Wells Fargo that Carolyn objected to the "appointment" of Wilkinson as successor co-trustee of the Trust and that Carolyn based her objection on Kevin J. Clark and Wilkinson's failure to follow procedures specifically outlined in the Trust.  He advised that "the appointment of Wilkinson as trustee should be declared void and not honored by Wells Fargo."  Wells Fargo did not honor Wilkinson's claims and demands concerning Trust accounts.

26.  Following unsuccessful attempts to wrest title to and control over Wells Fargo Trust accounts, Wilkinson sent heated correspondence to Wells Fargo dated March 13, 2019 where she refers to Flitsch as Co-Trustee and again claims title to Trust assets. ("March 13 Correspondence").  She dispatched a copy of the March 13 Correspondence to Flitsch.  A true and correct copy is attached as Exhibit 18.

---

[7] On a March 7, 2019 E-mail addressed to Ms. Bondra at Wells Fargo and included as an attachment, Wilkinson remarks, "[Wells Fargo] advised me that I am not associated with the account so I will not be provided a link [to Trust Wells Fargo accounts]."

Third Amended Petition Seeking Constructive Trust, Declaratory Relief, and Request for Temporary Restraining Order and Temporary Injunction
Page 10

E.    **WILKINSON AT AMEGY BANK**

27.  Wilkinson transferred her focus to Amegy Bank where she held out herself as Trustee and attempted to open an account styled, "The Carolyn S. Clark Irrevocable Living Trust" on or about March 15, 2019.[8]

F.    **KEVIN J. CLARK HANDS $91,015.99 OVER TO WILKINSON**

28.  On March 25, 2019 Kevin J. Clark entered a Wells Fargo Bank branch office and from Trust Account -5768 unlawfully withdrew $91,015.99 ("The Money") 24 days after his resignation as Co-Trustee[9].  A true and correct copy of the transaction is attached as Exhibit 19.

29.  Flitsch later discovered that Kevin J. Clark handed over The Money to Wilkinson.

30.  When questioned about receiving The Money by Flitsch, Wilkinson told Flitsch that the Trust allowed Kevin J. Clark to act as trustee for 30 days after he resigned.  Wilkinson also told Flitsch that she needed Flitsch to cooperate with her in opening a new account to deposit The Money.

31.  Wilkinson claimed that an emergency existed as to the need to transfer The Money to her, but she could not explain the basis for the emergency to Flitsch.  Flitsch refused to cooperate with Wilkinson.

32.  On April 3, 2019 Wilkinson dispatched to Flitsch by U.S.P.S. Overnight Mail/Express correspondence ("April 3 Correspondence") seeking Flitsch's signature on Amegy Bank's Signature Card for Account No.: -331 dated March 15, 2019 styled, "The Carolyn S. Clark Irrevocable Living Trust".  Flitsch never signed that Signature Card.[10]  A true and correct copy is attached as Exhibit 20.

---

[8] Amegy Bank's Signature Card for Account No.: -331 dated March 15, 2019 is included as an attachment to Exhibits 19 and 20.

[9] In Kevin's Resignation, the resignation is effective immediately.  He did not expressly reserve any powers to continue to act for any period of time.  Section 6.3 Trust provisions state "filing shall immediately deprive any such resigning Co-Trustee of all powers and Co-Trustee hereunder, except for those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets…."  Flitsch, therefore, was the sole remaining Trustee after March 1, 2019.  No necessity then existed that required money transfers.  Under Trust Section 6.3, Kevin J. Clark was terminated as a Co-Trustee on March 1, 2019.  While it is true that Kevin J. Clark failed to give 30 days advance notice of his resignation, it is not true that his failure granted him powers to act as Trustee for the following 30 days.

[10] Flitsch testified, "I refused to sign the [signature] card and give it back." Hearing held July 19 and 22, 2019, before

---

33.  On April 4, 2019 Wilkinson dispatched identical correspondence to the April 3 Correspondence to Flitsch by U.S.P.S. Overnight Mail/Express correspondence ("April 4 Correspondence") again seeking Flitsch's signature on Amegy Bank's Signature Card for Account No.: -331 dated March 15, 2019 styled, "The Carolyn S. Clark Irrevocable Living Trust".  Flitsch never signed that Signature Card.[11]  A true and correct copy is attached as Exhibit 21.

34.  Wilkinson continued to hold out to Amegy Bank and Wells Fargo that she was a Co-Trustee.  On April 4, 2019 she sent Billy Williams at Amegy Bank an E-mail expressing that Flitsch "intentionally did not sign the Signature Card" and that she "intended to exercise her right to replace Flitsch with another successor" ("April 4 E-mail").  A true and correct copy is attached as Exhibit 22.

35. Flitsch did not cooperate with Wilkinson.  On April 11, 2017 he dispatched an E-mail communication requesting from Wilkinson "a copy of everything to do with both account[s] and a copy of both years taxes please." ("April 11 E-mail").  A true and correct copy is attached as Exhibit 23.

### G. WILKINSON PURPORTS TO REMOVE JAMES C. FLITSCH AS CO-TRUSTEE AND APPOINT HER SPOUSE, LEONARD GUARDINO, AS CO-TRUSTEE

36.  Flitsch decided that he would not agree to Wilkinson serving as Co-Trustee and on or about May 14, 2019 he verbally advised Wilkinson that he would not resign as Co-Trustee.

37.  Also on or about May 14, 2019, Wilkinson stated to Flitsch that he was in breach of his duties as Trustee for failing to cooperate with her, and that she would use her "just cause" powers to remove Flitsch as Co-Trustee.  No such removal provisions are expressed in the four corners of the Trust.

38.  Wilkinson continued her fabricated trustee appointment in her "Action by Co-Trustee of

---

County Court at Law Number Two (2), the Honorable Claudia Laird presiding: July 22, 2019, at Page 116, Lines 12-14. Exhibit 22.

[11] *Id.*

Appointment of Replacement Co-Trustee" signed on May 15, 2019 (the "Wilkinson Designation")[12] where she purported to remove Flitsch from service as Co-Trustee and appoint in his place her spouse, Leonard Guardino, as successor Co-Trustee (backdated to be effective as of May 14, 2019).  A true and correct copy of the Wilkinson Designation is attached as <u>Exhibit 24</u>.

39.  Then on May 15, 2019, Wilkinson launched an all-out-last-ditch assault on Wells Fargo in lengthy correspondence holding herself out as the trustee and demanding title ownership of Trust accounts.[13] ("May 15 Correspondence") A true and correct copy is attached as <u>Exhibit 25</u>.

40.  Guardino, thereafter, began holding himself out as a Co-Trustee of the Trust.

41.  As of June 6, 2019, Wells Fargo was still being pressured by Wilkinson and Guardino to transfer title of Trust accounts into their names.  Wells Fargo denied Kevin J. Clark, Wilkinson and Guardino access to the Trust's accounts.

42.  As of June 6, 2019, Kevin J. Clark was entering Wells Fargo branches, representing himself as a Co-Trustee and attempting to withdraw money from Trust accounts.  Kevin J. Clark did not successfully withdraw additional funds from Wells Fargo Trust accounts after March 25, 2019.

## V. CAUSES OF ACTION

### A.  REQUEST FOR DECLARATORY RELIEF REGARDING TRUSTEESHIP

43.  The foregoing paragraphs are incorporated by reference as if fully set forth herein.

44.   This action is brought by Plaintiffs who are individuals interested in the Trust and named as beneficiaries; Flitsch is named as initial Secondary Co-Trustee in the Trust; Carolyn is the Settlor of the

---

[12] Filed in the Montgomery County Real Property Records as DOC #20199041136.

[13] Wilkinson demands Wells Fargo to "correct the title to the accounts to reflect Kristin Wilkinson, J.D. and Leonard Guardino as the current co-trustees in lieu of Kevin Clark and James Flitsch and provide us with confirmation of your actions."  and to "again advise you that Co-Trustee James Christopher Flitsch has been removed as the Co-Trustee.  Mr. Leonard Guardino has been appointed in the place of James Christopher Flitsch in accord with the terms of the Trust document." Leonard Guardino's purported signature appears on the May 15 Correspondence.

Trust. TEX. CIV. PRAC. & REM. CODE § 37.005.

45. Plaintiffs seek to resolve questions that have arisen during the course of Trust administration, including construction of the Trust instrument and no justiciable claim is required for the Plaintiffs to seek declaratory relief from this Court.  TEX. CIV. PRAC. & REM. CODE § 37.005.

46.  Plaintiffs seek declarations from the Court in relation to the Trust to answer questions concerning the identity and appointment of Trust Successor Co-Trustee(s) and they submit that the following are the correct answers to those questions:

A.     Section 1.4 of the Trust requires the written consent of initial Secondary Co-Trustee Flitsch to appoint any successor trustee;

B.     Flitsch never executed a written instrument consenting to the appointment of a Successor Co-Trustee;

C.     Wilkinson and/or Guardino are not validly appointed as a Co-Trustee of the Trust;

D.     Wilkinson and Guardino have never been duly authorized agents of the Trust and are not entitled to direct, control, or hold any money, funds or property of the Trust, or to collect or receive confidential information of the Trust;

E.     Any purported claim to appointment as Successor Co-Trustee by Wilkinson or Guardino is void *ab initio*;

F.     Under Section 6.3 of the Trust, Kevin J. Clark resigned as initial Primary Co-Trustee effective March 1, 2018;

G.     Since July 28, 2017, Flitsch has served, and he continues to serve, as initial Secondary Co-Trustee; and,

H.     Flitsch holds, under Section 1.4 of the Trust, sole power to appoint Kevin J. Clark's Successor Co-Trustee by a written instrument.

47.  The questions asked in 46. above were resolved in this Court's declaratory judgment rendered in its Order on Traditional Motion for Partial Summary Judgment Filed by James Flitsch, Co-Trustee, and Carolyn S. Clark, Settlor rendered August 21, 2020 where the Court found that the purported appointment of Wilkinson or Guardino was ineffective and invalid as a matter of law. A true and correct copy is attached as Exhibit 26.

48.  Plaintiffs seek their costs and reasonable and necessary attorney's fees as are equitable and just.  TEX. CIV. PRAC. & REM. CODE § 37.009.

**B.  REQUEST TO MODIFY, REFORM OR TERMINATE TRUST UNDER THE TRUST (PROP.) CODE**

49.  The foregoing paragraphs are incorporated by reference as if fully set forth herein.

50.  This action is brought by Plaintiffs who are individuals interested in the Trust and named as beneficiaries; Flitsch is named as initial Secondary Co-Trustee in the Trust; Carolyn is the Settlor of the Trust. TEX. TRUST (PROP.) CODE § 111.004(2), (7), (14), (18).

51.  Plaintiffs seek judicial modification of the Trust in the manner that conforms as nearly as possible to the probable intention of the settlor pursuant to TEX. TRUST (PROP.) CODE § 112.054(a), (b) for the following reasons:

A.      The purposes of the Trust have become impossible to fulfill TEX. TRUST (PROP.) CODE § 112.054(a)(1); and

B.      Because of circumstances not known to or anticipated by Carolyn, the settlor, this Court's order will further the purposes of the Trust TEX. TRUST (PROP.) CODE § 112.054(a)(2); and

C.      This court's order is necessary or appropriate to achieve Carolyn, the settlor's, tax objectives and is not contrary to Carolyn's intentions. TEX. TRUST (PROP.) CODE § 112.054(a)(4). Plaintiffs seek the modification to have retroactive effect to July 28, 2017, pursuant to TEX. TRUST (PROP.) CODE § 112.054(c).

52.  In the alternative, Plaintiffs seek that the terms of the Trust be reformed pursuant to TEX. TRUST (PROP.) CODE § 112.054(b-1) so that it is fully revocable or amendable by the trustor, Carolyn Clark, alone and without the joinder or consent of any others, just like an ordinary living trust.  Plaintiffs seek the reformation to be retroactive to July 28, 2017, pursuant to TEX. TRUST (PROP.) CODE § 112.054(c).

53.      In the alternative, Plaintiffs seek that the Trust be terminated in whole in the manner that conforms as nearly as possible to the probable intention of the settlor pursuant to TEX. TRUST (PROP.) CODE §112.054(a), (b). Plaintiffs maintain that: (1) Carolyn Clark specifically asked that the Trust be revocable but Wilkinson did not follow that instruction, (2) Wilkinson made numerous material misrepresentations to Carolyn regarding revocability in the guise of purported sound legal advice when in fact the advice was self-serving and, at best, negligent; (3) Wilkinson, as scrivener of the trust instrument, caused the trust to be irrevocable when it should have been revocable, and (4) Carolyn lacked awareness regarding the law applicable to trusts because of Wilkinson.

54.  Plaintiffs anticipate that a possibility exists whereby the named beneficiaries of the Trust may enter into and execute written consents to an order prior to presenting such a proposed order to this court pursuant to TEX. TRUST (PROP.) CODE § 112.054(d).

55.  Plaintiffs seek their costs and reasonable and necessary attorney's fees as are equitable and just.  TEX. TRUST (PROP.) CODE § 114.064(a).

## C.   THEFT OF THE MONEY UNDER THE THEFT LIABILITY ACT

56.      The foregoing paragraphs are incorporated by reference as if fully set forth herein.

57.      On or about March 29, 2019, Plaintiff Flitsch, the remaining Co-Trustee of the Trust was the owner of The Money and as such, held title to, had a possessory interest in, and a greater right of possession to, The Money.  Also on that date, Plaintiff Carolyn, the Settlor, was an elderly individual as defined by Tex. Pen Code Section 22.04.   Defendants Wilkinson and Guardino: (1) unlawfully

appropriated The Money by taking it without Plaintiff Flitsch's consent Tex. Pen Code §1.07(a)(11); (2) secured The Money in his or her possession with the intent to deprive Plaintiff Flitsch of it, Tex. Pen. Code §31.03(a); (3) stole The Money from Plaintiff Flitsch; and (4) caused Plaintiff Flitsch to suffer and sustain damages as a result of Wilkinson and Guardino's theft, Tex. Civ. Prac. & Rem. Code §§134.002(2), 134.003, 135.005a; Tex. Pen. Code §§31.03(a), (b)(1), 31.04(a).

58.  Wilkinson brought about the transfer of The Money by acquiring and otherwise exercising control over The Money.  Tex. Pen. Code §31.01(4)(A), (4)(B).

59.  Kevin J. Clark was not legally authorized to act on behalf of the Trust on March 29, 2019, the date on which he withdrew the money from Trust account(s) held on deposit at Wells Fargo, and he lacked legal authority to consent to Wilkinson's appropriation.  Tex. Pen. Code §1.07(a)(19), 31.01(3).

60.  Wilkinson is connected to the theft and in open court testified and admitted to receiving The Money[14] Tex. Pen. Code §31.03(c)(2).

61.  Wilkinson did not have a legally opened bank account in the name of the Trust on the date upon which she took possession of The Money.  Tex. Pen. Code §31.06(a)(1).

62.  Wilkinson disposed of The Money and recovery of it by Plaintiff Flitsch is unlikely. Tex. Pen Code §31.01(2)(C).

63.  Plaintiffs seek their costs and reasonable and necessary attorney's fees as are equitable and just.  TEX. CIV. PRAC. & REM. CODE §134.005(b).

### D.    MONEY HAD AND RECEIVED

64.  The foregoing paragraphs are incorporated by reference as if fully set forth herein.

---

[14] Wilkinson testified to receiving $77,000 in checks and $20,000 in cash from Trust assets. Hearing held July 19 and 22, 2019, before County Court at Law Number Two (2), the Honorable Claudia Laird presiding: July 19, 2019, at Pages 19-21; July 22, 2019 at Page 45, Lines 2-4, Exhibit 27.

65. Defendants Wilkinson and/or Guardino hold The Money.

66. The Money, in equity and good conscience, belongs to Plaintiff Flitsch to hold on behalf of the Trust.

67. Defendants Wilkinson and Guardino appropriated The Money by fraud or malice from Plaintiff Flitsch.

68. Plaintiff Flitsch seeks to recover The Money to which it holds superior right of possession in equity and good conscience, and to recover exemplary damages, together with prejudgment interest and costs.

E.    UNJUST ENRICHMENT

69. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

70. Wilkinson and/or Guardino were unjustly enriched by taking possession of The Money and purporting to act as Trustees.

71. Wilkinson was certainly aware of express Trust provisions that required Flitsch to consent to successor trustee appointment(s) in writing since she was the scrivener of the Trust. She bears a duty, as the Trust drafter, to possess knowledge of what she wrote. She should have known that she could not verbally terminate Flitsch as Co-Trustee, or independently appoint any person as successor Co-Trustee by her sole act under the terms of the Trust. Yet Wilkinson did those things anyway. Similarly, Guardino cannot read the Trust and glean from its express provisions that he was properly appointed as a Co-Trustee. Yet he continued to hold himself out as a successor Co-Trustee and attempt to assume title to Trust assets including funds on deposit at Wells Fargo.

72. The Money obtained by Wilkinson and Guardino rightfully belongs to the Trust through Flitsch as its Co-Trustee because Carolyn gifted it to the Trust – not to Wilkinson, Kevin J. Clark, or Guardino. Kevin J. Clark resigned as Co-Trustee effective March 1, 2019, and thus cannot rightfully hold title to it, nor can he be said to possess The Money for the reasons intended by Carolyn's Trust. Moreover, his resignation effective March 1, 2019 precluded him from holding The Money for the Trust on March 25,

2019.  The Money was not withdrawn for educational purposes as required by express terms of the Trust. It would unjustly enrich Wilkinson, Kevin J. Clark and/or Guardino to retain The Money.

## F. CONSTRUCTIVE TRUST

73. The foregoing paragraphs are incorporated by reference as if fully set forth herein.

74.  The Beaumont Court of Appeals confirmed the traditional requirements for a constructive trust in *Smalley v. Smalley*, 2012 Tex. App. LEXIS 3248, at *4-5 (Tex. App.—Beaumont 2012, no pet.) (memo op.) by stating:

> A constructive trust may be imposed where the plaintiff establishes: (1) breach of a special trust, breach of a fiduciary relationship, actual fraud, or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res. *Hubbard v. Shankle*, 138 S.W.3d 474, 485-86 (Tex. App.—Fort Worth 2004, pet. denied). The plaintiff must strictly prove the elements necessary for the imposition of the trust. *Id.*

75.  Actual fraud in a constructive trust case refers to false representations of past or present material facts that (1) are made knowingly or recklessly without regard to their truth and as a positive assertion, (2) concern a material fact, (3) are made with the intention of inducing a party to take action, and (4) are actually and detrimentally relied on. *Chien v. Chen*, 759 S.W.2d 484, 494–495 (Tex. App.—Austin 1988, no writ); 4 DORSANEO, TEXAS LITIGATION GUIDE § 55.02 (2019).

76.  Wilkinson and Guardino have made positive assertions of false material facts by holding themselves out as Co-Trustees of the Trust for the purposes of causing others to deliver Trust property to one or both of them, thereby deceiving such persons and taking or holding onto possession of The Money.  Wilkinson received in hand The Money totaling $91,015.99 under such false pretenses.  Kevin J. Clark delivered The Money to Wilkinson and she has not returned The Money to the Trust. Guardino, since he held himself out as Co-Trustee of the Trust, must also be included in the constructive trust to clear Trust property of all competing claims by persons falsely claiming to be a trustee.

77.  Constructive fraud includes breach of a legal or equitable duty that is fraudulent "because of its tendency to deceive others, to violate confidence, or to injure public interests"  4 Dorsaneo, Texas Litigation Guide § 55.02 (2019) (citing *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964).

78.  Here, Wilkinson as the scrivener of the Trust, knew that she could not be validly appointed as a Trustee unilaterally by Kevin J. Clark.  She knew she was not a lawfully appointed trustee.  She intentionally failed to disclose this material fact to Wells Fargo when she demanded title to Trust accounts in her name as Co-Trustee.  She also failed to disclose to Wells Fargo and Amegy Bank the material fact that she had no authority under the Trust she drafted to unilaterally remove Flitsch as Co-Trustee, acknowledge her own appointment as Successor Co-Trustee, or appoint Guardino as a Successor Co-Trustee.

79.  Unconscionable conduct also justifies a constructive trust. *Andretta v. West*, 415 S.W.2d 638, 641–642 (Tex. 1967); *Ellisor v. Ellisor*, 630 S.W.2d 746, 748 (Tex. App.—Houston [1st Dist.] 1982, no writ); 4 Dorsaneo, Texas Litigation Guide § 55.02 (2019).

80.  It is unconscionable to believe that Wilkinson influenced, overpowered and induced Kevin J. Clark to deliver over to her $91,015.99 under false pretenses.  Conversely, it is evident that Kevin J. Clark, Wilkinson and Guardino fraudulently colluded with intent to gain independent, unfettered and unregulated control over Carolyn's Trust assets with complete understanding that the Trust was irrevocable and its assets beyond Carolyn's control.  For what other reason would Wilkinson come back to roost in the Trust as a purported Co-Trustee, exert repeated hard pressure on Wells Fargo to gain complete control over Trust accounts, take $91,015.99 in Trust cash, claim that The Money was her "fee[15]", unlawfully open an account at Amegy Bank allegedly in the Trust's name, violate express Trust

---

provisions, claim to remove Flitsch as initial Secondary Co-Trustee, claim to appoint her spouse as successor Co-Trustee in Flitsch's place, and misrepresent herself as a trustee to third parties?  This is even more true when examined in light of Wilkinson's past criminal history, prior judicial removal as a trustee from a trust, numerous suspensions from the practice of law, all while she held herself out to Carolyn and Flitsch as a person who holds special knowledge about trusts.

81.  A party who wrongfully holds money, knowing that another has a superior claim, may be subjected to a constructive trust. *See e.g. Pacific Indem. Co. v. Grand Ave. State Bank of Dallas*, 223 F.2d 513, 517–518 (5th Cir. 1955).

82.  Wilkinson testified under oath her receipt of The Money in open court.[16]  She held no authority to receive, accept or retain The Money and clearly, the Trust holds a superior claim since she is not a Co-Trustee.  Neither is Guardino, in the event that he has put his name on The Money, or any portion of it.

83.  Allowing Wilkinson, Guardino and/or Kevin J. Clark to retain the $91,015.99 or any portion of it, or any Trust property, amounts to unjust enrichment.  They are strangers to the Trust who hold no true right, title or claim to The Money.

84.  The $91,015.99 was an identifiable sum of property when it was removed from Wells Fargo. Wilkinson and Guardino, as bailors in fact, held a duty to preserve The Money.

85.  Therefore, Flitsch requests a Constructive Trust be placed upon the $91,015.99 taken by Wilkinson and/or Guardino through Kevin J. Clark.

---

[15] Wilkinson testified, "—the money I paid myself was a very small portion of my fee.  I took that as my fee, as the portion that it represents as my fee." Hearing held July 19 and 22, 2019, before County Court at Law Number Two (2), the Honorable Claudia Laird presiding: July 19, 2019, at Page 20, Lines 24-25 through Page 21, Line 1. Exhibit 28.

[16] Wilkinson testified that she deposited The Money at Amegy Bank and opened an account in the name of the Trust. Hearing held July 19 and 22, 2019, before County Court at Law Number Two (2), the Honorable Claudia Laird presiding: July 22, 2019 at Page 12, Line 25 through Page 13 Lines 1-14, also Page 45, Line 6-8. Exhibit 29.

## VI. __TEMPORARY INJUNCTION__

86.  The foregoing paragraphs are incorporated by reference as if fully set forth herein.

87.  Plaintiffs seek a temporary injunction against each of Wilkinson, Guardino and Kevin J. Clark.

88.  Plaintiffs' application for a temporary injunction order is authorized by Texas Civil Practice and Remedies Code § 65.011(1), because part of the relief to which Plaintiffs are entitled requires the restraining of an act by Wilkinson, Guardino and Kevin J. Clark, is prejudicial to the Trust.  The Trust lost possession of $91,015.99 to date, and, as of June 6, 2019, Kevin J. Clark is trying to get Wells Fargo to release money, undoubtedly at the behest of Wilkinson and Guardino, but in any event, when he is not a Trustee.  The Trust has substantial assets held on deposit at Wells Fargo which are in jeopardy.

89.  Plaintiffs ask the Court to issue a temporary restraining order to prevent the transfer, alienation, spending, consumption or use of the $91,015.99, or so much of it as exists, and to prevent the continued taking of Trust assets by persons who are not authorized to do so by the Trust, by restraining Wilkinson, Guardino and Kevin J. Clark, and those acting in concert with them, from:

A. Opening or closing accounts in the name of Trust, including an account listing any of Wilkinson, Guardino or Kevin J. Clark as a Trustee of the Trust;

B. Withdrawing, transferring, spending or using any money or funds in any account in the name of the Trust, including any account listing any of Wilkinson, Guardino or Kevin J. Clark as a Trustee of the Trust;

C. Transferring any securities, certificates of deposit, bonds or instruments from the Trust, including any such item listing any of Wilkinson, Guardino or Kevin J. Clark as a Trustee of the Trust;

D.  Holding themselves out as a Trustee of the Trust or as agents of the Trust to third parties;

E.  Borrowing money in the name of the Trust, including any debt or credit facility listing any of Wilkinson, Guardino or Kevin J. Clark as a Trustee of the Trust;

F. Pledging any property in the name of the Trust, including any property titled with any of Wilkinson, Guardino or Kevin J. Clark as a Trustee of the Trust;

G. Using or exercising any authority purportedly a Trustee of the Trust; or,

H. Obtaining information from any Trust accounts at Wells Fargo.

90.  Plaintiffs have prevailed on their request for declaratory relief and construction of trust as to the identity of the Trustees of the Trust, and it is probable that they will recover on their claims herein after a trial on the merits for the reasons set out in this Petition.

91.  If Plaintiffs' application is not granted, harm is imminent because assets of the Trust will be looted, taken and the purposes of the Trust thwarted.

92.  Plaintiffs have no adequate remedy at law because (i) the Defendants are or likely are judgment proof, (ii) the money still in the name of the Trust will be taken under false pretense and the Trust will be deprived of the same, and, (iii) Flitsch could be in breach of his duties to protect Trust property if the Defendants are allowed to take or use Trust property.  Kristen Diane Wilkinson Guardino and Leonard Guardino own only a homestead in Montgomery County, Texas, as does Kevin J. Clark own a homestead.

93.  Plaintiffs are willing to post bond in accordance with Texas Rule of Civil Procedure 684.

94.  The necessity of preventing further loss of Trust assets has necessitated holding a hearing prior to providing notice to Defendants of this application.

## VII. CONDITIONS PRECEDENT

95.  Any and all conditions precedent to the establishment of all causes of action entitling Plaintiffs to recover on its claims as set forth and requested herein above have been performed, have occurred, and have been fully and completely satisfied prior to the filing of this suit.

## VIII. ATTORNEY'S FEES

96.  Due to the necessity of having to institute this suit, Plaintiffs have been forced to retain counsel and

incur expenses in the nature of reasonable attorneys' fees, expenses, and court costs.  In connection therewith, Plaintiffs have retained the law firm of Stilwell, Earl & Apostolakis, LLP, duly licensed Texas attorneys, as counsel to represent them and have, in connection therewith, agreed to pay reasonable attorneys' fees. Plaintiffs seek recovery of their reasonable attorneys' fees as are equitable and just pursuant to Chapter 37.009 of the Texas Civil Practice and Remedies Code.

## IX. EXPERTS

97.  Pursuant to Rule 192.3 of the Texas Rules of Civil Procedure, Plaintiffs hereby designate the undersigned attorney, Steven C. Earl, as their expert to testify as to reasonable and necessary attorneys' fees incurred by Plaintiffs relative to this lawsuit.

## CONCLUSION AND PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Kristin Wilkinson, Leonard Guardino, and Kevin J. Clark be cited to appear and answer herein and that it have the following relief:

a) Issuance of a temporary restraining order as described above;

b) Issuance of a temporary injunction, after notice and hearing, as described above;

c) Recovery of actual damages;

d) Recovery of its reasonable and necessary attorneys' fees;

e) Recovery of costs of court; and,

f) Recovery and/or receipt of such other and further relief, both general and special, legal and equitable, to which Plaintiffs may show itself justly entitled.

Respectfully submitted,

STILWELL, EARL & APOSTOLAKIS, L.L.P.

By_____/s/Steven C. Earl_____
       Steven C. Earl
       State Bar No. 24002028
       James E. Graham
       State Bar No. 24102973
1400 Woodloch Forest Dr., Suite 590
The Woodlands, Texas 77380
Telephone: 281/419-6200
Telecopier: 281/419-0250
steven@woodlandstxlawfirm.com
jim@woodlandstxlawfirm.com
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of September, 2020, a true and correct copy of the foregoing instrument has been sent in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure.

## VIA E-FILE

Kristin Wilkinson, Pro Se
Leonard Guardino, Pro Se
PO Box 701188
Houston, Texas 77270-1188
Phone: (713) 561-5616
Fax: (713) 561-5629
kristinwilkinson@use.staratmail.com

Jeanne L. Couture
Magnan Couture, PLLC
245 West 18th Street
Houston, Texas 77008
(713) 678-0499
jeannie@magnancouturelaw.com
Attorney for Kevin J. Clark

Nikki Davis
Courtney Lyssy
Berlinger, Davis & Lyssy, LLP
6200 Savoy, Suite 132
Houston, Texas 77036
nikki@berlingerdavis.com
courtney@berlingerdavis.com
Interim trustees

      By:___/s/Steven C. Earl_____
          Steven C. Earl

EXHIBIT 1

NO. 437,439

PROBATE COURT 1

| IN THE GUARDIANSHIP OF | § | IN THE PROBATE COURT |
| | § | |
| | § | NUMBER ONE (1) OF |
| JOY BETH GUINN, | § | |
| | § | |
| AN INCAPACITATED PERSON | § | HARRIS COUNTY, TEXAS |

### ORDER REMOVING TRUSTEE AND
### APPOINTING SUCCESSOR INTERIM TRUSTEE

ON THIS DATE, the Court considered the Motion to Show Cause filed herein by W. Cameron McCulloch, in his capacity as the Guardian Ad Litem for Joy Beth Guinn (hereinafter referred to as the "Guardian Ad Litem") requesting this Court cite Kristin Wilkinson, in her capacity as the Trustee of the Joy Beth Guinn Irrevocable Living Trust (hereinafter referred to as the "Respondent"), to appear and show cause why she should not be removed for failure to comply with this Court's March 9, 2015 Order Granting Emergency Motion to Require Non-Corporate Trustee to Post Bond. After consideration of the Motion, the Response, if any, and the arguments of counsel, if any, the Court finds the following:

1. On or about March 9, 2015, Kristin Wilkinson, in her capacity as the Trustee of the Joy Beth Guinn Irrevocable Living Trust, was ordered by the Court to post bond in the amount of $350,000.00 on or before March 13, 2015;
2. Kristin Wilkinson, in her capacity as the Trustee of the Joy Beth Guinn Irrevocable Living Trust, has not posted the bond required by this Court.

It is therefore,

ORDERED, ADJUDGED, and DECREED, that Kristin Wilkinson is hereby removed as Trustee of the Joy Beth Guinn Irrevocable Living Trust in accordance with the provisions of Section 113.082 of the Texas Property Code. It is further,

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 1/30/2020
**Diane Trautman, County Clerk**
Harris County, Texas

_____ Deputy
LISA SHEREE MITCHAM


CON:525872|10514298

EXHIBIT 1

ORDERED, ADJUDGED, and DECREED, that ___Kyle Frazier___

is appointed as the Successor Interim Trustee pending the outcome of an Independent Mental

Examination of Joy Beth Guinn.  It is further,

ORDERED, ADJUDGED and DECREED, that the Successor Interim Trustee named in

this Order is hereby ordered to post bond in the amount of $___350,000.00___.

It is further,

ORDERED, ADJUDGED and DECREED, that Kristin Wilkinson shall immediately turn

over any and all funds of Joy Beth Guinn which she may have authority over and/or control of to

the Successor Interim Trustee named in this Order.

SIGNED this 26th day of March, 2015.

_____
JUDGE PRESIDING

Rec/Recs 3/26/15

APPROVED:

MACINTYRE McCULLOCH, STANFIELD
& YOUNG, LLP

By: _____
W. CAMERON McCULLOCH
State Bar Number 00788930
Cameron.McCulloch@mmlawtexas.com
CHRISTOPHER C. BURT
State Bar Number 24068339
2900 Weslayan, Suite 150
Houston, Texas 77027
(713) 572-2900
(713) 572-2902 (FAX)

GUARDIAN AD LITEM

Confidential information may have been redacted from the document in compliance with the Public Information Act.

A Certified Copy
Attest: 1/30/2020
**Diane Trautman, County Clerk**
Harris County, Texas

_____
LISA SHEREE MITCHAM          **Deputy**


 CON:525872|10514298

EXHIBIT 2



## BEFORE THE BOARD OF DISCIPLINARY APPEALS
### Appointed By
## THE SUPREME COURT OF TEXAS

| | | |
|---|---|---|
| **KRISTIN WILKINSON** | § | |
| **State Bar Card No. 24037708** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 45060** |
| | § | |
| **COMMISSION FOR** | § | |
| **LAWYER DISCIPLINE** | § | |
| **OF THE STATE BAR OF TEXAS** | § | |

### JUDGMENT AFFIRMING JUDGMENT OF ACTIVE SUSPENSION

On July 23, 2010, the Board of Disciplinary Appeals heard argument and considered the appeal of Kristin Wilkinson, State Bar Card No. 24037708, from the Judgment of Active Suspension signed July 22, 2009 by the 4E09 Evidentiary Panel of the State Bar of Texas District 4E grievance committee in Cause No. H0090520881. Appellant Kristin Wilkinson appeared and argued pro se. The Office of the Chief Disciplinary Counsel argued on behalf of Appellee Commission for Lawyer Discipline of the State Bar of Texas.

Having considered the record and briefs and having heard argument, the Board finds that the Judgment of Active Suspension should be in all respects **AFFIRMED**.

**IT IS THEREFORE ORDERED** that the Judgment of Active Suspension July 22, 2009 by the 4E09 Evidentiary Panel of the State Bar of Texas District 4E grievance committee in Cause No. H0090520881 be, and hereby is, in all respects **AFFIRMED**.

**SIGNED** this 27th day of July 2010.

_W. Clerk Lea_
**CHAIR PRESIDING**

EXHIBIT 2

Respondent's Name:      Bar Card Number:      CDC Attorney:
Kristin D. Wilkinson      24037708      Lisa M. Holt

Date of Sanction:      Sanction:
July 22, 2009      Judgment of Active Suspension
Dates of Active: 9/1/09-2/28/10
Dates of Probated: N/A
Court or Evid Panel:  04E09  Case Number: H0090520881
Summary of Findings:

On July 22, 2009, Kristin D. Wilkinson [#24037708], 45, of Houston, received a
Judgment of Active Suspension after a finding of professional misconduct by the District
04E09 Panel of the Grievance Committee.

Respondent failed to communicate with Complainant during the course of the
representation. In addition, Respondent failed to safeguard Complainant's funds and
property, and she failed to promptly render a full accounting regarding Complainant's
funds and property upon request. Finally, while representing the Complainant,
Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.

Respondent was ordered to pay attorneys' fees and costs in the sum of $23,153.03.
Respondent violated Rules 1.03(a), 1.03(b), 1.14(a), 1.14(b), and 8.04(a)(3).

Respondent filed an Appeal on August 21, 2009.

kwiktag®      024 500 285

EXHIBIT 2

## BEFORE THE DISTRICT 4E GRIEVANCE COMMITTEE
### EVIDENTIARY PANEL 4E09
### STATE BAR OF TEXAS

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE, Petitioner | § § § § | |
| V. | § § | H0090520881 |
| Kristin D. Wilkinson, Respondent | § § § | |

## JUDGMENT OF ACTIVE SUSPENSION

### Parties and Appearance

On June 22, 2009, came to be heard the above styled and numbered cause. Petitioner, Commission for Lawyer Discipline, appeared by and through its attorney of record and announced ready. Respondent, Kristin D. Wilkinson, Texas Bar Number 24037708, appeared in person and through attorney of record and announced ready.

### Jurisdiction and Venue

The Evidentiary Panel 4E09 having been duly appointed to hear this complaint by the chair of the Grievance Committee for State Bar of Texas District 4E, finds that it has jurisdiction over the parties and the subject matter of this action and that venue is proper.

### Professional Misconduct

The Evidentiary Panel, having considered all of the pleadings, evidence, stipulations, and argument, finds Respondent has committed Professional Misconduct as defined by Rule 1.06(V) of the Texas Rules of Disciplinary Procedure.

### Findings of Fact

The Evidentiary Panel, having considered the pleadings, evidence and argument of

counsel, makes the following findings of fact and conclusions of law:

1. Respondent is an attorney licensed to practice law in Texas and is a member of the State Bar of Texas.
2. Respondent resides in and maintains her principal place of practice in Harris County, Texas.
3. Respondent failed to keep Vera Calhoun reasonably informed about the status of her matter and promptly respond to her requests for information.
4. Respondent failed to explain a matter to the extent reasonably necessary to permit Vera Calhoun to make informed decisions regarding the representation.
5. Respondent failed to hold funds belonging to Vera Calhoun that were in Respondent's possession in connection with her representation separate from Respondent's own property.
6. Upon request by Vera Calhoun, Respondent failed to promptly render a full accounting regarding Vera Calhoun's funds and property.
7. Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.
8. The Chief Disciplinary Counsel of the State Bar of Texas has incurred reasonable attorneys' fees and direct expenses associated with this Disciplinary Proceeding in the amount of $23,153.03.

## Conclusions of Law

The Evidentiary Panel concludes that, based on foregoing findings of fact, the following Texas Disciplinary Rules of Professional Conduct have been violated: Rules: 1.03(a), 1.03(b), 1.14(a), 1.14(b) and 8.04(a)(3).

## Sanction

The Evidentiary Panel, having found that Respondent has committed professional misconduct, heard and considered additional evidence regarding the appropriate sanction to be imposed against Respondent. After hearing all evidence and argument and after having considered the factors in Rule 2.18 of the Texas Rule of Disciplinary Procedure, the Evidentiary Panel finds said findings and conclusions support a Judgment of Active Suspension.

Accordingly, it is ORDERED, ADJUDGED and DECREED that Respondent shall be actively suspended from the practice of law for a period of six (6) months beginning

September 1, 2009 and ending February 28, 2010.

## Terms of Active Suspension

It is further ORDERED that during the term of active suspension ordered herein, Respondent shall be prohibited from practicing law in Texas; holding herself out as an attorney at law; performing any legal services for others; accepting any fee directly or indirectly for legal services; appearing as counsel or in any representative capacity in any proceeding in any Texas or Federal court or before any administrative body; or holding herself out to others or using her name, in any manner, in conjunction with the words "attorney at law," "attorney," "counselor at law," or "lawyer."

It is further ORDERED that, on or before August 15, 2009, Respondent shall notify each of Respondent's current clients in writing of this suspension.

In addition to such notification, it is further ORDERED Respondent shall return any files, papers, unearned monies and other property belonging to current clients in Respondent's possession to the respective clients or to another attorney at the client's request.

It is further ORDERED Respondent shall file with the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701) on or before August 15, 2009, an affidavit stating all current clients have been notified of Respondent's suspension and that all files, papers, monies and other property belonging to all current clients have been returned as ordered herein.

It is further ORDERED Respondent shall, on or before August 15, 2009 notify in writing each and every justice of the peace, judge, magistrate, administrative judge or officer and chief justice of each and every court or tribunal in which Respondent has any

matter pending of the terms of this judgment, the style and cause number of the pending matter(s), and the name, address and telephone number of the client(s) Respondent is representing.

It is further ORDERED Respondent shall file with the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701) on or before August 15, 2009, an affidavit stating Respondent has notified in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court in which Respondent has any matter pending of the terms of this judgment, the style and cause number of the pending matter(s), and the name, address and telephone number of the client(s) Respondent is representing in Court.

It is further ORDERED that, on or before September 1, 2009, Respondent shall surrender her law license and permanent State Bar Card to the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701) to be forwarded to the Supreme Court of Texas.

## Attorney's Fees and Expenses

It is further ORDERED Respondent shall pay all reasonable and necessary attorney's fees and direct expenses to the State Bar of Texas in the amount of $23,153.03. The payment shall be due and payable on or before February 28, 2010, and shall be made by certified or cashier's check or money order. Respondent shall forward the funds, made payable to the State Bar of Texas, to the Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701).

It is further ORDERED that all amounts ordered herein are due to the misconduct of Respondent, are assessed as a part of the sanction in accordance with Rule 1.06(Y) of the

Texas Rules of Disciplinary Procedure. Any amount not paid shall accrue interest at the maximum legal rate per annum until paid and the State Bar of Texas shall have all writs and other post-judgment remedies against Respondent in order to collect all unpaid amounts.

<u>Publication</u>

This suspension shall be made a matter of record and appropriately published in accordance with the Texas Rules of Disciplinary Procedure.

<u>Other Relief</u>

All requested relief not expressly granted herein is expressly DENIED.

SIGNED this __22__ day of ____July____, 20_9_.

> EVIDENTIARY PANEL
> DISTRICT NO. 4E
> STATE BAR OF TEXAS
>
> _Catherine Wylie_
> Catherine Wylie
> **District 4E09 Presiding Member**

EXHIBIT 3



## BEFORE THE BOARD OF DISCIPLINARY APPEALS
### Appointed By
## THE SUPREME COURT OF TEXAS

| | |
|---|---|
| **KRISTIN WILKINSON**<br>**State Bar Card No. 24037708**<br><br>**v.**<br><br>**COMMISSION FOR**<br>**LAWYER DISCIPLINE**<br>**OF THE STATE BAR OF TEXAS** | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br>   **CAUSE NO. 48195** |

### JUDGMENT OVERRULING PLEA TO THE JURISDICTION AND AFFIRMING JUDGMENT OF PARTIALLY PROBATED SUSPENSION

On January 27, 2012, the Board of Disciplinary Appeals considered the Plea to the Jurisdiction filed by Kristin Wilkinson, State Bar Card No. 24037708, and the appeal by Kristin Wilkinson from the Judgment of Partially Probated Suspension signed January 21, 2011 by the 4E Evidentiary Panel of the State Bar of Texas District Grievance Committee in Cause No. H0080827321.

On January 26, 2012, the Board denied Appellant's request to delay oral argument until the Supreme Court of Texas ruled on her Motion for Rehearing in Cause No. 11-0975. Thereafter, Appellant and Appellee Commission for Lawyer Discipline of the State Bar of Texas appeared on January 27, and both sides waived argument. The Board accepted Appellant's hearing exhibits.

Having considered Appellant's plea and the response from the Commission for Lawyer Discipline, the Board finds that the Plea to the Jurisdiction should be **OVERRULED.**

Having considered the record and the briefs in the appeal, the Board finds that the Judgment of Partially Probated Suspension should be in all respects **AFFIRMED**.

EXHIBIT 3

IT IS THEREFORE ORDERED that the Plea to the Jurisdiction is OVERRULED.

IT IS FURTHER ORDERED that the Judgment of Partially Probated Suspension signed January 21, 2011 by the 4E Evidentiary Panel of the State Bar of Texas District Grievance Committee in Cause No. H0080827321 be, and hereby is, in all respects AFFIRMED.

SIGNED this _____ day of February 2012.

_____
CHAIR PRESIDING

EXHIBIT 3

I certify that this is a true and correct copy of the original.

*Christine E. [signature]*

Christine E. McKeeman, Exec Dir./Counsel ᶜ ᵒᶠ ¹³

### BEFORE THE DISTRICT GRIEVANCE COMMITTEE
### EVIDENTIARY PANEL 4F
### STATE BAR OF TEXAS

| | | |
|---|---|---|
| COMMISSION FOR LAWYER | § | |
| DISCIPLINE. | § | |
| Petitioner | § | |
| | § | |
| V. | § | H0080827321 [WEST] |
| | § | |
| KRISTIN D. WILKINSON, | § | |
| Respondent | § | HARRIS COUNTY, TEXAS |

### JUDGMENT OF PARTIALLY PROBATED SUSPENSION

#### Parties and Appearance

On December 10, 2010, came to be heard the above styled and numbered cause.  Trial commenced on December 10, 2010, was continued and was completed January 14, 2011. Petitioner, Commission for Lawyer Discipline, appeared by and through its attorney of record, J. G. Molleston and announced ready  Respondent, Kristin D. Wilkinson, Texas Bar Number 24037708, appeared in person, pro se, and announced ready.

#### Jurisdiction and Venue

The Evidentiary Panel 4E having been duly appointed to hear this complaint by the chair of the Grievance Committee for State Bar of Texas District 4, finds that it has jurisdiction over the parties and the subject matter of this action and that venue is proper.

#### Professional Misconduct

The Evidentiary Panel, having considered all of the pleadings, evidence, stipulations, and argument, finds Respondent has committed Professional Misconduct as defined by Rule 1.06(V) of the Texas Rules of Disciplinary Procedure.

#### Findings of Fact

Exhibit
1

EXHIBIT 3

I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

The Evidentiary Panel, having considered the pleadings, evidence and argument of counsel, makes the following findings of fact and conclusions of law:

1.      Respondent is an attorney licensed to practice law in Texas and is a member of the State Bar of Texas.

2.      Respondent resides in and maintains her principal place of practice in Harris County, Texas.

3.      On December 27, 2007, Adrienne U. West hired Kristin D. Wilkinson for representation regarding a civil matter arising out of a residential property boundary dispute. Complainant paid Respondent $25,000.00. The parties signed an employment contract.

4.      In July 2008, Adrienne U. West terminated Kristin D. Wilkinson.

5.      Kristin D. Wilkinson neglected Adrienne U. West's legal matter

6.      Kristin D. Wilkinson charged Adrienne U. West an unconscionable fee to prosecute a residential property boundary dispute.

7.      Kristin D. Wilkinson failed to hold funds and other property belonging in whole or part to Adrienne U. West in Wilkinson's possession separate from her own property.

8.      Upon termination of representation, Kristin D. Wilkinson failed to refund an advance payment of fees that had not been earned.

9.      Kristin D. Wilkinson engaged in conduct involving dishonesty, fraud, deceit or misrepresentation.

10.     The Chief Disciplinary Counsel of the State Bar of Texas has incurred reasonable attorneys' fees and direct expenses associated with this Disciplinary Proceeding in the amount of $15,458.59.

11.     Kristin D. Wilkinson owes restitution in the amount of $25,000.00 payable to Adrienne U.

EXHIBIT 3

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel

West.

Page 8 of 15

## Conclusions of Law

The Evidentiary Panel concludes that, based on foregoing findings of fact, the following Texas Disciplinary Rules of Professional Conduct have been violated: Rules: 1.01(b)(1), 1.04(a), 1.14(a), 1.15(d) and 8.04(a)(3).

## Sanction

The Evidentiary Panel, having found that Respondent has committed professional misconduct, heard and considered additional evidence regarding the appropriate sanction to be imposed against Respondent. After hearing all evidence and argument and after having considered the factors in Rule 2.18 of the Texas Rule of Disciplinary Procedure, the Evidentiary Panel finds said findings and conclusions support a Judgment of Partially Probated Suspension.

Accordingly, it is ORDERED, ADJUDGED and DECREED that Respondent be suspended from the practice of law for a period of forty-eight (48) months, beginning May 1, 2011 and ending May 1, 2015. Respondent shall be actively suspended from the practice of law for a period of twenty-four (24) months beginning May 1, 2011 and ending April 30, 2013. The twenty-four (24) month period of probated suspension shall begin on May 1, 2013 and shall end on May 1, 2015.

## Terms of Active Suspension

It is further ORDERED that during the term of active suspension ordered herein, or that may be imposed upon Respondent by the Board of Disciplinary Appeals as a result of a probation revocation proceeding, Respondent shall be prohibited from practicing law in Texas; holding herself out as an attorney at law; performing any legal services for others; accepting any fee directly or indirectly for legal services; appearing as counsel or in any representative capacity in any proceeding in any Texas or Federal court or before any administrative body, or holding herself out to others or

8

EXHIBIT 3

I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

Page 9 of 13

using her name, in any manner, in conjunction with the words "attorney at law," "attorney," "counselor at law," or "lawyer."

It is further ORDERED that, on or before May 1, 2011, Respondent shall notify each of Respondent's current clients in writing of this suspension.

In addition to such notification, it is further ORDERED Respondent shall return any files, papers, unearned monies and other property belonging to current clients in Respondent's possession to the respective clients or to another attorney at the client's request.

It is further ORDERED Respondent shall file with the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701) on or before May 1, 2011, an affidavit stating all current clients have been notified of Respondent's suspension and that all files, papers, monies and other property belonging to all current clients have been returned as ordered herein.

It is further ORDERED Respondent shall, on or before May 1, 2011 notify in writing each and every justice of the peace, judge, magistrate, administrative judge or officer and chief justice of each and every court or tribunal in which Respondent has any matter pending of the terms of this judgment, the style and cause number of the pending matter(s), and the name, address and telephone number of the client(s) Respondent is representing.

It is further ORDERED Respondent shall file with the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701) on or before May 1, 2011, an affidavit stating Respondent has notified in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court in which Respondent has any matter pending of the terms of this judgment, the style and cause number of the pending matter(s), and the name, address and telephone number of the client(s) Respondent is representing in

4

EXHIBIT 3

I certify that this is a true and correct copy of the original.

*Christine E. [signature]*

Christine E. McKeeman, Exec Dir./Counsel

Court.

It is further ORDERED that, on or before May 1, 2011, Respondent shall surrender her law license and permanent State Bar Card to the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701), to be forwarded to the Supreme Court of Texas.

## Terms of Probation

It is further ORDERED that during all periods of suspension, Respondent shall be under the following terms and conditions:

1. Respondent shall not violate any term of this judgment.

2. Respondent shall not engage in professional misconduct as defined by Rule 1.06(V) of the Texas Rules of Disciplinary Procedure.

3. Respondent shall not violate any state or federal criminal statutes.

4. Respondent shall keep State Bar of Texas membership department notified of current mailing, residence and business addresses and telephone numbers.

5. Respondent shall comply with Minimum Continuing Legal Education requirements.

6. Respondent shall comply with Interest on Lawyers Trust Account (IOLTA) requirements.

7. Respondent shall promptly respond to any request for information from the Chief Disciplinary Counsel in connection with any investigation of any allegations of professional misconduct.

8. Respondent shall pay all reasonable and necessary attorney's fees and direct expenses to the State Bar of Texas in the amount of $15,458.59. The payment shall be due and payable on or before March 1, 2013, and shall be made by certified or cashier's check or money order. Respondent shall forward the funds, made payable to the State Bar of Texas, to the Chief Disciplinary Counsel's

EXHIBIT 3

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel
Office. P.O. Box 12487. Austin, TX          414 Colorado St., Austin, TX 78701). Page 11 of 13

9.      Respondent shall pay restitution on or before December 31, 2011, to Adrienne U. West in the amount of $25,000.00. Respondent shall pay the restitution by certified or cashier's check or money order made payable to Adrienne U. West and delivered to the State Bar of Texas. Chief Disciplinary Counsel's Office. P.O. Box 12487. Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701)

### Probation Revocation

It is further ORDERED that, if Respondent violates any term of this judgment, the Board of Disciplinary Appeals ("BODA") shall enter an order revoking the probation and imposing the active suspension of Respondent from the practice of law to commence on the date of revocation.

Upon determination that Respondent has violated any term of this judgment, the Chief Disciplinary Counsel may, in addition to all other remedies available, file a motion to revoke probation with BODA and serve a photocopy of the motion on Respondent pursuant to Tex.R.Civ.P. 21a.

BODA shall conduct an evidentiary hearing. At the hearing, BODA shall determine by a preponderance of the evidence whether Respondent has violated any term of this Judgment. If BODA finds grounds for revocation, BODA shall enter an order revoking probation and placing Respondent on active suspension from the date of such revocation order. Respondent shall not be given credit for any term of probation served prior to revocation.

It is further ORDERED that any conduct on the part of Respondent which serves as the basis for a motion to revoke probation may also be brought as independent grounds for discipline as allowed under the Texas Disciplinary Rules of Professional Conduct and Texas Rules of Disciplinary Procedure

EXHIBIT 3

I certify that this is a true and correct copy of the **original**.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel

### Restitution, Attorney of Fees and Expenses

It is further ORDERED Respondent shall pay restitution on or before December 31, 2011, to Adrienne U. West in the amount of $25,900.00. Respondent shall pay the restitution by certified or cashier's check or money order made payable to Adrienne U. West and delivered to the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701).

It is further ORDERED Respondent shall pay all reasonable and necessary attorney's fees and direct expenses to the State Bar of Texas in the amount of $15,458.59. The payment shall be due and payable on or before, March 1, 2013, and shall be made by certified or cashier's check or money order. Respondent shall forward the funds, made payable to the State Bar of Texas, to the Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701).

It is further ORDERED that all amounts ordered herein are due to the misconduct of Respondent, are assessed as a part of the sanction in accordance with Rule 1.06(Y) of the Texas Rules of Disciplinary Procedure. Any amount not paid shall accrue interest at the maximum legal rate per annum until paid and the State Bar of Texas shall have all writs and other post-judgment remedies against Respondent in order to collect all unpaid amounts.

### Publication

This suspension shall be made a matter of record and appropriately published in accordance with the Texas Rules of Disciplinary Procedure.

### Other Relief

7

EXHIBIT 3

All requested relief not expressly granted herein is expressly DENIED.

SIGNED this _____ day of _____, 2011.

EVIDENTIARY PANEL
DISTRICT NO. 4E
STATE BAR OF TEXAS

_____
CATHERINE WYLIE
District 4E Presiding Member

I certify that this is a true and correct copy of the original.

_____
Christine E. McKeeman, Exec Dir./Counsel
Page 13 of 13

8

EXHIBIT 4



I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

Page __ of __

## BEFORE THE BOARD OF DISCIPLINARY APPEALS
### Appointed By
## THE SUPREME COURT OF TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| | § | |
| KRISTIN DIANE WILKINSON | § | CAUSE NO.  52540 |
| | § | |
| State Bar Card No. 24037708 | § | |

### JUDGMENT OVERRULING PLEA TO THE JURISDICTION
### AND   REVOKING PROBATION

On July 26, 2013, came on to be heard before the Board of Disciplinary Appeals the Petition

for Revocation of Probation filed by Petitioner Commission for Lawyer Discipline of the State Bar

of Texas and Respondent Kristin Wilkinson's Plea to the Jurisdiction. Petitioner appeared by

disciplinary counsel from the Office of the Chief Disciplinary Counsel of the State Bar of Texas and

announced ready. Respondent appeared pro se and urged her Plea to the Jurisdiction and also urged

an oral motion to stay the proceedings. After reading the pleadings and hearing argument, the Board

finds that the Plea to the Jurisdiction should be OVERRULED and that the Motion to Stay should

be, and hereby is, OVERRULED and DENIED. After reading the pleadings, hearing evidence, and

hearing argument, the Board finds that Respondent's probation should be REVOKED.

### Plea to the Jurisdiction

The Petition alleges that Respondent has materially violated the terms and conditions of the

Judgment of Partially Probated Suspension signed January 21, 2011 by the 4E Evidentiary Panel of

the District 4 Grievance Committee of the State Bar of Texas in cause no. H0080827321. The

EXHIBIT 4

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel

inds that it has exclusive and continuing jurisdiction to hear a motion to revoke a probated

suspension imposed by an evidentiary panel during the full term of suspension, including any

probationary period. Tex. R. Disciplinary Pro. 2.23; *In re State Bar of Texas*, 113 S.W.3d 730, 734

(Tex. 2003).

The Board also notes that Respondent appealed the Judgment of Partially Probated

Suspension to BODA on the merits (BODA Case No. 48195), and that BODA affirmed the

judgment in all respects on February 1, 2012. Respondent then appealed the BODA decision to the

Supreme Court of Texas (Case No. 12-0130), and the Supreme Court of Texas affirmed the BODA

decision on August 31, 2012.

Therefore, the Board hereby orders that the Plea to the Jurisdiction is OVERRULED.

### Petition for Revocation of Probation

The Board finds that:

(1)  Respondent, Kristin Diane Wilkinson, whose State Bar Card number is 24037708, is currently licensed and authorized by the Supreme Court of Texas to practice law.

(2)  Respondent was personally served with the Petition for Revocation of Probation and hearing notice in this cause by a duly authorized process server on July 3, 2013, in accordance with the Texas Rules of Disciplinary Procedure 2.23 ("TRDP"). The affidavit of service was filed with the Board on July 12, 2013.

(3)  On January 21, 2011, in a case styled, *Commission for Lawyer Discipline, Petitioner, v. Kristin D. Wilkinson, Respondent*, Case No. H0080827321, an Evidentiary Panel of the State Bar of Texas District 4E Grievance Committee found that Respondent had committed violations of Texas Disciplinary Rules of Professional Conduct 1.01(b)(1), 1.04(a), 1.14(a), 1.15(d) and 8.04(a)(3). The panel handed down a sanction of a forty-eight month partially probated suspension beginning May 1, 2011, and ending May 1, 2015, with twenty-four months active suspension starting May 1, 2011, and ending April 30, 2013, and twenty-four months probated suspension beginning May 1, 2013, and ending May 1, 2015.

*Wilkinson Judgment Revoking Probation*
*Page 2 of 5*

EXHIBIT 4



I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

(4)     State Bar attorney's fees and direct expenses in the amount of $15,458.59 were awarded and ordered payable on or before March 1, 2013.

(5)     Restitution to Adrienne U. West in the amount of $25.000.00 was awarded and ordered payable on or before December 31. 2011.

(6)     In addition to the requirements noted above, Respondent was also ordered, as specific requirements of her probation, not to violate any term of the judgment, not to engage in professional misconduct as defined by Rule 1.06(V) of the Texas Rules of Disciplinary Procedure, not to violate any state or federal criminal statutes, to keep the State Bar of Texas membership department notified of current mailing, residence, and business addresses, and telephone numbers, to comply with Minimum Continuing Legal Education requirements, to comply with Interest on Lawyers Trust Account (IOLTA) requirements, and to promptly respond to any request for information from the Chief Disciplinary Counsel in connection with any investigation of any allegations of professional misconduct.

(7)     Respondent acknowledged in her Notice of Appeal filed with the Board of Disciplinary Appeals ("BODA") that she received a copy of the Judgment of Partially Probated Suspension on February 9, 2011.

(8)     Respondent has paid no part of the restitution ordered in the Judgment of Partially Probated Suspension.

(9)     Respondent has made no arrangements or effort to make arrangements with the Office of the Chief Disciplinary Counsel to pay the restitution ordered in the judgment.

(10)    Respondent has paid no part of the attorney's fees ordered in the Judgment of Partially Probated Suspension.

(11)    Respondent has made no arrangements or effort to make arrangements with the Office of the Chief Disciplinary Counsel to pay the attorney's fees ordered in the judgment.

(12)    Respondent, Kristin Diane Wilkinson, is the same person as the Kristin D. Wilkinson who is the subject of the Evidentiary Judgment described above.

The Board concludes that:

(1)     Respondent has materially violated the terms and conditions of the Judgment of Partially Probated Suspension signed January 21, 2011 in cause no. H0080827321.

*Wilkinson Judgment Revoking Probation*
*Page 3 of 5*

EXHIBIT 4

I certify that this is a true and correct copy of the original.

*Christine E McKeeman*

Christine E. McKeeman, Exec. Dir./Counsel

(2)   Respondent's probation should be revoked and she should be actively suspended for the full term of the probationary period without credit for any probationary period served. Tex. R. Disciplinary Pro. 2.23.

It is therefore, ORDERED, ADJUDGED, and DECREED that Respondent, Kristin Diane Wilkinson. State Bar No. 24037708, be, and hereby is, actively SUSPENDED from the practice of law in the State of Texas for a period of twenty-four months effective immediately on the date this judgment is signed and ending on July 25, 2015.

It is further ORDERED, ADJUDGED and DECREED that Respondent, Kristin Diane Wilkinson, during said suspension is prohibited from practicing law in Texas, holding herself out as an attorney at law, performing any legal service for others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any proceeding in any Texas court or before any Texas administrative body, or holding herself out to others or using her name, in any manner, in conjunction with the words "attorney," "counselor," or "lawyer."

It is further ORDERED that Respondent, Kristin Diane Wilkinson, not later than thirty (30) days shall notify in writing each and every justice of the peace, judge, magistrate, and chief justice of each and every court, if any, in which Respondent. Kristin Diane Wilkinson. has any legal matter pending, if any, of her suspension, of the style and cause number of the pending matter(s), and of the name, address, and telephone number of the client(s) Respondent is representing in that court.  Respondent is also ORDERED to mail copies of all such notifications to the Statewide Compliance Monitor, Office of the Disciplinary Counsel, State Bar of Texas. P.O. Box 12487, Capitol Station, Austin, Texas 78711.

It is further ORDERED that Respondent, Kristin Diane Wilkinson, shall immediately notify each of her current clients and opposing counsel, if any, in writing, of her suspension.  In

*Wilkinson Judgment Revoking Probation*
*Page 4 of 5*

EXHIBIT 4

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel

ition to such notification, Respondent is ORDERED to return all files, papers, unearned fees

paid in advance, and all other monies and properties which are in her possession but which

belong to current or former clients, if any, to those respective clients or former clients within

thirty (30) days after the date on which this Judgment is signed by the Board.  Respondent is

further ORDERED to file with the Statewide Compliance Monitor, within the same thirty (30)

days, an affidavit stating that all current clients have been notified of his suspension and that all

files, papers, unearned fees paid in advance, and all other monies and properties belonging to

clients and former clients have been returned as ordered herein.  If Respondent should be unable

to return any file, papers, money or other property to any client or former client. Respondent's

affidavit shall state with particularity the efforts made by Respondent with respect to each

particular client and the cause of her inability to return to said client any file, paper, money or

other property.  Respondent is also ORDERED to mail a copy of said affidavit and copies of all

notification letters to clients, to the Statewide Compliance Monitor, Office of Chief Disciplinary

Counsel, State Bar of Texas, P.O. Box 12487, Capitol Station, Austin, Texas 78711.

It is further ORDERED that Respondent, Kristin Diane Wilkinson, immediately

surrender her Texas law license and permanent State Bar Card to the Office of Chief

Disciplinary Counsel, State Bar of Texas, for transmittal to the Clerk of the Supreme Court of

Texas.

Signed this _____ day of July 2013.

_____
CHAIR PRESIDING

EXHIBIT 4

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel

Page 1 of 13

FILED

By: _____

Board of Disciplinary Appeals
appointed by the
Supreme Court of Texas

## BEFORE THE BOARD OF DISCIPLINARY APPEALS
### APPOINTED BY
### THE SUPREME COURT OF TEXAS

| | | |
|---|---|---|
| IN THE MATTER OF | § | |
| | § | |
| KRISTIN DIANE WILKINSON | § | CAUSE NO. 52546 |
| | § | |
| STATE BAR CARD NO. 24037708 | § | |

## PETITION FOR REVOCATION OF PROBATION

**TO THE BOARD OF DISCIPLINARY APPEALS:**

Petitioner, the Commission for Lawyer Discipline, brings this action against Respondent, Kristin Diane Wilkinson, and would respectfully show the following:

### I.  RULES APPLICABLE/CONDITIONS PRECEDENT

This action is commenced by Petitioner pursuant to Rule 2.23 of the Texas Rules of Disciplinary Procedure and Rule 5 of the Board of Disciplinary Appeals' Internal Procedural Rules.  All conditions precedent to the relief sought herein have been performed or fulfilled.

### II.  RESPONDENT

Respondent, Kristin Diane Wilkinson, State Bar No. 24037708, may be served with process and notices in this matter at 907 Maple Branch, Pearland, Texas 77584.

### III.  DISCIPLINARY JUDGMENT

On January 21, 2011, in a case styled, *Commission for Lawyer Discipline, Petitioner, v. Kristin D. Wilkinson, Respondent*, Case No. H0080827321, an Evidentiary Panel of the State Bar of Texas District 4E Grievance Committee found that Respondent had committed violations of Texas Disciplinary Rules of Professional Conduct 1.01(b)(1), 1.04(a), 1.14(a), 1.15(d) and 8.04(a)(3).  A true and correct copy of the judgment is attached as Exhibit 1.  The panel handed

EXHIBIT 4

I certify that this is a true and correct copy of the original.

*Christine E. McKeeman*

Christine E. McKeeman, Exec Dir./Counsel 8  13

. a sanction of a forty-eight month partially probated suspension beginning May 1, 2011,

and ending May 1, 2015, with twenty-four months active suspension starting May 1, 2011, and

ending April 30, 2013, and twenty-four months probated suspension beginning May 1, 2013, and

ending May 1, 2015. State Bar attorney's fees and direct expenses in the amount of $15,458.59

were awarded and ordered payable on or before March 1, 2013. Restitution to Adrienne U. West

in the amount of $25,000.00 was awarded and ordered payable on or before December 31, 2011.

In addition to the requirements noted above, Respondent was also ordered, as specific

requirements of her probation, not to violate any term of the judgment.

Respondent acknowledged in her Notice of Appeal filed with the Board of Disciplinary

Appeals ("BODA") that she received a copy of the Judgment of Partially Probated Suspension on

February 9, 2011.

## IV. VIOLATIONS OF TERMS OF JUDGMENT

Respondent violated the following **terms of probation** contained in the Judgment of

Partially Probated Suspension:

1.   Respondent shall not violate any term of this judgment.

8.   Respondent shall pay all reasonable and necessary attorney's fees and direct expenses to the State Bar of Texas in the amount of $15,458.59. The payment shall be due and payable on or before March 1, 2013, and shall be made by certified or cashier's check or money order. Respondent shall forward the funds, made payable to the State Bar of Texas, to the Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701).

9.   Respondent shall pay restitution on or before December 31, 2011, to Adrienne U. West in the amount of $25,000.00. Respondent shall pay the restitution by certified or cashier's check or money order made payable to Adrienne U. West and delivered to the State Bar of Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St., Austin, TX 78701).

Respondent violated the above-noted terms of probation in the following manner:

EXHIBIT 4

I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

Respondent did not pay attorney's fees and direct expenses in the amount of $15,458.59

to the State Bar of Texas on nor before March 1, 2013, and did not do so by certified nor

cashier's check, nor money order, made payable to the State Bar of Texas, to the Chief

Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414 Colorado St.,

Austin, TX 78701), thus violating Term of Probation Number 8.

Respondent did not pay restitution on or before December 31, 2011, to Adrienne U. West

in the amount of $25,000.00. Respondent did not pay such restitution by certified nor cashier's

check, nor money order made payable to Adrienne U. West and delivered to the State Bar of

Texas, Chief Disciplinary Counsel's Office, P.O. Box 12487, Austin, TX 78711-2487 (1414

Colorado St., Austin, TX 78701), thus violating Term of Probation Number 9.

These inactions result in violations of Probationary Term Number 1.

As detailed above, Respondent violated probationary terms of her judgment.

## V. REVOCATION

Pursuant to Rule 2.23 of the Texas Rules of Disciplinary Procedure, the Board of

Disciplinary Appeals is granted jurisdiction for the full term of suspension, including any

probationary period, to hear a motion to revoke probation. "Upon proof, by a preponderance of

the evidence, of a violation of probation, the same shall be revoked and the attorney suspended

from the practice of law for the full term of the suspension without credit for any probationary

time served." Tex.R.Discipl.P. 2.23.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Petitioner prays Respondent be given

notice of these proceedings as provided by law and upon final hearing of this matter, that this

Honorable Board enter orders suspending Respondent's license to practice law for the full term

of her suspension, and for such other and additional relief to which Petitioner may be entitled.

Petition for Revocation of Probation
Kristin Diane Wilkinson
Page 3 of 5

EXHIBIT 4

Respectfully submitted,

LINDA A. ACEVEDO
Chief Disciplinary Counsel

Judith Gres DeBerry
Assistant Disciplinary Counsel

Office of the Chief Disciplinary Counsel
State Bar of Texas
P.O. Box 12487
Austin, Texas 78711
Telephone:  512.427.1350
FAX: 512.427.4167

By: _____
JUDITH GRES DEBERRY
State Bar No. 24040780

ATTORNEYS FOR PETITIONER

I certify that this is a true and correct copy of the original.

_____
Christine E. McKeeman, Exec Dir./Counsel
Page 4 of 3

EXHIBIT 4

<u>NOTICE OF HEARING</u>

NOTICE IS HEREBY GIVEN that a trial on the merits of the Petition for Revocation of

Probation heretofore sent to be filed with the Board of Disciplinary Appeals on this day, will be

held in the courtroom of the Supreme Court of Texas, Tom C. Clark Building, 14th and Colorado

Streets, Austin, Texas, at **9:00 a.m. on the 26th day of July 2013.**

Judith Gres DeBerry

I certify that this is a true and correct copy of the original.

Christine E. McKeeman, Exec Dir./Counsel

Page _5_ of _13_

EXHIBIT 5

THE STATE OF TEXAS
VS.

KRISTIN DIANE WILKINSON
1 HERMANN MUSEUM CIRCLE #1079
HOUSTON, TX  77004

SPN: 02232408
DOB: WF/09/19/63
DATE PREPARED: 06/27/06

D.A. LOG NUMBER:1177935
CJIS TRACKING NO.:
BY: TMR-S/C-JV  DA NO: 070609500
AGENCY:HCDA-S/C
O/R NO: SC05-0596
ARREST DATE:

NCIC CODE: 2699 36

230rd
GJ

RELATED CASES:

Vol 75 Page 17 AXGM

FELONY CHARGE:  MISAPPLICATION OF FIDUCIARY PROPERTY OF THE ELDERLY
CAUSE NO: 1074130
HARRIS COUNTY DISTRICT COURT NO: 174
FIRST SETTING DATE:

BAIL: $71,000
PRIOR CAUSE NO:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, **KRISTIN DIANE WILKINSON**, hereafter styled the Defendant, heretofore on or about **AND BETWEEN OCTOBER 25, 2004 THROUGH JULY 29, 2005**, did then and there unlawfully, while a fiduciary, namely, an attorney acting in a fiduciary capacity, intentionally and knowingly, pursuant to one scheme and continuing course of conduct, misapply property, to-wit: MONEY, of the value of over twenty thousand dollars and under one hundred thousand dollars by dealing with said property contrary to an agreement under which the Defendant held the property and in a manner that involved substantial risk of loss to VERA CALHOUN, an elderly person being over sixty-five years of age, the person for whose benefit the property was held.

F I L E D
CHARLES BACARISSE
District Clerk

JUN 2 8 2006

Harris County, Texas
By _____ Deputy

AGAINST THE PEACE AND DIGNITY OF THE STATE.

ASST. FOREMAN    230TH

_____
FOREMAN OF THE GRAND JURY

INDICTMENT

EXHIBIT 5

**Marilyn Burgess**
HARRIS COUNTY DISTRICT CLERK
P.O. BOX 4651
HOUSTON, TEXAS 77210-4651

*Certificate Of Disposition*

DATE:   1/30/2020
NAME:   WILKINSON, KRISTIN DIANE
DATE OF BIRTH:   9/19/1963

This certificate is issued under seal, certifying that the information contained herein is a true and correct restatement of the summary electronic data of the records filed and/or recorded in the District Clerk's Office, as it appears on this date.   A criminal search was conducted from 1976 to present.  Records pertaining to federal entities, other Counties',  Justices of the Peace or other Municipalities' Class C misdemeanor will NOT be displayed.

**The search results are dependent on identifiers entered by the user.**

The following    1   charges were found :

FILING DATE:    6/28/2006                          DEFENDANT NAME:   WILKINSON, KRISTIN DIANE
CASE:  107473001010                              COURT:     174
OFFENSE REPORT NO.:    HARRIS COUNTY D. A. OFFENSE NO: SC050596
OFFENSE:      MISAPP/FIDUC/FINAN OVER 200,00                LEVEL/DEGREE: Felony First Degree
DISPOSITION:
DISMISSED 1/8/2007

EXHIBIT 5

(WILKINSON, KRISTIN DIANE - PAGE : 2)

The following definitions apply only if cited as a part of the disposition above.

12.44 (b) The court authorized the state to prosecute the case as a misdemeanor under Texas Penal Code section 12.44 (b)

Deferred Adjudication of guilt-the court deferred further proceedings without entering a finding of guilt and placed the defendant on community supervision.

Deferred Adjudication of guilt terminated, defendant charged, case dismissed defendant completed community supervision and a dismissal and discharge may not be deemed a conviction (felony or misdemeanor) for the purposes of disqualification disabilities imposed by law for conviction of an offense.

Witness my official hand and seal of office on    1/30/2020

**Marilyn Burgess**
District Clerk Harris County, Texas

201 CAROLINE ~ PO BOX 4651 ~ HOUSTON, TEXAS 77210-4651 ~ (713) 755-7300

EXHIBIT 6

RECEIVED AND FILED
FOR RECORD
At 10:57 O'Clock A.M.

JUL 20 2017

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By_____ Deputy

CAUSE NO. 16-09-10238

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| KRISTIN D. WILKINSON, | § | |
| | § | |
| Respondent. | § | 284th JUDICIAL DISTRICT |

### COURT'S CHARGE TO THE JURY

LADIES AND GENTLEMEN OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

Court's Charge to the Jury                                                                 Page 1

"Certified as to certification on signature page"

SCANNED

EXHIBIT
A

Minute

Date: _____

EXHIBIT 6

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure that your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.    Do not let bias, prejudice, or sympathy play any part in your decision.

2.    Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.    You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.    If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.    All the questions and answers are important. No one should say that any question or answer is not important.

6.    Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence.

      The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.    Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

Court's Charge to the Jury                                                                                    Page 2

Minute

Date: _____

"Certified as to certification on signature page"

EXHIBIT 6

8.    Do not answer questions by drawing straws or by any method of chance.

9.    Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.   Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11.   The answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of jury misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

DEFINITIONS AND INSTRUCTIONS

A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

A trustee must administer the trust solely in the interest of the beneficiary.

The trustee must administer the trust as a prudent person would, in light of the purposes, terms, and other circumstances of the trust.

A trustee must take all reasonable steps to secure possession of, and maintain control over, the trust property, and use the level of care and skill a person of ordinary prudence would use to preserve trust property. This duty applies not only to tangible property, but also to other rights of the trust estate. For example, a trustee must take reasonable actions to collect claims due to the trust

Court's Charge to the Jury                                                                    Page 3

Minute

Date:_____

"Certified as to certification on signature page"

EXHIBIT 6

estate.

      Although a trustee may deposit trust funds in a bank or other financial institution, the trustee must use reasonable care in selecting the institution and must designate all such deposits as trust deposits. The trustee may not subject the property to unreasonable restrictions on withdrawal or leave it in non-interest bearing accounts for unduly long periods of time. Pending investment, distribution, or payment of debts, a trustee is authorized to deposit trust funds in a bank that is subject to supervision by state or federal authorities.

      A trustee shall invest and manage the trust assets solely in the interest of the beneficiaries.

      A beneficiary by written demand may request the trustee to deliver to each beneficiary of the trust a written statement of accounts covering all transactions since the last accounting or since the creation of the trust, whichever is later. If the trustee fails or refuses to deliver the statement on or before the 90th day after the date the trustee receives the demand or after a longer period ordered by a court, any beneficiary of the trust may file suit to compel the trustee to deliver the statement to all beneficiaries of the trust. The court may require the trustee to deliver a written statement of account to all beneficiaries on finding that the nature of the beneficiary's interest in the trust or the effect of the administration of the trust on the beneficiary's interest is sufficient to require an accounting by the trustee. However, the trustee is not obligated or required to account to the beneficiaries of a trust more frequently than once every 12 months unless a more frequent accounting is required by the court.

      Unless the terms of the trust provide otherwise, the trustee is entitled to reasonable compensation from the trust for acting as trustee.

      A trustee may discharge or reimburse herself from trust principal or income or partly from

Court's Charge to the Jury                                    Page 4

Minute

Date:_____

"Certified as to certification on signature page"

EXHIBIT 6

both for advances made for the convenience, benefit, or protection of the trust or its property or expenses incurred while administering or protecting the trust.

Minute

Date:_____

"Certified as to certification on signature page"

EXHIBIT 6

QUESTION NO. 1

Did Kristin Wilkinson engage in conduct involving dishonesty, fraud, deceit or misrepresentation?

The term "fraud" denotes conduct having a purpose to deceive and not merely negligent misrepresentation or failure to apprise another of relevant information.

The term "misrepresentation" may be defined as one or both of the following: 1) The act or an instance of making a false or misleading assertion about something, usually with the intent to deceive. The word denotes not just written or spoken words but also any other conduct that amounts to a false assertion. 2) The assertion so made; an incorrect, unfair, or false statement; an assertion that does not accord with the facts.

Answer "Yes" or "No."

Answer: __Yes__

Court's Charge to the Jury                                                      Page 6

Minute

Date: _____

*"Certified as to certification on signature page"*

EXHIBIT 6

QUESTION NO. 2

Did Kristin Wilkinson commit a criminal act that reflects adversely on her honesty, trustworthiness or fitness as a lawyer in other respects?

It is a "criminal act" to intentionally, knowingly, or recklessly misapply property held as a fiduciary in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

A "fiduciary" includes a trustee, an attorney in fact or agent appointed under a durable power of attorney, or any other person acting in a fiduciary capacity.

A person acts in a "fiduciary capacity" when the business she transacts, or the money or property which she handles, is not hers or for her own benefit, but for the benefit of another person with whom she has a relationship implying and necessitating great confidence and trust and a high degree of good faith.

A person acts "intentionally" with respect to the nature or result of her conduct when it is her conscious objective or desire to engage in the conduct or cause the result.

A person acts "knowingly" with respect to the nature of or the circumstances surrounding her conduct when she is aware of the nature of her conduct or that the circumstances exist or that her conduct is reasonably certain to cause the result.

A person acts "recklessly" with respect to circumstances surrounding her conduct or the result of her conduct when she is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

Answer "Yes" or "No."

Answer: _Yes_

Court's Charge to the Jury

Page 7

Minute

Date: _____

"Certified as to certification on signature page"

EXHIBIT 6

**Presiding Juror:**

1.   When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.   The presiding juror has these duties:

    a.   have the complete charge read aloud if it will be helpful to your deliberations;

    b.   preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.   give written questions or comments to the bailiff who will give them to the judge;

    d.   write down the answers you agree on;

    e.   get the signatures for the verdict certificate; and

    f.   notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror?  If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1.   You may answer the questions on a vote of 10 jurors.  The same 10 jurors must agree on every answer in the charge.  This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2.   If 10 jurors agree on every answer, those 10 jurors sign the verdict.

    If 11 jurors agree on every answer, those 11 jurors sign the verdict.

    If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.   All jurors should deliberate on every question.  You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers.  But when you sign the verdict, only those 10 or 11 of you who agree on every answer will sign the verdict.

Do you understand these instructions?  If you do not, please tell me now.

HONORABLE TIM WOMACK
Specially Assigned Judge

Court's Charge to the Jury                                                          Page 8

**Minute**

Date:_____

"Certified as to certification on signature page"

EXHIBIT 6

## VERDICT CERTIFICATE

Check one:

_____ Our verdict is unanimous.  All 12 of us have agreed to each and every answer.  The presiding juror has signed the certificate for all 12 of us.

_____          _____
Signature of Presiding Juror                          Printed Name of Presiding Juror

__✓__ Our verdict is not unanimous.  Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous.  Ten of us have agreed to each and every answer and have signed the certificate below.

Signature:                                              Name Printed:

1. _____          1. David Yost
2. _____          2. Troy Massey III
3. _____          3. Katrine Odom
4. Tonja M. Votaw                     4. Tonja M. Votaw
5. _____          5. Greg Zanoff
6. _____          6. Keith Manchester
7. Teresa Essate                      7. Teresa Essate
8. _____          8. April Heinrichs
9. Rita Hightower                     9. Rita Hightower
10. _____         10. Robert Potter
11. _____         11. Greg Burmeister

Court's Charge to the Jury                                        Page 9

**Minute**
Date:_____

EXHIBIT 6

I, Melisa Miller, do hereby Certify _15_
pages in Cause #_160910238_ as being a
true and correct copy of the Original
Record now on file in the District Clerk's
Office of Montgomery County, Texas.

Witness My Official Seal of Office in Conroe, Texas
On This the _19th_ Day of _July_ , _2019_

By: _____Deloy Parker_____ ,Deputy

EXHIBIT 7

EXHIBIT A

# THE CAROLYN S. CLARK IRREVOCABLE LIVING TRUST

## PRIVILEGED AND CONFIDENTIAL

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

THE CAROLYN S. CLARK IRREVOCABLE LIVING TRUST
TABLE OF CONTENTS

RECITATIONS

PART 1
IDENTIFICATIONS AND APPOINTMENTS

1.1 Grantor.
1.2 Primary Beneficiaries.
1.3 Purpose.
1.4 Trustee.
1.5 Definitions.

PART 2
ESTABLISHMENT OF TRUSTS; DISPOSITION
OF TRUST PROPERTY

2.1 Establishment of the Carolyn S. Clark Irrevocable Living Trust.
    (A)  General.
    (B)  Beneficiaries' Withdrawal Right.
    (C)  Distributions During Carolyn S. Clark's Lifetime.
    (D)  Distributions Upon the Death of Carolyn S. Clark.
    (E)  Maximum Duration of Trusts.
    (F)  Major Disaster.
2.2  S Corporation Stock.
    (A)  Current Income Beneficiary.
    (B)  Distributions.
    (C)  Termination.
2.3  Spendthrift Clause.
2.4 Nature of Trust Income.
2.5 Undistributed Income Added to Principal.
2.6 Distribution to Beneficiary for Whom Trust Already Established.

PART 3
POWERS OF TRUSTEE

3.1 Definition of Trustee; Distribution of Powers.
3.2 Investment Standard.
3.3 General Powers.
    (A)  Standard.
    (B)  Retention of Assets.
    (C)  Sale or Disposition of Trust Property.
    (D)  Investment of Trust Property.
    (E)  Loans of Trust Property.
    (F)  Acquisition of Non-Productive Property.
    (G)  Improving and Leasing Trust Property.

"Certified as to certification on signature page"

EXHIBIT A

(H)  Borrowing Money.
(I)  Adjustment of Claims and Suits; Prepayment of Any Existing Mortgage.
(J)  Employment of Agents.
(K)  Voting Securities; Reorganizations.
(L)  Insurance.
(M)  Mineral Contracts and Sales.
(N)  Corporations.
(O)  Partnerships.
(P)  Limited Liability Companies.
(Q)  Businesses.
(R)  Special Farm Powers.
(S)  Payment of Expenses and Taxes.
(T)  Reliance on Business Documents.
(U)  Acceptance of Additional Property.
(V)  Powers Under Changed Conditions.
3.4  Additional Powers.
(A)  Custody of Trust Estate; Nominees; Disbursement of Funds.
(B)  Execution of Documents.
(C)  Apportionment of Income and Expenses.
(D)  Division Into Shares or Separate Trusts.
(E)  Method of Distribution or Division.
(F)  Occupancy of Trust Property.
(G)  Termination of Small Trust.
(H)  Tax Elections.
(I)  Payments to Incapacitated Person.
(J)  Assistance to Certain Estates.
(K) Proof of Lineage.
3.5  Restrictions on Trustees.
(A)  Beneficiary Serving as Trustee.
(B)  Trustee with Legal Obligation of Support.
(C)  Life Insurance Insuring the Life of the Trustee.
(D)  Power of Beneficiary Acting As Trustee Restricted.
(E)  Further Limitations on Powers.
3.6  Transactions With Related Parties and Self-Dealing.
3.7  Release of Power by Amendment of Trusts.
3.8  Records; Inspection.
3.9  Annual Report.
3.10  Compensation and Bond.
3.11  No Court Supervision.
3.12  Out-of-State Properties.
3.13  Provisions Concerning Generation-Skipping Transfer Tax.
(A)  Division Into Separate Trusts Resulting in Change in Inclusion Ratio.
(B)  Separate Trusts for Generation-Skipping Transfer Tax Purposes.
(C)  GST Inclusion Ratio.
(D)  Generation-Skipping Transfer Taxes and Payment.

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

(E)  Changes to Qualified Severance Rules.
(F)  Limitation of Liability of Trustee.
3.14  Merger of Trusts.
3.15  Other Divisions of Trusts.
3.16  Trust as Permissible Subchapter S Stockholder.
3.17  Qualified Subchapter S Trust and Electing Small Business Trust.
3.18  Environmental Hazards.
(A)  Power to Deal with Environmental Hazards.
(B)  Trustee's Right to Refuse Contributions.
(C)  Liability of Trustee.

## PART 4
### TRUSTEE'S RIGHTS AND RESPONSIBILITIES REGARDING LIFE INSURANCE

4.1  All Rights Relinquished by Grantor.
4.2  Rights of Trustee in Insurance.
4.3  Payment of Premiums.
4.4  Collection of Insurance Proceeds.
4.5  No Tracing by Insurance Companies.
4.6  Trustee's Obligation to Collect.
4.7  Application of Proceeds and Benefits.

## PART 5
### LIABILITY OF TRUSTEE AND PERSONS DEALING WITH TRUSTEE

5.1  Persons Dealing With Trustee.
5.2  Limitation of Liability of Trustee for Loss to Trust Estate.
5.3  Limitation of Liability of Trustee for Acts of Others.
5.4  Limitation of Liability of Trustee to Third Parties.
5.5  Reliance on Probated Will of Person Possessing Power of Appointment.
5.6  Judgment and Discretion of Trustee Final.

## PART 6
### IRREVOCABILITY AND DESIGNATION BY TRUSTEE

6.1  Trusts Irrevocable.
6.2  Renouncement of Interest by Grantor.
6.3  Resignation of Trustee.
6.4  Powers and Duties of Successor Trustee.
6.5  Reorganization or Substitution of Corporate Trustee.
6.6  Investments in Common Trust Funds of a Bank.

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

## PART 7
## DEFINITIONS

7.1   Administration Expenses.
7.2   Descendants.
7.3   Code.
7.4   Corporate Fiduciary.
7.5   Death Taxes.
7.6   Debts.
7.7   Education.
7.8   Electing Small Business Trust.
7.9   Grantor's County.
7.10  Major Disaster Distribution.
7.11  Qualified Subchapter S Trust.
7.12  S Corporation.
7.13  Spendthrift Trust.
7.14  Survive.

## PART 8
## MISCELLANEOUS

8.1   Situs of Trusts.
8.2   Use of Words.
8.3   Maximum Duration of Trusts.
8.4   Parties Bound.
8.5   Invalid Provisions.
8.6   Headings; Table of Contents.
8.7   Photocopy Original.

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

### THE CAROLYN S. CLARK IRREVOCABLE LIVING TRUST

THIS AGREEMENT is made and entered into between Carolyn S. Clark of Conroe, Montgomery County, Texas, as Grantor, Kevin J. Clark of Conroe, Montgomery County, Texas, as Initial Co-Trustee and James C. Flitsch of Holly Springs, Marshall County, Mississippi, as Initial Co-Trustee. All other trusts created by Carolyn S. Clark and Samuel B. Clark before the creation of this trust are revoked effective July 15, 2017.

### RECITATIONS:

Grantor intends to establish an irrevocable Trust for the benefit of Carolyn S. Clark during her lifetime and for the benefit of her lineal descendants only, as set out herein. Grantor intends to convey to such Trust certain property listed on Schedule "A" and any property Carolyn S. Clark may convey to the Trust in the future. The Co-Trustees are willing to carry out the duties enumerated in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants herein set forth and other good and valuable consideration, Grantor and the Co-Trustees agree as follows:

### PART 1

### IDENTIFICATIONS AND APPOINTMENTS

1.1 **Grantor.** Carolyn S. Clark may sometimes be referred to herein as "Carolyn" or the "Grantor." Carolyn is the surviving spouse of Samuel B. Clark and is unmarried. There are no persons whom are to be provided for by the Trust, unless specifically referred to herein as a beneficiary.

1.2 **Primary Beneficiaries.** Whenever used in this Agreement, the term "Primary Beneficiaries" shall mean all of the following individuals: Carolyn S. Clark, the children of Carolyn S. Clark and Samuel B. Clark, and the lineal descendants of Carolyn S. Clark and Samuel B. Clark, including their grandchildren and great-grandchildren and their lineal

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

descendants until this trust terminates.  Whenever used in this Agreement, the term "Primary Beneficiary" shall mean one (1) of the Primary Beneficiaries.

      **1.3**     **Purpose.**  The purpose of this Trust shall be to care and provide for all needs of Carolyn S. Clark during her lifetime and to provide for the payment of education expenses for the primary beneficiaries so long as the education expenses will result in employability and increase of the beneficiary's income and enjoyment of life over the lifetime of the beneficiaries through, but not by way of limiting the definition of educational endeavors: completion of education, diploma, trade school, vocational school, vocational training, higher education, post secondary education, licensure, certification, graduate education, post graduate education.

      **1.4**     **Co-Trustees.**  As Initial Co-Trustees, Kevin J. Clark shall be the initial Primary Co-Trustee and James C. Flitsch shall be the initial Secondary Co-Trustee of any Trust created in this Agreement.  References to the co-trustees shall mean "Co-Trustees," whether the initial co-trustees or later-appointed trustees, and any typographical error referring to the co-trustees as "co-trustee" shall be disregarded if the singularly spelled word "trustee" in context should mean "co-trustees."  There shall at all times be two individuals serving as co-trustees making together all decisions necessary to carry out the purpose and management of the Trust.  The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee.  If Kevin J. Clark ceases or fails to serve before the appointment of his replacement, then James C. Flitsch shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee.  If James C. Flitsch ceases or fails to serve, then Kevin J. Clark shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or

-2-

"Certified as to certification on signature page"

EXHIBIT 7

## EXHIBIT A

trust company by written instrument bearing his signature and delivered to the appointee.  Both Kevin J. Clark and James C. Flitsch shall appoint Co-Trustees to replace themselves at such time when either one or both of them is in contemplation of ceasing to serve or is in danger of becoming unable to serve.

    **1.5**    **Definitions.**  Several terms are used in this Agreement that are defined in Part 7. Carolyn has reviewed in detail the definitions set forth in Part 7 and directs that those definitions shall apply throughout this Agreement unless the context in which a defined term is used clearly implies another meaning.

### PART 2

### ESTABLISHMENT OF TRUSTS; DISPOSITION OF TRUST PROPERTY

    **2.1**    **Establishment of the CAROLYN S. CLARK IRREVOCABLE LIVING TRUST.**

    *(A) General.*  Carolyn S. Clark has conveyed to the Co-Trustees the properties listed in Schedule "A" attached hereto and made a part hereof for all purposes.  The Co-Trustees accept such properties in trust under the terms and conditions of this Agreement.  Property subsequently transferred to the Co-Trustees to be held in trust hereunder shall be allocated among the trusts that are in existence under this Agreement at the time of the transfer in accordance with the directions given in the instrument of transfer, or, in the absence of such directions, as though such properties were among the original properties listed in Schedule "A." The Trusts so established herein may be collectively referred to as the Carolyn S. Clark Irrevocable Living Trust.

    *(B) Beneficiaries' Withdrawal Right.*  The provisions of this paragraph 2.1(B) shall govern the right of a beneficiary to withdraw, (hereinafter a "Withdrawal Right"), any addition by *inter vivos* gift, including the original addition, (hereinafter a "Withdrawable Addition"), to

-3-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

any Trust created by this Agreement.  Carolyn S. Clark, after making a gift to any Trust created by this Agreement may, by written instrument delivered to the Co-Trustees prior to or contemporaneously with the gift, modify the application of the provisions of this paragraph 2.1(B) with respect to that particular gift (a "Withdrawal Modification").  For example, but not by way of limitation, the donor may alter the amount, duration and/or notice rights with respect to any Withdrawal Right granted in this paragraph 2.1(B), and create Withdrawal Rights exercisable in accordance with this paragraph 2.1(B) in one or more beneficiaries who are not described in paragraph 2.1(B).

*(1) Beneficiaries Possessing Withdrawal Right*.  Any beneficiary who could, in the discretion of the Co-Trustees, receive distributions of income or principal from the Trust to which a Withdrawable Addition is made (the "Donee Trust") during the year in which a Withdrawable Addition is made shall have a Withdrawal Right.

*(2) Amount Subject to Withdrawal Right*.  Each beneficiary who possesses a Withdrawal Right pursuant to this paragraph 2.1(B) may demand withdrawal of the beneficiary's proportionate part only (determined according to the number of beneficiaries of the Donee Trust who possess a Withdrawal Right pursuant to this paragraph 2.1(B) as of the date of the gift) of an amount equal to the market value of the Withdrawable Addition on the date of the gift.  Notwithstanding the foregoing, unless the donor specifies otherwise in a Withdrawal Modification, the maximum aggregate amount which may be withdrawn by any beneficiary in any calendar year pursuant to the beneficiary's Withdrawal Right shall be limited in value to the maximum amount that would not have been considered a release of a general power of appointment under Sections 2041(b)(2) and 2514(e) of the Code if such beneficiary's Withdrawal Right had not been exercised and had lapsed during the same calendar year.

-4-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

(3) *Notice to Beneficiary of Withdrawal Right.* Carolyn S. Clark requests that the Co-Trustees of the Donee Trust give notice to a beneficiary who possesses a Withdrawal Right pursuant to this paragraph 2.1(B) (or, if the beneficiary is then under any legal disability of any kind, to the beneficiary's legal guardian or, if no legal guardian has been appointed, to the beneficiary's natural guardian) within a reasonable time following the date that each Withdrawable Addition is made to the Donee Trust.   No Co-Trustee shall be liable to Carolyn S. Clark or to any beneficiary for failing to give notice pursuant to this paragraph 2.1(B).

(4) *Exercise of Withdrawal Right.*   Each Withdrawal Right shall be exercisable only by a written instrument (executed by or on behalf of the beneficiary possessing the Withdrawal Right) delivered to one or both of the Co-Trustees of the Donee Trust any time from the date a Withdrawable Addition is made to the Donee Trust until December 31 of the calendar year in which a Withdrawable Addition is made to the Donee Trust. The Co-Trustees of the Donee Trust who receive the beneficiary's written instrument exercising her Withdrawal Right shall pay the thus demanded amount promptly upon receipt of the beneficiary's written instrument exercising her Withdrawal Right.  Notwithstanding any other provision of this instrument to the contrary, the Co-Trustees of the Donee Trust shall, at all times while any such Withdrawal Right is outstanding, retain sufficient liquid funds or transferrable assets in the Donee Trust to satisfy all such Withdrawal Rights that are then outstanding.

(5) *Lapse of Withdrawal Right.*  Except as otherwise specifically provided in this Agreement, to the extent no demand to withdraw is made within the time prescribed by the preceding paragraph, the right to make such demand shall lapse.

(C) *Distributions During Carolyn S. Clark's Lifetime.*  During Carolyn S. Clark's lifetime, the Co-Trustees shall have the power to accumulate all or part of the net income of the

-5-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

Trust and to distribute outright and free of trust to or for the benefit of the Primary Beneficiaries as follows:

(1) twenty percent (20%) of the non-real property assets, including liquid Trust assets or assets held as financial investments that are convertible into liquid assets of the Trust, and not otherwise designated, shall be designated to pay solely for the education of the Primary Beneficiaries and lineal descendants of Carolyn S. Clark and Samuel B. Clark as referenced in this Trust;

(2) eighty percent (80%) of the assets of the Trust, not otherwise designated, are designated to pay for all needs and care of any and every nature; maintenance; social needs; recreation; entertainment; support; and for any request for funds or right of withdrawal made by Carolyn S. Clark for any reason whatsoever for the well-being, enjoyment and support of Carolyn S. Clark, from such amounts of income or principal or both (even to the exhaustion of the total amount of the distribution thereof) and 100% use of the residential real estate located at 2711 Bay Laurel Ln., Conroe, Montgomery County, Texas 77304, shall be designated for the benefit and sole use of Carolyn S. Clark and the Trust shall at all times pay all taxes, insurance, and regular or scheduled maintenance and repair costs to care for the structure and property;

(3) 100% use of the residential real estate located at 2113 N Thompson St., Conroe, Texas 77301-1224, legally described as: Lot 4, Block 1, Of Sellers Park, a Subdivision in Montgomery County, Texas according to the Map thereof recorded in Volume 5, Page 361, of the Map and/or Plat Records of Montgomery County, Texas shall be designated for the benefit and sole use of Diane M. Clark, daughter, born October 12, 1965, so long as Diane M. Clark continues to pay her own utilities and normal daily cleaning and maintenance of the home, unless she becomes unable to do so due to temporary or permanent financial inability or is unable to do so

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

due to a temporary or permanent medical reason, in which such case the Trust shall pay these expenses.  The Trust shall at all times pay all taxes, insurance, and regular or scheduled maintenance and repair costs to care for the structure and property.

(4)  The Co-Trustees may make unequal distributions from the Trust among the beneficiaries, and no such distributions shall be taken into account upon either the division of the Trust or upon final distribution of the Trust properties.

*(D)  Distributions Upon the Death of Carolyn S. Clark.*   Upon the death of Carolyn S. Clark the following property shall be distributed and/or conveyed as the case may be and shall vest as follows:

(1)   to Diane M. Clark, my daughter, born October 12, 1965, 100% in fee simple the residential real estate located at 2113 N. Thompson St., Conroe, Texas  77301-1224, legally described as: Lot 4, Block 1, Of Sellers Park, a Subdivision in Montgomery County, Texas according to the Map thereof recorded in Volume 5, Page 361, of the Map and/or Plat Records of Montgomery County, Texas;

(2) to Kevin J. Clark, my son, born November 9, 1958, 100% in fee simple the residential real estate located 2711 Bay Laurel Ln., Conroe, Montgomery County, Texas 77304 that has been transferred or conveyed into this Trust and all personal property of Carolyn S. Clark in the home located at 2711 Bay Laurel Ln., Conroe, Montgomery County, Texas 77304 and not otherwise designated;

(3) except for compensation of the Co-Trustees and expenses of administering the Trusts created by this Agreement and assets and property of those trusts, the remaining one-hundred percent (100%) of the Trust assets shall be designated to pay solely for the education of the lineal descendants of Carolyn S. Clark and Samuel B. Clark as referenced in this Trust; and

-7-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

(4) Any other distributions that may be added by Carolyn S. Clark during her lifetime.

*(E) Maximum Duration of Trusts.*  Despite any other provision of this Trust, to the extent that any trust created herein has not previously vested in a beneficiary, the trust shall terminate upon the expiration of the period of the applicable Rule Against Perpetuities (determined using as measuring lives the descendants of Queen Elizabeth II of England living at the date of death of Carolyn S. Clark).  As soon as is practicable after the termination of the Trust, the Co-Trustees shall distribute the undistributed property, income and remaining principal of the Trust *per capita* to the then living lineal descendants of Carolyn S. Clark and Samuel B. Clark, including and limited to, the living lineal descendants of the following:

(i) Kevin J. Clark, son, born November 9, 1958;

(ii) Lisa R. Siegle, daughter, born August 4, 1960; and

(iii) Diane M. Clark, daughter, born October 12, 1965.

*(F)*      *Major Disaster*.  If any of the then living lineal descendants of Kevin J. Clark, Lisa R. Siegle, and/or Diane M. Clark fail to survive, then the remaining principal and undistributed income of the Trust shall be distributed at the Co-Trustees' discretion in accordance with the terms of any trust created by this Trust and in accord with the Major Disaster Distribution provision in Part 7 of this Agreement.

2.2      S Corporation Stock.  If any stock of a corporation which is an S Corporation is allocated to or acquired by a trust created by this Agreement, the Co-Trustees are authorized to establish a separate Trust or a separate share treated as a separate Trust for which there will be a sole "Current Income Beneficiary" as that phrase is used in Section 1361(d) of the Code if such action is desirable to continue the S Corporation status of the corporation and if the Co-

-8-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

Trustee believe in good faith that the election provided by Section 1361(d)(2) of the Code will be effectively exercised by the Current Income Beneficiary (or her, his or its legal representative). Each such separate Trust (or separate share) shall be designated by the name of the Current Income Beneficiary thereof followed by the name of the S Corporation whose stock is held in trust with the words "Trust S." Each Trust S shall be administered in accordance with the same provisions contained in the Trust to which the stock was originally allocated; provided however, to the extent inconsistent with the provisions of that original Trust, the provisions of this Section shall control the administration of each "Trust S" created.

(A) *Current Income Beneficiary.* Each Trust S shall have only one Current Income Beneficiary. The Current Income Beneficiary of a Trust S shall be the person who then has a present right to receive income distributions from the Trust to which the S Corporation stock was originally allocated by other provisions of this Agreement.

(B) *Distributions.* The Co-Trustees of each Trust S shall distribute all of the net income (as that term is defined in Section 643(b) of the Code) to the Current Income Beneficiary at least annually. Distributions of principal shall be governed by the terms of the Trust to which the S Corporation stock was originally allocated, but for so long as the Trust is a Trust S within the scope of this Section, principal distributions may be made only to the Current Income Beneficiary. In any event, however, the Co-Trustees, in their sole discretion, may make distributions to the Current Income Beneficiary of such amounts of principal as the Co-Trustees deem appropriate to provide for taxes on income or gain taxed to, but not distributed to, the Current Income Beneficiary.

(C) *Termination.*

(1) *Beneficiary Living.* If any Trust S is terminated during the lifetime of the

-9-

"Certified as to certification on signature page"

EXHIBIT 7

## EXHIBIT A

Current Income Beneficiary, all of the then remaining principal and undistributed income of that Trust shall be distributed to the Current Income Beneficiary. Notwithstanding the foregoing, if at any time after a Trust S is established, the Trust ceases to be a Qualified Subchapter S Trust, but is not otherwise terminated, then the assets contained in that Trust shall be held as a part of the Trust to which the S Corporation stock was originally allocated, to be administered as a part thereof.

(2) *Beneficiary Deceased.* Unless distributed earlier pursuant to another provision of this Agreement, each Trust S shall terminate on the death of the Current Income Beneficiary whose name designates such Trust, at which time the Co-Trustees shall administer or distribute any property in that Trust S in accordance with the provisions that would have been applicable to the administration of those assets if that Trust S had never been created. If upon application of those provisions, (1) S Corporation stock would remain in a Trust created or authorized under this Agreement, (2) the Co-Trustees determine to continue the S Corporation status of the corporation, and (3) if the Co-Trustees believe in good faith that the election provided by Section 1361(d)(2) of the Code will be effectively exercised by the then Current Income Beneficiary (or his or her legal representative), then the stock of each S Corporation shall be held in a separate Trust to be administered in accordance with this Section, with such consenting beneficiary becoming the Current Income Beneficiary of the Trust.

2.3    **Spendthrift Clause.** All trusts created in this Agreement shall be Spendthrift Trusts. Assignment of any spendthrift provision in this Trust is prohibited.

2.4    **Nature of Trust Income.** It is Carolyn S. Clark's express intent and Carolyn S. Clark so directs that the income (whether accumulated or distributed) of each Trust created under this Agreement be deemed to have been given by Carolyn S. Clark so that such income

-10-

"Certified as to certification on signature page"

EXHIBIT A

shall be deemed the separate property of the beneficiary and not the community property of the beneficiary and the beneficiary's spouse.

**2.5  Undistributed Income Added to Principal.**  Any Trust income that the Co-Trustees are permitted or required to accumulate and that is not distributed within the first sixty-five (65) days following the end of the taxable year of that Trust shall be added to the principal thereof and administered as a part of such principal.

**2.6  Distribution to Beneficiary for Whom Trust Already Established.**  If any distribution of any property previously held in trust under this Agreement for any beneficiary is to be made to another beneficiary for whom at the time the Co-Trustees hold property in any trust, then such distribution may, in the Co-Trustees' sole and absolute discretion, be made directly to the latter beneficiary or may be added to and become a part of the latter beneficiary's trust.

**PART 3**

**POWERS OF CO-TRUSTEES**

**3.1  Definition of Co-Trustee; Distribution of Powers.**  The Co-Trustees, whether two or more, whether male or female, whether individual or corporate, whether original, successor, or substitute, is herein called the "Co-Trustee."  Except as expressly provided otherwise, each Co-Trustee shall have the same duties, powers, and discretions.

**3.2  Investment Standard.**  Carolyn S. Clark expressly directs that the Co-Trustees shall be required to comply with the "prudent investor rule" set forth in the Texas Uniform Prudent Investor Act in making its investment and management decisions with regard to the Trust estate, and shall be subject to the duties of loyalty and impartiality prescribed in the Texas Uniform Prudent Investor Act.  The Co-Trustees, except as herein otherwise specifically

-11-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

provided, shall have as wide a latitude in the selection, retention, or making of investments as an individual would have in retaining or investing her own funds, and shall be limited to, bound or governed by, any rules of law, statutes, or regulations respecting investments by trustees. Investments of the trust estate need not be diversified, but may not be of a wasting nature and may be made or retained with a view to possible increase in value.

**3.3      General Powers.**  The Co-Trustees shall have the following powers:

*(A) Standard.*  To exercise all powers granted to trustees by common law or by any applicable statutes as they exist on the effective date of this Agreement or are subsequently changed, but only to the extent the subsequent changes increase the powers granted to trustees. If, however, those powers are in conflict with the provisions of this Agreement, the terms of this Agreement shall prevail.

*(B) Retention of Assets.*  To retain, without liability for loss or depreciation resulting from such retention, any property or undivided interests in property received from any source regardless of any lack of diversification, risk, or nonproductivity, for such time as the Co-Trustee shall deem advisable, and the Co-Trustees shall be under no obligation to dispose of or convert any such property.  Notwithstanding any statutory requirement to the contrary, upon accepting a trusteeship or receiving Trust assets, the Co-Trustees may, but shall not be required to, review the Trust assets and make and implement decisions concerning the retention and disposition of assets in order to bring the Trust portfolio into compliance with the purposes, terms, distribution requirements, and other circumstances of the Trust.

*( C) Sale or Disposition of Trust Property.*  To sell, exchange, give options upon, partition, convey, or otherwise dispose of, with or without covenants (including covenants of warranty of title), any property that may from time to time be or become a part of the Trust

-12-

"Certified as to certification on signature page"

EXHIBIT 7

## EXHIBIT A

estate, at public or private sale or otherwise, for cash or other consideration, or on credit, and upon such terms and conditions as the Co-Trustees shall think advisable, and to transfer and convey the same free of all Trusts.

*(D) Investment of Trust Property.* To invest and reinvest the Trust estate from time to time in any property, real, personal, or mixed, including (without limiting the generality of the foregoing language) securities of domestic and foreign corporations and investment trusts, bonds, preferred stocks, common stocks, mortgage participations, and interests in common trust funds, with discretion as to property owned for investment purposes only – and not as a residence of any beneficiary, – converting realty into personalty, or personalty into realty, but not otherwise changing the character of the Trust estate, and as long as such investment (by reason of its character, amount, proportion to the total Trust estate, or otherwise) would be considered appropriate for a fiduciary, and even though such investment causes a greater proportion of the total Trust estate to be invested in investments of one type or of one business or company than would be considered appropriate for a fiduciary apart from this provision.

*(E) Loans of Trust Property.* To make loans, secured or unsecured, in such amounts, upon such terms, at such rates of interest, and to such persons, firms, or corporations as the Co-Trustees shall think advisable.

*(F) Acquisition of Non-Productive Property.* To acquire property returning no income or slight income, or to retain any such property, so long as the Co-Trustees shall think fit and, except as specifically provided otherwise herein, such property shall not in any way be chargeable with income, nor shall any part of the proceeds from the sale or other disposition of such property be deemed income.

*(G) Improving and Leasing Trust Property.* To improve any real estate comprising a

-13-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

part of the Trust estate; to demolish any buildings in whole or in part; to erect buildings; to lease real estate or personal property on such terms and conditions and for such length of time (including ninety-nine (99) years or more) as the Co-Trustees shall think fit, even though such lease may extend beyond the term of any Trust; to foreclose, extend, renew, assign, release, or partially release, and discharge mortgages or other liens, and to accumulate income for the purpose of doing so (except where the Co-Trustees are required herein to distribute income).

(H) *Borrowing Money.*  To borrow money and to execute promissory notes therefor; to secure such obligations by mortgages or other liens or pledges of any property of the Trust estate; to make any type of purchase or contract, including installment contracts or credit arrangements, the effect of which is to borrow money; to accumulate income for the purpose of repaying any indebtedness owed by the Co-Trustees hereunder.

(I) *Adjustment of Claims and Suits; Prepayment of Existing Mortgage.*  To prosecute or defend any suit; to compromise or arbitrate any claim (including a claim for taxes) and any litigation, either in favor of or against the Trust estate or the Co-Trustees in their capacity hereunder; to pay claims upon such evidence as the Co-Trustees shall think sufficient; and to prepay all or part of any mortgage.

(J) *Employment of Agents.*  To employ such brokers, bank custodians, investment counsel, attorneys, and other agents or servants, and to delegate to them such duties, rights, and powers of the Co-Trustees for such period as the Co-Trustees shall think fit; and to pay such persons reasonable compensation out of the Trust estate, all regardless of whether any such person or entity is (or is a partner, employee, or employer of, or is owned by) a beneficiary or Co-Trustee hereunder.

(K) *Voting Securities; Reorganizations.*  To vote, in person or by proxy, any stocks or

-14-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

other properties having voting rights; to enter into voting trusts and voting agreements; to exercise any options, rights, or privileges pertaining to any property in the Trust estate; to participate in any merger, reorganization, or consolidation affecting the Trust estate; and, in connection therewith, to take any action which an individual could take with respect to property owned outright by such individual, including the payment of expenses or assessments, the deposit of stock or property with a protective committee, the acceptance or retention of new securities or property, and the payment of such amounts of money as may seem advisable in connection therewith.

(L) *Insurance.* To insure any part of the Trust estate against such risks as the Co-Trustees shall think fit, such insurance to be based on market value or costs and the coverage to be full or partial as the Co-Trustees shall think fit; to pay the premiums and to collect or adjust the losses; to acquire, hold, and pay premiums on insurance upon the life of any person or persons, and to exercise any and all rights to ownership thereof; and to purchase other types of insurance or annuities for any beneficiary. However, all incidents of ownership with respect to any policies of insurance on the life of any Co-Trustee shall be vested in and exercisable solely by another person or legal entity selected by the Co-Trustee.

(M) *Mineral Contracts and Sales.* To execute and deliver oil, gas, and other mineral leases containing such unitization or pooling agreements and other provisions as the Co-Trustees shall think fit; to execute mineral and royalty conveyances; to purchase leases, royalties, and any type of mineral interest; and to execute and deliver drilling contracts and other contracts, options, and other instruments necessary or desirable to participate actively in the oil, gas, or mining business. All of the foregoing may include such terms, conditions, agreements, covenants, provisions, or undertakings as the Co-Trustees shall think fit.

-15-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

*(N) Corporations.* To incorporate any property in the Trust estate; to convey any such property to a corporation for all or part of its capital stock or other securities (as long as no Co-Trustee is also a security holder, officer, director, or manager of such corporation in an individual, fiduciary, or other capacity); to dissolve such corporation or any other corporation, the securities of which comprise a part of the Trust estate; and to hold or dispose of as a part of the Trust estate any property so received upon such dissolution; all in such manner, at or for such times, and on such terms as the Co-Trustees shall think fit.

*(0) Partnerships.* To enter into partnerships if such partnership benefits the Trust; to transfer any property in the Trust estate to one or more partnerships in payment for the Trust's interests in such partnerships; to act as a partner in any partnership or with respect to any property, any part of which may be or become part of the Trust estate originally or later; to so act as a partner with itself acting in an individual, fiduciary, or other capacity; to participate in the management of such partnerships; to dissolve any partnership in which the Co-Trustee acts as a partner; and to hold or dispose of as part of the Trust estate any property received upon any such dissolution, termination, winding up or liquidation; all in such manner, at or for such times, and on such terms as the Trustees shall think fit.

*(P) Limited Liability Companies.* To organize limited liability companies; to transfer any property in the Trust estate to one or more limited liability companies for membership interests on behalf of the Trust in such limited liability companies; to act as a member or manager in any limited liability company or with respect to any property, any part of which may be or become part of the Trust estate originally or later; to so act as a member or manager with itself acting in an individual, fiduciary, or other capacity; to participate in the management of such limited liability companies; to dissolve any limited liability company in which the

-16-

"Certified as to certification on signature page"

EXHIBIT A

Co-Trustees act as a member or manager; and to hold or dispose of as part of the Trust estate any property received upon any such dissolution termination, winding up or liquidation; all in such manner, at or for such times, and on such terms as the Co-Trustees shall think fit.

   *(Q)  Businesses.*  To start or to enter into any business enterprise, or to continue to operate any business interest which becomes part of the Trust estate; to delegate all or part of the management thereof; to invest other funds of the Trust estate therein; to convert such business from one form (e.g., proprietorship, partnership, corporation, etc.) to another; to enlarge, diminish, or change the scope or nature of the activities of any business; to authorize the participation and contribution by the business in any form of plan to benefit employees, whether or not the contributions qualify as being tax deductible; to use the general assets of the Trust estate for the purposes of the business; to invest additional capital in or make loans to such business regardless of the speculative nature or nonproductivity of such investment or loan, and without regard to diversification of investments; to endorse or guarantee on behalf of the Trust estate any loan or loans made to the business, and secure said loan or loans by pledge or mortgage of any property of the Trust estate; to employ such officers, managers, employees, or agents as the Co-Trustees deem advisable in the management of the business, including electing or employing directors, officers or employees of the Co-Trustees to take part in the management of the business as directors or officers or otherwise, and to pay such person or persons reasonable compensation; and to rely upon the reports of certified public accountants as to the operations and financial condition of the business without independent investigation; all in such manner, at or for such times, and on such terms as the Co-Trustees shall think fit.

   *(R)  Special Farm Powers.*  To retain any farm or farm property received from any source, and to acquire and retain other such property; to engage in farm operations and the

-17-

"Certified as to certification on signature page"

EXHIBIT A

production, harvesting and marketing of farm products, including livestock breeding and feeding

and poultry and dairy farming, by operating directly with hired labor, by retaining farm

managers or management agencies, by renting on shares or for cash, or in any other manner; to

enter into farm programs; to purchase or rent farm machinery and equipment, livestock, poultry,

seed and feed; to improve farm property and to repair, improve and construct farm buildings,

fences, and drainage facilities; to borrow money for any of these purposes; and in general to do

all things customary or desirable in farm operations.

(S) *Payment of Expenses and Taxes.*  To incur such expenses or charges in the

management of the Trust estate as the Co-Trustees shall think fit; to render the Trust estate for

taxes if the Co-Trustees shall think it desirable, or to refuse to do so if the Co-Trustees shall

think it undesirable; to pay taxes, charges, and governmental assessments against the Trust

estate; and, in anticipation of such expenses, charges, taxes, and assessments, to set up such

sinking funds or reserves as the Co-Trustees shall think fit.

(T) *Reliance on Business Documents.*  To rely upon the authenticity of affidavits,

certificates, opinions of counsel, letters, notices, facsimiles, electronic mail, and other methods of

communication in general use and usually accepted by businessmen as genuine and as what

such documents and communications purport to be.

(U) *Acceptance of Additional Property.*  To accept from any source any property

acceptable to the Co-Trustees to be held as part of any Trust created under this Agreement.  The

Co-Trustees are also authorized (but not directed) to accept from the Executor, at the

termination of the administration of any estate of which any Trust created under this Agreement

may be the beneficiary, the assets delivered by the Executor to the Co-Trustees on the basis of

the accounting therefor as submitted by the Executor, without requiring an audit or other

-18-

"Certified as to certification on signature page"

EXHIBIT 7

independent accounting of the acts of such Executor. No Co-Trustee hereunder shall have any duty, responsibility, obligation or liability whatsoever for, or any duty, responsibility, obligation or liability whatsoever for failure to rectify, the acts or omissions of said Executor.

(V) *Powers Under Changed Conditions.*  To exercise such powers as may be necessary or desirable in the management and control of the Trust estate, whether or not such powers are of like kind or character to those enumerated in this instrument; and in particular to enable the Co-Trustees to act under changed conditions, the exact nature of which cannot now be foreseen.

3.4     **Additional Powers.**   The Co-Trustees also shall have the powers listed in this Section.  If a corporation is serving as Co-Trustee, these powers shall be vested in the corporation serving as Co-Trustee to the same extent as a Co-Trustee herein and not as a sole Co-Trustee.

(A) *Custody of Trust Estate; Nominees; Disbursement of Funds.*  To retain sole custody of the Trust estate; to keep any of the property of the Trust estate in any place or places in Texas or elsewhere in the United States or abroad, or with a depository or custodian at such place or places; to hold any of the securities or other property of the Trust estate for any length of time in the name of a nominee or nominees without mention of the Trusts in any instrument of ownership; to make all disbursements of the Trust funds without any counter-signature; and to make all reports, including tax returns, to any agency of the government, local, state, or federal.

(B) *Execution of Documents.*  To execute and deliver agreements, assignments, bills of sale, contracts, deeds, leases, notes, powers of attorney, warranties, covenants, guarantees, receipts, releases, discharges, acquittances, and other papers or documents reasonably necessary or desirable to carry out the powers granted to a Co-Trustee.

(C) *Apportionment of Income and Expenses.*  Where not otherwise clearly provided by

-19-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

law (determined without regard to Section 116.004(a)(4) of the Texas Trust Code) or otherwise set forth herein, to determine with finality, as to each sum of money or other thing of value held or received by any Co-Trustee, whether and to what extent the same shall be deemed to be principal or to be income, and as to each charge or expense paid by the Co-Trustee, whether and to what extent the same shall be charged against principal or against income including, without hereby limiting the generality of the foregoing language, the power to apportion any receipt or disbursement between principal and income and to determine what part, if any, of income is available for distribution according to the terms hereof, and what part, if any, of the actual income received upon a wasting investment shall be returned and added to principal to prevent a diminution of principal upon exhaustion or maturity thereof; and to set up such reserves out of principal or income as the Co-Trustee shall think fit.

(1)    *Power to Adjust.*    Grantor directs that the Co-Trustees shall have the powers of adjustment conferred by Section 116.005(a) of the Texas Trust Code, and that the Co-Trustees shall consider all factors relevant to the trust and its beneficiaries, including the factors recited in Section 116.005(b) and limited by Section 116.005© of the Texas Trust Code.

(2)    *Obligation to Pay Money.*

(a)  An amount received as interest, whether determined at a fixed, floating, or variable rate (including, but not by way of limitation, a rate that is in whole or in part specifically tied to inflation), on an obligation to pay money to the Co-Trustee shall be allocated to income except to the extent of any amortization of bond premiums that may be made in the Co-Trustees' discretion.  For purposes of this Agreement, interest shall include (1) an amount received as consideration for prepaying principal and (2) any accumulation for discount that may be made in the Co-Trustees' discretion on an obligation to which paragraph (b) below does not apply.

-20-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

**(b)**  An amount received in excess of the purchase price (but not to exceed the face amount) from the sale, redemption, or other disposition of an obligation to pay money to the Co-Trustee in accordance with a fixed schedule of appreciation, which amount is in excess of the price at which it was issued, shall be allocated to income.  Any other amounts received from the sale, redemption, or other disposition of such obligation to pay money shall be allocated to principal.  This paragraph applies to all obligations acquired at a discount, including, but not limited to, short-term obligations such as U.S. Treasury Bills, long-term obligations such as U.S. Savings Bonds, zero-coupon bonds, and discount bonds that pay interest during part, but not all, of the period before maturity.

**(3)**      Deferred Compensation, Annuities, and Similar Payments.

**(a)**  In this Section 3.5(C)(3):

(I)  "Future Payment Asset" means the asset from which a Payment subject to this Agreement is derived.

(ii)  "Payment" means a payment that the Co-Trustees may receive over a fixed number of years or during the life of one or more individuals because of services rendered or property transferred to the payer in exchange for future payments.  The term includes a payment made in money or property from the payer's general assets or from a separate fund created by the payer, including a private or commercial annuity, an individual retirement account, and a pension, profit-sharing, stock-bonus, or stock-ownership plan.

(iii)  "Valuation Date" means the later of: (1) the date on which the Future Payment Right first becomes subject to the Trust or (2) the first day of the Trust's accounting period during which the Payment is received.

**(b)**  To the extent that the payer characterizes a Payment as interest or a

-21-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

dividend or a payment made in lieu of interest or a dividend, the Co-Trustees shall allocate the Payment to income. The Co-Trustees shall allocate to principal the balance of the Payment and any other Payment received in the same accounting period that is not characterized as interest, a dividend, or an equivalent payment.

(c) If no part of a Payment is characterized as interest, a dividend, or an equivalent payment ("Uncharacterized Payment"), and all or part of the Uncharacterized Payment is required to be made, the Co-Trustees shall allocate to income the part of the Uncharacterized Payment that does not exceed an amount equal to:

(I) four percent of the fair market value of the Future Payment Asset as of the Valuation Date; less

(ii) the total amount that the Co-Trustees have allocated to income for a previous Payment received from the Future Payment Asset during the same accounting period.

(d) If a Future Payment Asset is received by the Co-Trustees in the middle of an accounting period, the amount of the Uncharacterized Payment allocable to income shall be prorated on a daily basis for the period from the date the Future Payment Asset is received through the last day of the accounting period.

(e) The Co-Trustees shall allocate to principal the part of the Uncharacterized Payment that is not allocated to income.

(f) If no part of a Payment is required to be made or the Payment received is the entire amount to which the Co-Trustees are entitled, the Co-Trustees shall allocate the entire Payment to principal. For purposes of determining whether an Uncharacterized Payment is required to be made, a Payment is not "required to be made" to the extent that it is made only because the Co-Trustees exercise a right of withdrawal.

-22-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

(g)  If, to obtain an estate tax marital deduction for a trust, the Co-Trustees must allocate more of a Payment to income than provided for by this Section 3.4(C)(3), the Co-Trustees shall allocate to income the additional amount necessary to obtain the marital deduction.

(4) Property Not Productive of Income.

(a)  If part of the principal consists of any type of property that has been underproductive for more than one year and if a sale or other disposition of such underproductive property is made before the principal is finally distributed, to the extent that the net proceeds from the sale exceed the inventory value of the property the Co-Trustees shall allocate to income an amount equal to the excess if any of:

(I)  the difference (if positive) between the net proceeds and the amount which, if invested at four percent a year simple interest during the allocation period, would have produced the net proceeds, over

(ii)  the income received by the income beneficiary from such underproductive property or the value of the income beneficiary's use of such underproductive property during the allocation period.

(b)  Property is underproductive if it does not produce an average annual net income, without considering depreciation or obsolescence, equal to at least one percent of its inventory value.

( c)  The allocation period begins one year after the property becomes underproductive or one year after the Co-Trustees receive the property if it was underproductive at the time of receipt, and the period ends on the earlier of the date of sale or other disposition of such underproductive property or the last day of the Trust's accounting period in which such

-23-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

underproductive property ceases to be underproductive.

(d)  This Section 3.4(C)(4) does not require a Co-Trustee to sell or dispose of property.  The determination as to whether the Co-Trustees are required to sell or dispose of property shall be made in accordance with the requirements set out in the governing instruments, other provisions of the Texas Trust Code, and the common law.  If the Co-Trustees are required to sell or otherwise dispose of the property, the Co-Trustees shall do so as soon as reasonably possible.

(e)  For purposes of this Section 3.5(C)(4):

(I) "Inventory value" means the cost of property purchased by the Co-Trustees, the market value of property at the time it became subject to the Trust, or, in the case of a testamentary trust, any value used by the Co-Trustees that is finally determined for the purposes of an estate or inheritance tax. Notwithstanding the foregoing, if the property is acquired through foreclosure of a mortgage held by the Trust, the inventory value shall be the net investment in the property up to the date of resale by the Trust, and not the bid price at the foreclosure sale.

(ii) "Net proceeds" means gross proceeds received for the property less the sum of the expenses incurred in disposing of it and all carrying charges that were charged to principal while it was underproductive.

(iii) "Net investment" means all money invested and advanced.

(D)  *Division Into Shares or Separate Trusts*.  To hold, manage, invest, and account for the several shares or separate Trusts that may be held in trust, either as separate funds or as a single fund, as the Co-Trustees shall think fit; if as a single fund, to make division thereof only upon the books of account, to allocate to each share or Trust its proportionate part of the

-24-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

principal and income of the single fund, and to charge against each share or Trust its

proportionate part of the common expenses.

(E)     *Method of Distribution or Division.*   In dividing the Trust estate into separate

shares or trusts, or in distributing the same, to divide or distribute in cash, in kind, or partly in

cash and partly in kind, using different properties according to their values or undivided

interests in the same property, as the Co-Trustees shall think fit; for any purpose, including

division or distribution, to value the Trust estate or any part thereof reasonably and in good

faith, such valuation to be conclusive upon all parties.

(F)     *Occupancy of Trust Property.*   To allow any of the following persons to use or

occupy Trust property without payment of rent:

(1)  Any beneficiary;

(2)  With regard to any residential property occupied by a beneficiary, any person

appointed by a court of competent jurisdiction and qualified to serve as the guardian of the

person of such beneficiary; and

(3)  With regard to any residential property occupied by a beneficiary, the spouse

of the person appointed by a court of competent jurisdiction and qualified to serve as guardian of

the person of such beneficiary.

(G) *Termination of Small Trust.*   Notwithstanding any other provision of this

Agreement, to terminate any separate Trust established by this Agreement whenever in the Co-

Trustees' opinion such Trust is so small in value that the administration thereof no longer is

economically advisable.  In making this determination, the Co-Trustees are requested to take

into consideration the financial and special advantages to the beneficiary or beneficiaries of

continuing the Trust estate.  In the event of such termination, the Co-Trustees shall, in their sole

-25-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

discretion, either add the asset to the principal or distribute the remaining of such Trust asset to the then income beneficiary or beneficiaries, *per capita*. The Co-Trustee's judgment shall be final and binding upon all interested parties, and distribution of Trust assets in any manner provided in this Agreement shall relieve the Co-Trustees of any further responsibility with respect to such assets.

(H) *Tax Elections.* Subject to the restrictions of Section 3.1 of this Agreement, the Co-Trustees may make such elections under the tax laws applicable to any Trust as the Co-Trustees in their sole discretion shall determine. No compensating adjustments between principal and income, nor with respect to any Trust, shall be made even though the elections made under the tax laws by the Co-Trustees, may affect (beneficially or adversely) the interests of the beneficiaries. The decision of the Co-Trustees to make or not to make an election (in whole or in part) under any provision of the Code or any provision of any applicable state law shall be final, binding, and conclusive on all parties in interest and the Co-Trustees shall have no liability as a result of such decision provided the actions (or inactions) by the Co-Trustees are in good faith.

(I) *Payments to Incapacitated Person.* During the minority or physical or mental incapacity of any person to whom or for whom principal or income from the Trust estate of any Trust created under this Agreement may be paid (either during the term of a trust or upon final distribution of a trust), the Co-Trustees may make such payment in anyone or more of the following ways:

(1) To such person directly;

(2) To the guardian, committee, conservator, or other similar official;

(3) To a relative of such person to be expended by such relative for the benefit of such person, including payment to such relative;

-26-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

(4)  To a custodian under an applicable Uniform Transfers or Gifts to Minors Act; or

(5)  By the Co-Trustees expending the same directly for the benefit of such person.  The Co-Trustees' determination of the minority or incapacity of any such person shall be final, and the Co-Trustees shall not be responsible for the application of any payment after the same has been made to any person in accordance with the provisions hereof.

*(J) Assistance to Certain Estates*.  The Co-Trustees may, in their sole discretion, utilize the principal of any Trust as set forth in this paragraph, and any payment made in the bona fide belief that it is pursuant to this paragraph shall be binding upon all beneficiaries:

(1)  Investments. To purchase and to retain as investments any property, real or personal, belonging to the estate of Carolyn S. Clark.

(2)  Loans.  To make loans to the Executor or personal representative of the estate Carolyn S. Clark on such terms as the Co-Trustees deem advisable.

*(K) Proof of Lineage*.  The Co-Trustees shall have the right to require any beneficiary to prove lineage through scientifically established methods of genetic testing at the Co-Trustees' complete discretion and for any reason so as not to limit the Co-Trustees' authority to require such proof.  Any scientific genetic testing shall be conducted in the United States of America by a clinic or hospital selected by the Co-Trustees'.  If any beneficiary refuses to undergo genetic testing to confirm the beneficiary is a lineal descendant of Carolyn S. Clark upon request by the Co-Trustees then the beneficiary's rights shall terminate subject to reconsideration if the beneficiary later agrees to genetic testing.  The genetic testing shall be conducted for the sole purpose of determining lineage.  All results of the genetic testing shall only be shared between the Co-Trustees and the proposed beneficiary who underwent the genetic testing and the

-27-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

records of the testing shall be maintained by the Co-Trustees. There shall be no discrimination based upon race, gender, religion, or national origin of any person undergoing genetic testing and all proved lineal descendants of Carolyn S. Clark shall be provided their rights under this Trust. No non-lineal descendant of Carolyn S. Clark shall receive any benefit of this Trust.

**3.5 Restrictions on Co-Trustees.**

*(A) Beneficiary Serving as Co-Trustee.* Notwithstanding any other provision of this Agreement (including, but without limitation, any power specifically conferred upon a Co-Trustee hereunder), no beneficiary serving as a Co-Trustee of any Trust created under this Agreement shall participate in the capacity of a Co-Trustee with respect to that portion of his or her beneficial interest in such property in the following:

(1) The exercise of, or decision not to exercise, any discretion over payments, distributions, applications, uses or accumulations of income or principal to or for the benefit of such Co-Trustee personally, unless the exercise or nonexercise of such discretion is limited by an ascertainable standard relating to the Co-Trustee's health, education, support, or maintenance;

(2) The exercise of, or decision not to exercise any of the following powers conferred on the Co-Trustees: termination of small trusts, division of trusts, merger of trusts and change of Trust situs; or

(3) The exercise of any general power of appointment described in Section 2514 or 2041 of the Code; and

(4) The exercise of the discretion granted in this Agreement to establish a separate Qualified Subchapter S Trust or a separate share treated as a Qualified Subchapter S Trust.

-28-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

*(B) Co-Trustee with Legal Obligation of Support.* If any Co-Trustee (in his or her individual capacity) is under a duty to support a beneficiary or is acting as a guardian, conservator or committee of any individual who is a beneficiary, such Co-Trustee shall not participate in the exercise of, or the decision not to exercise, any discretion over payments, distributions, applications or uses of Trust property to or for the benefit of such beneficiary in discharge of any obligation of support of such Co-Trustee (in his or her individual capacity).

*( C) Life Insurance Insuring the Life of the Co-Trustee.* No Co-Trustee shall participate in the exercise of any discretion (including, but without limitation, any discretion which would constitute an "incident of ownership" within the meaning of Section 2042(2) of the Code) with respect to any insurance policy on her or his life held hereunder.

*(D) Power of Beneficiary Acting As Co-Trustee Restricted.* If a beneficiary or guardian of a beneficiary of any Trust created under this Agreement is serving on any committee formed by the Co-Trustees, no trustee appointed by such committee shall possess or be permitted to exercise any power as Co-Trustee under this Agreement if the possession or exercise of that power would cause any portion of the income or principal of any Trust created under this Agreement to be includible in the gross estate of the guardian or beneficiary for federal estate tax purposes.

*(E) Further Limitations on Powers.* Except as explicitly provided otherwise in this Agreement, no powers of the Co-Trustees enumerated in this Agreement, or now or hereafter conferred upon trustees generally, shall be construed to enable Carolyn S. Clark to purchase, exchange, or otherwise deal with or dispose of all or any part of the principal or income of any Trust for less than an adequate consideration in money or money's worth, or to enable Carolyn S. Clark to borrow all or any part of the principal or income of any Trust, directly or indirectly,

-29-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

without adequate interest or security.  No person, other than the Co-Trustees, shall have or exercise the power to vote or direct the voting of any stock or other securities of any Trust or to control the investment of any Trust either by directing investments or by vetoing proposed investments, or to reacquire or exchange any property of any Trust by substituting other property of an equivalent value.  In each instance in which a Co-Trustee's exercise of, or decision not to exercise, discretion may be prohibited pursuant to this Section, the determination of the remaining Co-Trustees or Co-Trustee shall be final and binding upon the beneficiaries of such trust.

**3.6    Transactions With Related Parties and Self-Dealing.**    The powers of the Co-Trustees to enter into any transaction shall in no way be limited by the fact that the same or another party to such transaction is a beneficiary; the estate of a beneficiary (whether living or deceased); a trust created by or the benefit of a beneficiary (whether living or deceased); the estate of Carolyn S. Clark; a trustee of any trust, including Co-Trustees appointed herein, whether or not acting in a fiduciary capacity; or an executor or administrator of any estate, including the estate of Carolyn S. Clark; whether or not acting in a fiduciary capacity.

**3.7    Release of Power by Amendment of Trusts.**    Any Co-Trustee shall have the power and authority to amend the provisions of this Agreement in order to surrender, release, renounce, or disclaim anyone or more of the discretionary powers given by this Agreement to that Co-Trustee.  Any such amendment shall be made by written instrument acknowledged and filed in the Deed Records of Grantor's County.  After any power has been so surrendered, released, renounced, or disclaimed, it never again shall be exercised by that Co-Trustee.

**3.8    Records; Inspection.**    The Co-Trustee shall keep accurate and complete

-30-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

records of Trust transactions.  Any beneficiary (or the beneficiary's representative, authorized in writing) may inspect Trust records that reflect the total amount of the requesting beneficiary's financial benefit as of the date the request is made subject to requirement, if requested by the Co-Trustees, set out in this Agreement, of proof from the proposed beneficiary that the proposed beneficiary is a lineal descendant of Carolyn S. Clark, at any reasonable time.

3.9     **Annual Report.**     Upon written request by the beneficiary or his or her personal representative, the Co-Trustees shall make an annual report in writing to any living beneficiary over twenty-one (21) years of age who could, in the discretion of the Co-Trustee, receive any income or distribution from the Trust estate during that year, on the same basis of preconditions as set out in Paragraph 3.8.  Such report shall be for a calendar or fiscal year beginning each year on a date selected by the Co-Trustee as appropriate for this purpose and shall be submitted to such income beneficiary (or to the guardian, conservator, committee, or other like official of any incapacitated beneficiary) with reasonable promptness after the end of such period.  Each report shall include a statement of all property on hand at the end of such year, all receipts and disbursements during such year, all sales and purchases made during such year, and of such other acts of the Co-Trustees as may be necessary to furnish such beneficiary with adequate information as to the condition of the Trust estate.

3.10     **Compensation and Bond.**     The Co-Trustees (other than a beneficiary serving as Co-Trustee of any Trust created in this Agreement for the primary benefit of that beneficiary) shall be entitled to reasonable fees commensurate with their duties and responsibilities, taking into account the value and nature of the Trust estate and the time and work involved.  A reasonable fee shall be paid annually to each Co-Trustee and shall be set as follows:

- 2.5% (.025) of the total value of all property held by the Co-Trustees, paid to each

-31-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

Co-Trustee for the first 12-month period and

- thereafter 7.5% (.075) of Trust income on the total value of investment property. The Co-Trustees shall be reimbursed for the reasonable costs and expenses incurred in connection with their fiduciary duties hereunder. No Co-Trustee, whether original or successor, shall be required to furnish bond or other security, except as herein expressly provided.

3.11 **No Court Supervision.** No Co-Trustee shall ever be required to qualify before, be appointed by, or in the absence of an alleged breach of trust, account to any court whatsoever or obtain the order or approval of any court in the exercise of any power or discretion.

3.12 **Out-of-State Properties.** If at any time any Trust estate consists in whole or in part of assets located in a jurisdiction in which the Co-Trustee is not authorized or is unwilling to act, the Co-Trustee may appoint an ancillary trustee for that jurisdiction and may confer upon such ancillary trustee such rights powers, discretions, and duties to act solely with respect to such assets as the Co-Trustee may deem appropriate. The ancillary trustee shall be answerable to the Co-Trustees for all monies and other assets that may be received by it in connection with the administration of such property. The Co-Trustees may pay to the ancillary trustee reasonable compensation for its services and may absolve it from any requirement that it furnish bond or other security.

3.13 **Provisions Concerning Generation-Skipping Transfer Tax.**

*(A) Division Into Separate Trusts Resulting in Change in Inclusion Ratio.* The Co-Trustees are authorized (but not directed) to divide any trust created hereunder at any time, without court approval, into two or more separate trusts so that the generation-skipping transfer

-32-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

tax inclusion ratio as defined in Section 2642(a) of the Code with respect to each Trust after such division shall be either zero or one.  The separate Trust resulting from such division and which is entirely exempt from generation-skipping transfer tax is referred to in this Agreement as a "GST Exempt Trust."  The separate Trust resulting from such division and which is not entirely exempt from generation-skipping transfer tax is referred to in this Agreement as a "GST Non-Exempt Trust."  Unless otherwise specifically provided in this Agreement or required by the Code or the applicable Treasury Regulations, the respective amounts allocated to each separate Trust as a result of any such division shall be made on a fractional basis using the value of the assets on the date of such division.  The terms of each separate trust may differ from the terms of the trust prior to the division provided that each separate trust, in the aggregate, provides for the same succession of interests of beneficiaries as are provided in the undivided trust, and further provided that any terms of the undivided trust that would affect qualification of the trust for any federal tax deduction, exclusion, election, exemption or other special federal tax status must remain identical in each of the separate trusts.  The provisions of this paragraph are intended to satisfy the requirements for a "qualified severance," as that term is defined in Section 2642(a)(3)(B) of the Code.  Any provision of this Agreement inconsistent with this intention shall be of no effect.  The Co-Trustees shall have the power to amend the terms of this Agreement for the sole purpose of complying with the requirements for a qualified severance under the Code and the rulings and Treasury Regulations thereunder.

*(B) Separate Trusts for Generation-Skipping Transfer Tax Purposes*.  If assets are set apart in a separate trust for generation-skipping transfer tax purposes or if a single trust is divided into separate trusts or is otherwise treated as separate trusts for generation-skipping transfer tax purposes, the Co-Trustees may: (1) make different tax elections with respect to each

-33-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

separate Trust, (2) expend or distribute income or principal and exercise or not exercise any other discretionary powers with respect to each such separate trust differently, (3) invest the property of each such separate trust differently, and (4) take all other actions consistent with each such trust being a separate trust. Further, the person holding any power of appointment may exercise such power differently with respect to each separate trust.

*(C) GST Inclusion Ratio.* If property is directed to be added to a Trust ("Recipient Trust") with an inclusion ratio for purposes of the generation skipping transfer tax that differs from the inclusion ratio of such property, the Co-Trustees are directed to hold such property as a separate trust with provisions identical to the Recipient Trust. No separate Trust for generation skipping transfer tax purposes with an inclusion ratio of zero shall be consolidated, within the meaning of Treasury Regulation Section 26.2642-4, with a separate Trust for generation-skipping transfer tax purposes with an inclusion ratio of other than zero.

*(D) Generation-Skipping Transfer Taxes and Payment.* If the Co-Trustees consider any distribution or termination of any interest hereunder as a distribution or termination subject to a generation-skipping transfer tax, the Co-Trustees are authorized:

(1) To augment any taxable distribution by an amount which the Co-Trustees estimate to be sufficient to pay that tax and to charge the same to the particular Trust or share to which the tax relates without adjustment of the relative interests of the beneficiaries;

(2) In the case of a taxable termination, to pay the tax from the particular Trust or share to which the tax relates, without adjustment of the relative interests of the beneficiaries. If the tax is imposed in part by reason of the Trust property hereunder and in part by reason of other property, the Co-Trustees shall pay only the portion of the tax which the Co-Trustees determine in good faith to be attributable to the taxable termination hereunder, taking into consideration

-34-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

deductions, exemptions, credits and other factors which the Co-Trustees deems advisable; and

(3)  Subject to the limitations of the rule against perpetuities, to postpone final termination of any particular Trust and to withhold all or any portion of the Trust property until the Co-Trustees are satisfied the Co-Trustees and the Trust no longer have any liability to pay any generation, skipping transfer tax with reference to the Trust or its termination.

(E)  *Changes to Qualified Severance Rules.*  This paragraph shall apply only in the event that Section 562(a) (relating to severing of trusts for generation-skipping transfer tax purposes) of the Economic Growth and Tax Relief Reconciliation Act of 2001 (the "2001 Act") expires in accordance with Section 901 of the 2001 Act or is subsequently repealed or modified with the result that a division authorized in Section 3.14(A) of this Agreement will not be recognized for generation-skipping transfer tax purposes.  If this paragraph applies, Carolyn S. Clark directs the Co-Trustee to divide any Trust established by this instrument, without court approval, into two or more separate trusts so that the generation-skipping transfer tax inclusion ratio as defined in Section 2642(a) of the Code with respect to each trust after such division shall be either zero or one.  Unless otherwise specifically provided in this Agreement, the respective amounts allocated to each separate trust as a result of any such division shall be made on the basis of the value of the assets on the date of funding such separate trust.  Except as otherwise specifically provided in this Agreement, any such separate trust shall have identical provisions as the trust so divided.  The Co-Trustees shall have the power and authority to amend the provisions of this Agreement to the extent necessary to cause a division of any trust established in this Agreement to be recognized for generation-skipping transfer tax purposes.

(F)  *Limitation of Liability of Co-Trustee.*  No Co-Trustee shall be liable or responsible for exercising or failing to exercise any powers granted in this Section, provided the actions (or

-35-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

inactions) of the Co-Trustee are in good faith.

3.14    **Merger of Trusts.**    If at any time the Co-Trustee of any Trust created by this Agreement ("this Trust") shall also be acting as Trustee of any other trust ("other Trust") for the benefit of the same beneficiary or beneficiaries and upon substantially the same terms and conditions, the Co-Trustee is authorized and empowered, if in the Co-Trustees' discretion such action is in the best interest of the beneficiary or beneficiaries of this Trust, to transfer and merge all of the assets then held in this Trust to and with such other Trust and thereupon to terminate this Trust.  The Co-Trustees are further authorized to accept the assets of the other Trust that may be transferred to the Co-Trustees of this Trust and to administer and distribute such assets in accordance with the provisions of this Agreement.  No Co-Trustee shall be liable for exercising or failing to exercise any powers granted in this Section, provided the actions (or inactions) of the Co-Trustee are in good faith.

3.15    **Other Divisions of Trusts.**    In addition to the power to divide any Trust created hereunder into separate trusts with the result that one such trust has an inclusion ratio of zero and the other such trust has an inclusion ratio of one, the Co-Trustee also is authorized (but not directed) to divide any trust created hereunder at any time, without court approval, into two or more separate trusts if the trustee reasonably determines that the division of the trust could result in a significant decrease in current or future federal income, gift, generation-skipping transfer taxes or any other tax imposed on trust property.  Unless otherwise specifically provided in this Agreement, or required by the Code or the applicable Treasury Regulations, the respective amounts allocated to each separate Trust as a result of any such division shall be made on a fractional basis using the value of the assets on the date of such division.  The terms of each separate trust may differ from the terms of the trust prior to the division, provided that

-36-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

each separate trust, in the aggregate, provides for the same succession of interests of beneficiaries as are provided in the undivided trust, and further provided that any terms of the undivided trust that would affect qualification of the trust for any federal tax deduction, exclusion, election, exemption, or other special federal tax status shall remain identical in each of the separate trusts.  If assets are set apart in a separate trust pursuant to this Section or if a single trust is divided into separate trusts pursuant to this Section or is otherwise treated as separate Trusts pursuant to this Section, the Co-Trustee may: (1) make different tax elections with respect to each separate trust, (2) expend or distribute income or principal and exercise or not exercise any other discretionary powers with respect to each such separate Trust differently, (3) invest the property of each such separate Trust differently, and (4) take all other actions consistent with each such Trust being a separate trust.  Further, the person holding any power of appointment may exercise such power differently with respect to each separate trust. No Co-Trustee shall be liable for exercising or failing to exercise any powers granted in this Section. provided the actions (or inactions) of the Co-Trustee are in good faith.

      3.16    **Trust as Permissible Subchapter S Stockholder.**  It is Carolyn S. Clark's intention that no Trust created under this Agreement be administered in such a manner as to cause the termination of the S Corporation status of any corporation whose stock is held as a part of such Trust.  Accordingly, the Co-Trustees may, in their sole discretion, establish a separate Trust with respect to all or a part of any S Corporation Stock held as part of a Trust created under this Agreement if the Co-Trustees believe in good faith that the election provided by Section 1361(d)(2) of the Code will be effectively exercised by the Current Income Beneficiary (or her legal representative).  Carolyn S. Clark exonerates the Co-Trustees from any liability arising from any exercise or failure to exercise the foregoing discretion with respect to all or a

-37-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

part of such S Corporation Stock, provided the actions (or inactions) of the Co-Trustees are in good faith. If the Co-Trustees do not exercise the foregoing discretion with respect to all of such S Corporation Stock, Carolyn S. Clark directs that the Co-Trustees make an election in accordance with Section 1361(e)(3) of the Code to treat the Trust as an Electing Small Business Trust. It is Carolyn S. Clark's intent that the direction in the preceding sentence shall apply only with respect to any S Corporation Stock for which a separate Trust was not established.

     3.17    **Qualified Subchapter S Trust and Electing Small Business Trust.**    To the extent the terms of this Agreement are inconsistent with any Trust created under this Agreement qualifying as a Qualified Subchapter S Trust or an Electing Small Business Trust, as the case may be, this Agreement may be amended by the Co-Trustees as is necessary for, and for the sole purpose of, causing such Trust to qualify as a Qualified Subchapter S Trust or as an Electing Small Business Trust, as appropriate. Further, it is Carolyn S. Clark's intent that the terms of any Trust be construed and administered in a manner that is consistent with qualifying the Trust as a Qualified Subchapter S Trust or Electing Small Business Trust, as appropriate, during any period that the Trust holds S Corporation stock, and any provision incapable of being so construed or applied shall be disregarded.

     3.18    **Environmental Hazards.**

        *(A) Power to Deal with Environmental Hazards.* The Co-Trustees shall have the power to use and expend the Trust income or principal to (1) conduct environmental assessments, audits, and site monitoring to determine compliance with any environmental law or regulation thereunder; (2) take all appropriate remedial action to contain, clean up, or remove any environmental hazard including a spill, release, discharge, or contamination, either on its own accord or in response to an actual or threatened violation of any environmental law or

-38-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

regulation thereunder; (3) institute legal proceedings concerning environmental hazards or contest or settle legal proceedings brought by any local, state, or federal agency concerned with environmental compliance, or by a private litigant; (4) comply with any local, state, or federal agency order or court order directing an assessment, abatement, or cleanup of any environmental hazards; and (5) employ agents, consultants, and legal counsel to assist or perform the above undertakings or actions.

*(B) Co-Trustees' Right to Refuse Contributions.* The Co-Trustees, in their sole discretion, may require, as a prerequisite to accepting property contributed to the Trust, that the donor of such property provide evidence satisfactory to the Co-Trustees that (1) the property is not contaminated by any hazardous or toxic materials or substances; and (2) the property is not being used and has been used for any activities directly or indirectly involving the generation use, treatment, storage, disposal, release, or discharge of any hazardous toxic materials or substances.

*(C) Liability of Co-Trustees.* No Co-Trustee shall be liable for any loss or depreciation in value sustained by the Trust as a result of the accepting or retaining property upon which there is later discovered to hazardous materials or substances requiring remedial action pursuant to federal, state, or local environmental law, unless the Co-Trustee contributed to the loss or depreciation in value through willful default, willful misconduct, or gross negligence.

## PART 4

## CO-TRUSTEE'S' RIGHTS AND RESPONSIBILITIES

### REGARDING LIFE INSURANCE

**4.1 All Rights Relinquished by Grantor.** Carolyn S. Clark may irrevocably assign, convey, transfer, and deliver to the Co-Trustees all right, title and interest in and to any

-39-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

insurance policy, and Carolyn S. Clark may cause the Co-Trustees to be named owner and beneficiary of such policy.  If any insurance policy so becomes part of any trust estate, Carolyn S. Clark shall execute any and all instruments or documents necessary or appropriate to permit the Trustees to exercise all or any rights, powers, options, privileges under such policies.

4.2     **Rights of Co-Trustees in Insurance.**     With respect to any policies of insurance which are or may at any time become part of the trust estate, the Co-Trustees at all times shall own all right, title, interest, and incidents of ownership in and to said insurance and shall have the sole and exclusive right hereunder to receive and exercise all payments, dividends, surrender values, options, rights, powers, privileges, interests, and benefits of every kind with respect to such insurance, including, but not limited to, the following:

(A)  The power to change any beneficiary.

(B)  The right to receive all disability benefits, dividends, payments, loan values, or surrender values.

(C)  The power to borrow on, surrender, or pledge any of the policies.

(D)  The power to exercise any option, such as the power to convert to a different kind or amount of insurance, or the power to select the method of .' settlement of the proceeds.

Any insurance policies which at any time or from time to time compose part of the trust estate may be referred to in this Part Four collectively as "insurance."

**4.3 Payment of Premiums.**  The Co-Trustees may in their sole and absolute discretion determine whether or not to pay the premiums or other charges on any part or all of the insurance.  If at any time the liquid assets of the Trust are insufficient or the Co-Trustees determine not to pay such premiums or other charges on the insurance, the Co-Trustees shall not be required to pay the premiums or other charges, and the Co-Trustees shall not be liable for

-40-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

their failure to do so.  However, in any such event, the Co-Trustees may, in their sole and absolute discretion, pay the premiums or other charges, or any of them, and the Co-Trustees may obtain the necessary funds therefor in any of the following manners:

(A)  By selling at public or private sale, without notice to Carolyn S. Clark or to the beneficiaries of the Trust, or to other persons, a sufficient portion of the principal of the Trust;

(B)  By borrowing on the security of the principal of the Trust or on any of the insurance, including, by way of example only, by borrowing against the cash surrender value of any insurance;

(C)  By applying the dividends of any of the insurance;

(D)  By surrendering any of the policies of insurance for their cash surrender value; or

(E)  By converting any policy of insurance on which premiums or other charges have not been paid into paid-up insurance pursuant to the terms of such policy of insurance.

4.4     Collection of Insurance Proceeds.  Upon the death of an insured, the Co-Trustee shall take all necessary steps to collect the proceeds of the insurance, including double indemnity benefits, if they are payable.  To facilitate the prompt collection of such proceeds, the Co-Trustee shall furnish the necessary proofs of death to the respective insurance companies and is authorized and empowered to do any and all things which in such Co-Trustees' sole and absolute discretion are necessary or appropriate to collect such proceeds, including, but not limited to, the following:

(A)  To execute and deliver to the respective insurance companies any releases, receipts, acquittances, or other necessary or appropriate instruments or documents to fully discharge any such insurance company's liabilities under such insurance.

(B)  To compromise, adjust, or settle any claim arising out of any insurance on such

-41-

"Certified as to certification on signature page"

EXHIBIT A

terms and conditions as the Co-Trustees, in their sole and absolute discretion, deems advisable.

(C)  To bring suit upon any policy of insurance, the payment of which is contested by the insurer, and to pay the expenses of any such suit, including attorneys' fees, from the Trust estate or from any other insurance proceeds; provided, nevertheless, that the Co-Trustees shall be under no obligation and duty to bring suit unless it is advisable in the opinion of counsel selected by the Co-Trustees and unless the Co-Trustees shall have either adequate funds with which to pay the expenses of such suit or indemnification to the Co-Trustees' satisfaction against any loss, liability, or expense, which may be incurred in bringing such suit.

4.5     No Tracing by Insurance Companies.     No insurance company which has issued or shall issue any insurance shall have any obligation to inquire into the terms of this instrument or see to the application of the proceeds and benefits of any policy of insurance and a receipt of the Co-Trustees given to any such insurance company shall be effective to release such insurance company from any liability as the result of such policy or policies of insurance and shall be binding upon every beneficiary of the Trust.

4.6     Trustees' Obligation to Collect.     The Co-Trustees, except for their own negligence or willful misconduct, shall not be liable to anyone for failure to collect all or any part of the proceeds of any policy of insurance, and the Co-Trustees shall be responsible for the proceeds and benefits of such insurance only when collected by or paid to the Co-Trustees.

4.7     Application of Proceeds and Benefits.     Proceeds and benefits of insurance collected by or paid to the Co-Trustees shall be added to and become part of the principal of the Trust estate and shall be held, managed, invested and re-invested as a part thereof.

PART 5

LIABILITY OF CO-TRUSTEES AND PERSONS DEALING WITH CO-TRUSTEES

-42-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

5.1     **Persons Dealing With Co-Trustees.**          No purchaser from or other person dealing with the Co-Trustees shall be responsible for the application of any purchase money or other thing of value paid or delivered to any Co-Trustee, and the receipt by any Co-Trustee shall be a full discharge.  No purchaser from or other person dealing with any Co-Trustee, and no issuer, transfer agent, or other agent of any issuer of any securities, to which any transaction with any Co-Trustee shall relate shall be under any obligation to ascertain or inquire into the power of the Co-Trustees to transfer, pledge, or otherwise in any manner dispose of or deal with any securities or other property comprising part of the Trust estate.

5.2     **Limitation of Liability of Co-Trustees for Loss to Trust Estate.** No Co-Trustee shall be liable or responsible for any loss to the Trust estate that may occur by reason of depreciation in value of the property at any time belonging to the Trust estate, nor for any other loss that may occur, except that each Co-Trustee shall be liable for its own negligence or willful misconduct.

5.3     **Limitation of Liability of Co-Trustee for Acts of Others.**  No Co-Trustee shall be liable or responsible for the acts, omissions, or defaults of any agent or other person to whom duties may be properly delegated hereunder (except officers, regular employees, or affiliates of any Co-Trustee), if such agent or person was appointed with due care regardless of whether under the terms of the delegation: (1) the Co-Trustee or a beneficiary of the Trust is required to arbitrate disputes with the agent or (2) the period for bringing an action by the Co-Trustee or a beneficiary of the Trust with respect to an agent's actions is shortened from that which is applicable to Co-Trustees under the law of the State of Texas.  No Co-Trustee shall be liable or responsible for failure to contest the accounts of any other Co-Trustee, or otherwise to compel any other Co-Trustee to redress any breach of trust, unless requested in writing to do so by a

-43-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

beneficiary or a guardian or guardian ad litem thereof. No Co-Trustee shall be liable or responsible for any act within the sole power and discretion of any other Co-Trustee. No successor Co-Trustee shall have any duty, responsibility, obligation, or liability whatsoever for, or any duty, responsibility, obligation, or liability whatsoever for failure to rectify, the acts or omissions of any predecessor Co-Trustee.

5.4     **Limitation of Liability of Co-Trustees to Third Parties.** No Co-Trustee acting in its fiduciary capacity hereunder shall incur any personal liability for obligations of the trust to any third party who deals with the Co-Trustee in the administration of the Trust estate. Each Co-Trustee shall be entitled to reimbursement from the Trust estate for any liability, whether in contract or in tort, incurred in the administration of the Trust estate in accordance with the provisions hereof. Each Co-Trustee may contract in such form as to exempt the Co-Trustee from such personal liability and to cause such liability to be limited to the Trust estate.

5.5     **Reliance on Probated Will of Person Possessing Power of Appointment.**

Wherever in this Agreement a person is given a power of appointment by Will, the Co-Trustee may rely upon an instrument admitted to probate in any jurisdiction as the last Will of the person possessing such power. If the Co-Trustee has not received written notice of the existence of such Will within a period of three (3) months after the death of the person possessing such power, the Co-Trustee may presume that such person failed to exercise the power of appointment, and the Co-Trustee shall be protected in acting in accordance with such presumption. This protection to the Co-Trustee shall not limit or qualify any power of appointment or the rights of any person to pursue the property affected by the exercise thereof, irrespective of the place of probate or time of discovery of any such Will.

5.6     **Judgment and Discretion of Co-Trustees Final.** Wherever the judgment or

-44-

"Certified as to certification on signature page"

discretion of any Co-Trustee may be exercised, it shall be final and binding upon every person interested in the Trust estate.  Any Co-Trustee exercising any discretionary power relating to the distribution or accumulation of principal or income, or to the termination of any Trust, shall be responsible only for lack of good faith in the exercise of such power.  This Section shall not apply to a Co-Trustee who is also Grantor or a beneficiary of the Trust.

## PART 6

### IRREVOCABILITY AND RESIGNATION BY CO-TRUSTEE

**6.1 Trusts Irrevocable.**        This Agreement and the Trusts hereby created shall be irrevocable and shall not be amended or revoked, in whole or in part, by Carolyn S. Clark or any other person, other than by express authorization given the Co-Trustees in this Agreement. Express Authorization is as follows: Additional gifts or conveyances may be added or made to this Trust during Carolyn S. Clark's lifetime in accord with Part 2, Section 2.1 herein, and if all of the beneficiaries consent, this Trust may be modified or terminated only if modified or terminated prior to the death of Carolyn S. Clark.

**6.2      Renouncement of Interest by Grantor.**        Notwithstanding any other provision in this Agreement, no part of the principal or income of any Trust established herein shall ever revert to or be used for the satisfaction of legal obligations of Carolyn S. Clark or any other beneficiary; and no income of any Trust established herein shall be applied to the payment of premiums of insurance on the life of Carolyn S. Clark without the prior written approval of the Primary Beneficiary if there is one, or, if not, all of the then income beneficiaries of such Trust. Carolyn S. Clark renounces for herself and her estate any interest, either vested or contingent, including any reversionary right or possibility of reverter, in the principal and income of the Trusts, and any power to determine or control, by alteration, amendment, revocation,

-45-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

termination, or otherwise, the beneficial enjoyment of the principal or of the Trusts.

6.3 **Resignation of Co-Trustee.** Any Co-Trustee may resign by filing a written instrument duly acknowledged of record in the Deed Records of Grantor's County, which filing shall immediately deprive any such resigning Co-Trustee of all powers as Co-Trustee hereunder, except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets; provided, nevertheless, that at least thirty (30) days prior to such filing, the resigning Co-Trustee shall give written notice thereof to those persons who could in the discretion of the Co-Trustee receive income from the Trust estate and are at such time *sui juris*. No purchaser from, or other person dealing with, any Co-Trustee is obligated to examine such Deed Records' and any such person acting in good faith shall be protected in all transactions with the Co-Trustee whether or not any such resignation has taken place.

6.4 **Powers and Duties of Successor Co-Trustee.**   Upon the appointment and qualification of any successor Co-Trustee, the same duties shall devolve upon, and the same rights, powers, authorities, privileges, and discretions shall inure to it as to the Co-Trustee originally designated hereunder; and all rights, powers, authorities, privileges, and discretions shall be exercised without the supervision of any court.

6.5 **Reorganization or Substitution of Corporate Co-Trustee.**   If a corporation appointed as Co-Trustee should, before or after qualification, change its name; be reorganized, merged, or consolidated with, or acquired by any other corporation; or be converted into or assign its trust functions to a different type of entity, the resulting entity shall be deemed a continuation of the former one and shall continue to act as Co-Trustee or continue to be eligible to become a Co-Trustee, as the case may be. If any corporation appointed as Co-Trustee enters into a substitution agreement with a subsidiary trust company and complies with Chapter

-46-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

274 of the Texas Finance Code dealing with substitute, or successor fiduciaries, such subsidiary trust company shall become Co-Trustee and perform all the duties and obligations and exercise all the powers and authority connected with or incidental to that Co-Trustee capacity in the same manner as if the subsidiary trust company had been originally named or designated Co-Trustee.

      6.6     **Investments in Common Trust Funds of a Bank.**  Notwithstanding anything contained in this Agreement to the contrary, if any of a Co-Trustee's estate is invested in a bank's or other entity's common trust fund, removal of such bank or other entity as Co-Trustee or Trustee shall be subject to the following provisions:

      (A)  The authority of such Bank Co-Trustee or Trustee to invest in the common trust fund shall continue, and the transfer or payment of the Trust assets need not be made, until the first evaluation date of the said common trust fund which occurs at least thirty (30) days after written notice has been given to the Bank Co-Trustee or Trustee.

      (B)  If Trust assets are invested in more than one common trust fund, the authority of such Bank Co-Trustee or Trustee to invest in the common trust fund shall continue, and the transfer or payment of the Trust assets need not be made, until each evaluation date of the common trust funds has occurred at least once in the period beginning thirty (30) days after written notice has been given to the Co-Trustee or Trustee.

**PART 7**

**DEFINITIONS**

      7.1     **Administration Expenses.**   Whenever used in this Agreement, the term "Administration Expenses" shall mean any expenses incurred by the personal representative of the estate of the designated person to administer the estate of such person and which expenses

"Certified as to certification on signature page"

-47-

EXHIBIT 7

EXHIBIT A

are allowable under applicable local law.

7.2   **Descendants.**   Any reference in this Agreement to "Grantor's descendants," "Carolyn S. Clark's descendants" or a similar reference shall include only the lineal descendants of Carolyn S. Clark and Samuel B. Clark.

7.3   **Code.**   All references in this Agreement to the "Code" shall mean the Internal Revenue Code of 1986, as amended, and shall be deemed to refer to corresponding provisions of any subsequent federal tax law.

7.4   **Corporate Fiduciary.**   Wherever used in this Agreement, the term "corporate fiduciary" shall mean any national or state bank, trust company or other financial institution in the United States having trust powers and a capital and surplus of Ten Million Dollars ($10,000,000) or more.

7.5   **Death Taxes.**   Except as specifically provided otherwise in this Agreement, the term "Death Taxes" shall mean estate, inheritance, transfer, succession, and generation-skipping transfer taxes imposed by federal law and any applicable state law, including interest and penalties thereon, becoming payable because of the death of the designated person.

7.6   **Debts.**   Whenever used in this Agreement, the term "Debts" shall mean any legally enforceable debts owed by the designated person or by the estate of the designated person and which debts are allowable under applicable local law.

7.7   **Education.**   Whenever used in this Agreement, the term "education" shall include elementary, secondary, college, and postgraduate study or vocational training or study, so long as pursued to advantage by the beneficiary at an institution of the beneficiary's choice. In determining distributions for education, the Co-Trustees may consider the beneficiary's

-48-

"Certified as to certification on signature page"

EXHIBIT A

reasonable living expenses.

**7.8   Electing Small Business Trust.**   Wherever used in this Agreement the term "Electing Small Business Trust" shall mean a Trust that acquired any stock of an S Corporation or a Trust to which is allocated any stock of an S Corporation and the Co-Trustee of the Trust makes an election in accordance with Section 1361(e)(3) of the Code to qualify that Trust as an Electing Small Business Trust within the meaning of Section 1361(e)(1) of the Code.

**7.9   Grantor's County.**   All references in this Agreement to "County" shall mean Montgomery County, Texas.

**7.10   Major Disaster Distribution.**   All references in this Agreement to "Major Disaster Distribution" shall mean a distribution in accordance with this Section.  With respect to any Major Disaster Distribution under Part 2 of this Agreement, the relevant date for determining the identity of the recipients of the Major Disaster Distribution shall be the date of termination of the particular Trust.

**7.11   Qualified Subchapter S Trust.**   Wherever used in this Agreement, the term "Qualified Subchapter S Trust" shall mean a Trust that acquires any stock of an S Corporation or a Trust to which is allocated any stock of an S Corporation and the beneficiary of the Trust makes an election in accordance with Section 1361(d)(2) of the Code to qualify that Trust as a Qualified Subchapter S Trust within the meaning of Section 1361(d)(3) of the Code.

**7.12   S Corporation.**   Wherever used in this Agreement, the term "S Corporation" shall mean a corporation that is an S Corporation within the meaning of Section 1361(a) of the Code.

**7.13   Spendthrift Trust.**   Wherever used in this Agreement, the term "Spendthrift Trust" shall mean a trust no part of the income or principal of which shall ever be transferred or

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

assigned by any beneficiary or distributee, or subjected to any judicial process against any beneficiary or distributee before the same has been paid or distributed to the beneficiary or distributee. No part of the beneficial interest of any beneficiary or distributee shall in any event be subject to sale, hypothecation, assignment, or transfer. Nor shall the principal or income of any Spendthrift Trust estate be liable for the debt of any beneficiary or distributee. Nor shall any part of the principal or income of any Spendthrift Trust be seized, attached, or in any manner taken by judicial proceedings against any beneficiary or distributee on account of the debts, assignments, sale, divorce, or encumbrance of the beneficiary or distributee. In accordance with these provisions, the Co-Trustee shall pay to the beneficiary or distributee the sum payable to him according to the Trust terms, notwithstanding any purported sale, assignment, hypothecation, transfer, attachment, or judicial process, exactly as if the same did not exist. Nothing contained in this Section shall be construed as restricting the exercise of any power of appointment granted in this Agreement.

7.14   **Survive.**   For purposes of this Agreement, one person shall be regarded as having survived another only if the former survived the latter by ninety (90) days or more.

## PART 8

## MISCELLANEOUS

8.1   **Situs of Trusts.**   The Trusts created herein shall be deemed Texas Trusts and shall, in all respects, be governed by the laws of the State of Texas. However, if the Co-Trustee, in its sole discretion, determines that a change of situs would be beneficial to the purposes of any separate Trust established by this Agreement, the Co-Trustees shall have the discretion and authority to change the situs of any such Trust to another state. Formal notice of any change of situs may be given by the Co-Trustees by the filing of a written declaration in the

"Certified as to certification on signature page"

-50-

EXHIBIT 7

EXHIBIT A

Deed Records of Grantor's County. If the situs of any such Trust is changed to another state, then the Trust shall, in all respects, be governed by the laws of the state which is the new situs. No such change of situs shall be authorized herein, however, that would result in a termination of the Trust for federal tax purposes.

8.2    **Use of Words.**    As used in this Agreement, whenever the context so indicates, the gender of all words shall include the masculine, feminine, and neuter, and the number of all words shall include the singular and the plural.

8.3    **Maximum Duration of Trusts.**    Notwithstanding any other provision of this Agreement, if any Trust created in this Agreement or authorized in this Agreement (by power of appointment or otherwise) has not otherwise fully terminated under the terms of this Agreement, then that Trust shall terminate fully, and all principal and undistributed income shall be distributed to the respective income beneficiary or beneficiaries at the end of twenty (20) years and eleven (11) months after the death of the last beneficiary named herein to die.

8.4    **Parties Bound.**    This Agreement shall extend to and be binding upon the Co-Trustees, Carolyn S. Clark, and upon her lineal descendants as referred to herein, executors, administrators, successors, and assigns, and the beneficiaries designated in this Agreement.

8.5    **Invalid Provisions.**    If any part of this Agreement or any Trust created under this Agreement is determined to be invalid, illegal, or inoperative for any reason, it is Carolyn S. Clark's intention that the remaining parts, so far as possible and reasonable, shall be effective and fully operative. The Co-Trustees may seek and obtain court instructions for the purpose of carrying out as nearly as may be possible the intention of this Agreement as shown by the terms hereof, including any terms held invalid, illegal, or inoperative.

8.6    **Headings; Table of Contents.**    The Table of Contents and the headings

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

used throughout this Agreement have been inserted for administrative convenience only, and do

not constitute matter to be construed in interpreting this Agreement.

    8.7    **Photocopy Original.** The original copies of this Agreement may consist of counterparts that are photocopies of a typed or printed master.

Executed at _Conroe_ , Texas, this _28th_ day of _July_ , 2017.

_Carolyn S. Clark_
Carolyn S. Clark,
GRANTOR

Kevin J. Clark agrees to act as Co-Trustee under this Trust Agreement.

_Kevin J Clark_
Kevin J. Clark,
CO-TRUSTEE

James C. Flitsch agrees to act as Co-Trustee under this Trust Agreement.

_James C Flitsch_
James C. Flitsch,
CO-TRUSTEE

STATE OF TEXAS     §
                   §
COUNTY OF MONTGOMERY §

    BEFORE ME, the undersigned authority, on this day personally appeared Carolyn S.

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

Clark, Grantor known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and considerations therein expressed.

Given under my hand and seal of office this _28th_ day of ⟨July⟩, 2017.



NOTARY PUBLIC, STATE OF TEXAS
Print name: _EARLYNNE M. KOCH_

STATE OF TEXAS             §
                          §
COUNTY OF MONTGOMERY §

BEFORE ME, the undersigned authority, on this day personally appeared Kevin J. Clark, Co-Trustee known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed and in the capacity therein stated.

Given under my hand and seal of office this _28th_ day of ⟨July⟩, 2017.



NOTARY PUBLIC, STATE OF TEXAS
Print name: _EARLYNNE M. KOCH_

STATE OF MISSISSIPPI       §
                          §
COUNTY OF MARSHALL    §

BEFORE ME, the undersigned authority, on this day personally appeared James C. Flitsch, Co-Trustee known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed.

Given under my hand and seal of office this _28th_ day of ⟨July⟩, 2017.

NOTARY PUBLIC, STATE OF MISSISSIPPI
Print name: _EARLYNNE M. KOCH_

EARLYNNE MCCLAIN KOCH
Notary Public, State of Texas
Comm. Expires 02-28-2019
Notary ID 2128566

-53-

"Certified as to certification on signature page"

EXHIBIT 7

EXHIBIT A

## SCHEDULE A

1.      Residential real estate, Address: 2711 Bay Laurel Ln., Conroe, Montgomery County, Texas  77304, Property description:  Lot 36, Block 1, of GRAYSTONE HILLS SECTION ELEVEN, a subdivision in Montgomery County, Texas, according to the map or plat thereof recorded in Cabinet Z, Sheet 2281, of the Map and/or Plat Records, Montgomery County, Texas.

2.      Residential real estate, Address: 2113 N Thompson St., Conroe, Texas 77301-1224, Property description:  Lot 4, Block 1, Of Sellers Park, a Subdivision in Montgomery County, Texas according to the Map thereof recorded in Volume 5, Page 361, of the Map and/or Plat Records of Montgomery County, Texas;

3.      All property and all accounts or property in accounts of any type owned by Carolyn S. Clark and held on her behalf by Gregory Sullivan, 1720 E. Bradford Parkway, Springfield, MO.  65804, 417-883-6680/800-288-6680 or at any Wells Fargo Advisors, whose registered office is located at 1720 E. Bradford Parkway, Springfield, MO.  65804 or by or at any affiliated entity, associated entity, subsidiary, or predecessor of these entities including but not limited to property in Account Numbers 1170-0208; 3284-0105; and 3427-4549.

4.      All personal property of Carolyn S. Clark designated by her as an addition to Trust made in writing by Carolyn S. Clark and bearing the signature of Carolyn S. Clark and accepted by the Co-Trustees or, if illness prevents or makes these measures unreasonable, then by writing bearing the signature of Carolyn S. Clark or by verbal designation made by Carolyn S. Clark if by necessity and witnessed by a writing of a witness and bearing the signature of the witness.

Executed at _Conroe_, Texas, this day of , 2017.


_Carolyn S. Clark_
Carolyn S. Clark,
GRANTOR

STATE OF TEXAS            §
                          §
COUNTY OF MONTGOMERY §

BEFORE ME, the undersigned authority, on this day personally appeared Carolyn S. Clark, Grantor known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and considerations therein expressed.

Given under my hand and seal of office this _25th_ day of _July_, 2017.

_Earlynnm Koch_
NOTARY PUBLIC, STATE OF TEXAS
Print name: _EARLYNNE M. KOCH_

EARLYNNE MCCLAIN KOCH
Notary Public, State of Texas
Comm. Expires 02-26-2019
Notary ID 2128566

"Certified as to certification on signature page"

Irrevocable Trust of Carolyn Clark_20180921.pdf

EXHIBIT A

"Certified as to certification on signature page"

EXHIBIT 8

RECEIVED AND FILED
At 4:54 FOR RECORD O'Clock P M.

AUG 14 2017

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By _____ Deputy

CAUSE NO. 16-09-10238

| | | |
|---|---|---|
| COMMISSION FOR LAWYER DISCIPLINE, | § | IN THE DISTRICT COURT OF |
| | § | |
| Petitioner, | § | |
| | § | |
| vs. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| KRISTIN D. WILKINSON, | § | |
| | § | |
| Respondent. | § | 284th JUDICIAL DISTRICT |

## JUDGMENT OF DISBARMENT

### Parties and Appearance

On July 17, 2017, came to be heard the above-styled and numbered cause. Petitioner, the **COMMISSION FOR LAWYER DISCIPLINE**, appeared by and through its attorney of record, Shannon Breaux Sauceda, Assistant Disciplinary Counsel, and announced ready. Respondent, **KRISTIN D. WILKINSON** (hereinafter referred to as "Respondent"), Texas Bar Number 24037708, appeared in person and announced ready.

### Jurisdiction and Venue

On September 1, 2016, pursuant to Rule 3.02 of the TEXAS RULES OF DISCIPLINARY PROCEDURE, the SUPREME COURT OF TEXAS appointed the Honorable Tim Womack to preside over this disciplinary action. The Court finds that it has jurisdiction over the parties and the subject matter of this action, and that venue is proper.

The Court, having considered all of the pleadings, evidence, stipulations, argument and *Order Granting Petitioner's Motion for Partial Summary Judgment* entered April 28, 2017, finds Respondent committed Professional Misconduct as defined by Rule 1.06W of the TEXAS RULES OF DISCIPLINARY PROCEDURE. The Court impaneled and swore the jury, which heard the evidence and arguments of counsel. The court submitted questions, definitions, and instructions to the jury. In

Minute
Date: 8.14.17

"Certified as to certification on signature page"

EXHIBIT 8

response, the jury made findings that the court received, filed, and entered of record. The questions submitted to the jury and the jury's findings are attached as Exhibit "A" and incorporated by reference. Petitioner moved for judgment on the verdict. The court considered the motion and renders judgment for Petitioner.

### Professional Misconduct

After considering the verdict of the jury, testimony and documentary evidence, arguments of counsel, and applicable law, the Court finds and concludes:

1. Respondent is an attorney licensed to practice law in Texas and is a member of the STATE BAR OF TEXAS. Respondent's principal place of practice is Conroe, Montgomery County, Texas. Therefore, this Court has jurisdiction over the parties and subject matter of this case, and venue is appropriate in Montgomery County, Texas;

2. Respondent has committed professional misconduct as defined by Rule 1.06W of the TEXAS RULES OF DISCIPLINARY PROCEDURE and in violation of one or more of the TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT; Article X, Section 9, of the STATE BAR RULES, and

3. Respondent violated the following TEXAS DISCIPLINARY RULES OF PROFESSIONAL CONDUCT: **Rules 8.04(a)(2)** [a lawyer shall not commit a serious crime or commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects]; **8.04(a)(3)** [a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation]; and **8.04(a)(7)** [a lawyer shall not violate any disciplinary or disability order or judgment].

### Sanction

The Court, having found that Respondent has committed Professional Misconduct, heard and considered additional evidence regarding the appropriate sanction to be imposed against Respondent. After hearing evidence and argument and after having considered the factors in Rule 3.10 of the TEXAS RULE OF DISCIPLINARY PROCEDURE, the Court finds that the appropriate sanction is DISBARMENT.

<u>Judgment of Disbarment</u>
Page 2 of 6

Minute

Date:_____

Certified as to certification on signature page"

EXHIBIT 8

### Disbarment

It is therefore **ORDERED, ADJUDGED** and **DECREED** that effective immediately, Respondent, **KRISTIN D. WILKINSON**, State Bar Number 24037708, is hereby DISBARRED from the practice of law in the State of Texas.

It is further **ORDERED** Respondent is prohibited from practicing law in Texas, holding herself out as an attorney at law, performing any legal services for others, accepting any fee directly or indirectly for legal services, appearing as counsel or in any representative capacity in any proceeding in any Texas court or before any administrative body or holding herself out to others or using her name, in any manner, in conjunction with the words "attorney at law," "attorney," "counselor at law," or "lawyer."

### Notification

It is further **ORDERED** Respondent shall immediately notify each of her current clients in writing of this disbarment. In addition to such notification, Respondent is **ORDERED** to return any files, papers, unearned monies and other property belonging to clients and former clients in the Respondent's possession to the respective clients or former clients or to another attorney at the client's or former client's request. Respondent is further **ORDERED** to file with the STATE BAR OF TEXAS, Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701), within thirty (30) days of the signing of this *Judgment*, an affidavit stating that all current clients have been notified of Respondent's disbarment and that all files, papers, monies and other property belonging to all clients and former clients have been returned as ordered herein.

It is further **ORDERED** Respondent shall, on or before thirty (30) days from the signing of this *Judgment*, notify in writing each and every justice of the peace, judge, magistrate, administrative judge or officer and chief justice of each and every court or tribunal in which Respondent has any

### Judgment of Disbarment
Page 3 of 6

Minute

Date: _____

"Certified as to certification on signature page"

EXHIBIT 8

matter pending of the terms of this *Judgment*, the style and cause number of the pending matter(s), and the name, address and telephone number of the client(s) Respondent is representing. Respondent is further **ORDERED** to file with the STATE BAR OF TEXAS, Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701), within thirty (30) days of the signing of this *Judgment*, an affidavit stating that each and every justice of the peace, judge, magistrate, administrative judge or officer and chief justice has received written notice of the terms of this judgment.

## Surrender of License

It is further **ORDERED** Respondent shall, within thirty (30) days of the signing of this *Judgment*, surrender her law license and permanent State Bar Card to the STATE BAR OF TEXAS, Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701), to be forwarded to the Supreme Court of the State of Texas.

## Attorneys' Fees and Expenses

It is further **ORDERED** Respondent shall pay all reasonable and necessary attorneys' fees and direct expenses to the STATE BAR OF TEXAS in the amount of Twenty-Five Thousand One Hundred Seventy and 08/100 Dollars ($25,170.08). The payment shall be made by certified or cashier's check or money order. Respondent shall forward the funds, made payable to the STATE BAR OF TEXAS, to the STATE BAR OF TEXAS, Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711-2487 (1414 Colorado St., Austin, Texas 78701).

It is further **ORDERED** that all amounts ordered herein are due to the misconduct of Respondent and are assessed as a part of the sanction in accordance with Rule 1.06Z of the TEXAS RULES OF DISCIPLINARY PROCEDURE. Any amount not paid shall accrue interest at the maximum

Judgment of Disbarment<br>Page 4 of 6

Minute

Date:_____

"Certified as to certification on signature page"

EXHIBIT 8

legal rate per annum until paid and the STATE BAR OF TEXAS shall have all writs and other post-judgment remedies against Respondent in order to collect all unpaid amounts.

### Publication

It is further **ORDERED** this disbarment shall be made a matter of record and appropriately published in accordance with the TEXAS RULES OF DISCIPLINARY PROCEDURE.

### Conditions Precedent to Reinstatement

It is further **ORDERED** that payment of the foregoing restitution and attorneys' fees and expenses amounts shall be a condition precedent to any consideration of reinstatement from disbarment as provided by Rules 2.19 and 11.02(D) of the TEXAS RULES OF DISCIPLINARY PROCEDURE.

### Other Relief

**IT IS FURTHER ORDERED** that the Clerk of this Court shall forward a certified copy of the current *Disciplinary Petition* on file in this case, along with a copy of this *Judgment* to the following:  (1) CLERK OF THE SUPREME COURT OF TEXAS, Supreme Court Building, Austin, Texas 78711; (2) the STATE BAR OF TEXAS, Office of the Chief Disciplinary Counsel, P.O. Box 12487, Austin, Texas 78711-2487; and (3) Respondent, P.O. Box 701188, Houston, Texas 77270-1188.

**IT IS ORDERED** that all costs of court incurred in the prosecution of this lawsuit shall be taxed against Respondent, for which the Clerk may have execution if they are not timely paid.

## Minute

Date:_____

"Certified as to certification on signature page"

EXHIBIT 8

All requested relief not expressly granted herein is expressly **DENIED**.

**SIGNED** this ____ day of _____, 2017.

**THE HONORABLE TIM WOMACK**
**JUDGE PRESIDING**

**Judgment of Disbarment**
Page 6 of 6

**Minute**

Date: _____

"Certified as to certification on signature page"

EXHIBIT 9

**Subject:** Re: My Request . . .

**Date:** Tuesday, February 26, 2019 at 9:19:14 PM Central Standard Time

**From:** Kristin Wilkinson

**To:** Kevin Clark

**Attachments:** PastedGraphic-1.tiff, PastedGraphic-1.tiff

Dear Kevin,

It's good to hear the good news that you're receiving interested inquiries to retain your consulting services.  I was able to reach James this evening to discuss the trustee replacement.  He said you and he had already talked about it and he was aware.  We agreed to further discuss the trust after I receive and review the trust documentation from you.  Let's get that done.  We'll all be heads down in focus!

Sincerely,

Kristin Wilkinson
P. O. Box 701188
Houston, Texas. 77270
(713) 561-5616 (Telephone)
(713) 561-5629 (Facsimile)

Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential, intended only for the use of the named recipient above.  If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited.  If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the above address.

On Feb 26, 2019, at 3:56 PM, Kristin Wilkinson <Kristin@wilkinsonlawfirm.com> wrote:

Dear Kevin:

Attached are the requested pages from the trust document.  Please contact me as soon as possible to schedule the delivery of the required letter and trust papers/documents.

Sincerely,

Kristin Wilkinson

**From:** Kevin Clark <kevin@fusionpmp.com>
**Date:** Monday, February 25, 2019 at 5:46 PM
**To:** Kristin Wilkinson <kristin@wilkinsonlawfirm.com>
**Subject:** My Request . . .

EXHIBIT 10

DOC #2019016016

Effective March 1, 2018:

I, Kevin J Clark hereby resign as Co-Trustee for the Carolyn S. Clark Irrevocable Trust.

Kevin J Clark appoints Kristin Wilkinson, J.D. as his replacement CO-TRUSTEE in accordance with Part 6 and Section 3 of the Carolyn S. Clark Irrevocable Trust Agreement.

Kevin J Clark
CO-TRUSTEE

BEFORE ME, the undersigned authority, on this day personally appeared Kevin J. Clark, Co-Trustee known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed and in the capacity therein stated.

Given under my hand and seal of office this 26th day of February, 2019.

STATE OF TEXAS §
§
COUNTY OF Montgomery §
NOTARY PUBLIC, STATE OF TEXAS

EVELYN MALLETT
Notary ID #129691911
My Commission Expires
January 28, 2022

Print name: Evelyn Mallett

Return to
Kristin Wilkinson, J.D.
Po Box 701188
Houston, Tx 77270

I hereby certify that this is a true and correct copy of the original record on file in my office.



Mark Turnbull, County Clerk
Montgomery County, Texas

by Sharon Wilson Deputy
Issued 7-19-19

EXHIBIT 10

**Doc #: 2019016016**
**Pages 2**

FILED FOR RECORD
03/01/2019    10:05AM

*Mark Turnbull*

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number
sequence on the date and time stamped herein
by me and was duly RECORDED in the Official Public
Records of Montgomery County, Texas.

03/01/2019

*Mark Turnbull*

County Clerk
Montgomery County, Texas

I hereby certify that this is a true and correct
copy of the original record on file in my office.

Mark Turnbull, County Clerk
Montgomery County, Texas

by _Sharon Wilson_ Deputy
Issued _7-19-19_

EXHIBIT 11

## ACCEPTANCE BY CO-TRUSTEE
## AFTER SIGNATURE OF KEVIN J. CLARK:

I hereby accept the appointment as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust, made February 28, 2019, by Kevin J. Clark, effective March 1, 2019.  Compensation of Kristin Wilkinson is set at five percent (5%) of the total value of all property conveyed to the trust during the first year of her service and according to the terms of the trust thereafter.


Agreed:

Kevin J. Clark, Co-Trustee

Date:      March 4, 2019


Acceptance of Appointment:

Kristin Wilkinson

Date of Signature:          March 4, 2019

EXHIBIT 12

5 19 04:15p    The Wilkinson Law Firm, P                          7135615629              p.1

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 5, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

Re:    Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

As you have been notified by Kevin Clark, he has resigned as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust and has appointed me in his place as Co-Trustee.

Enclosed with this letter is the Associated Person Information form received yesterday afternoon from Kevin Clark. As you requested, the highlighted portions of the form have been completed with one exception: the Associated Person Information form had pre-filled the box identifying the associated person as an "Individual" by marking it with an "x." The yellow-highlighted portions of the form included a section that relates only to a "Non-Individual Account Owner." I did not fill out this section of the form because the form was pre-filled to indicate the account owner is an individual and not a "non-individual." If you need this portion of the form completed, please let me know.

Also attached is a copy of the resignation by Kevin Clark that was filed and recorded in Montgomery County for your records as the second form of government identification requested in the Associated Person Information form.

Please contact me as soon as you receive this document today.

Please protect the personal information included in this document as it contains sensitive data that should not be released to other individuals.

FLITSCH000001

EXHIBIT 12

05 19.04:22p        The Wilkinson Law Firm, P                    7135615629              p.1

-2-

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*
Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804
Re:  Carolyn S. Clark Irrevocable Living Trust

        You may contact me by telephone at the numbers on the form as well as by my direct office number (713) 561-5634, which is not on the form.  If your call is directed to voicemail at any of the numbers provided to you in these documents, please leave a message and I will return your call promptly.

        I look forward to working with both you and Gregory Sullivan.

                            Sincerely,

                            Kristin Wilkinson, Co-Trustee

cc:      File/James C. Flitsch, Co-Trustee

Enclosures (As referenced herein)

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

FLITSCH000002

EXHIBIT 12

05 19, 04:24p       The Wilkinson Law Firm, P                    7135615629

## Associated Person Information

WELLS FARGO ADVISORS

| Sub Firm #. | BR Code | FA Code | Account Number | ☐ New |
|---|---|---|---|---|
| (Office Use Only) | | | | ☐ Update |

### Associated Person Information

☒ Individual   ☐ Non-Personal

Name (First, Middle, Last)  **Kristin Diane Wilkinson**

Legal Address - Cannot be a P.O. Box   **550 Club Dr., Suite 354**

| City **Montgomery** | | State **TX** | ZIP **77316** |
|---|---|---|---|

| Home Phone | Business Phone **713-561-5616** | Fax Number **713-561-5629** | Other Number **936-668-6953** |
|---|---|---|---|

| SSN/Tax ID | Birth Date | Occupation Description **Trustee / Proprietor** |
|---|---|---|

| Country of Citizenship/Registration **U.S.A.** | State of Registration **TX** | Permanent Resident? ☒ Yes ☐ No | Email Address **kristinwilkinson @ use-3kdta@gmail.com** |
|---|---|---|---|

| Government ID Type **Drivers License** | Government ID Number | Government ID Place of Issue **TX** | Date of Issue **09-13-2010** | Expiration Date **09-13-2010** |
|---|---|---|---|---|

| Second Government ID Type **CD** | Second Government ID Number | Second Government ID Place of Issue **County Clerk, Montgomery Co.** | Date of Issue **03-01-2019** | Expiration Date **N/A** |
|---|---|---|---|---|

**FINRA Information**   Is Client, Client's Spouse, or immediate relative employed by Wells Fargo Advisors or another FINRA Member or any other financial services company?   ☐ Yes   ☒ No   If "Yes," enter Class Code (Definitions on next page).   Class Code

**RULE 144:** Is authorized person, or member of their immediate family a director, policymaking officer, or 10% stockholder in any publicly traded company?   ☐ Yes   ☒ No   If "Yes," indicate company ticker symbol or name.

### Non-Individual Account Owner

Is legal entity publicly traded? ☐ No ☐ Yes        Is the legal entity regulated by Federal Regulator? ☐ No ☐ Yes

| Exchange Name | Country of Exchange | Exchange Description |
|---|---|---|

| Sales Market | Sales Market State(s) | | | Sales Market Country(ies) | | |
|---|---|---|---|---|---|---|

**Business Type:**
- ☐ Corporation
- ☐ Division, Store, Office
- ☐ Financial Institution
- ☐ Govt. Unit or Agency
- ☐ Indian Tribal Govt.
- ☐ Limited Liability Co.
- ☒ Limited Partnership
- ☐ Informal Social/Recreational Group
- ☐ Sole Proprietor
- ☐ Trust Co.
- ☐ Unicorp Assn./Social/Rec/Civic Group

**Business Subtype:**
- ☐ Business Trust
- ☐ Multinational Corp.
- ☐ Corporation
- ☐ Domestic
- ☐ Federal
- ☐ Foreign
- ☐ General Partnership
- ☐ Joint Venture Partnership
- ☐ Limited Liability Partnership
- ☐ Local
- ☐ Professional Corp.
- ☐ Professional Limited Liability Partnership
- ☐ State

**NAIC Industry (Select up to 3):**
- ☐ Agriculture, Forestry, Fishing, and Hunting
- ☐ Mining
- ☐ Utilities
- ☐ Construction
- ☐ Food/Textile Manufacturing
- ☐ Wood/Plastic/Glass/Chemical Manufacturing
- ☐ Metal/Machinery Manufacturing
- ☐ Wholesale Trade
- ☐ Durable Goods/Housewares/Clothing/Food
- ☐ Department Stores/General Merchandise Stores
- ☐ Transportation
- ☐ Warehousing and Storage
- ☐ Information
- ☐ Finance and Insurance
- ☐ Real Estate Rental and Leasing
- ☐ Professional, Scientific, and Technical Services
- ☐ Management of Companies and Enterprises
- ☐ Administrative and Support and Waste Management and Remediation Services
- ☐ Educational Services
- ☐ Health Care and Social Assistance
- ☐ Arts, Entertainment, and Recreation
- ☐ Accommodation and Food Services
- ☐ Other Services (except Public Administration)
- ☐ Public Administration

**Investment and Insurance Products:**

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |
|---|---|---|

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

585698 (Rev 24 - 08/18)        Copy 1 – New Accounts      Copy 2 - Advisor      Copy 3 - Client

FLITSCH000003        Page 1 of 4

5 19.04:27p        The Wilkinson Law Firm, P                 713561562          p.1

EXHIBIT 12

| NAIC Sub-Industry (1)* | |
|---|---|
| NAIC Sub-Industry (2)* | |
| NAIC Sub-Industry (3)* | |

*For information regarding NAICS Industry Codes, please visit the following website http://www.census.gov/eos/www/naics/ and use the 2012 NAICS Search feature to locate potential industry code descriptions.

NAIC (North American Industry Classification System) - Required for non-individual clients. NAICS codes are a standard used by federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.

### Person of Interest/High Risk Indicators

| U.S. Non-Individual (Select up to 5 indicators that apply to this account owner.) | ☐ CASINO (5B) | ☐ GUN DLR/FIREARMS (5E) | ☐ FOREIGN NGO (5F) | ☐ TRAVEL AGENT (5A) |
|---|---|---|---|---|
| | ☐ GEM/PREC MTL DLRS (5C) | ☐ MONEY SERVICE BUS (5D) | ☐ PEP-FOREIGN (5G) | ☒ NOT APPLICABLE (0B) |
| U.S. Individual (Select all that apply.) | ☐ PEP (3A) | ☒ NOT APPLICABLE (00) | | |
| Foreign Non-Individual (Select up to 5 indicators that apply to this account owner.) | ☐ CASINO (6B) | ☐ FOR PERS INV/HOLDING CO (6H) | | |
| | ☐ FFI (6L) | ☐ FOREIGN TRUST (6I) | ☐ MONEY SERVICE BUS (6D) | |
| | ☐ FOR FIN INTERMEDIARY (6M) | ☐ GEM/PREC MTL DLRS (6C) | ☐ FOREIGN NGO (6K) | ☐ TRAVEL AGENT (6A) |
| | ☐ FOR OPERATING CO (6O) | ☐ GUN DLR/FIREARMS (6F) | ☐ PEP-FOREIGN (6N) | ☒ NOT APPLICABLE E-(00) |
| Foreign Individual (Select all that apply.) | ☐ FOR FIN INTERMEDIARY (8B) | ☐ PEP (3A) | ☐ NON-RESIDENT ALIEN (3C) | ☒ NOT APPLICABLE (00) |

### Authorized Signature

I have read the above information and confirm that it is accurate to the best of my knowledge.

| Associated Person Signature | Date |
|---|---|
| X  Kristin Wilkinson | 3/5/2019 |

| Internal Use | Financial Advisor Signature | | FA Code | |
|---|---|---|---|---|
| | Principal Approver Signature | | Principal Rep Code | Date |

### Government ID Description - Provide two forms of government ID in all cases except when choosing Passport (PP) or non-documentary (ND)

| AI | Articles of Incorporation | EC | Employer ID Card | PC | Permanent Resident Card |
|---|---|---|---|---|---|
| AO | Articles of Organization (LLC) | ED | Estate/Court Documents | PP | Passport |
| AR | Adoption Record | FD | Foreign Issued ID - Non-Driver | RA | Resident Alien ID Card (Green Card) |
| BC | Birth Certificate | FL | Foreign Driver's License* | SC | School ID Card |
| BD | Border Crossing Card* | HC | Health Insurance Card (No Medicare Card) | ST | State ID Card |
| BL | Business License | LP | Life Insurance Policy | TI | Tribal ID |
| BV | B1B2 Visa | MD | Marriage or Divorce Record | TP | Trustee Certification of Investment Powers |
| CD | Court Document | MR | Armed Forces | TR | Trust Document |
| CE | Cedula | ND | Non-Documentary | *If Border Crossing Card or Foreign Driver's | |
| CI | Consular ID Card | NI | National ID Card | License is selected, both Border Crossing Card | |
| DL | Driver's License | OA | Operating Agreement | and Foreign Driver's License forms of ID are | |
| EA | Employment Authorization Card | PA | Partnership Agreement | required. | |

### Class Codes Description: (Do not enter "N" for "No" in the Class Code field - please leave blank.)

U   Employees of Wells Fargo Advisors, their spouse, dependent children, or any other person who is supported directly or indirectly to a material extent by the employee. Also included are accounts in which any of these individuals has a financial or beneficial control or interest such as guardian, custodian, trustee, executor, corporate or legal officer or agent, investment clubs, joint accounts, or partnerships.

V   Non-dependent immediate family members of an employee of Wells Fargo Advisors, which include: non-dependent children, parents, parents-in-law, brothers or sisters, brothers-in-law or sisters-in-law, sons-in-law or daughters-in-law, children or other persons supported directly or indirectly to a material extent by any of these individuals, and any accounts in which have a material or beneficial control or interest such as guardian, custodian, trustee, executor, corporate or legal officer or agent, investment clubs, joint accounts, or partnerships.

W   Employees or brokers of other security firms, their dependent accounts and accounts in which they have a financial or beneficial control or interest, such as guardian, custodian, trustee, executor, corporate or legal officer or agent, investment clubs, joint accounts, or partnerships. You understand that if you are associated with another member or member organization, WFA may notify your employer in writing of your intention to open and/or maintain an account. We will transmit duplicate copies of confirmations and statements or other similar information with respect to the account to your employing member as required by regulation.

Y   Associates of Wells Fargo & Company, their spouse, dependent children, or any other person who is supported directly or indirectly to a material extent by the associate. Also included are accounts in which any of these individuals has a financial or beneficial control or interest such as guardian, custodian, trustee, executor, corporate or legal officer or agent, investment clubs, joint accounts, or partnerships.

Z   Non-dependent immediate family members of an associate of Wells Fargo & Company, which include: non-dependent children, parents, parents-in-law, brothers or sisters, brothers-in-law or sisters-in-law, sons-in-law or daughters-in-law, children or other persons supported directly or indirectly to a material extent by any of these individuals, and any accounts in which they have a financial or beneficial control or interest such as guardian, custodian, trustee, executor, in which they have a financial corporate or legal officer or agent, investment clubs, joint accounts, or partnerships.

586899 (Rev 24 - 06/18)                                                                 Page 3 of 4

EXHIBIT 12

5 19 04:24p     The Wilkinson Law Firm, P

| Occupation Description | | | |
|---|---|---|---|
| A | Proprietor, Professional, Managerial | D | Sales |
| | | E | Administrative, Clerical |
| B | Information Technology Systems | F | Public Service |
| | | G | Personal Service Provider |
| C | Craftsman, Skilled Worker | H | Farming, Fishing, Forestry |

I   Education
J   Clergy
K   Other*
L   Unemployed
M   Retired

N   Student
P   Homemaker
* Description is required

## Person of Interest/High Risk Indicator Descriptions

**U.S. Non-Individual:**

**CASINO (5B)** - A domestic or foreign entity licensed as a casino, gambling casino, or gaming establishment under the laws of any U.S. state or foreign jurisdiction or any political subdivision of the foregoing.

**GEM/PREC MTL DLRS (5C)** - A domestic or foreign person or entity who purchases and sells: jewels; precious metals and stones; and finished goods. This category includes, but is not limited to, jewelry, coins, and antiques.

**GUN DLR/FIREARMS (5E)** - A foreign or domestic based business or entity where the primary business involves the sale of guns, weapons, and/or firearms.

**MONEY SERVICE BUS (5D)** - An agent, agency, branch, or office of any person or entity located within the U.S. doing business in one or more of the following capacities: currency dealer or exchanger; check casher; issuer of traveler's checks, money orders, or electronic cards with a stored monetary value; seller or redeemer of traveler's checks, money orders, or electronic cards with a stored monetary value; money transmitter; and the United States Postal Service (except with respect to the sale of postage or philatelic products); that is not 25% or more owned by a Mexican casa de cambio, which is a nonbank financial institution (currency exchanger) that provides a variety of financial services and is regulated by the Mexican government. Exception: Persons or entities (other than money transmitters) who do not exchange currency, cash checks, or issue, sell, or redeem traveler's checks, money orders, or electronic cards with a stored monetary value in an amount greater than $1,000 to any person or entity on any day in one or more transactions are not MSB(s).

**FOREIGN NGO (5F)** - A domestic or foreign private, nonprofit organization that pursues activities intended to serve the public good that is not funded 100% by the U.S. government. Includes charities, foundations, religious organizations, and other non-profit organizations. NGOs may provide basic social services, work to relieve suffering, promote the interests of the poor, bring citizen concerns to governments, encourage political participation, protect the environment, or undertake community development to serve the needs of citizens, organizations, or groups in one or more of the communities that the NGO operates.

**PEP-FOREIGN (3A)** - A legal entity formed by, or for the benefit of, a PEP. This includes companies, trusts, partnerships, private investment companies, and other operating or non-operating legal entities that are known to be associated with a PEP. Accounts for PEPs with ties to the current Venezuelan government are prohibited.

**TRAVEL AGENT (6A)** - Any domestic or foreign entity who sells, as an agent, the following travel services: airline or rail tickets; hotel and motel reservations; cruise reservations; and/or any combination of those services.

**NOT APPLICABLE (00)**

**U.S. Individual:**

**PEP (3A)** - A PEP includes: a current or former senior official in the executive, legislative, administrative, military, or judicial branches of a foreign government (whether elected or not); a senior official of a major foreign political party; a current or former senior executive of a foreign government-owned corporation; an immediate family member of any individual listed above; a "close associate" of a current or former senior foreign political figure who is widely and publicly known (or is actually known by the Firm) to maintain an unusually close relationship with the individual and is in a position to conduct substantial domestic and international business. Accounts for PEPs with ties to the current Venezuelan government are prohibited.

**NOT APPLICABLE (00)**

**Foreign Non-Individual:**

**CASINO (5B)** - A domestic or foreign entity licensed as a casino, gambling casino, or gaming establishment under the laws of any U.S. state or foreign jurisdiction or any political subdivision of the foregoing.

**FFI (6L)** - Any entity that is organized under the laws of a foreign country; and engages in the business of: banking; securities dealing; brokerage; investment management; or insurance. *Note:* This category includes foreign; mutual funds; hedge funds; futures merchant commissions; broker-dealers; and insurance companies.

**FOR FIN INTERMEDIARY (6M)** - Includes: a foreign individual that act as a financial liaison for its own clients. Includes lawyers, accountants, investment brokers, and other third parties that act as financial liaisons for their clients; or any entity other than a foreign financial institution which: is organized under the laws of a foreign country; and engages in the business of providing investment, tax, or legal advice.

**FOR OPERATING CO (6G)** - Foreign businesses that are: established in a country other than the United States; are not publicly traded on a recognized U.S. exchange; and are engaged in verifiable business activity.

**FOR PERS INVHOLDING CO (6H)** - Includes legal entities: organized under the laws of a country other than the U.S.; and formed to hold client assets and maintain client confidentiality by opening accounts in the name of the PIC or the PHC.

**FOREIGN TRUST (6I)** - A trust established outside the U.S. that is governed by the laws of a jurisdiction other than the U.S.

**GEM/PREC MTL DLRS (6C)** - A domestic or foreign person or entity who purchases and sells: jewels; precious metals and stones; and finished goods. This category includes, but is not limited to, jewelry, coins, and antiques.

**GUN DLR/FIREARMS (6F)** - A foreign or domestic based business or entity where the primary business involves the sale of guns, weapons, and/or firearms.

**MONEY SERVICE BUS (6D)** - An agent, agency, branch, or office of any person or entity located within the U.S. doing business in one or more of the following capacities: currency dealer or exchanger; check casher; issuer of traveler's checks, money orders, or electronic cards with a stored monetary value; seller or redeemer of traveler's checks, money orders, or electronic cards with a stored monetary value; money transmitter; and the United States Postal Service (except with respect to the sale of postage or philatelic products); that is not 25% or more owned by a Mexican casa de cambio, which is a nonbank financial institution (currency exchanger) that provides a variety of financial services and is regulated by the Mexican government. Exception: persons or entities (other than money transmitters) who do not exchange currency, cash checks, or issue, sell, or redeem traveler's checks, money orders, or electronic cards with a stored monetary value in an amount greater than $1,000 to any person or entity on any day in one or more transactions are not MSB(s).

**FOREIGN NGO (6K)** - A domestic or foreign private, nonprofit organization that pursues activities intended to serve the public good that is not funded 100% by the U.S. government. Includes charities, foundations, religious organizations, and other non-profit organizations. NGOs may provide basic social services, work to relieve suffering, promote the interests of the poor, bring citizen concerns to governments, encourage political participation, protect the environment, or undertake community development to serve the needs of citizens, organizations, or groups in one or more of the communities that the NGO operates.

**PEP- FOREIGN (3A)** - A legal entity formed by, or for the benefit of, a PEP. This includes companies, trusts, partnerships, private investment companies, and other operating or non-operating legal entities that are known to be associated with a PEP. Accounts for PEPs with ties to the current Venezuelan government are prohibited.

**TRAVEL AGENT (6A)** - Any domestic or foreign entity who sells, as an agent, the following travel services: airline or rail tickets; hotel and motel reservations; cruise reservations; and/or any combination of those services.

**NOT APPLICABLE (00)**

EXHIBIT 12

05 19 04:35p          Kristin Wilkinson                                    7135615829                    p.1

## Foreign Individual:

**FOR FIN INTERMEDIARY (3B)** - Includes: a foreign individual that act as a financial liaison for its own clients, includes lawyers, accountants, investment brokers, and other third parties that act as financial liaisons for their clients; or any entity other than a foreign financial institution which: is organized under the laws of a foreign country; and engages in the business of providing investment, tax, or legal advice.

**PEP (3A)** - A PEP includes: a current or former senior official in the executive, legislative, administrative, military, or judicial branches of a foreign government (whether elected or not); a senior official of a major foreign political party; a current or former senior executive of a foreign government-owned corporation; an immediate family member of any individual listed above; a "close associate" of a current or former senior foreign political figure who is widely and publicly known (or is actually known by the Firm) to maintain an unusually close relationship with this individual and is in a position to conduct substantial domestic and international business. Accounts for PEPs with ties to the current Venezuelan government are prohibited.

**NON-RESIDENT ALIEN (3C)** - An alien is any individual who is not a U.S. citizen or U.S. national.

**NOT APPLICABLE (00)**

## Business Type/Subtype

Business and Business Subtype are required for non-individual clients to classify the entity appropriately. The business formation will determine the business and business subtype category.

### Business Type Codes

| | |
|---|---|
| C | Corporation |
| D | Division, Store, Office |
| F | Financial Institution |
| G | Government Unit or Agency |
| I | Indian Tribal Government |
| L | Limited Liability Company |
| N | Limited Partnership |
| R | Informal Social/Recreational Group |
| S | Sole Proprietor |
| T | Trust Company |
| U | Unicorp Association/Social/Rec/Civic Group |

### Business Subtype Codes

| | |
|---|---|
| BT | Business Trust |
| CM | Multinational Corporation |
| CO | Corporation |
| DM | Domestic |
| FD | Federal |
| FN | Foreign |
| GP | General Partnership |
| JV | Joint Venture Partnership |
| LL | Limited Liability Partnership |
| LO | Local |
| PC | Professional Corporation |
| PL | Professional Limited Liability Partnership |
| ST | State |

## Exchange

For entities that are publicly traded, the exchange where the entity trades must be indicated.

## Sales Markets State/Country

All non-individual clients, both foreign and domestic, are required to record the specific market(s) in which they conduct business. For entities conducting business across the U.S., users are required to provide one U.S. state and may provide up to three U.S. states. For entities conducting international business, users are required to provide one country and may provide up to three countries. Certain entities may conduct business in both U.S. and international markets. In this instance, entities will be able to provide up to three U.S. states and three international countries.

- Local
- Regional
- U.S.
- International
- U.S./International

## NAIC (North American Industry Classification System)

This is required for non-individual clients. NAICS codes are a standard used by Federal statistical agencies in classifying business establishments for the purpose of collecting, analyzing, and publishing statistical data related to the U.S. business economy.

EXHIBIT 12

DOC #2019016016

Effective March 1, 2018;

I, Kevin J Clark hereby resign as Co-Trustee for the Carolyn S. Clark Irrevocable Trust.

Kevin J Clark appoints Kristin Wilkinson, J.D. as his replacement CO-TRUSTEE in accordance with Part 6 and Section 3 of the Carolyn S. Clark Irrevocable Trust Agreement.

Kevin J Clark
CO-TRUSTEE

BEFORE ME, the undersigned authority, on this day personally appeared Kevin J. Clark, Co-Trustee known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and considerations therein expressed and in the capacity therein stated.

Given under my hand and seal of office this 20th day of February, 2019.

STATE OF TEXAS §
§
COUNTY OF Montgomery §
NOTARY PUBLIC, STATE OF TEXAS

Print name: Evelyn Mallett

EVELYN MALLETT
Notary ID #129591811
My Commission Expires
January 28, 2022

Return to
KRISTIN WILKINSON, J.D.
PO Box 701188
Houston, TX 77270

EXHIBIT 12

5 19 04:39p          Kristin Wilkinson                        7135615629              p.1

Doc #: 2019016016
Pages 2

FILED FOR RECORD
03/01/2019   10:05AM

*[signature]*

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number
sequence on the date and time stamped herein
by me and was duly  RECORDED in the Official Public
Records of Montgomery County, Texas.

03/01/2019

*[seal]*  *[signature]*

County Clerk
Montgomery County, Texas

FLITSCH000008

EXHIBIT 13

06 19 01:23p       Kristin Wilkinson                                      7135615629                p.1

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust


### FACSIMILE TRANSMISSION COVER SHEET

To:         Ms. Joan Bondra; Wells Fargo Advisors

Fax:        417-883-9738

Phone:      417-883-6680

From:       Kristin Wilkinson, Trustee

Date & Time: 03/06/2019

Document:   Correspondence

Reference:  Carolyn S. Clark Irrevocable Living Trust

Total number of pages, including this cover sheet:  2

Person to contact if there are any problems: Kristin Wilkinson  (713) 561-5616

COMMENTS:  See Attached.

### Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential and intended only for the use of the named recipient above.  If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the address below.

---

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice: (713) 561-5616

FLITSCH000009

EXHIBIT 13

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 6, 2019

PRIVILEGED AND PROPRIETARY / PERSONAL
BUSINESS COMMUNICATION
VIA FACSIMILE TO: 417-883-9738

Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

Re:   Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

This will confirm our telephone conversation yesterday at 4:15 p.m. wherein you acknowledged receipt of the Associated Person Information form, copy of the recorded resignation of Kevin Clark and appointment of myself as Co-Trustee, and my letter dated March 5, 2019.

Also this will confirm that you requested that we talk Wednesday morning, March 6, 2019, to go over the changes that must be made to the trust accounts and documentation.  After not having heard from you, I called your office at 11:43 a.m. and was told you were not in the office but would return in 1-1½ hours.

Please contact me at 713-561-5634 by 1:15 p.m. today as there are other matters that require my attention in setting up Trust business.

Sincerely,
/S/Kristin Wilkinson, Co-Trustee
Kristin Wilkinson, Co-Trustee

cc:   File/James C. Flitsch, Co-Trustee

_____

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

FLITSCH000010

EXHIBIT 14

07 19 04:06p    Kristin Wilkinson                                7135615629    p.1

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

## FACSIMILE TRANSMISSION COVER SHEET

To:        Ms. Joan Bondra, Wells Fargo Advisors

Fax:       417-883-9738

Phone:     417-883-6680

From:      Kristin Wilkinson, Trustee

Date & Time:  03/071/2019

Document:  Correspondence

Reference:  Carolyn S. Clark Irrevocable Living Trust

Total number of pages, including this cover sheet:  __12__

Person to contact if there are any problems: Kristin Wilkinson  (713) 561-5616

COMMENTS:  See Attached

### Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential and intended only for the use of the named recipient above.  If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the address below.

---

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice: (713) 561-5616

FLITSCH000011

EXHIBIT 14

07 19 04:11p          Kristin Wilkinson                                    7135615629                    p.1

Sent - StartMail                                          https://www.startmail.com/mailbox/list?mailbox=Sent Messages

Subject:        Proprietary and Confidential Re: FW:
From:           kristinwilkinson@usa.startmail.com
Date:           Thursday, March 7, 2019 at 1:50 PM
To:             Joan.Bondra@wellsfargoadvisors.com

Dear Ms. Bondra:

This email follows your email and our telephone conversation wherein you refused to send the attachment purportedly
included in the email, (below), that you need me to complete, sign, notarize and return to you, via facsimile.  The
form/information purportedly attached in your email was not included in the original documents that needed completion
and of which have already been returned to you.  I called you because I believe that there are additional steps I am
required to complete prior to my being able to open the email and because there is no link in the email to register with
your online portal so that the link will be provided.  I contacted Wells Fargo customer service and they advised me that I
am not associated with the account so I will not be provided a link.  You did not mention this to me.  I have no idea why
you would not have advised me of this even though you sent me the email purportedly with the, inaccessible, attachment.
I will call you again to attempt to clear this situation up so that I can open the email, which I recommend you resend with
the proper link, as you did not provide me with any helpful information and said you had another call and needed to hand
up.

Sincerely,
Kristin Wilkinson, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust


On Wednesday, March 6, 2019 at 2:52 PM, Joan.Bondra@wellsfargoadvisors.com wrote:

1 of 118                                                                              3/7/19, 3:32 PM

FLITSCH000012

EXHIBIT 14

7 19 04:13p          Kristin Wilkinson                                    7135615629                      p.1

Sent – StartMail                                                    https://www.startmail.com/mailbox/list?mailbox=Sent Messages

[Wells Fargo]                                                    [help2.gif] Help

[icon_mail.png]   **Secure Email from Wells Fargo**

[icon_desktop.png]       **Read This Message from a Desktop or Laptop**
Look for and open message_zdm.html (typically at the top or
bottom; location varies by email service).

[icon_mobile.png]       **Read this Message from a Tablet or Mobile Device**
·Click Here from your tablet or mobile device for instructions unique
to your device.

Need help?
Support information or Video tutorial

[Personal       Your personalized image for:  kristinwilkinson@usa.startmail.com
Security        This personal security image will appear on all secure email to you.
Image]

Email Security Powered by Voltage IBE(tm)
Copyright 2013 Wells Fargo. All rights reserved

2 of 118

3/7/19, 3:32 PM

FLITSCH000013

EXHIBIT 14

7 19 04:15p        Kristin Wilkinson                                7135615629                p.1

StartMail                                                        https://www.startmail.com/mailbox/list?mailbox=Sent Messages

Subject:          Proprietary and Confidential
From:             Kristin Wilkinson
Date:             Thursday, March 7, 2019 at 1:53 PM
To:               Joan.Bondra@wellsfargoadvisors.com

Dear Ms. Bondra:

I just sent you an encrypted email. The email will have a question for which you will need the correct answer in order to open the email. The correct answer is reflected below. Just copy and paste it into the space for the answer in the email just sent from me and the email will open.

The secure question answer is below:

supercalifragil1230)9$35I

Sincerely,

Kristin Wilkinson, J.D., Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust
P.O. Box 701188
Houston, Texas 77270-1188
(713) 561-5616
(713) 561-5629 (Facsimile)

Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential, intended only for the use of the named recipient above. If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the above address.

FLITSCH000014

3/7/19  3:23 PM

EXHIBIT 14

7 19 04:17p       Kristin Wilkinson                          7135615629              p.1

StartMail                                          https://www.startmail.com/mailbox/list?mailbox=Sent Message

| Subject: | Proprietary and Confidential |
|----------|------------------------------|
| From: | kristinwilkinson@use.startmail.com |
| Date: | Thursday, March 7, 2019 at 3:09 PM |
| To: | Joan.Bondra@wellsfargoadvisors.com |
| Attachments: | scanD180.pdf (5.9MB) |

Dear Ms. Bondra:

Attached per your request are the forms Trustee Certification of Investment Powers for Account ███████ and Account ███████ that have been signed by me.

Under the Trust Agreement, there are three other accounts conveyed to the Carolyn S. Clark Irrevocable Living Trust but you have not included forms for these accounts.  The accounts I am referring to are account ███████████ and ███████  I request an explanation for why these accounts do not appear to be held in the trust as they were conveyed to the trust irrevocably on July 28, 2017.

Please provide me with an updated timeline with an explanation of what your procedures are for completing the set up of the accounts to reflect me as the new co-trustee.  While I have requested this information from you and from Mr. Sullivan via telephone message, I have not received an answer.  This information is necessary to the administration of the trust in terms of other business and ongoing duties to the trust; it is certainly not a complicated question and should not be an inconvenience to provide such routine information which will be helpful in planning trust business and the schedules of other people.

Thank you for your prompt reply.

Sincerely,

Kristin Wilkinson, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust

EXHIBIT 14

## Trustee Certification of Investment Powers



| Sub Firm # | BR Code | FA Num | Account Number | | Check box to update TCIP on account |
|---|---|---|---|---|---|
| 001 | 3102 | G5A1 | | ☒ | |
| (Office Use Only) | | | | | |

**Trust Information**
In consideration of Wells Fargo Clearing Services, LLC ("you") opening and/or maintaining one or more accounts (each, an "Account") for the trust named below, the undersigned trustee(s) hereby certify, swear under penalty of perjury, and acknowledge that the following information is accurate and complete:

1. Title of trust
   ~~Carolyn S Clark Will Re~~   The Carolyn S. Clark Irrevocable Living Trust
   James C Flitsch trustee, Kristin Wilkinson trustee
   *Example: The John Brown Revocable Living Trust, Mary Jones and Sam Smith, Trustees*

2. The trust is in full force and effect, and the date of the trust
   or will (if testamentary trust) is:    **07/25/2017**

3. The date(s) of any amendment(s) to the trust is:    **N/A**

4. The name(s) of the first successor trustee or co-trustees (if multiple trustees are listed, co-trusteeship is presumed):
   Kristin D. Wilkinson, J.D.    , Successor Trustee (please print)
   James C. Flitsch    , Successor Trustee (please print)
   , Successor Trustee (please print)
   , Successor Trustee (please print)

5. The grantor(s), settlor(s), or testator who established the trust is/are:
   Carolyn Clark

6. The trust is: (CHECK ONE)   ☒ Irrevocable    ☐ Revocable and the name of person holding the power to revoke the trust is:

7. The trust's U.S. taxpayer identification number is: ▉▉▉▉▉▉

8. The trust is governed by the law
   of the state, or other jurisdiction of    ~~Texas~~  Texas

**Specific Investments Powers**

9. We have the power under the trust and applicable law to enter into transactions, both purchases and sales, of the types specified below. *(Indicate types of investments which are permitted, including the specific level of option activity permitted, if applicable.)*

**Transactions**
- ☒ A. Corporate Stocks
- ☒ B. Corporate Bonds
- ☒ C. Municipal Securities
- ☒ D. U.S. Agency Securities
- ☒ E. U.S. Government Securities
- ☒ F. Unit Investment Trusts
- ☒ G. Mutual Funds
- ☒ H. Limited Partnerships
- ☒ I. Annuities
- ☐ J. Margin Transactions (Including Short Sales)
- ☐ K. Other:

**Option Transactions**
- ☐ Level 1 – Covered Call Writing, Buying Puts Against Long Stock Positions (Married Puts)
- ☐ Level 2 – Level 1 Plus Put Writing Against Full Deposit of Strike Price (Covered Puts)
- ☐ Level 3 – Level 2 Plus Options Buying, Purchasing Put/Call Warrants
- ☐ Level 4 – Level 3 Plus Option Spreading
- ☐ Level 5 – Level 4 Plus Uncovered Put Writing vs. Buying Power
- ☐ Level 6 – Level 5 Plus Uncovered Straddles, Uncovered Call Writing

Investment and Insurance Products:

| Not insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

EXHIBIT 14

7 19 04:21p          Kristin Wilkinson                              7135615629              p.1

MAR. 7. 2019   1:58PM   WELLS FARGO ADVISORS                       NO. 3028   P. 3

| Sub Rep # | BR Code | FA Code | |
|---|---|---|---|
| 001 | 2102 | 65A1 | |
| (Office Use Only) | | | |

Note: Margin and/or Option Transactions

*   If margin transactions are permitted and specified above, all properly completed margin account opening documentation must be submitted and approved.
*   If option transactions are permitted and specified above, a properly completed Option Account Agreement must be submitted and approved, in addition to a properly completed Account Application and this form.

Investment, Transfer, Disbursement, and General Powers and Authority

10. We have the following powers under the trust and applicable law, and you are authorized to accept instructions from any ___1___ (INSTRUCTIONS: Enter number, if no number is inserted, it is presumed to be ONE) of the individuals or entities listed below for any transaction on the Account, including: (a) giving orders for any securities transactions; (b) requesting or writing checks from the Account in any amount, including the entire balance of the Account, payable in the name of the trust, any trustee(s) individually, or any third party; (c) transferring any or all assets in the Account to or for the benefit of the trust, any trustee(s) individually, or any third party; (d) entering into an advisory program agreement; or (e) giving any other instructions required or permitted on the Account. You have no duty to determine whether the trustee(s) are acting in accordance with the trust. YOU MAY AT ANY TIME REQUIRE WRITTEN OR VERBAL CONSENT OF ALL TRUSTEES TO ANY TRANSACTION AS YOU SOLELY DETERMINE, AND YOU WILL NOT HAVE LIABILITY FOR REFUSING TO ACT ON INSTRUCTIONS OF LESS THAN ALL OF THE TRUSTEES.

11. (Strike out all or any portion of this Section if not applicable) We have the power under the trust and applicable law to delegate our fiduciary authority to a third party pursuant to a power of attorney, delegation, or similar document. (NOTE: We acknowledge that you may require a legal opinion prior to accepting a power of attorney or delegation on this Account.)

12. We agree that the Account is and will continue to be bound by all agreements and documents which govern the Account.

13. We, jointly and severally, in our personal capacities and on behalf of the trust, agree to indemnify you and each of your affiliates, officers, directors, employees and agents from, and hold you harmless from any loss, damage, claim, expense or liability arising, directly or indirectly out of breach of any representation or warranty, or from acting upon any instructions given by us or by any third party named pursuant to a power of attorney, delegation, or similar document or otherwise acting in reliance on these representations and warranties.

14. We have been advised to consult our legal counsel in connection with these certifications and acknowledgments.

15. We acknowledge that you will be relying solely on these certifications, and that you will not review or interpret the trust for any matters relating to such certifications and operation of the Account(s), even if you are provided with a copy of the trust.

16. The trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification to be incorrect. We agree to inform you, in writing, immediately if: (a) there is any subsequent amendment to the trust, including any change in successor trustee(s); (b) any trustee dies or becomes incapacitated; or (c) there is any other change in trustee(s) or any other event which could materially alter this certification. In the event of the death or incapacity of one or more of the trustee(s), you may continue to act on the instructions of any remaining trustee(s) unless you specifically notify you otherwise in writing and provide you with an updated certification.

17. If we do not name or, if applicable, update the successor trustee in this certification, we acknowledge that you may require a legal opinion and/or other documentation prior to allowing a successor trustee to act.

18. Any notice sent by you to any of us, including notice sent electronically, will constitute a notice to all trustee(s).

19. We hereby certify that the undersigned are all of the trustee(s) of the trust.*

* Should only one person execute this trustee certification, such signature shall be deemed a representation that the signer is the sole trustee of the trust.

656454 (Rev 28 - 06/18)

FLITSCH000017

Page 3 of 8

EXHIBIT 14

'7 19 04:24p    Kristin Wilkinson                          7135615629          p.1
MAR. 7. 2019   1:58PM    WELLS FARGO ADVISORS              NO. 3028    P. 4

| Sub Firm/s | BR Code | PA Code | (Account Number) |
|------------|---------|---------|------------------|
| 001 | A102 | GSA1 | ▮▮▮▮ |
| (Office Use Only) | | | |

**Trustee Names/Address (Please print)**        **SIGNATURE (All trustee(s) must sign)**    **Dates**

Kristin Diane Wilkinson                    X _Kristin Wilkinson_         3/7/2019

550 Club Dr. Suite 354 Montgomery TX 77316

James C Flitsch                            X

405 N Brewer Sty Manchester IA 52057

[illegible]                                X

                                           X

GA, CO, DE, ID, IA, KS, MI, MN, MS, NE, NV, SD, TN, and VT require notarization of all trustee signatures for trusts established under their laws. If the trust is established in one of those states (see Section 8), please complete a notary block for each trustee listed above.

**Notary (Client Signature Must Be Notarized)**

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

**Notary (Client Signature Must Be Notarized)**

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

**Notary (Client Signature Must Be Notarized)**

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

**Notary (Client Signature Must Be Notarized)**

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

559454 (Rev 25 – 05/15)                                    FLITSCH000018

EXHIBIT 14
p.1

719 04:26p    Kristin Wilkinson              7135615629              NO. 3028    P. 5
MAR. 7. 2019 1:59PM    WELLS FARGO ADVISORS



## Trustee Certification of Investment Powers

| Sub Firm#. | BR Code | FA Code |  | ☒ Check box to |
|---|---|---|---|---|
| DO1 | A102 | GBAL |  | update TCIP on account |
| (Office Use Only) | | | | |

### Trust Information

In consideration of Wells Fargo Clearing Services, LLC ("you") opening and/or maintaining one or more accounts (each, an "Account") for the trust named below, the undersigned trustee(s) hereby certify, swear under penalty of perjury, and acknowledge that the following information is accurate and complete:

1. Title of trust:    ~~Carolyn S. Clark Xbi Re-~~    The Carolyn S. Clark Irrevocable Living Trust
   ~~James C Flitsch trustee, Kristin Wilkinson trustee~~
   Example: The John Brown Revocable Living Trust, Mary Jones and Sam Smith, Trustees

2. The trust is in full force and effect, and the date of the trust or will (if testamentary trust) is:    07/28/2017

3. The date(s) of any amendment(s) to the trust is:    N/A

4. The name(s) of the first successor trustee or co-trustees (if multiple trustees are listed, co-trusteeship is presumed):
   Kristin D. Wilkinson, J.D.                       , Successor Trustee (please print)
                                                    , Successor Trustee (please print)
   James C. Flitsch                                 , Successor Trustee (please print)
                                                    , Successor Trustee (please print)

5. The grantor(s), settlor(s), or testator who established the trust is/are:
   Carolyn Clark

6. The trust is: (CHECK ONE)  ☒ Irrevocable    ☐ Revocable and the name of person holding the power to revoke the trust is:

7. The trust's U.S. taxpayer identification number is:

8. The trust is governed by the law of the state, or other jurisdiction of:    Texan  Texas

### Specific Investments Powers

9. We have the power under the trust and applicable law to enter into transactions, both purchases and sales, of the types specified below. (Indicate types of investments which are permitted, including the specific level of option activity permitted, if applicable.)

**Transactions**
- ☒ A. Corporate Stocks
- ☒ B. Corporate Bonds
- ☒ C. Municipal Securities
- ☒ D. U.S. Agency Securities
- ☒ E. U.S. Government Securities
- ☒ F. Unit Investment Trusts
- ☒ G. Mutual Funds
- ☒ H. Limited Partnerships
- ☐ I. Annuities
- ☒ J. Margin Transactions (including Short Sales)
- ☐ K. Other:

**Option Transactions**
- ☐ Level 1 – Covered Call Writing, Buying Puts Against Long Stock Positions (Married Puts)
- ☐ Level 2 – Level 1 Plus Put Writing Against Full Deposit of Strike Price (Covered Puts)
- ☐ Level 3 – Level 2 Plus Options Buying, Purchasing Put/Call Warrants
- ☐ Level 4 – Level 3 Plus Option Spreading
- ☐ Level 5 – Level 4 Plus Uncovered Put Writing vs. Buying Power
- ☐ Level 6 – Level 5 Plus Uncovered Straddles, Uncovered Call Writing

**Investment and Insurance Products:**  Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

565454 (Rev 25 – 06/18)

Page 1 of 2

FLITSCH000019



EXHIBIT 14
p.1

7135615629

MAR. 7. 2019  1:59PM    WELLS FARGO ADVISORS                    NO. 3028    P. 6

7 19 04:28p      Kristin Wilkinson

| Sub Firm # | BR Code | FA Code | |
|---|---|---|---|
| 001 | 1102 | G8A1 | |
| (Office Use Only) | | | |

**Note: Margin and/or Option Transactions**

- If margin transactions are permitted and specified above, all properly completed margin account opening documentation must be submitted and approved.
- If option transactions are permitted and specified above, a properly completed Option Account Agreement must be submitted and approved, in addition to a properly completed Account Application and this form.

**Investment, Transfer, Disbursement, and General Powers and Authority**                                    1

10. We have the following powers under the trust and applicable law, and you are authorized to accept instructions from any ____1____ (INSTRUCTIONS: Enter number, if no number is inserted, it is presumed to be ONE) of the individuals or entities listed below for any transaction on the Account, including: (a) giving orders for any securities transactions; (b) requesting or writing checks from the Account in any amount, including the entire balance of the Account, payable in the name of the trust, any trustee(s) individually, or any or any third party; (c) transferring any or all assets in the Account to or for the benefit of the trust, any trustee(s) individually, or any third party; (d) entering into an advisory program agreement; or (e) giving any other instructions required or permitted on the Account. You have no duty to determine whether the trustee(s) are acting in accordance with the trust. YOU MAY AT ANY TIME REQUIRE WRITTEN OR VERBAL CONSENT OF ALL TRUSTEES TO ANY TRANSACTION AS YOU SOLELY DETERMINE, AND YOU WILL NOT HAVE LIABILITY FOR REFUSING TO ACT ON INSTRUCTIONS OF LESS THAN ALL OF THE TRUSTEES.

11. (Strike out all or any portion of this Section if not applicable) We have the power under the trust and applicable law to delegate our fiduciary authority to a third party pursuant to a power of attorney, delegation, or similar document. (NOTE: We acknowledge that you may require a legal opinion prior to accepting a power of attorney or delegation on this Account.)

12. We agree that the Account is and will continue to be bound by all agreements and documents which govern the Account.

13. We, jointly and severally, in our personal capacities and on behalf of the trust, agree to indemnify you and each of your affiliates, officers, directors, employees and agents from, and hold you harmless from any loss, damage, claim, expense or liability arising, directly or indirectly out of breach of any representation or warranty, or from acting upon any instructions given by us or by any third party named pursuant to a power of attorney, delegation, or similar document or otherwise acting in reliance on these representations and warranties.

14. We have been advised to consult our legal counsel in connection with these certifications and acknowledgments.

15. We acknowledge that you will be relying solely on these certifications, and that you will not review or interpret the trust for any matters relating to such certifications and operation of the Account(s), even if you are provided with a copy of the trust.

16. The trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification to be incorrect. We agree to inform you, in writing, immediately if: (a) there is any subsequent amendment to the trust, including any change in successor trustee(s); (b) any trustee dies or becomes incapacitated; or (c) there is any other change in trustee(s) or any other event which could materially alter this certification. In the event of the death or incapacity of one or more of the trustee(s), you may continue to act on the instructions of any remaining trustee(s) unless we specifically notify you otherwise in writing and provide you with an updated certification.

17. If we do not name or, if applicable, update the successor trustee in this certification, we acknowledge that you may require a legal opinion and/or other documentation prior to allowing a successor trustee to act.

18. Any notice sent by you to any of us, including notice sent electronically, will constitute a notice to all trustee(s).

19. We hereby certify that the undersigned are all of the trustee(s) of the trust.*

---

* Should only one person execute this trustee certification, such signature shall be deemed a representation that the signer is the sole trustee of the trust.

585484 (Rev 28 - 08/18)

FLITSCH000020

EXHIBIT 14

p.1

7 19-04:31p     Kristin Wilkinson           7135615629

MAR. 7. 2019   2:00PM   WELLS FARGO ADVISORS     NO. 3028   P. 7

| Sub Firm #: | BR Code | Rs Code | |
|---|---|---|---|
| D01 | A102 | GBA1 | |
| (Office Use Only) | | | |

**Trustee Names/Address (Please print)**   SIGNATURE (All trustee(s) must sign)   Dates

Kristin Diane Wilkinson     x _Kristin Wilkinson_     3/7/2019

550 Club Dr. Suite 354 Montgomery TX 77316

James C Flitsch     X

405 N Brewer Stg Manchester IA 52057

|  | X |
|---|---|

|  | X |
|---|---|

CA, CO, DE, ID, IA, KS, MI, MN, MS, NE, NV, SD, TN, and VT require notarization of all trustee signatures for trusts established under their laws. If the trust is established in one of these states (see Section B), please complete a notary block for each trustee listed above.

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

638454 (Rev 25 - 08/13)

EXHIBIT 14

7 19 04:33p          Kristin Wilkinson                              7135615629              p.1

StartMail                                         https://www.startmail.com/mailbox/list?mailbox=Sent Messages

| | |
|---|---|
| Subject: | Proprietary and Confidential |
| From: | kristinwilkinson@use.startmail.com |
| Date: | Thursday, March 7, 2019 at 3:12 PM |
| To: | Joan.Bondra@wellsfargoadvisors.com |

Dear Ms. Bondra:

I just sent an encrypted email which asks a question to which you are to type the answer in order to open the message and attachment.  Please copy and paste the following as the answer to the decrypt question:

supercalifragil1230)9$35H1wl012

Sincerely,

Kristin Wilkinson, J.D., Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust
Office:  550 Club Dr., Suite 354, Montgomery, Texas  77316
Mail:  P.O. Box 701188, Houston, Texas  77270-1188
713-561-5616 (Tel.)
713-561-5628 (Fax)

FLITSCH000022

| Subject: | Proprietary and Confidential |
|---|---|
| From: | Kristin Wilkinson |
| Date: | Thursday, March 7, 2019 at 5:49 PM |
| To: | jflitsch@gmail.com |

Dear James:

I am sending you an encrypted email so you will be aware of what Wells Fargo and I on my end are doing in regard to my appointment and updating the trust records. There may be something similar going on on your end. Please keep this and all emails secure.

When you receive the next email from me, you will be asked the question: how is the weather. The answer you must input is required to open my email. The string of letters below is the answer and all you need to do is copy it and past it into the box where the answer is indicated to be placed. Once you do this, the email will open.

The answer is:     supercali192948593fragilistic1l293

Sincerely,

Kristin Wilkinson, J.D.
P.O. Box 701188
Houston, Texas 77270-1188
(713) 561-5616
(713) 561-5629 (Facsimile)

Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential, intended only for the use of the named recipient above. If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the above address.

Ex. F

7/16/19, 10:45 AM

| | |
|---|---|
| **Subject:** | Proprietary and Confidential |
| **From:** | Kristin Wilkinson |
| **Date:** | Thursday, March 7, 2019 at 5:58 PM |
| **To:** | jflitsch84@gmail.com |
| **Attachments:** | Bondra 2 ltr.pdf (41.6KB)    Bondra 1 ltr.pdf (50.5KB)    email to Joan ...pdf (0.4MB)    Bondra email 0...pdf (55KB) |

Dear James:

What I say below is hard to write, nevertheless, I have to inform you of it as a matter of legal duty on my part.  So please read it knowing that I don't mean to be hurtful but only factual and because it is required of me.  You don't have the same requirement toward me.

I need to make you aware that because of my education and experience, I am required to make sure you understand that at no time during out trusteeship am I ever representing you as an attorney.  (You haven't asked and maybe never would, but I have to inform you of this regardless.)  My understanding of Texas law is significantly greater than yours and you do not have my permission ever to copy my work or assume that it includes you or your position.  Also, you may not use my work as a template for work you may perform.  Ever.

James, I am not trying to be harsh.  This is just so very important.  We can discuss any of this any time you want!

It is a requirement due to the significant difference in our education and experience.  Trust law is highly technical and it is seriously easy to violate it and to breach fiduciary duties.  For that reason I must take extra precaution to make sure you do not project onto my work -- not that you would -- its inclusion of you unless we have discussed it previously or the work expressly states that we are both included in it.  I highly recommend that we come to an understanding of the duties as trustee as this is an highly unusual method of trustee assignment and it was not the one I recommended due to the ease of which breaches can occur.  This duty is the utmost highest and most easily breached duty in law and most significant in terms of liability if breached so it is unusual for non law school graduates to take on the duties of a trustee.  I look forward to working with you but I will not ever be liable for your acts or your misunderstanding or misuse, even by mistake, of my work.  I am truly not trying to be rude but must be frank because of my duties.  It is incumbent upon me to make this clear because of how eeeaaasy it is to make mistakes.  For example, I understand that you just recently received a copy of the trust document -- and this is a big mistake on your part.  I am sure you will educate yourself on your duties and the complexities of Texas law of trusts, property, contracts, torts, constitution, family, civil and criminal law, and federal law, regulations, and advisory opinions of the various agencies involved and I am not trying to search for fault or mistake nor will I do so.  That is not where I am coming from.  But I am not responsible for you as well.  My door is open always to answer questions and talk to you as long as I am not giving you any legal advice.

Also, please use encrypted email when corresponding with me via email as the information we share is highly sensitive.

With that said, attached is recent correspondence between Wells Fargo and myself concerning changes to the accounts to reflect my appointment as co-trustee in order to keep you informed.  There were some problems associated with their online portal and us getting it all figured out and getting Wells Fargo to be diligent, so I could not receive information from them/Joan.  We worked out the various frustrations and completed everything today that I needed to complete.  If you

have any questions, please feel free to call me anytime.

While this may be very complicated, I look forward to working with you.

Sincerely,

Kristin Wilkinson, J.D.
P.O. Box 701188
Houston, Texas 77270-1188
(713) 561-5616
(713) 561-5629 (Facsimile)

Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential, intended only for the use of the named recipient above. If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the above address.

EXHIBIT 15

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 5, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

    Re: Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

   As you have been notified by Kevin Clark, he has resigned as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust and has appointed me in his place as Co-Trustee.

   Enclosed with this letter is the Associated Person Information form received yesterday afternoon from Kevin Clark. As you requested, the highlighted portions of the form have been completed with one exception: the Associated Person Information form had pre-filled the box identifying the associated person as an "Individual" by marking it with an "x." The yellow-highlighted portions of the form included a section that relates only to a "Non-Individual Account Owner." I did not fill out this section of the form because the form was pre-filled to indicate the account owner is an individual and not a "non-individual." If you need this portion of the form completed, please let me know.

   Also attached is a copy of the resignation by Kevin Clark that was filed and recorded in Montgomery County for your records as the second form of government identification requested in the Associated Person Information form.

   Please contact me as soon as you receive this document today.

   Please protect the personal information included in this document as it contains sensitive data that should not be released to other individuals.

EXHIBIT 15

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 6, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

      Re:    Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

      This will confirm our telephone conversation yesterday at 4:15 p.m. wherein you acknowledged receipt of the Associated Person Information form, copy of the recorded resignation of Kevin Clark and appointment of myself as Co-Trustee, and my letter dated March 5, 2019.

      Also this will confirm that you requested that we talk Wednesday morning, March 6, 2019, to go over the changes that must be made to the trust accounts and documentation. After not having heard from you, I called your office at 11:43 a.m. and was told you were not in the office but would return in 1-1½ hours.

      Please contact me at 713-561-5634 by 1:15 p.m. today as there are other matters that require my attention in setting up Trust business.

                                     Sincerely,
                                       /S/Kristin Wilkinson, Co-Trustee
                                       Kristin Wilkinson, Co-Trustee

cc:    File/James C. Flitsch, Co-Trustee

---

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice: (713) 561-5616

EXHIBIT 15

-2-

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*
Ms. Joan Bondra
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804
Re:  Carolyn S. Clark Irrevocable Living Trust

        You may contact me by telephone at the numbers on the form as well as by my direct
office number (713) 561-5634, which is not on the form.  If your call is directed to voicemail at
any of the numbers provided to you in these documents, please leave a message and I will
return your call promptly.

        I look forward to working with both you and Gregory Sullivan.

                                        Sincerely,

                                        Kristin Wilkinson, Co-Trustee

cc:       File/James C. Flitsch, Co-Trustee

Enclosures (As referenced herein)

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice: (713) 561-5616

EXHIBIT 15

Sent - StartMail

https://www.startmail.com/mailbox/list?mailbox=Sent Messages

| | |
|---|---|
| **Subject:** | Proprietary and Confidential Re: FW: |
| **From:** | kristinwilkinson@use.startmail.com |
| **Date:** | Thursday, March 7, 2019 at 1:50 PM |
| **To:** | Joan.Bondra@wellsfargoadvisors.com |

Dear Ms. Bondra:

This email follows your email and our telephone conversation wherein you refused to send the attachment purportedly included in the email, (below), that you need me to complete, sign, notarize and return to you, via facsimile.  The form/information purportedly attached in your email was not included in the original documents that needed completion and of which have already been returned to you.  I called you because I believe that there are additional steps I am required to complete prior to my being able to open the email and because there is no link in the email to register with your online portal so that the link will be provided.  I contacted Wells Fargo customer service and they advised me that I am not associated with the account so I will not be provided a link.  You did not mention this to me.  I have no idea why you would not have advised me of this even though you sent me the email purportedly with the, inaccessible, attachment. I will call you again to attempt to clear this situation up so that I can open the email, which I recommend you resend with the proper link, as you did not provide me with any helpful information and said you had another call and needed to hand up.

Sincerely,
Kristin Wilkinson, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust

On Wednesday, March 6, 2019 at 2:52 PM, Joan.Bondra@wellsfargoadvisors.com wrote:

3/7/19, 3:32 PM

https://www.startmail.com/mailbox/list?mailbox=Sent Messages

[Wells Fargo]

[help2.gif] Help

[icon_mail.png]   **Secure Email from Wells Fargo**

[icon_desktop.png]   **Read This Message from a Desktop or Laptop**
Look for and open **message_zdm.html** (typically at the top or
bottom; location varies by email service).

[icon_mobile.png]   **Read this Message from a Tablet or Mobile Device**
Click Here from your tablet or mobile device for instructions unique
to your device.

**Need help?**
Support information or Video tutorial

[Personal       Your personalized image for:  **kristinwilkinson@use.startmail.com**
Security       This personal security image will appear on all secure email to you.
Image]

Email Security Powered by Voltage IBE(tm)
Copyright 2013 Wells Fargo. All rights reserved

| | |
|---|---|
| **Subject:** | Proprietary and Confidential 🔒 |
| **From:** | kristinwilkinson@use.startmail.com |
| **Date:** | Thursday, March 7, 2019 at 3:09 PM |
| **To:** | Joan.Bondra@wellsfargoadvisors.com |
| **Attachments:** | scan0180.pdf (5.9MB) |

Dear Ms. Bondra:

Attached per your request are the forms Trustee Certification of Investment Powers for Account 4037-2441 and Account 8511-5768 that have been signed by me.

Under the Trust Agreement, there are three other accounts conveyed to the Carolyn S. Clark Irrevocable Living Trust but you have not included forms for these accounts.  The accounts I am referring to are account 11470-0208, 3284-0105, and 3427-4549.  I request an explanation for why these accounts do not appear to be held in the trust as they were conveyed to the trust irrevocably on July 28, 2017.

Please provide me with an updated timeline with an explanation of what your procedures are for completing the set up of the accounts to reflect me as the new co-trustee.  While I have requested this information from you and from Mr. Sullivan via telephone message, I have not received an answer.  This information is necessary to the administration of the trust in terms of other business and ongoing duties to the trust; it is certainly not a complicated question and should not be an inconvenience to provide such routine information which will be helpful in planning trust business and the schedules of other people.

Thank you for your prompt reply.

Sincerely,
Kristin Wilkinson, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust

MAR. 7.2019 1:57PM WELLS FARGO ADVISORS NO. 3028 P. 1 **EXHIBIT 15**

## FAX COVER



| Recipient | Date: 3-2-19 |
|---|---|
| Recipient's Name: Kerstin Wilkinson | Recipient's Company: |
| Recipient's Fax Number: 713-561-5629 | Number of Pages (including cover): 7 |

### Sender

Legal Name as it appears on FINRA registration records:
Joan L Bondra

Compliance-approved Title:
Sr. Reg CA

Branch Address:
1720 East Bradford Parkway Springfield MO 65836

| Branch Telephone Number: (417) 883-6880 | Sender's Fax Number: (417) 883-9738 |
|---|---|
| Branch Toll-Free Number: | Email Address: joan.bondra@wellsfargoadvisors.com |

Subject: *Please sign, date & return*

Notes: *Thanks*

You may request to "opt out" of receiving future advertisements via fax transmission. A request to opt out must specify the fax number to which the request relates, and be sent to the Firm using the sender information above.

It is unlawful for the sender of this fax transmission to fail to comply with such a request within the shortest reasonable time as determined by the Federal Communications Commission (not less than 30 days). An opt out applies only to the fax number specified in the request. A request to opt out will not prevent the receipt of fax transmissions whose primary purpose is transactional rather than promotional. As a reminder, you have agreed to receive this information via facsimile. Facsimile transmission is not a secure form of communication; therefore, the confidentiality of fax transmissions cannot be guaranteed.

Investment and Insurance Products:

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |
|---|---|---|

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

CONFIDENTIALITY NOTICE: This message is intended only for the named recipient and it may contain information that is confidential and/or subject to Firm privileges. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copy of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by return facsimile or phone call and destroy this message at once.

E77243 (Rev 10 – 11/16) Page 1 of 1

MAR. 7. 2019  1:57PM   WELLS FARGO ADVISORS                    NO. 3028   P. 2    EXHIBIT 15



## Trustee Certification of Investment Powers

| Sub Firm # | BR Code | FA Code | Account Number | |
|---|---|---|---|---|
| 001 | A102 | GSA1 | 4037-2441 | |

(Office Use Only)    ☒ Check box to update TOIP on account

### Trust Information

In consideration of Wells Fargo Clearing Services, LLC ("you") opening and/or maintaining one or more accounts (each, an "Account") for the trust named below, the undersigned trustee(s) hereby certify, swear under penalty of perjury, and acknowledge that the following information is accurate and complete:

1. Title of trust:
   ~~Carolyn S. Clark will be~~   The Carolyn S. Clark Irrevocable Living Trust
   James C Flitsch trustee, Kristin Wilkinson trustee
   *Example: The John Brown Revocable Living Trust, May Jones and Sam Smith, Trustees*

2. The trust is in full force and effect, and the date of the trust
   or will (if testamentary trust) is:  07/28/2017

3. The date(s) of any amendment(s) to the trust is:  N/A

4. The name(s) of the first successor trustee or co-trustees (if multiple trustees are listed, co-trusteeship is presumed):
   Kristin D. Wilkinson, J.D.           , Successor Trustee (please print)
   James C. Flitsch                     , Successor Trustee (please print)
                                        , Successor Trustee (please print)
                                        , Successor Trustee (please print)

5. The grantor(s), settlor(s), or testator who established the trust is/are:
   Carolyn Clark

6. The trust is: (CHECK ONE) ☒ Irrevocable   ☐ Revocable and the name of person holding the power to revoke the trust is:

7. The trust's U.S. taxpayer identification number is:  826496705

8. The trust is governed by the law
   of the state, or other jurisdiction of:  Texas  Texas

### Specific Investments Powers

9. We have the power under the trust and applicable law to enter into transactions, both purchases and sales, of the types specified below, *(indicate types of investments which are permitted, including the specific level of option activity permitted, if applicable.)*

**Transactions**
- ☒ A. Corporate Stocks
- ☒ B. Corporate Bonds
- ☒ C. Municipal Securities
- ☒ D. U.S. Agency Securities
- ☒ E. U.S. Government Securities
- ☒ F. Unit Investment Trusts
- ☒ G. Mutual Funds
- ☒ H. Limited Partnerships
- ☒ I. Annuities
- ☐ J. Margin Transactions (including Short Sales)
- ☐ K. Other: _____

**Option Transactions**
- ☐ Level 1 – Covered Call Writing, Buying Puts Against Long Stock Positions (Married Puts)
- ☐ Level 2 – Level 1 Plus Put Writing Against Full Deposit of Strike Price (Covered Puts)
- ☐ Level 3 – Level 2 Plus Options Buying, Purchasing Put/Call Warrants
- ☐ Level 4 – Level 3 Plus Option Spreading
- ☐ Level 5 – Level 4 Plus Uncovered Put Writing vs. Buying Power
- ☐ Level 6 – Level 5 Plus Uncovered Straddles, Uncovered Call Writing

Investment and Insurance Products:

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

658454 (Rev 28 - 06/18)                                                        Page 1 of 5

MAR. 7. 2019  1:58PM    WELLS FARGO ADVISORS                    NO. 3028   P. 3    EXHIBIT 15

| Sub. Firm # | BR Code | FA Code | Account Number * |
|---|---|---|---|
| 001 | A103 | G8A1 | 4037-2441 |

(Office Use Only)

**Note: Margin and/or Option Transactions**

* If margin transactions are permitted and specified above, all properly completed margin account opening documentation must be submitted and approved.
* If option transactions are permitted and specified above, a properly completed Option Account Agreement must be submitted and approved, in addition to a properly completed Account Application and this form.

**Investment, Transfer, Disbursement, and General Powers and Authority**

10. We have the following powers under the trust and applicable law, and you are authorized to accept instructions from any _____1_____ (INSTRUCTIONS: Enter number, if no number is inserted, it is presumed to be ONE) of the individuals or entities listed below for any transaction on the Account, including: (a) giving orders for any securities transactions; (b) requesting or writing checks from the Account in any amount, including the entire balance of the Account, payable in the name of the trust, any trustee(s) individually, or any third party; (c) transferring any or all assets in the Account to or for the benefit of the trust, any trustee(s) individually, or any third party; (d) entering into an advisory program agreement; or (e) giving any other instructions required or permitted on the Account. You have no duty to determine whether the trustee(s) are acting in accordance with the trust. YOU MAY AT ANY TIME REQUIRE WRITTEN OR VERBAL CONSENT OF ALL TRUSTEES TO ANY TRANSACTION AS YOU SOLELY DETERMINE, AND YOU WILL NOT HAVE LIABILITY FOR REFUSING TO ACT ON INSTRUCTIONS OF LESS THAN ALL OF THE TRUSTEES.

11. (Strike out all or any portion of this Section if not applicable) We have the power under the trust and applicable law to delegate our fiduciary authority to a third party pursuant to a power of attorney, delegation, or similar document. (NOTE: We acknowledge that you may require a legal opinion prior to accepting a power of attorney or delegation on this Account.)

12. We agree that the Account is and will continue to be bound by all agreements and documents which govern the Account.

13. We, jointly and severally, in our personal capacities and on behalf of the trust, agree to indemnify you and each of your affiliates, officers, directors, employees and agents from, and hold you harmless from any loss, damage, claim, expense or liability arising, directly or indirectly out of breach of any representation or warranty, or from acting upon any instructions given by us or by any third party named pursuant to a power of attorney, delegation, or similar document or otherwise acting in reliance on these representations and warranties.

14. We have been advised to consult our legal counsel in connection with these certifications and acknowledgments.

15. We acknowledge that you will be relying solely on these certifications, and that you will not review or interpret the trust for any matters relating to such certifications and operation of the Account(s), even if you are provided with a copy of the trust.

16. The trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification to be incorrect. We agree to inform you, in writing, immediately if: (a) there is any subsequent amendment to the trust, including any change in successor trustee(s); (b) any trustee dies or becomes incapacitated; or (c) there is any other change in trustee(s) or any other event which could materially alter this certification. In the event of the death or incapacity of one or more of the trustee(s), you may continue to act on the instructions of any remaining trustee(s) unless we specifically notify you otherwise in writing and provide you with an updated certification.

17. If we do not name or, if applicable, update the successor trustee in this certification, we acknowledge that you may require a legal opinion and/or other documentation prior to allowing a successor trustee to act.

18. Any notice sent by you to any of us, including notice sent electronically, will constitute a notice to all trustee(s).

19. We hereby certify that the undersigned are all of the trustee(s) of the trust.*

* Should only one person execute this trustee certification, such signature shall be deemed a representation that the signer is the sole trustee of the trust.

586454 (Rev 28 - 08/18)                                                                                    Page 2 of 3

MAR. 7. 2019  1:58PM   WELLS FARGO ADVISORS                    NO. 3028   P.   **EXHIBIT** 15

| Sub Firm# | BR Code | FA Code | Account Number |
|-----------|---------|---------|----------------|
| 001 | A102 | GSA1 | 4037-2441 |

(Office Use Only)

| Trustee Names/Address (Please print) | SIGNATURE (All trustee(s) must sign) | Dates |
|--------------------------------------|--------------------------------------|-------|
| Kristin Diane Wilkinson | x *Kristin Wilkinson* | 3/7/2019 |
| 550 Club Dr, Suite 354 Montgomery TX 77316 | | |
| James C Flitsch | x | |
| 405 N Bremer Stg Manchester IA 52057 | | |
| | x | |
| | | |
| | x | |

CA, CO, DE, ID, IA, KS, MI, MN, MS, NE, NV, SD, TN, and VT require notarization of all trustee signatures for trusts established under their laws. If the trust is established in one of those states (see Section 5), please complete a notary block for each trustee listed above.

**Notary** (Client Signature Must Be Notarized)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____
By _____
(Person whose signature is being notarized)
x _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

**Notary** (Client Signature Must Be Notarized)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____
By _____
(Person whose signature is being notarized)
x _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

**Notary** (Client Signature Must Be Notarized)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____
By _____
(Person whose signature is being notarized)
x _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

**Notary** (Client Signature Must Be Notarized)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ In Year _____
By _____
(Person whose signature is being notarized)
x _____
Signature of Official Administering Oath
My Commission expires _____ Year _____

659484 (Rev 26 - 08/16)                                                    Page 3 of 3

MAR. 7. 2019  1:59PM    WELLS FARGO ADVISORS                    NO. 3028   P. 5   EXHIBIT 15

## Trustee Certification of Investment Powers

| Sub Firm # | IR Code | FA Code | Account Number | |
|---|---|---|---|---|
| 001 | A102 | GBA1 | 6511-5768 | ☒ Check box to update TCIP on account |

(Office Use Only)

### Trust Information

In consideration of Wells Fargo Clearing Services, LLC ("you") opening and/or maintaining one or more accounts (each, an "Account") for the trust named below, the undersigned trustee(s) hereby certify, swear under penalty of perjury, and acknowledge that the following information is accurate and complete:

1. Title of trust:
   ~~Carolyn S Clark Irr Tr~~  *The Carolyn S. Clark Irrevocable Living Trust*

   James C Flitsch trustee, Kristin Wilkinson trustee
   *Example: The John Brown Revocable Living Trust, Mary Jones and Sam Smith, Trustees*

2. The trust is in full force and effect, and the date of the trust or will (if testamentary trust) is: | 07/28/2017 |

3. The date(s) of any amendment(s) to the trust is: | N/A |

4. The name(s) of the first successor trustee or co-trustees (if multiple trustees are listed, co-trusteeship is presumed):

   | Kristin D. Wilkinson, J.D. | , Successor Trustee (please print) |
   | James C. Flitsch | , Successor Trustee (please print) |
   | | , Successor Trustee (please print) |
   | | , Successor Trustee (please print) |

5. The grantor(s), settlor(s), or testator who established the trust is/are:
   Carolyn Clark

6. The trust is: (CHECK ONE) ☒ Irrevocable   ☐ Revocable and the name of person holding the power to revoke the trust is:

7. The trust's U.S. taxpayer identification number is: 826486705

8. The trust is governed by the law of the state, or other jurisdiction of: ~~Texan~~ Texas

### Specific Investments Powers

9. We have the power under the trust and applicable law to enter into transactions, both purchases and sales, of the types specified below. (Indicate types of investments which are permitted, including the specific level of option activity permitted, if applicable.)

| Transactions | Option Transactions |
|---|---|
| ☒ A. Corporate Stocks | ☐ Level 1 – Covered Call Writing, Buying Puts Against Long Stock Positions (Married Puts) |
| ☒ B. Corporate Bonds | |
| ☒ C. Municipal Securities | ☐ Level 2 – Level 1 Plus Put Writing Against Full Deposit of Strike Price (Covered Puts) |
| ☒ D. U.S. Agency Securities | |
| ☒ E. U.S. Government Securities | ☐ Level 3 – Level 2 Plus Options Buying, Purchasing Put/Call Warrants |
| ☒ F. Unit Investment Trusts | |
| ☒ G. Mutual Funds | ☐ Level 4 – Level 3 Plus Option Spreading |
| ☒ H. Limited Partnerships | |
| ☒ I. Annuities | ☐ Level 5 – Level 4 Plus Uncovered Put Writing vs. Buying Power |
| ☐ J. Margin Transactions (including Short Sales) | |
| ☒ K. Other: | ☐ Level 6 – Level 5 Plus Uncovered Straddles, Uncovered Call Writing |

### Investment and Insurance Products:

| Not Insured by FDIC or any Federal Government Agency | May Lose Value | Not a Deposit of or Guaranteed by a Bank or any Bank Affiliate |

Wells Fargo Advisors is a trade name used by Wells Fargo Clearing Services, LLC, a registered broker-dealer and non-bank affiliate of Wells Fargo & Company.

556454 (Rev 28 – 09/18)                                        Page 1 of 3

MAR. 7. 2019 1:59PM    WELLS FARGO ADVISORS                      NO. 3028   P. 6       EXHIBIT 15

| Sub Firm #' | BR Code | FA Code | Account Number |
|---|---|---|---|
| 001 | A103 | GBA1 | 8511-5768 |

(Office Use Only)

**Note: Margin and/or Option Transactions**

- If margin transactions are permitted and specified above, all properly completed margin account opening documentation must be submitted and approved.
- If option transactions are permitted and specified above, a properly completed Option Account Agreement must be submitted and approved, in addition to a properly completed Account Application and this form.

**Investment, Transfer, Disbursement, and General Powers and Authority**

10. We have the following powers under the trust and applicable law, and you are authorized to accept instructions from any ____1____ (INSTRUCTIONS: Enter number, if no number is inserted, it is presumed to be ONE) of the individuals or entities listed below for any transaction on the Account, including: (a) giving orders for any securities transaction; (b) requesting or writing checks from the Account in any amount, including the entire balance of the Account, payable in the name of the trust, any trustee(s) individually, or any third party; (c) transferring any or all assets in the Account to or for the benefit of the trust, any trustee(s) individually, or any third party; (d) entering into an advisory program agreement; or (e) giving any other instructions required or permitted on the Account. You have no duty to determine whether the trustee(s) are acting in accordance with the trust. YOU MAY AT ANY TIME REQUIRE WRITTEN OR VERBAL CONSENT OF ALL TRUSTEES TO ANY TRANSACTION AS YOU SOLELY DETERMINE, AND YOU WILL NOT HAVE LIABILITY FOR REFUSING TO ACT ON INSTRUCTIONS OF LESS THAN ALL OF THE TRUSTEES.

11. (Strike out all or any portion of this Section if not applicable) We have the power under the trust and applicable law to delegate our fiduciary authority to a third party pursuant to a power of attorney, delegation, or similar document. (NOTE: We acknowledge that you may require a legal opinion prior to accepting a power of attorney or delegation on this Account.)

12. We agree that the Account is and will continue to be bound by all agreements and documents which govern the Account.

13. We, jointly and severally, in our personal capacities and on behalf of the trust, agree to indemnify you and each of your affiliates, officers, directors, employees and agents from, and hold you harmless from any loss, damage, claim, expense or liability arising, directly or indirectly out of breach of any representation or warranty, or from acting upon any instructions given by us or by any third party named pursuant to a power of attorney, delegation, or similar document or otherwise acting in reliance on these representations and warranties.

14. We have been advised to consult our legal counsel in connection with these certifications and acknowledgments.

15. We acknowledge that you will be relying solely on these certifications, and that you will not review or interpret the trust for any matters relating to such certifications and operation of the Account(s), even if you are provided with a copy of the trust.

16. The trust has not been revoked, modified, or amended in any manner which would cause the representations contained in this certification to be incorrect. We agree to inform you, in writing, immediately if: (a) there is any subsequent amendment to the trust, including any change in successor trustee(s); (b) any trustee dies or becomes incapacitated; or (c) there is any other change in trustee(s) or any other event which could materially alter this certification. In the event of the death or incapacity of one or more of the trustee(s), you may continue to act on the instructions of any remaining trustee(s) unless we specifically notify you otherwise in writing and provide you with an updated certification.

17. If we do not name or, if applicable, update the successor trustee in this certification, we acknowledge that you may require a legal opinion and/or other documentation prior to allowing a successor trustee to act.

18. Any notice sent by you to any of us, including notice sent electronically, will constitute a notice to all trustee(s).

19. We hereby certify that the undersigned are all of the trustee(s) of the trust.*

---

* Should only one person execute this trustee certification, such signature shall be deemed a representation that the signer is the sole trustee of the trust.

$86454 (Rev 26 - 06/18)                                                            Page 2 of 3

MAR. 7.2019  2:00PM   WELLS FARGO ADVISORS                              NO. 3028   P. 7   **EXHIBIT 15**

| Sub Firm # | Br.Code | PA/Code | Account/Chapter |
|---|---|---|---|
| 003 | A102 | GSA1 | 8511-5768 |

(Office Use Only)

| Trustee Names/Address (Please print) | SIGNATURE (All trustee(s) must sign) | Dates |
|---|---|---|
| Kristin Diane Wilkinson | X *Kristin Wilkinson* | 3/7/2019 |
| 550 Club Dr, Suite 354 Montgomery TX 77316 | | |
| James C Flitsch | X | |
| 405 N Brewer Stg Manchester IA 52057 | | |
| | X | |
| | | |
| | X | |

CA, CO, DE, ID, IA, KS, MI, MN, MS, NE, NV, SD, TN, and VT require notarization of all trustee signatures for trusts established under their laws. If the trust is established in one of these states (see Section 6), please complete a notary block for each trustee listed above.

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ in Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ in Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ in Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

Notary (Client Signature Must Be Notarized.)

State _____ County _____
Subscribed to and sworn before me on
This _____ Day of _____ in Year _____

By _____
(Person whose signature is being notarized)

X _____
Signature of Official Administering Oath

My Commission expires _____ Year _____

559484 (Rev 22 - 09/18)                                                                  Page 3 of 3

EXHIBIT 16





*Please image on:*
*2441*
*5768*

James R. Moore

Phone: 417.532.7800
Fax: 800.736.1631
james.moore@moorelaw-pc.com

March 12, 2019

Mr. Greg Sullivan
Wells Fargo Advisors
1720 East Bradford Parkway
Springfield, MO 65804

RE: The Clark Irrevocable Living Trust dated July 28, 2017

Dear Mr. Sullivan:

I have been engaged by Ms. Carolyn Clark to notify you and your investment firm that she is objecting to the alleged "appointment" of Ms. Kristin Wilkinson as the successor co-Trustee for The Clark Irrevocable Living Trust dated July 28, 2017. As you are aware, Ms. Clark is the primary beneficiary of the trust and therefore has a significant interest in the proper administration of the trust.

Ms. Clark is objecting to the appointment because Mr. Kevin Clark did not properly notify the beneficiaries and/or co-trustee of his intention to resign as trustee. Trust §6.3 **RESIGNATION OF CO-TRUSTEE** states in part:

"...Any Co-Trustee may resign by filing a written instrument duly acknowledged of record in the Deed Records of Grantor's County, which filing shall immediately deprive any such resigning Co-Trustee of all powers as Co-Trustee hereunder, except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets; **provided, nevertheless, that at least thirty (30) days prior to such filing, the resigning Co-Trustee shall give written notice thereof to those persons who could in the discretion of the Co-Trustee receive income from the Trust estate and are at such time sui juris...**"

As a result of Kevin Clark's failure to follow the procedure specifically outlined in the trust the appointment of Ms. Wilkinson should be declared void and not honored by your firm.

Ms. Clark has been notified that Ms. Wilkinson has filed a demand for information and withdrawal of assets held by your firm. This individual action by one co-trustee is not authorized under the trust terms. The co-trustees are required to administer the trust jointly as set forth in §1.4 **CO-TRUSTEES** which states in part:

EXHIBIT 16

Mr. Greg Sullivan
March 12, 2019
Page 2 of 2


-2441
-5768

"...There shall at all times be two individuals serving as co-trustees making together all decisions necessary to carry out the purpose and management of the Trust.  The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee..."

Any requests for assets, reports, etc. made to you by Ms. Wilkinson without the accompanying approval of the co-Trustee should not be honored until this matter is resolved.

Finally, it has come to our attention that Ms. Wilkinson may have been suspended and/or disbarred from practicing law in the State of Texas for a breach of fiduciary duty owed to her clients in the handling their funds. If this is true then she is not a proper person to act in a fiduciary capacity for the primary beneficiary of the trust, Ms. Clark.

We strongly urge you to restrict this account from further requests until this matter can be satisfactorily resolved among the competing interests. Thank you for your attention to this request.

Yours Truly,

James R Moore

James R. Moore

Cc:    Carolyn Clark
       James Flitsch

120 E. Commercial St. ● P.O. Box 1570 ● Lebanon, MO  65536

EXHIBIT 17

3 19 12:17p        Kristin Wilkinson                              7135615629              p.1

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

## FACSIMILE TRANSMISSION COVER SHEET

To:          Mr. Dave Burnette/Ms. Joan Bondra, Wells Fargo Advisors

Fax:         417-883-9738

Phone:       417-883-6680

From:        Kristin Wilkinson, Trustee

Date & Time: 03/18/2019

Document:    Correspondence

Reference:   Carolyn S. Clark Irrevocable Living Trust

Total number of pages, including this cover sheet:  __3__

Person to contact if there are any problems: Kristin Wilkinson  (713) 561-5616

COMMENTS:  See Attached.

### Confidentiality Notice:

Unless otherwise indicated or obvious from the nature of this communication, the information contained in this communication is privileged and confidential and intended only for the use of the named recipient above.  If the reader of this communication is not the intended recipient (or the employee or agent responsible to deliver this communication to the named recipient), you are hereby notified that any use, dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error please notify us immediately by telephone and return the original communication to us at the address below.

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

FLITSCH000025

EXHIBIT 17

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 13, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Mr. Dave Burnette, Branch Manager
Mr. Gregory Sullivan, Financial Advisor
Ms. Joan Bondra, Sr. Reg. CA
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

Re:    Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

This letter follows my correspondences to you of March 5, 2019, receipt of which was acknowledged the same date, wherein you were advised that I am the appointed successor Co-Trustee of the above referenced Irrevocable Living Trust, replacing Kevin Clark.  As Co-Trustee, legal ownership of all assets held and/or managed, whether internally or externally, by Wells Fargo on behalf of the Carolyn S. Clark Irrevocable Living Trust, including, but not limited to the assets held in Account Numbers: ███████████████████████████████ and ██████ ████████ was conveyed to me as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust, an irrevocable living trust, along with the fiduciary responsibilities over these assets, by my appointment as successor Co-Trustee.

You were advised on March 5, 2019, of the appointment and were provided with your desired forms and instructed to change the name of the account holder for these accounts to reflect the conveyance to: Kristin Wilkinson, Co-Trustee, Carolyn S. Clark Irrevocable Living Trust and report to me regarding these accounts from hereon.  I spoke with Dave Burnette yesterday, March 12, 2019, at 11:28 a.m. and was advised by him that this would be complete by this morning, Wednesday, March 13, 2019, and I have not heard from Mr. Burnette at all since that telephone conversation.  Prior to that conversation, I was advised by Joan Bondra that this transition process would be complete by March 12, 2019, one week after March 5, 2019.  I have also been advised by your St. Louis office that this process shall be complete within three to five business days from your receipt of the requested documentation.  Again, that date was March 12, 2019, and I have heard nothing from any of you regarding this serious financial transaction.

Please provide me with the contact name and telephone number as well as the office address of the attorney in your offices handling this matter.  As I had very cordial communications with Gregory Sullivan in the past, I find it very unfortunate that your office has not worked to complete this transaction in a timely fashion.

Please provide a copy of all documents initiating and setting up all of these accounts and

FLITSCH000026

EXHIBIT 17

3 19 12:22p          Kristin Wilkinson                    7135615629          p.1

-2-

PRIVILEGED AND PROPRIETARY / PERSONAL
BUSINESS COMMUNICATION
VIA FACSIMILE TO: 417-883-9738

Mr. Dave Burnette, Branch Manager
Mr. Gregory Sullivan, Financial Advisor
Ms. Joan Bondra, Sr. Reg. CA
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

Re:    Carolyn S. Clark Irrevocable Living Trust


designations of any beneficiary on all of these accounts. Forward all statements and direct all
communication to my attention, using the mailing address: P.O. Box 701188, Houston, Texas
77270-1188.

Please contact me at 713-561-5634 today to provide me with the information I requeste
as there are other matters that require my attention in setting up Trust business all of which are
being delayed by you.

Sincerely,
/S/Kristin Wilkinson, Co-Trustee
Kristin Wilkinson, Co-Trustee

cc:    File/James C. Flitsch, Co-Trustee


Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice: (713) 561-5616

EXHIBIT 17

**Subject:**      Proprietary and Confidential

**From:**        kristinwilkinson@use.startmail.com

**Date:**        Wednesday, March 13, 2019 at 1:26 PM

**To:**          jflitsch84@gmail.com

**Attachments:**  Bondra 3 ltr.pdf (39.8KB)

Dear James:

I tried to call but your voicemail was full.  Attached for your reference is correspondence I sent to Wells Fargo today.

I know you work so in order that we discuss trust matters at a convenient time please provide me with a good time to call, if there is a usual time that would be best for you on an ongoing basis, if possible.

Please give me a call when you have a few moments to talk.  My cell number is 936-668-6953.

Sincerely,

Kristin Wilkinson, Co-Trustee, Carolyn S. Clark Irrevocable Living Trust



EXHIBIT 17

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

March 13, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL
BUSINESS COMMUNICATION
VIA FACSIMILE TO: 417-883-9738*

Mr. Dave Burnette, Branch Manager
Mr. Gregory Sullivan, Financial Advisor
Ms. Joan Bondra, Sr. Reg. CA
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

     Re:    Carolyn S. Clark Irrevocable Living Trust

Dear Ms. Bondra:

This letter follows my correspondences to you of March 5, 2019, receipt of which was acknowledged the same date, wherein you were advised that I am the appointed successor Co-Trustee of the above referenced Irrevocable Living Trust, replacing Kevin Clark. As Co-Trustee, legal ownership of all assets held and/or managed, whether internally or externally, by Wells Fargo on behalf of the Carolyn S. Clark Irrevocable Living Trust, including, but not limited to the assets held in Account Numbers: 11470-0208, 3284-0105, 3427-4549, 4037-2441, and 8511-57678 was conveyed to me as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust, an irrevocable living trust, along with the fiduciary responsibilities over these assets, by my appointment as successor Co-Trustee.

You were advised on March 5, 2019, of the appointment and were provided with your desired forms and instructed to change the name of the account holder for these accounts to reflect the conveyance to: Kristin Wilkinson, Co-Trustee, Carolyn S. Clark Irrevocable Living Trust and report to me regarding these accounts from hereon. I spoke with Dave Burnette yesterday, March 12, 2019, at 11:28 a.m. and was advised by him that this would be complete by this morning, Wednesday, March 13, 2019, and I have not heard from Mr. Burnette at all since that telephone conversation. Prior to that conversation, I was advised by Joan Bondra that this transition process would be complete by March 12, 2019, one week after March 5, 2019. I have also been advised by your St. Louis office that this process shall be complete within three to five business days from your receipt of the requested documentation. Again, that date was March 12, 2019, and I have heard nothing from any of you regarding this serious financial transaction.

Please provide me with the contact name and telephone number as well as the office address of the attorney in your offices handling this matter. As I had very cordial communications with Gregory Sullivan in the past, I find it very unfortunate that your office has not worked to complete this transaction in a timely fashion.

Please provide a copy of all documents initiating and setting up all of these accounts and

EXHIBIT 17

-2-

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Mr. Dave Burnette, Branch Manager
Mr. Gregory Sullivan, Financial Advisor
Ms. Joan Bondra, Sr. Reg. CA
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

   Re:  Carolyn S. Clark Irrevocable Living Trust

designations of any beneficiary on all of these accounts.  Forward all statements and direct all communication to my attention, using the mailing address: P.O. Box 701188, Houston, Texas 77270-1188.

   Please contact me at 713-561-5634 today to provide me with the information I requested as there are other matters that require my attention in setting up Trust business all of which are being delayed by you.

       Sincerely,
       /S/Kristin Wilkinson, Co-Trustee
       Kristin Wilkinson, Co-Trustee

cc:  File/James C. Flitsch, Co-Trustee

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

CAROLYN S CLARK IRR TR
KEVIN J CLARK TTEE
JAMES C FLITSCH TTEE
U/A DTD 07/28/2017
MARCH 1, 2019 - MARCH 31, 2019
ACCOUNT NUMBER: ███ 5768

## Activity detail

### Income and distributions

| DATE | ACCOUNT TYPE | TRANSACTION | QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|----------|-------------|-------|--------|
| 03/01 | Cash | DIVIDEND | | ENBRIDGE INC<br>030119   1,425 | | 790.08 |
| 03/08 | Cash | DIVIDEND | | AMERICAN ELECTRIC POWER INC<br>030819   1,119 | | 749.73 |
| 03/08 | Cash | DIVIDEND | | EXELON CORPORATION<br>030819   854 | | 309.58 |
| 03/18 | Cash | DIVIDEND | | DUKE ENERGY CORP COM NEW<br>031819   1,006 | | 933.07 |
| 03/29 | Cash | DIVIDEND | | BECTON DICKINSON & CO<br>032919   54 | | 41.58 |
| 03/29 | Cash | DIVIDEND | | EATON VANCE ENHANCED EQUITY INCOME FUND II<br>032919   251 | | 24.80 |
| 03/29 | Cash | INTEREST | | STANDARD BANK DEPOSIT<br>032919   933 | | 15.58 |

**Total Income and distributions:** $2,864.42

### Electronic funds transfer

| DATE | ACCOUNT TYPE | TRANSACTION | QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|----------|-------------|-------|--------|
| 03/01 | Cash | AUTO ACTIVITY | | MONTHLY DISTRIBUTION<br>TRACE # 121000242102531 | | -6,000.00 |

**Total Electronic funds transfer:** -$6,000.00

### Other subtractions and fees

| DATE | ACCOUNT TYPE | TRANSACTION | QUANTITY | DESCRIPTION | PRICE | AMOUNT |
|------|-------------|-------------|----------|-------------|-------|--------|
| 03/01 | Cash | WITHHOLDING | | FRGN-WH @ SOURCE<br>ENBRIDGE INC | | -118.51 |
| 03/25 | Cash | JOURNAL | | WITHDRAWAL MADE<br>IN BRANCH | | -91,015.99 |

**Total Other subtractions and fees:** -$91,134.50

001.A102.GSA1

EXHIBIT 18

**WELLS FARGO ADVISORS**

CAROLYN S CLARK IRR TR
KEVIN J CLARK TTEE
JAMES C FLITSCH TTEE
U/A DTD 07/28/2017
MARCH 1, 2019 – MARCH 31, 2019
ACCOUNT NUMBER ████ 5768

## Cash sweep activity

Our Cash Sweep program allows you to earn a return on the idle cash balances in your account by automatically investing such balances into one of our cash sweep options. These 'sweep transactions' may represent a net amount for the day and occur on settlement date. The following section displays transfers into and out of your sweep option. Transactions displayed here are Transfer To, Transfer From and Reinvested Dividends and Interest. These transaction amounts are not included in your cash flow summary.

| DATE | TRANSACTION | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 03/01 | | BEGINNING BALANCE | 95,260.31 |
| 03/01 | TRANSFER FROM | STANDARD BANK DEPOSIT | -5,975.20 |
| 03/04 | TRANSFER TO | STANDARD BANK DEPOSIT | 671.57 |
| 03/11 | TRANSFER TO | STANDARD BANK DEPOSIT | 1,059.31 |

| DATE | TRANSACTION | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 03/19 | TRANSFER TO | STANDARD BANK DEPOSIT | 933.07 |
| 03/26 | TRANSFER FROM | STANDARD BANK DEPOSIT | -91,015.99 |
| 03/29 | REINVEST INT | STANDARD BANK DEPOSIT | 15.58 |
| 03/31 | | ENDING BALANCE | 948.65 |

## Bank Deposits Through Teller

**March 1 - March 31**

Account number ████ 6523

Questions?  Call us at 1-800-266-6263

### Wells Fargo Bank, N.A. (Member FDIC)

Deposits made in a bank branch on the last business day of the month will typically appear on your next statement.

| DATE | TRANSACTION | DESCRIPTION | AMOUNT | BANK BALANCE |
|---|---|---|---|---|
| 03/01 | | BEGINNING BALANCE | | $0.00 |
| 03/31 | | ENDING BALANCE | | $0.00 |

EXHIBIT 19

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

April 3, 2019

*PRIVILEGED AND PROPRIETARY / URGENT: TIME IS OF THE ESSENCE*
*BUSINESS COMMUNICATION*
*VIA U.S.P.S. OVERNIGHT MAIL/EXPRESS*

James Flitsch
Co-Trustee, Carolyn S. Clark Irrevocable Living Trust
405 N Brewster St
Manchester, Iowa 52057

Re:     Carolyn S. Clark Irrevocable Living Trust

Dear James:

In an effort to help you with getting the bank signature card signed and returned to the bank, they have emailed it to me so that I can download it and print it out for you to sign and return.  Time is of the essence; the bank needs the signature card signed and returned immediately as they have been asking for it from you since the 15th of March, 2019.

The signature card has been printed and is enclosed for your signature.  Please sign the enclosed signature card, (page), by the highlighted "x" right next to your name.  Please return your original signed signature card in the enclosed pre-paid Express mail envelope via the United States Postal Service.  I utilized the U.S. Postal Service office for your convenience instead of Federal Express, which might have been difficult to find in your local area.

If you have any difficulty whatsoever in returning the signature card please contact myself or the bank representative who has been trying to reach you, as soon as possible.

Sincerely,
/S/Kristin Wilkinson, Co-Trustee
Kristin Wilkinson, Co-Trustee

Enclosure

cc:     Amegy Bank

_____
Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

EXHIBIT 19

## Zions Bancorporation, N.A. dba Amegy Bank Signature Card

| Account Title: THE CAROLYN S CLARK IRREVOCABLE LIVING TRUST | ▇▇▇05 | Branch ID: 0027 |
|---|---|---|
| | | Cost Center: 05358 |
| Account Structure:   Trust | | Date:   03/15/2019 |
| Supersedes Card dated: | Replaced by Card dated: | FileNet Document ID: |

| Account Number | Opened Date | Opened/Revised By | Acct Type | Approved | Closed Date |
|---|---|---|---|---|---|
| ▇▇▇331 | 03/15/2019 | Billy Williams | DDA 152 | | |
| | | | | | |
| | | | | | |

| Authorized Signers | Signature | Relationship |
|---|---|---|
| 1.   THE CAROLYN S CLARK IRREVOCABLE LIVING T | | Type: Trust<br>TIN: ▇▇▇▇705 |
| 2.   KRISTIN D WILKINSON | *Kristin Wilkinson* | Type: Co-Trustee<br>TIN: ▇▇▇5 |
| 3.   JAMES C FLITSCH | (X) | Type: Co-Trustee<br>TIN: ▇▇▇7117 |
| 4. | | Type:<br>TIN: |
| 5. | | Type:<br>TIN: |
| 6. | | Type:<br>TIN: |

### TAX REPORTING INFORMATION -- W-9 CERTIFICATION

Complete this section only if you are a U.S. citizen or U.S. resident alien.

Under penalties of perjury, I certify that:

☐ Individual / Sole Proprietor / Single-member LLC   ☒ Trust / Estate   ☐ Other
☐ C Corporation   ☐ S Corporation   ☐ Partnership
☐ LLC C Corporation   ☐ LLC S Corporation   ☐ LLC Partnership

1.  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and
2.  I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3.  I am a U.S. citizen or other U.S. person, and
4.  I am exempt from FATCA reporting.

Certification Instructions. You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN.

Signature of U.S. Person *Kristin Wilkinson*          TIN: ▇▇▇705          Date: 03/15/2019

The account owner named above ("Customer"), through its authorized signers signing above, hereby requests that Zions Bancorporation, N.A. dba Amegy Bank ("Bank") open the designated account and agrees:

- The above account shall be governed by Federal and State law and regulation and the terms and conditions of the most current version of the following DEPOSIT DOCUMENTS, which are incorporated herein: 1) Deposit Account Agreement; 2) Rate and Fee Schedules. I (We) acknowledge receipt of the most current version of the Deposit Documents. The Deposit Documents may be amended by Bank from time to time and, a copy of the amended Deposit Documents will be available from Bank and/or will be mailed to the account address with the regular periodic statements. The Deposit Documents along with this Signature Card constitute a contractual agreement with Bank with respect to my/our account.

- Bank is authorized to accept instructions of any kind with respect to the account from any authorized signer, subject to any restrictions in the Deposit Documents. Bank shall have no responsibility for reviewing the number or combination of signatures on an item drawn against the account. This means that if you have indicated that more than one signature is required in connection with an item drawn on the account, Bank will have no liability to you if a transaction is conducted on or through the account contrary to the signature requirements you have specified.

- BY SIGNING ABOVE I (WE) AGREE THAT ANY DISPUTE IN CONNECTION WITH THE ACCOUNT(S), ANY TRANSACTION THEREIN OR THIS SIGNATURE CARD SHALL BE RESOLVED IN THE MANNER SET FORTH IN THE DEPOSIT ACCOUNT AGREEMENT.

- By signing this Signature Card, bank is hereby authorized to accept instructions from anyone with authority to exercise control over the account(s) identified on this signature card (including any one of the authorized signers identified herein), including instruction to close the account(s) and to execute new agreements for banking-related services in connection with the account(s). You may accept my (our) oral or electronic instructions with the same effect as if I (we) had signed them. I (We) agree to follow your security procedures and to provide my (our) signature upon request. You may at any time refuse to accept such instructions. I (We) authorize you to record and monitor my (our) telephone calls as evidence of my (our) instructions and for service quality purposes. In addition, The Fair Credit Reporting Act prohibits obtaining certain consumer reports relating to business accounts unless consent is obtained. By signing above, each authorized signer consents to Zions Bancorporation, N.A. making inquiry of and ordering reports from credit reporting, check clearing and other such entities concerning each signer's personal financial and other information, even though this may be a business account, to be used for evaluating and handling this and other deposit and loan accounts at Zions Bancorporation, N.A., and to disclose information about the account to the credit reporting agencies and to other persons or agencies who, in Bank's judgment, have a legitimate business purpose for obtaining such information. Upon request, you will inform me (us) if a consumer report has been obtained and will give me (us) the name and address of the agency furnishing the report.

SPECIAL INSTRUCTIONS:

EXHIBIT 20

1

1    REPORTER'S RECORD

2    VOLUME 2 OF 2 VOLUMES

3    TRIAL COURT CAUSE NO. 19-06-07875

4

5

6    IN RE:  THE CAROLYN S.      )  IN THE COUNTY COURT
       CLARK                      )
7                                 )
                                  )
8    IRREVOCABLE LIVING TRUST     )  AT LAW NUMBER TWO (2)
                                  )
9                                 )  MONTGOMERY COUNTY,
       U/T/A JULY 28, 2017        )  TEXAS
10

11

12

13

14

15                    * * * * *
16                 ***HEARING***
                      * * * * *
17

18        BE IT REMEMBERED that on the 22nd day of July, 2019,

19   the following proceedings came on to be heard in the

20   above-entitled and numbered cause before the Honorable

21   Claudia L. Laird, Judge presiding, held in Conroe,

22   Montgomery County, Texas;

23        Proceedings reported by computerized stenotype

24   machine; Reporter's Record produced by computer-assisted

25   transcription.

MARTHA D. KOOMAR, CSR
936-539-7832

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3       Mr. Steven C. Earl
         State Bar No. 24002028
 4       STILWELL, EARL & APOSTOLAKIS, LLP
         1400 Woodloch Forest Drive, Suite 590
 5       The Woodlands, Texas  77380
         Telephone:  (281) 419-6200
 6

 7   FOR THE DEFENDANT:

 8       Mr. David F. Johnson
         State Bar No. 24002357
 9       WINSTEAD, P.C.
         300 Throckmorton Street, Suite 1700
10       Fort Worth, Texas  76102
         Telephone:  (817) 420 8200
11

12   FOR THE DEFENDANT:
         Ms. Jeanne L. Couture
13       State Bar No. 24094602
         MAGNAN COUTURE, PLLC
14       245 West 18th Street
         Houston, Texas  77008
15       Telephone:  (713) 678-0499

16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 20

3

```
 1                         INDEX
                      VOLUME 2 OF 2
 2                  CAUSE NO. 19-06-07875

 3   July 22nd, 2019                            PAGE

 4   Appearances                                   2

 5   Proceedings                                   4

 6   KRISTIN WILKINSON
         Cross-Examination (cont'd) by Mr. Johnson     5
 7       Cross-Examination (cont'd) by Ms. Couture    37
         Recross-Examination by Mr. Johnson           45
 8       Recross-Examination by Ms. Couture           47
         Further Recross-Examination by Mr. Johnson   47
 9
     CAROLYN CLARK
10       Direct Examination by Mr. Earl              51
         Cross-Examination by Mr. Johnson            78
11       Redirect Examination by Mr. Earl            90

12   JAMES FLITSCH
         Direct Examination by Mr. Earl              92
13
     Reporter's Certificate                         118
14

15

     PLAINTIFF'S EXHIBITS
16
     NO.       DESCRIPTION          OFFERED  ADMITTED
17
     23        LETTER                 70/2     70/2
18

19

20   DEFENDANT'S EXHIBITS
     NO.       DESCRIPTION          OFFERED  ADMITTED
21
     E         E-MAIL                  8/2      8/2
22   F         E-MAIL                 10/2     11/2
     G         E-MAIL                 11/2     11/2
23   H         E-MAIL                 13/2     13/2
     I         E-MAIL                 16/2     16/2
24   J         LETTER                 16/2     17/2
     K         2018 TRUSTEE'S ANNUAL REPORT  18/2  19/2
25   L         FLASH DRIVE            23/2     23/2
```

MARTHA D. KOOMAR, CSR
936-539-7832

EXHIBIT 20

116

1   was already an established account.

2       Q.    And so for purposes of her or anyone telling you

3   that she would be on the account as trustee, when did

4   that happen in a phone conversation at a bank?

5       A.    That happened when she said that her and I both

6   would be listed as co-trustees, that way we both had

7   equal rights to be able to touch the money.

8       Q.    And after she told you that, did you agree with

9   her that she should be a trustee?

10      A.    I never denied it, but I wasn't happy with it.

11      Q.    Well, what did you do about that?

12      A.    I mean essentially in a way I really didn't do

13  anything because I refused to sign the card and give it

14  back.

15      Q.    So whenever document was presented to you to

16  sign off on as co-trustee, you didn't do it?

17      A.    No, I did not.

18            MR. EARL:  Pass the witness pending any

19  further openings of this hearing or other matters.

20            MR. JOHNSON:  Reserve my questions for a

21  deposition.

22            MS. COUTURE:  No further questions.

23            THE COURT:  Okay.  You can step down.

24            MR. EARL:  And can we have entry for a

25  written order so we have a firm date for it.

```
 1                    REPORTER'S CERTIFICATE

 2   THE STATE OF TEXAS    )
     COUNTY OF MONTGOMERY )
 3

 4       I, MARTHA KOOMAR, Official Court Reporter in and for

 5   the County Court at Law No. 2 of Montgomery County, State

 6   of Texas, do hereby certify that the above and foregoing

 7   contains a true and correct transcription of all portions

 8   of evidence and other proceedings requested in writing by

 9   counsel for the parties to be included in this volume of

10   the Reporter's Record, in the above-styled and numbered

11   cause, all of which occurred in open court or in chambers

12   and were reported by me.

13       I further certify that this Reporter's Record of the

14   proceedings truly and correctly reflects the exhibits, if

15   any, admitted by the respective parties.

16       I further certify that the total cost for the

17   preparation of this Reporter's Record is $858.00 and was

18   paid by STILWELL, EARL & APOSTOLAKIS, LLP.

19       WITNESS MY OFFICIAL HAND this the 26th day of

20   January, 2020.

21                         /s/ Martha Koomar
                           _____
22                         Martha D. Koomar, Texas CSR #7217
                           My Commission Expires:  04/30/2021
23                         Official Court Reporter
                           County Court at Law No. 2
24                         210 West Davis
                           Conroe, Texas  77301
25                         Telephone:  936-539-7832
```

EXHIBIT 21

Kristin Wilkinson, Co-Trustee
Carolyn S. Clark Irrevocable Living Trust

April 4, 2019

*PRIVILEGED AND PROPRIETARY / URGENT: TIME IS OF THE ESSENCE*
*BUSINESS COMMUNICATION*
*VIA U.S.P.S. OVERNIGHT MAIL/EXPRESS*

James Flitsch
Co-Trustee, Carolyn S. Clark Irrevocable Living Trust
405 N Brewster St
Manchester, Iowa  52057

> Re:    Carolyn S. Clark Irrevocable Living Trust

Dear James:

In an effort to help you with getting the bank signature card signed and returned to the bank, they have emailed it to me so that I can download it and print it out for you to sign and return.  Time is of the essence; the bank needs the signature card signed and returned immediately as they have been asking for it from you since the 15th of March, 2019.

The signature card has been printed and is enclosed for your signature.  Please sign the enclosed signature card, (page), by the highlighted "x" right next to your name.  Please return your original signed signature card in the enclosed pre-paid Express mail envelope via the United States Postal Service.  I utilized the U.S. Postal Service office for your convenience instead of Federal Express, which might have been difficult to find in your local area.

If you have any difficulty whatsoever in returning the signature card please contact myself or the bank representative who has been trying to reach you, as soon as possible.

Sincerely,
/S/Kristin Wilkinson, Co-Trustee
Kristin Wilkinson, Co-Trustee

Enclosure

cc:    Amegy Bank

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 561-5616

**EXHIBIT 21**

## Zions Bancorporation, N.A. dba Amegy Bank Signature Card

| Account Title: THE CAROLYN S CLARK IRREVOCABLE LIVING TRUST | | | | ███████05 | | Branch ID: 0027 |
|---|---|---|---|---|---|---|
| | | | | | | Cost Center: 05358 |
| Account Structure:   Trust | | | | | | Date:   03/15/2019 |

| Supersedes Card dated: | | Replaced by Card dated: | | FileNet Document ID: | |
|---|---|---|---|---|---|

| Account Number | Opened Date | Opened/Revised By | Acct Type | Approved | Closed Date |
|---|---|---|---|---|---|
| █████5331 | 03/15/2019 | Billy Williams | DDA 152 | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Authorized Signers | Signature | Relationship |
|---|---|---|
| 1. THE CAROLYN S CLARK IRREVOCABLE LIVING T | | Type: Trust<br>TIN: ██-███705 |
| 2. KRISTIN D WILKINSON | *Kristin Wilkinson* | Type: Co-Trustee<br>TIN: ██████5 |
| 3. JAMES C FLITSCH | (X) | Type: Co-Trustee<br>TIN: ████7117 |
| 4. | | Type:<br>TIN: |
| 5. | | Type:<br>TIN: |
| 6. | | Type:<br>TIN: |

### TAX REPORTING INFORMATION -- W-9 CERTIFICATION

Complete this section only if you are a U.S. citizen or U.S. resident alien.

☐ Individual / Sole Proprietor / Single-member LLC   ☒ Trust / Estate   ☐ Other
☐ C Corporation   ☐ S Corporation   ☐ Partnership
☐ LLC C Corporation   ☐ LLC S Corporation   ☐ LLC Partnership

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), **and**
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and
3. I am a U.S. citizen or other U.S. person, **and**
4. I am exempt from FATCA reporting.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN.

Signature of U.S. Person *Kristin Wilkinson*   TIN: ████705   Date: 03/15/2019

The account owner named above ("Customer"), through its authorized signers signing above, hereby requests that Zions Bancorporation, N.A. dba Amegy Bank ("Bank") open the designated account and agrees:
- The above account shall be governed by Federal and State law and regulation and the terms and conditions of the most current version of the following DEPOSIT DOCUMENTS, which are incorporated herein: 1) Deposit Account Agreement, 2) Rate and Fee Schedules. I (We) acknowledge receipt of the most current version of the Deposit Documents. The Deposit Documents may be amended by Bank from time to time and a copy of the amended Deposit Documents will be available from Bank and/or will be mailed to the account address with the regular periodic statements. The Deposit Documents along with this Signature Card constitute a contractual agreement with Bank with respect to my/our account.
- Bank is authorized to accept instructions of any kind with respect to the account from any authorized signer, subject to any restrictions in the Deposit Documents. Bank shall have no responsibility for reviewing the number or combination of signatures on an item drawn against the account. This means that if you have indicated that more than one signature is required in connection with an item drawn on the account, Bank will have no liability to you if a transaction is conducted on or through the account contrary to the signature requirements you have specified.
- BY SIGNING ABOVE I (WE) AGREE THAT ANY DISPUTE IN CONNECTION WITH THE ACCOUNT(S), ANY TRANSACTION THEREIN OR THIS SIGNATURE CARD SHALL BE RESOLVED IN THE MANNER SET FORTH IN THE DEPOSIT ACCOUNT AGREEMENT.
- By signing this Signature Card, Bank is hereby authorized to accept instructions from anyone with authority to exercise control over the account(s) identified on this signature card (including any one of the authorized signers identified herein), including instruction to close the account(s) and to execute new agreements for banking-related services in connection with the account(s). You may accept my (our) oral or electronic instructions with the same effect as if I (we) had signed them. I (We) agree to follow your security procedures and to provide my (our) signature upon request. You may at any time refuse to accept such instructions. I (We) authorize you to record and monitor my (our) telephone calls as evidence of my (our) instructions and for service quality purposes. In addition, The Fair Credit Reporting Act prohibits obtaining certain consumer reports relating to business accounts unless consent is obtained. By signing above, each authorized signer consents to Zions Bancorporation, N.A. making inquiry of and ordering reports from credit reporting, check clearing and other such entities concerning each signer's personal financial and other information, even though this may be a business account, to be used for evaluating and handling this and other deposit and loan accounts at Zions Bancorporation, N.A., and to disclose information about the account to the credit reporting agencies and to other persons or agencies who, in Bank's judgment, have a legitimate business purpose for obtaining such information. Upon request, you will inform me (us) if a consumer report has been obtained and will give me (us) the name and address of the agency furnishing the report.

**SPECIAL INSTRUCTIONS:**

(1) Amegy Bank - S... Case 4:21-cv-01501   Document 11   Filed on 06/04/21 in TXSD   Page 282 of 310 ...WLF.Cases.Caroly...

EXHIBIT 22

| | |
|---|---|
| **Subject:** | Carolyn S. Clark Irrevocable Living Trust – Confidential |
| **From:** | kristinwilkinson@use.startmail.com |
| **Date:** | Thursday, April 4, 2019 at 9:19 PM |
| **To:** | Billy.Williams@amegybank.com |

Dear Billy,

I was finally able to reach contact with James. He has intentionally not sent the card back.

We had a nice talk and he understands that his failure to serve over the past year creates a situation where I am enabled under the trust to replace him and he acknowledged that he has made mistakes over the past year as trustee and has not been honest. I will talk again tomorrow with him. If I exercise my right to replace him, can you go ahead and open the bank account with my information only, without giving James access to the accounts, and when I replace him we can add that individual?

Sincerely,

Kristin Wilkinson
Co-Trustee, Carolyn S. Clark Irrevocable Living Trust

EXHIBIT 23

James Flitsch Co Trustee - StartMail

https://www.startmail.com/mailbox/list?mailbox=WLF.Cases.Caroly...

| | |
|---|---|
| **Subject:** | Re: Proprietary and Confidential |
| **From:** | James Flitsch |
| **Date:** | Thursday, April 11, 2019 at 3:12 PM |
| **To:** | kristinwilkinson@use.startmail.com |

Hi Kristin,

I am requesting a copy of everything to do with both account and a copy of both years taxes please.

Thanks
James

On Wed, Mar 13, 2019, 1:26 PM <kristinwilkinson@use.startmail.com wrote:

> Dear James:
>
> I tried to call but your voicemail was full.  Attached for your reference is correspondence I sent to Wells Fargo today.
>
> I know you work so in order that we discuss trust matters at a convenient time please provide me with a good time to call, if there is a usual time that would be best for you on an ongoing basis, if possible.
>
> Please give me a call when you have a few moments to talk.  My cell number is 936-668-6953.
>
> Sincerely,
> Kristin Wilkinson, Co-Trustee, Carolyn S. Clark Irrevocable Living Trust

EXHIBIT 24

3c

DOC #2019041136

### ACTION BY CO-TRUSTEE OF APPOINTMENT OF
### REPLACEMENT CO-TRUSTEE

Effective May 14, 2019, I Kristin Wilkinson hereby appoint Leonard Guardino as the Co-Trustee of any and all Trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust in the place of James C. Flitsch in accord with Paragraph 1.4 of the Carolyn S. Clark Irrevocable Living Trust Agreement.  James C. Flitsch is removed as Co-Trustee of any and all trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust.  This act is affirmed by my signature as Co-Trustee below; a true and correct copy of this instrument is being sent by certified mail, return receipt requested to James C. Flitsch at his last known address on file in the records of the Carolyn S. Clark Irrevocable Living Trust in accord with Paragraph 1.4 of the Carolyn S. Clark Irrevocable Living Trust Agreement.

_____
Kristin Wilkinson, J.D., Co-Trustee of the
Carolyn S. Clark Irrevocable Living Trust

STATE OF TEXAS                §
                              §
COUNTY OF MONTGOMERY          §

BEFORE ME, the undersigned authority, on this day personally appeared Kristin Wilkinson, J.D., Co-Trustee, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that she executed the same for the purposes and considerations therein expressed and in the capacity therein stated.

GIVEN under my hand and seal of office this _15th_ day of May, 20189.

STATE OF TEXAS                §
                              §
COUNTY OF MONTGOMERY          §

NOTARY PUBLIC STATE OF TEXAS

_____
Print Name: _Holly Addison_

AFTER RECORDING RETURN TO:
Kristin Wilkinson, J.D., Co-Trustee of the
Carolyn S. Clark Irrevocable Living Trust
P.O. Box 701188
Houston, Texas 77270-1188

HOLLY ADDISON
Notary ID #7252055
My Commission Expires
February 7, 2022



I hereby certify that this is a true and correct
copy of the original record on file in my office

Mark Turnbull, County Clerk
Montgomery County, Texas

by _____ Deputy

Issued   _7-19-2019_

EXHIBIT 24

Doc #: 2019041136
Pages 2

FILED FOR RECORD
05/15/2019   04:55PM

*[signature]*

COUNTY CLERK
MONTGOMERY COUNTY, TEXAS

STATE OF TEXAS,
COUNTY OF MONTGOMERY
I hereby certify that this instrument was filed in the file number
sequence on the date and time stamped herein
by me and was duly  RECORDED in the Official Public
Records of Montgomery County, Texas.

05/15/2019

*[seal]*   *[signature]*

County Clerk
Montgomery County, Texas

I hereby certify that this is a true and correct
copy of the original record on file in my office

Mark Turnbull, County Clerk
Montgomery County, Texas

by *[signature]* _____ Deputy

Issued ___7-19-2019_____

EXHIBIT 25

Kristin Wilkinson, J.D. and Leonard Guardino, Co-Trustees,
Carolyn S. Clark Irrevocable Living Trust

May 15, 2019

*PRIVILEGED AND PROPRIETARY / PERSONAL*
*BUSINESS COMMUNICATION*
*VIA FACSIMILE TO: 417-883-9738*

Mr. Dave Burnette, Branch Manager
Mr. Gregory Sullivan, Financial Advisor
Ms. Joan Bondra, Sr. Reg. CA
Wells Fargo Advisors
1720 E Bradford Parkway, H3479-010
Springfield, Missouri 65804

Re:     Carolyn S. Clark Irrevocable Living Trust

Dear Messrs. Burnette and Sullivan and Ms. Bondra:

Several communications have been forwarded to you regarding your updating of your records by replacing the Co-Trustee Kevin Clark on the Trust accounts, (all assets held and/or managed, whether internally or externally, by Wells Fargo on behalf of the Carolyn S. Clark Irrevocable Living Trust, including, but not limited to the assets held in Account Numbers: ▮▮▮ and ▮▮▮▮▮▮▮) with my name as the appointed replacement of Kevin Clark in accord with the terms of the Trust. You were also requested on March 5, 2019, and April 9, 2019, to make this change and acknowledge your actions.

This will also again advise you that Co-Trustee James Christopher Flitsch has been removed as the Co-Trustee. Mr. Leonard Guardino has been appointed as the Co-Trustee in the place of James Christopher Flitsch in accord with the terms of the Trust document. A certified copy of the appointment that has been recorded in the real property records of Montgomery County, Texas is enclosed. You have already been provided with the recorded instrument reflecting the appointment of Kristin Wilkinson, J.D. as Co-Trustee. Please immediately provide us with the forms required to update your records with information to reflect Mr. Guardino's appointment as the successor Co-Trustee who is James Flitsch's replacement. Again, Mr. Flitsch shall have no further access to the accounts or information from Wells Fargo regarding the Carolyn S. Clark Irrevocable Living Trust.

Again, please correct the title to the accounts to reflect Kristin Wilkinson, J.D. and Leonard Guardino as the current co-trustees in lieu of Kevin Clark and James Flitsch and provide us with confirmation of your actions.

Also, once again, please provide us with the contact name and telephone number as well as the office address of the attorney handling this matter on behalf of your office, a copy of all

**EXHIBIT 25**

-2-

documents initiating and setting up all of these accounts, and designations of any beneficiary on all of these accounts.

Forward all statements and direct all communication to the attention of the current Co-Trustees, Kristin Wilkinson, J.D. and Leonard Guardino, using the mailing address: P.O. Box 701188, Houston, Texas 77270-1188 or our physical office address, 550 Club Dr., Suite 354, Montgomery, Texas 77316.

Sincerely,

Kristin Wilkinson, J.D., Co-Trustee

Leonard Guardino, Co-Trustee

Enclosure (As referenced)

cc:     File/ Kevin Clark, Former Co-Trustee

Office: 550 Club Dr., Suite 354, Montgomery, Texas 77316
Mail: P.O. Box 701188, Houston, Texas 77270-1188
Voice:  (713) 581-5616

FLITSCH000029

EXHIBIT 26

RECEIVED AND FILED
FOR RECORD
August 21, 2020  8:58 a.m.
Melisa Miller, District Clerk
Montgomery County, Texas

## CAUSE NO. 19-06-07875

| | | |
|---|---|---|
| JAMES FLITSCH; CAROLYN CLARK | § | IN THE DISTRICT COURT OF |
| | § | |
| vs. | § | MONTGOMERY COUNTY, TEXAS |
| | § | |
| KRISTEN DIANE WILKINSON; | § | 457TH JUDICIAL DISTRICT |
| LEONARD GUARDINO; KEVIN J | | |
| CLARK; DIANE M CLARK; LISA R | | |
| SEIGEL; JILLIAN RENEE | | |
| DEUTMEYER; SAMANTHA MAYE | | |
| SIMONE'S DE ARIAS; CHANDRA | | |
| LEAH SIMS | | |

## ORDER ON TRADITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT FILED BY JAMES FLITSCH, CO-TRUSTEE, AND CAROLYN S. CLARK, SETTLOR

Before the Court is the Traditional Motion for Partial Summary Judgment (the "Motion") filed by James Flitsch, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017 (the "Clark Trust"), and by Carolyn S. Clark, Settlor of the Clark Trust (the "Movants").

The Motion seeks partial summary judgment as relates to the "Request for Declaratory Relief Regarding Trusteeship" set forth in paragraphs 27-31 of the Movants' Second Amended Original Petition (the "Movants' Live Pleading"). In paragraph 19 of the Movants' Live Pleading the Movants state that they "seek to resolve questions that have arisen during the course of Trust administration, including construction of the Trust instrument." In their Live Pleading the Movants cite Section 37.005 of Texas' Declaratory Judgment Statute as the basis for the relief requested. Section 37.005 is titled "Declarations Relating to Trust or Estate," and provides:

> A person interested as or through an executor or administrator, including an independent executor or administrator, a trustee, guardian, other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust or of the estate of a decedent, an infant, mentally incapacitated person, or insolvent may have a declaration of rights or legal relations in respect to the trust or estate: . . . (3) to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings . . .

*Tex. Civ. Prac. & Rem. Code § 37.005.*

EXHIBIT 26

A copy of the Clark Trust is before the Court as a part of the summary judgment evidence.  It is undisputed that the Clark Trust was created on July 28, 2017, and that the Settlor/Grantor of the Clark Trust was Carolyn Clark, one of the Movants.

Section 1.3 of the Clark Trust states its purpose as follows:

**Purpose.** The purpose of this Trust shall be to care and provide for all needs of Carolyn S. Clark during her lifetime and to provide for the payment of education expenses for the primary beneficiaries so long as the education expenses will result in employability and increase of the beneficiary's income and enjoyment of life over the lifetime of the beneficiaries through, but not by way of limiting the definition of educational endeavors: completion of education, diploma, trade school, vocational school, vocational training, higher education, post secondary education, licensure, certification, graduate education, post graduate education.

Section 1.2 of the Clark Trust identifies its "primary beneficiaries" as "Carolyn S. Clark, the children of Carolyn S. Clark and Samuel B. Clark, and the lineal descendants of Carolyn S. Clark and Samuel B. Clark, including their grandchildren and great-grandchildren and their lineal descendants until the trust terminates."

Section 1.4 of the Clark Trust, titled "Co-Trustees," identifies its co-trustees and provides:

**Co-Trustees.** As Initial Co-Trustees, Kevin J. Clark shall be the initial Primary Co-Trustee and James C. Flitsch shall be the initial Secondary Co-Trustee of any Trust created in this Agreement. References to the co-trustees shall mean "Co-Trustees," whether the initial co-trustees or later-appointed trustees, and any typographical error referring to the co-trustees as "co-trustee" shall be disregarded if the singularly spelled word "trustee" in context should mean "co-trustees." There shall at all times be two individuals serving as co-trustees making together all decisions necessary to carry out the purpose and management of the Trust. *The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee. If Kevin J. Clark ceases or fails to serve before the appointment of his replacement, then James C. Flitsch shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee.* If James C. Flitsch ceases or fails to serve, then Kevin J. Clark shall appoint as Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee. Both Kevin J. Clark and James C. Flistch shall appoint Co-Trustees to replace themselves at such time when either one or

EXHIBIT 26

both of them is in contemplation of ceasing to serve or is in danger of becoming unable to serve.

Section 6.3 of the Clark Trust addresses the resignation of a Co-Trustee. It provides:

**Resignation of Co-Trustee**. Any Co-Trustee may resign by filing a written instrument duly acknowledged of record in the Deed Records of Grantor's County, which filing shall immediately deprive any such resigning Co-Trustee of all powers as Co-Trustee hereunder, except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets; provided, nevertheless, that at least thirty (30) days prior to such filing, the resigning Co-Trustee shall give written notice thereof to those persons who could in the discretion of the Co-Trustee receive income from the Trust estate and are at such time *sui juris.* No purchaser from, or other person dealing with, any Co-Trustee is obligated to examine such Deed Records and any such person acting in good faith shall be protected in all transactions with the Co-Trustee whether or not any such resignation has taken place.

Section 3.10 of the Clark Trust addresses the subject of compensation for the Co-Trustees. It reads as follows:

**Compensation and Bond.** The Co-Trustees (other than a beneficiary serving as Co-Trustee of any Trust created in this Agreement for the primary benefit of that beneficiary) shall be entitled to reasonable fees commensurate with their duties and responsibilities, taking into account the value and nature of the Trust estate and the time and work involved. A reasonable fee shall be paid annually to each Co-Trustee and shall be set as follows:

- 2.5% (.025) of the total value of all property held by the Co-Trustees, paid to each Co-Trustee for the first 12-month period and

- Thereafter 7.5% (.075) of the Trust income on the total value of investment property.

The Co-Trustees shall be reimbursed for the reasonable costs and expenses incurred in connection with their fiduciary duties hereunder. No Co-Trustee, whether original or successor, shall be required to furnish bond or other security, except as herein expressly provided.

In addition to the above facts concerning the Clark Trust, the summary judgment evidence establishes the following undisputed facts:

EXHIBIT 26

First, the Co-Trustee, Kevin J. Clark, signed a document before a notary on February 28, 2019, in which he resigns as Co-Trustee and purports to appoint Kristin Wilkinson as his replacement. The documents reads as follows:

Effective March 1, 2018 (sic)[1]:

I, Kevin J. Clark hereby resign as Co-Trustee for the Carolyn S. Clark Irrevocable Trust.

Kevin J Clark appoints Kristin Wilkinson, J.D. as his replacement CO-TRUSTEE in accordance with Part 6 and Section 3 of the Carolyn S. Clark Irrevocable Trust Agreement.

Second, on March 4, 2019, Kristin Wilkinson signed a document purporting to accept her appointment as Co-Trustee, and purporting to provide her compensation in an amount higher than the Clark Trust provides:

I hereby accept the appointment as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust, made February 28, 2019, by Kevin J. Clark, effective March 1, 2019. Compensation of Kristin Wilkinson is set at five percent (5%) of the total value of all property conveyed to the trust during the first year of her service and according to the terms of the trust thereafter.

Third, Ms. Wilkinson signed a document before a notary on May 15, 2019, titled "Action by Co-Trustee of Appointment of Replacement Co-Trustee." In this document she purported to remove James C. Flitsch as Co-Trustee and to replace him with her husband, Leonard Guardino. She signed the document in her purported capacity as "Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust Agreement." The document reads as follows:

Effective May 14, 2019. I Kristin Wilkinson hereby appoint Leonard Guardino as the Co-Trustee of any and all Trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust in the place of James C. Flitsch in accord with Paragraph 1.4 of the Carolyn S. Clark Irrevocable Living Trust Agreement. James C. Flitsch is removed as Co-Trustee of any and all trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust. This act is affirmed by my signature as Co-Trustee below; a true and correct copy of this instrument is being sent by certified mail, return receipt requested to James C. Flitsch at his last known address on file in the records of the Carolyn S. Clark Irrevocable Living Trust in accord with Paragraph 1.4 of the Carolyn S. Clark Living Trust Agreement.

---

[1] This should have read 2019. The reference to 2018 is a mistake.

EXHIBIT 26

Based on the above-described undisputed facts, the Court grants the Movants' Traditional Motion for Partial Summary Judgment as follows.

1. The Clark Trust does not give a Co-Trustee the power to unilaterally appoint his own replacement. Therefore, even assuming that Kevin J. Clark still had the powers of a Co-Trustee at the time he purported to appoint Ms. Wilkinson as his replacement,[2] those powers did not include the power to unilaterally appoint his own replacement. Section 1.4 of the Clark Trust provides: "The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee." Mr. Clark's Co-Trustee, Mr. Flitsch, was required to participate in the appointment of the Co-Trustee that would replace Mr. Clark. Since Mr. Clark lacked the power to unilaterally appoint his own replacement, his purported appointment of Ms. Wilkinson as Co-Trustee is ineffective and invalid as a matter of law.

2. The Clark Trust does not give one Co-Trustee the power to remove another. Even assuming for the sake of discussion that Ms. Wilkinson was properly appointed as a Co-Trustee, and acquired the powers of a Co-Trustee, those powers did not include the power to unilaterally remove Mr. Flitsch as a Co-Trustee. Accordingly, the purported removal of Mr. Flitsch by Ms. Wilkinson was ineffective and invalid as a matter of law.

3. Ms. Wilkinson's purported appointment of Mr. Guardino as a Co-Trustee is ineffective and invalid as a matter of law. Not only did Ms. Wilkinson not have the powers of a Co-Trustee under the Clark Trust, but even assuming that she did, those powers did not include the power to unilaterally appoint another Co-Trustee.

4. Finally, the Clark Trust does not give a Co-Trustee the power to change the Co-Trustee's compensation. Therefore, even assuming that Ms. Wilkinson had acquired the powers of a Co-Trustee, those powers did not include the power to change her own compensation. Her act of purporting to change the compensation afforded a Co-Trustee under the Clark Trust was invalid and ineffective as a matter of law.

SO ORDERED this ___21___ day of August, 2020.

8/21/2020 8:58:23 AM

_____
Judge Vincenzo Santini

---

[2] Kevin J. Clark's act of filing a document in the real property records of Montgomery County on March 1, 2019 stating that he was resigning as Co-Trustee immediately deprived him of all powers as Co-Trustee pursuant to Section 6.3 of the Clark Trust "except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets."

EXHIBIT 27

1

```
 1                    REPORTER'S RECORD

 2                  VOLUME 1 OF 2 VOLUMES

 3              TRIAL COURT CAUSE NO. 19-06-07875

 4

 5

 6   IN RE:  THE CAROLYN S.    ) IN THE COUNTY COURT
         CLARK                )
 7                            )
                             )
 8   IRREVOCABLE LIVING TRUST ) AT LAW NUMBER TWO (2)
                             )
 9                            ) MONTGOMERY COUNTY,
         U/T/A JULY 28, 2017  ) TEXAS
10

11

12

13

14

15                        * * * * *
                       ***HEARING***
16                        * * * * *

17

18       BE IT REMEMBERED that on the 19th day of July, 2019,

19   the following proceedings came on to be heard in the

20   above-entitled and numbered cause before the Honorable

21   Claudia L. Laird, Judge presiding, held in Conroe,

22   Montgomery County, Texas;

23       Proceedings reported by computerized stenotype

24   machine; Reporter's Record produced by computer-assisted

25   transcription.
```

MARTHA D. KOOMAR, CSR
936-539-7832

EXHIBIT 27

2

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3       Mr. Steven C. Earl
         State Bar No. 24002028
 4       STILWELL, EARL & APOSTOLAKIS, LLP
         1400 Woodloch Forest Drive, Suite 590
 5       The Woodlands, Texas  77380
         Telephone:  (281) 419-6200
 6

 7   FOR THE DEFENDANT:

 8       Mr. David F. Johnson
         State Bar No. 24002357
 9       WINSTEAD, P.C.
         300 Throckmorton Street, Suite 1700
10       Fort Worth, Texas  76102
         Telephone:  (817) 420 8200
11

12   FOR THE DEFENDANT:

13       Ms. Jeanne L. Couture
         State Bar No. 24094602
14       MAGNAN COUTURE, PLLC
         245 West 18th Street
15       Houston, Texas  77008
         Telephone:  (713) 678-0499
16

17

18

19

20

21

22

23

24

25
```

```
 1                          INDEX
                        VOLUME 1 OF 1
 2                  CAUSE NO. 19-06-07875

 3   September 19th, 2019                              PAGE

 4   Appearances                                       2/1

 5   Proceedings                                       4/1

 6   Opening Statement by Mr. Earl                     7/1

 7   Opening Statement by Mr. Johnson                  8/1

 8   KRISTIN GUARDINO
         Direct Examination by Mr. Earl              10/1
 9       Cross-Examination by Mr. Johnson            44/1

10   Reporter's Certificate                          89/1

11

12

13

14

15   PLAINTIFF'S EXHIBITS

16   NO.       DESCRIPTION              OFFERED    ADMITTED

17    1        THE CAROLYN S. CLARK TRUST   13/1      13/1
      2        APPOINTMENT                  35/1      35/1
18    3        ACTION BY CO-TRUSTEE         78/1      79/1
      4        BUSINESS RECORDS AFFIDAVIT   21/1      22/1
19   20        JUDGMENT AND DISBARMENT      27/1      27/1
     21        PLAINTIFF'S ORIGINAL PETITION 30/1     31/1
20

21

     DEFENDANT'S EXHIBITS
22

23   NO.       DESCRIPTION              OFFERED    ADMITTED

      A        E-MAIL                       58/1       --
24    B        ACCEPTANCE BY CO-TRUSTEE     76/1      77/1
      C        DRIVER'S LICENCE             83/1      83/1
25    D        E-MAIL                       87/1      87/1
```

MARTHA D. KOOMAR, CSR
936-539-7832

EXHIBIT 27

20

```
 1  you come into possession of?

 2      A.    I believe it was $77,000, close to that.

 3      Q.    Was that in the form of a check?

 4      A.    It was more than one check.  It wasn't one

 5  check.

 6      Q.    It was several checks?

 7      A.    A couple, yes.

 8      Q.    And did you receive any cash?

 9      A.    Yes.

10      Q.    And how much cash did you receive?

11      A.    Of the 77,000, 20,000 was cash.

12      Q.    And you took that money as your fee?

13      A.    Yes.

14      Q.    So you didn't spend any of the fee in relation

15  to any trust expenses, correct?

16      A.    No.

17      Q.    You didn't take any action as trustee and use

18  that money to pay for it, correct?

19      A.    Your question makes no sense.

20      Q.    So in other words, it's not like you're saying

21  that you spent that money on the trust and you can

22  account for it having been spent on the trust.  You took

23  it as your compensation?

24      A.    The seventy-seven -- the money that I paid

25  myself was a very small portion of my fee.  I took that
```

EXHIBIT 27

21

1  as my fee, as the portion that it represents as my fee.

2      Q.   And as we -- when was the last time you were in

3  contact with Wells Fargo Bank attempting to move trust

4  assets into an account that held your name?

5      A.   Well, I didn't try and move anything into an

6  account that held my name.

7      Q.   Did you try and take funds or recovered funds

8  that were in Carolyn Clark's name in Wells Fargo and move

9  them into a trust account?

10     A.   I attempted to move funds from -- we opened up

11 an account in the name of the trust.  I attempted to move

12 the property from Wells Fargo in the name of the trust to

13 a different financial advisor and institution in the name

14 of the trust.

15     Q.   Okay.  If you will flip over to Exhibit 4 in

16 your notebook.

17          MR. EARL:  Your Honor, this is a business

18 records affidavit that was filed more than seven days

19 before the hearing and we move to admit it.

20          (Exhibit No. 4 offered)

21          THE COURT:  Objection?

22          MR. JOHNSON:  No objection.

23          MS. COUTURE:  No objection.

24          THE COURT:  And it's four you're wanting?

25          MR. EARL:  Four.

EXHIBIT 27

89

1                    REPORTER'S CERTIFICATE

2   THE STATE OF TEXAS    )
    COUNTY OF MONTGOMERY )

3

4       I, MARTHA KOOMAR, Official Court Reporter in and for

5   the County Court at Law No. 2 of Montgomery County, State

6   of Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions

8   of evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of

10  the Reporter's Record, in the above-styled and numbered

11  cause, all of which occurred in open court or in chambers

12  and were reported by me.

13      I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16      I further certify that the total cost for the

17  preparation of this Reporter's Record is $656.50 and was

18  paid by STILWELL, EARL & APOSTOLAKIS, LLP.

19      WITNESS MY OFFICIAL HAND this the 24th day of

20  January, 2020.

21                      /s/ Martha Koomar
                        _____
22                      Martha D. Koomar, Texas CSR #7217
                        My Commission Expires:  04/30/2021
23                      Official Court Reporter
                        County Court at Law No. 2
24                      210 West Davis
                        Conroe, Texas  77301
25                      Telephone:  936-539-7832

MARTHA D. KOOMAR, CSR
936-539-7832

EXHIBIT 28

1

1          REPORTER'S RECORD

2        VOLUME 1 OF 2 VOLUMES

3      TRIAL COURT CAUSE NO. 19-06-07875

4

5

6   IN RE:  THE CAROLYN S.      )  IN THE COUNTY COURT
    CLARK                       )
7                               )
                                )
8   IRREVOCABLE LIVING TRUST    )  AT LAW NUMBER TWO (2)
                                )
9                               )  MONTGOMERY COUNTY,
    U/T/A JULY 28, 2017         )  TEXAS
10

11

12

13

14

15                    * * * * *
16                 ***HEARING***
                      * * * * *
17

18      BE IT REMEMBERED that on the 19th day of July, 2019,

19   the following proceedings came on to be heard in the

20   above-entitled and numbered cause before the Honorable

21   Claudia L. Laird, Judge presiding, held in Conroe,

22   Montgomery County, Texas;

23      Proceedings reported by computerized stenotype

24   machine; Reporter's Record produced by computer-assisted

25   transcription.

MARTHA D. KOOMAR, CSR
936-539-7832

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3       Mr. Steven C. Earl
         State Bar No. 24002028
 4       STILWELL, EARL & APOSTOLAKIS, LLP
         1400 Woodloch Forest Drive, Suite 590
 5       The Woodlands, Texas  77380
         Telephone:  (281) 419-6200
 6

 7   FOR THE DEFENDANT:

 8       Mr. David F. Johnson
         State Bar No. 24002357
 9       WINSTEAD, P.C.
         300 Throckmorton Street, Suite 1700
10       Fort Worth, Texas  76102
         Telephone:  (817) 420 8200
11

12   FOR THE DEFENDANT:

13       Ms. Jeanne L. Couture
         State Bar No. 24094602
14       MAGNAN COUTURE, PLLC
         245 West 18th Street
15       Houston, Texas  77008
         Telephone:  (713) 678-0499
16

17

18

19

20

21

22

23

24

25
```

EXHIBIT 28

3

```
 1                              INDEX
                           VOLUME 1 OF 1
 2                       CAUSE NO. 19-06-07875

 3   September 19th, 2019                              PAGE

 4   Appearances                                        2/1

 5   Proceedings                                        4/1

 6   Opening Statement by Mr. Earl                      7/1

 7   Opening Statement by Mr. Johnson                   8/1

 8   KRISTIN GUARDINO
          Direct Examination by Mr. Earl              10/1
 9        Cross-Examination by Mr. Johnson            44/1

10   Reporter's Certificate                           89/1

11

12

13

14

15   PLAINTIFF'S EXHIBITS

16   NO.       DESCRIPTION              OFFERED   ADMITTED

17    1        THE CAROLYN S. CLARK TRUST    13/1      13/1
      2        APPOINTMENT                   35/1      35/1
18    3        ACTION BY CO-TRUSTEE          78/1      79/1
      4        BUSINESS RECORDS AFFIDAVIT    21/1      22/1
19   20        JUDGMENT AND DISBARMENT       27/1      27/1
     21        PLAINTIFF'S ORIGINAL PETITION 30/1      31/1
20

21
     DEFENDANT'S EXHIBITS
22
     NO.       DESCRIPTION              OFFERED   ADMITTED
23
      A        E-MAIL                        58/1       -
24    B        ACCEPTANCE BY CO-TRUSTEE      76/1      77/1
      C        DRIVER'S LICENCE              83/1      83/1
25    D        E-MAIL                        87/1      87/1
```

MARTHA D. KOOMAR, CSR
936-539-7832

EXHIBIT 28

12

1     Q.    And it says "Regarding the Carolyn S Clark

2  Irrevocable Living Trust"?

3     A.    Correct.

4     Q.    And it says, "This letter follows my

5  correspondence to you of March 5th, 2019"?  The very

6  first line.

7     A.    Correct.

8     Q.    And wherein you asked once again to have the

9  account restyled in your name as co-trustee of that

10  trust, correct?

11     A.    That's correct.

12     Q.    And then once again you signed off on it as

13  co-trustee, correct?

14     A.    Correct.

15     Q.    And then you cc'ed James Flitsch, correct?

16     A.    Correct.

17     Q.    And this is you sending that cc to him?

18     A.    Correct.

19     Q.    I hand you what has been marked Exhibit H.  What

20  is Exhibit H?

21     A.    Exhibit H is a letter from me as co-trustee to

22  James Flitsch dated April 3rd, 2019, sending him the bank

23  signature card for his signature so that we could get him

24  on the bank where money was transferred from Wells Fargo.

25     Q.    And then attached to that correspondence was the

1  signature card for Amegy Bank?

2      A.    That's correct.

3              MR. JOHNSON:  Your Honor, at this time we

4  offer Exhibit H.

5              (Exhibit H offered)

6              MR. EARL:  Objection.  Hearsay.

7              THE COURT:  Overruled.  H is admitted.

8              (Exhibit H admitted)

9      Q.    (By Mr. Johnson) And so Amegy Bank is the bank

10 account that you opened up with the 91,000?

11     A.    That's correct.

12     Q.    And so pursuant to this document, Mr. Flitsch

13 knew on April 3rd, 2019, that you opened up an account at

14 Amegy Bank, correct?

15     A.    Right.  He knew before that, but we were just

16 getting the documentation signed and then getting the --

17 we had tried to e-mail a copy to him and he sent me his

18 -- that's why he sent me a copy of his driver's license.

19 That was in March.  And then he never sent back the

20 signature card that we sent to him by e-mail.  So now I'm

21 sending it to him by overnight mail because there's a

22 deadline on how long we had to get this taken care of

23 under the bank's rules.

24     Q.    So if he said he was going to get that back to

25 you that was an accurate representation; is that correct?

1                    REPORTER'S CERTIFICATE

2   THE STATE OF TEXAS    )
    COUNTY OF MONTGOMERY )

3

4        I, MARTHA KOOMAR, Official Court Reporter in and for

5   the County Court at Law No. 2 of Montgomery County, State

6   of Texas, do hereby certify that the above and foregoing

7   contains a true and correct transcription of all portions

8   of evidence and other proceedings requested in writing by

9   counsel for the parties to be included in this volume of

10  the Reporter's Record, in the above-styled and numbered

11  cause, all of which occurred in open court or in chambers

12  and were reported by me.

13       I further certify that this Reporter's Record of the

14  proceedings truly and correctly reflects the exhibits, if

15  any, admitted by the respective parties.

16       I further certify that the total cost for the

17  preparation of this Reporter's Record is $656.50 and was

18  paid by STILWELL, EARL & APOSTOLAKIS, LLP.

19       WITNESS MY OFFICIAL HAND this the 24th day of

20  January, 2020.

21                      /s/ Martha Koomar

22                      _____
                        Martha D. Koomar, Texas CSR #7217
                        My Commission Expires:  04/30/2021
23                      Official Court Reporter
                        County Court at Law No. 2
24                      210 West Davis
                        Conroe, Texas  77301
25                      Telephone:  936-539-7832


                    MARTHA D. KOOMAR, CSR
                       936-539-7832

RECEIVED AND FILED
FOR RECORD
August 21, 2020  8:58 a.m.
Melisa Miller, District Clerk
Montgomery County, Texas

<u>EXHIBIT H</u>

## CAUSE NO. 19-06-07875

| | | |
|---|---|---|
| **JAMES FLITSCH; CAROLYN CLARK** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **vs.** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **KRISTEN DIANE WILKINSON;** | § | **457ᵀᴴ JUDICIAL DISTRICT** |
| **LEONARD GUARDINO; KEVIN J** | | |
| **CLARK; DIANE M CLARK; LISA R** | | |
| **SEIGEL; JILLIAN RENEE** | | |
| **DEUTMEYER; SAMANTHA MAYE** | | |
| **SIMONE'S DE ARIAS; CHANDRA** | | |
| **LEAH SIMS** | | |

## <u>ORDER ON TRADITIONAL MOTION FOR PARTIAL SUMMARY JUDGMENT</u><br><u>FILED BY JAMES FLITSCH, CO-TRUSTEE, AND CAROLYN S. CLARK, SETTLOR</u>

Before the Court is the Traditional Motion for Partial Summary Judgment (the "Motion") filed by James Flitsch, Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust U/T/A July 28, 2017 (the "Clark Trust"), and by Carolyn S. Clark, Settlor of the Clark Trust (the "Movants").

The Motion seeks partial summary judgment as relates to the "Request for Declaratory Relief Regarding Trusteeship" set forth in paragraphs 27-31 of the Movants' Second Amended Original Petition (the "Movants' Live Pleading"). In paragraph 19 of the Movants' Live Pleading the Movants state that they "seek to resolve questions that have arisen during the course of Trust administration, including construction of the Trust instrument." In their Live Pleading the Movants cite Section 37.005 of Texas' Declaratory Judgment Statute as the basis for the relief requested. Section 37.005 is titled "Declarations Relating to Trust or Estate," and provides:

> A person interested as or through an executor or administrator, including an independent executor or administrator, a trustee, guardian, other fiduciary, creditor, devisee, legatee, heir, next of kin, or cestui que trust in the administration of a trust or of the estate of a decedent, an infant, mentally incapacitated person, or insolvent may have a declaration of rights or legal relations in respect to the trust or estate: . . . (3) to determine any question arising in the administration of the trust or estate, including questions of construction of wills and other writings . . .

*Tex. Civ. Prac. & Rem. Code* § 37.005.

A copy of the Clark Trust is before the Court as a part of the summary judgment evidence.  It is undisputed that the Clark Trust was created on July 28, 2017, and that the Settlor/Grantor of the Clark Trust was Carolyn Clark, one of the Movants.

Section 1.3 of the Clark Trust states its purpose as follows:

**Purpose.** The purpose of this Trust shall be to care and provide for all needs of Carolyn S. Clark during her lifetime and to provide for the payment of education expenses for the primary beneficiaries so long as the education expenses will result in employability and increase of the beneficiary's income and enjoyment of life over the lifetime of the beneficiaries through, but not by way of limiting the definition of educational endeavors: completion of education, diploma, trade school, vocational school, vocational training, higher education, post secondary education, licensure, certification, graduate education, post graduate education.

Section 1.2 of the Clark Trust identifies its "primary beneficiaries" as "Carolyn S. Clark, the children of Carolyn S. Clark and Samuel B. Clark, and the lineal descendants of Carolyn S. Clark and Samuel B. Clark, including their grandchildren and great-grandchildren and their lineal descendants until the trust terminates."

Section 1.4 of the Clark Trust, titled "Co-Trustees," identifies its co-trustees and provides:

**Co-Trustees.** As Initial Co-Trustees, Kevin J. Clark shall be the initial Primary Co-Trustee and James C. Flitsch shall be the initial Secondary Co-Trustee of any Trust created in this Agreement. References to the co-trustees shall mean "Co-Trustees," whether the initial co-trustees or later-appointed trustees, and any typographical error referring to the co-trustees as "co-trustee" shall be disregarded if the singularly spelled word "trustee" in context should mean "co-trustees." There shall at all times be two individuals serving as co-trustees making together all decisions necessary to carry out the purpose and management of the Trust. *The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee. If Kevin J. Clark ceases or fails to serve before the appointment of his replacement, then James C. Flitsch shall appoint as the Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee.* If James C. Flitsch ceases or fails to serve, then Kevin J. Clark shall appoint as Co-Trustee of any Trust created in this Agreement an individual, corporate trustee, bank or trust company by written instrument bearing his signature and delivered to the appointee. Both Kevin J. Clark and James C. Flistch shall appoint Co-Trustees to replace themselves at such time when either one or

both of them is in contemplation of ceasing to serve or is in danger of becoming unable to serve.

Section 6.3 of the Clark Trust addresses the resignation of a Co-Trustee. It provides:

**Resignation of Co-Trustee**. Any Co-Trustee may resign by filing a written instrument duly acknowledged of record in the Deed Records of Grantor's County, which filing shall immediately deprive any such resigning Co-Trustee of all powers as Co-Trustee hereunder, except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets; provided, nevertheless, that at least thirty (30) days prior to such filing, the resigning Co-Trustee shall give written notice thereof to those persons who could in the discretion of the Co-Trustee receive income from the Trust estate and are at such time *sui juris.* No purchaser from, or other person dealing with, any Co-Trustee is obligated to examine such Deed Records and any such person acting in good faith shall be protected in all transactions with the Co-Trustee whether or not any such resignation has taken place.

Section 3.10 of the Clark Trust addresses the subject of compensation for the Co-Trustees. It reads as follows:

**Compensation and Bond.** The Co-Trustees (other than a beneficiary serving as Co-Trustee of any Trust created in this Agreement for the primary benefit of that beneficiary) shall be entitled to reasonable fees commensurate with their duties and responsibilities, taking into account the value and nature of the Trust estate and the time and work involved. A reasonable fee shall be paid annually to each Co-Trustee and shall be set as follows:

- 2.5% (.025) of the total value of all property held by the Co-Trustees, paid to each Co-Trustee for the first 12-month period and

- Thereafter 7.5% (.075) of the Trust income on the total value of investment property.

The Co-Trustees shall be reimbursed for the reasonable costs and expenses incurred in connection with their fiduciary duties hereunder. No Co-Trustee, whether original or successor, shall be required to furnish bond or other security, except as herein expressly provided.

In addition to the above facts concerning the Clark Trust, the summary judgment evidence establishes the following undisputed facts:

First, the Co-Trustee, Kevin J. Clark, signed a document before a notary on February 28, 2019, in which he resigns as Co-Trustee and purports to appoint Kristin Wilkinson as his replacement. The documents reads as follows:

Effective March 1, 2018 (sic)[1]:

I, Kevin J. Clark hereby resign as Co-Trustee for the Carolyn S. Clark Irrevocable Trust.

Kevin J Clark appoints Kristin Wilkinson, J.D. as his replacement CO-TRUSTEE in accordance with Part 6 and Section 3 of the Carolyn S. Clark Irrevocable Trust Agreement.

Second, on March 4, 2019, Kristin Wilkinson signed a document purporting to accept her appointment as Co-Trustee, and purporting to provide her compensation in an amount higher than the Clark Trust provides:

I hereby accept the appointment as Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust, made February 28, 2019, by Kevin J. Clark, effective March 1, 2019. Compensation of Kristin Wilkinson is set at five percent (5%) of the total value of all property conveyed to the trust during the first year of her service and according to the terms of the trust thereafter.

Third, Ms. Wilkinson signed a document before a notary on May 15, 2019, titled "Action by Co-Trustee of Appointment of Replacement Co-Trustee." In this document she purported to remove James C. Flitsch as Co-Trustee and to replace him with her husband, Leonard Guardino. She signed the document in her purported capacity as "Co-Trustee of the Carolyn S. Clark Irrevocable Living Trust Agreement." The document reads as follows:

Effective May 14, 2019. I Kristin Wilkinson hereby appoint Leonard Guardino as the Co-Trustee of any and all Trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust in the place of James C. Flitsch in accord with Paragraph 1.4 of the Carolyn S. Clark Irrevocable Living Trust Agreement. James C. Flitsch is removed as Co-Trustee of any and all trusts created in and/or by the Carolyn S. Clark Irrevocable Living Trust. This act is affirmed by my signature as Co-Trustee below; a true and correct copy of this instrument is being sent by certified mail, return receipt requested to James C. Flitsch at his last known address on file in the records of the Carolyn S. Clark Irrevocable Living Trust in accord with Paragraph 1.4 of the Carolyn S. Clark Living Trust Agreement.

---

[1] This should have read 2019. The reference to 2018 is a mistake.

Based on the above-described undisputed facts, the Court grants the Movants' Traditional Motion for Partial Summary Judgment as follows.

1. The Clark Trust does not give a Co-Trustee the power to unilaterally appoint his own replacement. Therefore, even assuming that Kevin J. Clark still had the powers of a Co-Trustee at the time he purported to appoint Ms. Wilkinson as his replacement,[2] those powers did not include the power to unilaterally appoint his own replacement. Section 1.4 of the Clark Trust provides: "The Co-Trustees shall together make decisions relating to the individuals who shall succeed and replace both Co-Trustees at such time as they, or either of them, retire or resign as Co-Trustee." Mr. Clark's Co-Trustee, Mr. Flitsch, was required to participate in the appointment of the Co-Trustee that would replace Mr. Clark. Since Mr. Clark lacked the power to unilaterally appoint his own replacement, his purported appointment of Ms. Wilkinson as Co-Trustee is ineffective and invalid as a matter of law.

2. The Clark Trust does not give one Co-Trustee the power to remove another. Even assuming for the sake of discussion that Ms. Wilkinson was properly appointed as a Co-Trustee, and acquired the powers of a Co-Trustee, those powers did not include the power to unilaterally remove Mr. Flitsch as a Co-Trustee. Accordingly, the purported removal of Mr. Flitsch by Ms. Wilkinson was ineffective and invalid as a matter of law.

3. Ms. Wilkinson's purported appointment of Mr. Guardino as a Co-Trustee is ineffective and invalid as a matter of law. Not only did Ms. Wilkinson not have the powers of a Co-Trustee under the Clark Trust, but even assuming that she did, those powers did not include the power to unilaterally appoint another Co-Trustee.

4. Finally, the Clark Trust does not give a Co-Trustee the power to change the Co-Trustee's compensation. Therefore, even assuming that Ms. Wilkinson had acquired the powers of a Co-Trustee, those powers did not include the power to change her own compensation. Her act of purporting to change the compensation afforded a Co-Trustee under the Clark Trust was invalid and ineffective as a matter of law.

SO ORDERED this ____21____ day of August, 2020.

_Vincenzo J. Santini_                8/21/2020 8:58:23 AM

_____

Judge Vincenzo Santini

---

[2] Kevin J. Clark's act of filing a document in the real property records of Montgomery County on March 1, 2019 stating that he was resigning as Co-Trustee immediately deprived him of all powers as Co-Trustee pursuant to Section 6.3 of the Clark Trust "except those powers appropriate to the administration of the Trust during the time required for the transfer of the Trust assets."

Received and E-Filed for Record
9/28/2020 4:28 PM
Melisa Miller, District Clerk
Montgomery County, Texas
Deputy Clerk, Jeff Fiore

**EXHIBIT I**

## CAUSE NO. 19-06-07875

| | | |
|---|---|---|
| **IN RE THE CAROLYN S. CLARK** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| **IRREVOCABLE LIVING TRUST** | § | **MONTGOMERY COUNTY, TEXAS** |
| | § | |
| **U/T/A JULY 28, 2017** | § | **457th JUDICIAL DISTRICT** |

### ORDER GRANTING PLAINTIFFS' MOTION FOR DISBURSEMENT FROM TRUST

CAME ON THIS DAY for hearing James Flitsch's ("Flitsch"), and Carolyn Clark's ("Clark") (collectively "Plaintiffs") Motion for Disbursement from Trust (the "Motion"). The Court considered the Motion, any timely filed response, admissible evidence, and argument by counsel. The Court determines that the Motion is meritorious. THEREFORE, IT IS

ORDERED, ADJUDGED, AND DECREED that the Motion is GRANTED IN ALL THINGS. The interim Co-Trustees are authorized to disburse $227,061.00 to Carolyn Clark from her share in Trust.

4/16/2021 12:41:50 PM

_____     Date:_____

JUDGE PRESIDING